Plaintiff Don S. Willner and Associates P.C.
Statement of Material Facts

1. The IRS lawsuit for $1.2 billion was reduced by settlement to $50 million of which 75% was allocated to interest and 25% was allocated to the tax. After the payment of the tax $44 million remained in the Receivership.

2. The amount allocated to interest can be used to offset future corporate taxes owed by the Benj. Franklin Receivership if the judgment in the U.S. Court of Federal Claims either remains $52 million or any other positive amount as a result of the appeal to the Federal Circuit.

3. Don S. Willner and Associates, P.C., or its principal, Don S. Willner, or predecessor law firms ("Willner") filed the shareholders derivative law suit in the U.S. Court of Federal Claims on September 14, 1990.

4. Willner has been the sole attorney of record in the over 16 years of the Claims Court case.[1]

5. In the Claims Court law suit Willner (a) argued in 1990 and won in 1995 the court order allowing shareholders derivative standing; (b) argued and won in 1997 Summary Judgment on liability; (c) handled the majority of the trial on damages in 1999 which resulted in a 2002 judgment in the amount of approximately $35 million; (d) filed the Motion for Reconsideration of the Claims Court judgment, did a portion of the briefing, and argued and won the portion of the motion which resulted in increasing the Claims Court judgment in 2006 to approximately $52 million.

---

[1] As of forthcoming filing of the appeal to the Federal Circuit Thomas Buchanan will become attorney of record for the appeal, and Willner will be of counsel for the appeal.

6. Willner filed, later in 2002, as sole attorney of record in the case of *Suess et al v. FDIC* in the Oregon District Court which resulted in a TRO and later an agreement by FDIC not to pay the tax without advance notice to Willner.

7. Willner filed in 2002 as sole attorney of record the Motion to Intervene and transfer to the District of Oregon in the tax case of *United States v. FDIC*. This resulted in the agreement of the Department of Justice and FDIC to allow participation by Willner and other shareholder attorneys in the 3 ½ years of successful settlement discussions.

8. Willner's knowledge of the earlier cases was helpful in his producing Benj. Franklin documents and information requested by the government and FDIC during the settlement discussions. (Willner is not seeking payment for his knowledge.)

9. During the settlement discussions Willner as lead counsel chaired the shareholder sides and called on other shareholder attorneys to participate as needed, handled almost all of the correspondence between the shareholder team, Department of Justice, and FDIC, and handled almost all of the numerous telephone calls with the Department of Justice's lead attorney, communicated the shareholder position on settlement offers to the FDIC attorney, and had the major attorney role in explaining and defending the settlement at the Fairness Hearing before this Court.

10. The settlement of the tax case was complex, related to a huge claimed tax ($1.2 billion), and involved an issue of first impression in the courts—whether federal financial assistance to a failed savings and loan receivership, could be taxable as income or free from tax as a loan.

11. These material facts are supported by the Willner Declaration, ex. 4. In addition, the material facts in paragraph 9 are supported by Gill Testimony contained in ex. 17.