

**U.S. Department of Justice**

**Tax Division**

*Please reply to:  Civil Trial Section, Western Region*
*P.O. Box 683*
*Ben Franklin Station*
*Washington, D.C. 20044*

*Facsimile No. (202) 307-0054*
*Trial Attorney: Henry C. Darmstadter*
*Attorney's Direct Line: (202) 307-6481*

EJO'C:RSW:HCDarmstadt
5-11E-12177
CMN 2002103814

November 1, 2002

### PRIVILEGED SETTLEMENT
### COMMUNICATION UNDER
### FED.R.EVID. 408

**Via Federal Express**

Don S. Willner
Willner & Hooton, LLP
111 S.W. Naito Parkway
Portland, Oregon 97204-3500

> Re:  United States v. Federal Deposit Insurance Company, et. al
> Civil Action No. 02-1427 (USDC) D. DC

Dear Mr. Willner:

As agreed, in connection with the upcoming informal settlement conference currently scheduled for November 19, 2002 at the FDIC's headquarters in Washington, DC, enclosed please find provisional schedules indicating the IRS's preliminary calculations of the income tax liabilities for the Benjamin Franklin Federal Savings & Loan Association, in receivership. The tax liabilities are calculated under three different scenarios with respect to the taxation of Federal Financial Assistance (FFA).

Schedule #1 reflects Ben Franklin's income tax liability based upon the tax on the FFA being determined in accordance with Notice 89-102. Schedule #2 reflects Ben Franklin's income tax liability based upon the tax on the FFA being determined in accordance with the proposed and final regulations promulgated under IRC § 597. Schedule #3 reflects Ben Franklin's income tax liability based upon the tax on the FFA being excluded entirely from the tax computation. Detailed interest calculations up through October 31, 2002 are attached to each Schedule. The amounts shown on the Schedules do not include any of the assessed penalties, and the interest computations do not include any interest on the assessed penalties.

Please understand that these computations are tentative and subject to revision. The pertinent

figures are derived from returns and amended returns filed by the RTC/FDIC as receiver. These returns have not been fully examined or audited by the IRS, and, of course, should this matter proceed through litigation, the United States retains the right to amend these figures as circumstances warrant. Furthermore, the United States considers both this correspondence and the attached Schedules to constitute statements made in connection with compromise or settlement negotiations and, therefore, privileged as provided under Rule 408 of the Federal Rule of Evidence.

In addition, please recognize that we do not consider your clients to be the taxpayers in this case or to have standing to intervene in this action. This material is being directly sent to you at the behest of the FDIC and in accordance with the Consent to Disclose Tax Information Form executed by the FDIC in this matter.

In accordance with our understanding of the mutual exchange agreement regarding the upcoming settlement conference, you will be providing us with Ben Franklin Shareholders' estimation the subject tax liabilities on November 4, 2002, by sending a copy of your calculations by both facsimile machine and overnight mail. The United States and the FDIC have agreed to hand deliver to each other on November 4, 2002 each party's respective calculations as to the subject tax liabilities.

We appreciate your assistance in this matter and look forward to receiving the Shareholders' analysis as to the correct amount of the subject tax liabilities. If you have any questions or comments please telephone me at (202) 307-6481 or Charles M. Duffy at (202) 307-6406.

Sincerely yours,

HENRY C. DARMSTADTER
Trial Attorney
Civil Trial Section, Western Region

Enclosure-as stated

cc:    Thomas Rohall, Esq.
       Sacramento, California

       Catherine Topping, Esq.
       FDIC
       Washington, DC

**Federal Deposit Insurance Corporation**
550 17th St. NW Washington DC, 20429                                                            Legal Division

## FOR SETTLEMENT PURPOSES ONLY
## SUBJECT TO FED. R. EVID. 408

November 1, 2002

**VIA Messenger on 11-4-02**              **VIA OVERNIGHT MAIL on 11-1-02**
Henry Darmstadter                          Don S. Willner, Esq
Trial Attorney                             Willner & Hooton, LLP
7th Floor Tax Division          111 SW Naito Parkway, Suite 303
Department of Justice                      Portland, Oregon 97204-3500
555 4th Street, N.W.
Washington, DC 20001

Re:     *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Hank and Don:

This letter and accompanying 5 exhibits are provided by the FDIC for the sole purpose of facilitating settlement and compromise discussions by and among the FDIC, the United States, and the *Suess* shareholders, regarding claims arising out of *United States v. FDIC*, Civil Action No. 02-1427, (D. D.C.) and *Suess v. FDIC*, Civil Action No. 02-807, (D. Ore.) (collectively the "Pending Actions"). The attached exhibits consist of the following spreadsheets or schedules relating to the federal income tax liability of the FDIC as Receiver for Benj. Franklin Savings and Loan Association ("FDIC") during the years 1990 through 2001:

- Exh. 1. Tax liability for each year as indicated on the tax returns as *actually filed* (*governed by 89-102*);

- Exh. 2. Federal Income Tax Calculation *under Notice 89-102*, but correcting for interest expense and the overstatement of deduction for federal financial assistance ("FFA") repayments in 1995;

- Exh. 3. Estimate of interest due on the recalculated tax amount in Exhibit 2;

- Exh. 4. Summary of interest expense (for interest accrued and paid to receivership claimants) ; and

- Exh. 5. Detail of interest expense accrued.

The materials are confidential and subject to both Federal Rule of Evidence 408 and the §6103 Consent to Disclose entered into between the FDIC and the United States. The FDIC specifically reserves all rights, claims, and defenses it has or may have in the Pending Actions

Letter to Messrs. Darmstadter and Willner
November 1, 2002
Page 2 of 3

Case 1:06-cv-01120-EGS     Document 13-23     Filed 02/02/2007     Page 4 of 26

and in the United States Court of Claims litigation known as *Suess v. United States*, Civil No. 90-981 C (the "goodwill" action).

We begin with the mutual understanding that the purpose of our settlement discussions and information exchange is to arrive at the correct tax amount that may be owed by the FDIC as receiver of Benj. Franklin.[1] This understanding is also founded on the existing Inter-Agency Agreement executed by the IRS and RTC which states, in pertinent part in the Preamble, that the parties agree that "it is in the best interest of the IRS, RTC, and the United States to resolve tax matters administratively between the IRS and the RTC in a manner that conserves government resources, carries out statutory responsibilities of the RTC and promotes fair administration of the tax laws."

FDIC tax personnel conducted a review of the Benj. Franklin receivership tax returns for 1990 through 2001. They identified two material issues with the earlier returns: a deduction for interest expense (for interest accrued and paid to receivership claimants) in the amount of $257,923,388 that was simply not utilized in any of the tax years; and the deduction for FFA repayments in the amount of $195,073,386 was identified to be overstated in 1995. These issues are discussed in more detail below.

Some of the original tax liability in 1990 arose from other non-FFA income consisting of accrued interest on escrowed funds.[2] A corresponding interest expense was in fact calculated but was not deducted. Basic tax principles should allow the Receivership to take the deduction for interest expense (for interest accrued and paid to receivership claimants) beginning in 1990.

The overstatement of the deduction for FFA in 1995 arose from a computational error. Specifically, under Notice 89-102, the amount of cumulative repayments of FFA cannot exceed the FFA income recorded in 1990. In 1995, the repayment amount recorded had exceeded the FFA income, and thus was overstated. The 1995 tax return was never amended to correct for the overstated FFA deduction. Instead, the NOL carryforward was simply reduced.

---

[1] Of course, the IRS may, as part of a compromise and settlement, permit a taxpayer to reopen a tax return. *See generally* IRC § 6511.

[2] "Escrowed funds" were an interest-bearing asset of the Benj. Franklin receivership that arose from the resolution of the Benj. Franklin failure in 1990. At resolution, the RTC in its Corporate capacity would typically enter into a Purchase & Assumption agreement with an insured depository institution for the purchase of certain assets and assumption of the insured deposit liabilities of the failed institution. Typically, this would result in a net wire transaction to/from the acquirer from/to the Corporation for the net amount of assumed liabilities, assets purchased, and premium paid by/to the acquirer. The receivership recognizes a liability for the deposit claims subrogated by the Corporation, while the Corporation would reflect a corresponding receivable. In turn, the receivership would recognize an "escrowed funds" receivable for the amount of assets sold and premium received, whereas the Corporation would reflect a corresponding liability. Interest is accrued on the "escrowed funds" due from Corporate until the outstanding principal and interest amounts are fully satisfied.

Letter to Messrs. Darmstadter and Willner
November 6, 2002
Page 3 of 3

Case 1:06-cv-01120-EGS    Document 13-23    Filed 02/02/2007    Page 5 of 26

If the foregoing corrections are made, then the tax liability indicated under the tax returns for years 1990 through 2001, as governed by Notice 89-102, would have been significantly reduced from $94 million to $12.3 million. *See* FDIC Exh. 2. We calculate that the latter tax amount, with interest calculated through September 30, 2002, using rates for large corporation underpayments, equals approximately $39 million.[3] *See* FDIC Exh. 3.

The foregoing is not intended to preclude consideration of any other scenarios which would also result in a reduced tax liability (e.g., such as under IRC § 597). We look forward to meeting with you on November 19th.

Very truly yours,

Catherine Topping

cc:    Hugo A. Zia

---

[3] The interest rates were compiled from the table provided by the *BNATAX Library*.

# WILLNER & HOOTON, LLP



**ATTORNEYS**
Don S. Willner*
Donald M. Hooton
Constance Wold
*Licensed in Oregon and Washington

ATTORNEYS AT LAW
SUITE 303
111 S.W. NAITO PARKWAY
PORTLAND, OREGON 97204-3500
TELEPHONE (503) 228-4000
FAX (503) 228-4261

**PARALEGAL**
Leslie Martinez-Muñoz

**STAFF**
Carl V. Anderson
Sharon Albert Davis
Gloria A. Martinez
Krystle McKinnon

*Se habla español*

November 4, 2002

## VIA FACSIMILE AND OVERNIGHT DELIVERY

Henry C. Darmstadter
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Washington DC 20044-0683

Robert Clark
Senior Counsel
FDIC
550 17th St., NW
Washington DC 20429

Charles M. Duffy
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Washington DC 20044-0683

Catherine Topping
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Carl Hankla
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Washington DC 20044-0683

Hugo Zia
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Re:   *United States v. Federal Deposit Insurance Company, et al*
      Civil Action No. 02 1427 (USDC D.DC)
      *Suess et al v. FDIC*
      CV 02 807 HA (USDC D.OR)

Dear Hank, Charles, Carl, Robert, Catherine & Hugo:

Here is the Statement of Benj. Franklin Shareholders, Proposed Intervenors-Defendants, of November 4, 2002. This has been prepared with the assistance of other attorneys, CPAs, and clients. I will overnight express another copy of the statement plus the enclosures.

We look forward to reviewing your material, and to our meeting November 19th.

Sincerely yours,

WILLNER & HOOTON, LLP



Don S. Willner

DSW:cva
Enclosure

**Federal Deposit Insurance Corporation**
550 17th St. NW Washington DC, 20429

Legal Division

## FOR SETTLEMENT PURPOSES ONLY
## SUBJECT TO FED. R. EVID. 408

February 7, 2003

<u>VIA FACSIMILE</u>

Don S. Willner, Esq.
Willner & Hooton, LLP
621 SW Morrison Street
Portland, Oregon 97204-3500

<u>VIA FACSIMILE</u>

Michael Moetell, Esq.
Winston & Strawn
1400 L Street
Washington D.C. 20005

Re:   *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Don and Michael:

This letter is provided by the FDIC in response to questions raised in a letter from Michael Moetell dated January 11, 2003, with respect to the federal income tax liability of the FDIC as Receiver for Benj. Franklin Federal Savings and Loan Association. The enclosed materials are subject to the conditions set forth in the FDIC's November 4, 2002 proposal.

1.     A copy of Benj. Franklin's 1989 tax return was delivered to Winston & Strawn.

2.     RTC account number 1773 – "Funds Borrowed From Corporation (Pre-Closing)".

As we explained in our December 12, 2002 letter, the FHLB borrowings would have been a liability of the Conservatorship, and any amounts remaining to be paid upon termination of the Conservatorship would have been paid at the inception of the Receivership as required under 12 CFR § 360.2. The pro forma balance sheet for the Receivership shows $503 million in advances owed to RTC Corporate as of the September 7, 1990 inception date of the Receivership. The pro forma balance sheet does not indicate whether the $503 million liability was due in whole or part to the FHLB borrowings.

We do know, however, that the Receiver repaid the $503 million loan and associated $23.6 million interest to RTC Corporate by August 1991, 11 months after the establishment of the Receivership. The interest paid by the Receiver on these loans would, typically, have been based on the average of the prior months' overnight funds rate at the U.S. Treasury. See schedule (Exh. 1) attached to our December 12, 2002 letter listing those accounts reporting the loan principal and interest amounts due and paid.

Pursuant to the receivership payment distribution scheme, 12 CFR § 360.3, the repayment of the $503 million in loans was treated as an administrative claim of the Receiver, which is a Priority 1 claim (§ 360.3(a)). Likewise, the $23.6 million in interest paid on the $503 million was also paid as an administrative expense of the Receiver. These claim amounts were paid before both the subrogated deposit claim, which is Priority 6, and the post-insolvency interest on the subrogated deposit claim, which is Priority 7.

Under the receivership payment distribution scheme, the Receiver's repayment of the $503 million loan and $23.6 million in interest was a separate transaction from, and unrelated to, the Receiver's payment of the $2.6 billion subrogated claim amount reflected in the post-insolvency interest schedule (FDIC Exh. IV). Accordingly, the $23.6 million in interest was not included in the post-insolvency interest schedule.

The $1.7 B of federal financial assistance ("FFA"), in a purchase and assumption transaction such as this one, is the amount of the claims funded by the RTC ($2.65 BB + $503 MM = $3.1 B) less the amounts of the assets purchased by the acquirer ($911 MM + $503MM = $1.4 B). Thus, the $503MM is included in the calculation of FFA.

3.    Dates and amounts of cash payments made to Bank of America for put-back assets.

It is our understanding that this question was raised and answered in the deposition of Robert J. Ferrer, FDIC, taken by the plaintiffs in the goodwill case on August 21, 1998. The transcript and exhibits should be responsive.

4.    "[G]ain on sale of FHLB stock" of $23,289,874.

We do not have workpapers regarding the calculation of the $23 million gain and the amount of FHLB stock dividends received by Benj. Franklin. However, the amount appears to be correct based upon our review of the second amended tax return for 1988, which claims an exclusion for the dividends at page 2 of the return.

5.    We were unable to determine the meaning of your question. The figures referenced in the question do not relate to FFA.

Please call me if you have further questions.

Yours truly,

Catherine Topping
Counsel

cc: Hugo Zia

**U.S. Department of Justice**

**Tax Division**

Please reply to: *Civil Trial Section, Western Region*
*P.O. Box 683*
*Ben Franklin Station*
*Washington, D.C. 20044*

*Facsimile No. (202) 307-0054*
*Trial Attorney: Henry C. Darmstadter*
*Attorney's Direct Line: (202) 307-6481*

EJO'C:RSW:HCDarmstadt
5-11E-12177
CMN 2002103814

February 13, 2004

## PRIVILEGED SETTLEMENT
## COMMUNICATION UNDER
## FED.R.EVID. 408

Robert Clark
Catherine Topping
Hugo Zia
FDIC
550 17th St., N.W.
Wahington, DC 20429

Re:  United States v. Federal Deposit Insurance Company, et. al
<u>Civil Action No. 02-1427 (USDC) D. DC</u>

Dear Mr. Clark, Ms. Topping and Mr. Zia:

In furtherance to our settlement discussions, enclosed please find documents pertaining to interest computations for the various assumed tax scenarios which were set forth in our previous correspondence of December 16, 2003. In order to better assist you in understanding and verifying the accuracy of these calculations, we are including many of the background or supporting documents that were generated by the IRS in connection with determining the interest amounts.

The IRS is currently preparing an Excel spreadsheet that will summarize these interest calculations. Please note that we are <u>not</u> at this time including the interest calculations for Scenario Number 11 (FFA excluded and interest accrual in 1990) because the IRS has recently advised us that its computations under this scenario may be in error (Bates Stamp Nos. 247-257). We hope to have corrected computations for Scenario No. 11 in the very near future. In addition, the IRS has included interest calculations for a Scenario No. 12. Scenario No. 12 assumes that FFA is taxed under IRS Notice 89-102 and that interest on the FFA does not accrue until 1995.

As we have discussed, the total amount of interest under some of the scenarios may appear to be disproportionate to the amount of the tax liability. This is the result of the affect of NOL carrybacks on the interest calculations. Under IRC § 6601(d), reduction or satisfaction of a tax liability by way of the application of a carryback does not stop the accrual of interest on the

underpayment until the time of the application of the carryback. Section 6601(d) specifically provides that a reduction in tax by reason of a carryback shall not affect the computation of interest on the underpayment for the period ending with the filing date for the year in which the NOL carryback arises.

As with the prior tax schedules, once you have had an opportunity to review and analyze these interest calculations, it may be useful to hold a meeting and/or conference call to discuss the matter further. In the meantime, if you have any questions or comments, please telephone me at (202) 307-6481 or Carl Hankla at (202) 307-6448.

Sincerely yours,

HENRY C. DARMSTADTER
Trial Attorney
Civil Trial Section, Western Region

Enclosure-as stated

cc:   Thomas Rohall, Esq.
      Sacramento, California
      (without enclosure)

      Don S. Willner, Esq.
      Portland, Oregon
      (Via Federal Express)

      Rosemary Stewart, Esq.
      Spriggs & Hollingsworth
      1350 "I" Street, N.W.
      9th Floor
      Washington, D.C. 20005

      Michael C. Moetell, Esq.
      Winston & Strawn
      1400 L Street, N.W.
      Washington, D.C. 20005-3502

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

ATTORNEYS AT LAW
SUITE 1415 THE AMERICAN BANK BUILDING
621 S.W. MORRISON STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 228-4000
FAX (503) 273-8842

March 17, 2003

Robert Clark
Senior Counsel
FDIC
550 17th St., NW
Washington DC 20429

**CONFIDENTIAL**
**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FRE RULE 408**

Catherine Topping
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Hugo Zia
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Re:   *United States v. Federal Deposit Insurance Corporation, et al.*
      Civil Action No. 02 1427 (USDC D.DC)
      *Suess et al. v. FDIC*
      CV 02 807 HA (USDC D.OR)

Dear Bob, Catherine & Hugo:

In late January, I talked by telephone with Catherine and Hank Darmstadter.
I said that we would be preparing a further memorandum demonstrating that the amount of the
loans from the RTC to the Benj. Franklin receivership are not includible in the receivership's
taxable income. A copy of that memorandum is enclosed. For your convenience, I have
enclosed in the same binder copies of (i) our prior memorandum on this issue and (ii) our
memorandum on the tax treatment of the Benj. goodwill.

March 17, 2003

We believe it would be beneficial to see whether the Benj. shareholders and the FDIC can develop a common position on the tax treatment of the RTC advances. We therefore ask that you not share or discuss the enclosed memorandum with the Department of Justice or the Internal Revenue Service at this time. Instead, we would like to meet with you at your earliest convenience to obtain your reaction to the memorandum and discuss whether we can reach an agreed position on the tax treatment of the RTC advances. This meeting would be preparatory to a subsequent meeting among DOJ, IRS, FDIC and the Benj. shareholders to consider whether all the issues in the case can be settled.

At our meeting with you, we would propose to discuss three topics: (i) the tax treatment of the loans from the RTC, (ii) the tax treatment of the Benj. goodwill, and (iii) several outstanding factual issues, which are outlined below.

With regard to the goodwill issue, we thank Catherine for her letter of the 13th, which we have reviewed. We agree that the tax returns filed by Benj. from 1982 forward, as well as other documents prepared by Benj., consistently treated the Equitable acquisition as a non-taxable reorganization. However, for the reasons set out in our memorandum, we believe that position was incorrect as a matter of law in light of the Supreme Court's *Paulsen* decision in 1985. Moreover, the position taken by Benj. in those years does not control the treatment of the goodwill on the 1990 return. It is well settled that a mistake of law on a prior return does not prevent a taxpayer from applying the law correctly in a subsequent year.

In this regard, we have not been able to locate any explanation of the legal reasoning underlying Benj.'s assertion that the Equitable acquisition remained nontaxable even after the *Paulsen* decision. We would be interested to know whether in your review of the files you have found any indication why Benj.'s management and their advisers believed that the Supreme Court's holding in that case was not relevant to the Equitable acquisition. We also would be interested to discuss your views of the legal arguments that we raised in our December 6, 2002 submission and your views on the correct post-1985 treatment of the Equitable acquisition.

Catherine also raised in her letter the question of whether prior tax years of Benj. or of the selling Equitable shareholders should be reopened. We believe the statute of limitations prevents the reopening of any such years. We would agree, however, that the amount of the net operating loss carryover and any other carryovers into Benj.'s 1990 year would need to be redetermined to reflect the treatment of the Equitable transaction as taxable.

At our meeting, we would also like to discuss with you several factual issues which should be resolved before any meeting with DOJ and the IRS. These issues are as follows:

Page 2
March 17, 2003

1. We understand that Benj. incurred very substantial prepayment penalties when it repaid its FHLB advances in 1990. We believe these penalties would have been deductible for federal income tax purposes, but we have not been able to identify where, if at all, such a deduction was claimed on the 1990 return. We are interested in any information you have regarding the amount of the penalties and whether a deduction for these penalties was in fact claimed.

2. We would like to discuss further with your tax staff the amounts of, and rationale for, the adjustments on the 1990 return to put the Benj. receivership, an accrual basis taxpayer, on a cash basis.

3. We would like to discuss further with your tax staff the reconciliation of the gain on FHLB stock sold in 1990 with the amounts of FHLB stock dividends excluded from income in prior years. We understand from your last letter that you are satisfied that these amounts can be reconciled, but we have not been able to do so on the basis of the information available to us.

4. We would like to discuss further with your tax staff whether $113,095,275 or $139,026,176 is the applicable NOL from 1989 to be deducted in the 1990 Benj. Franklin return. If you believe the $139 million figure is the correct one, it would be useful to be able to review a reconciliation of that figure with the NOL reported on the 1989 return.

Once we have had the opportunity to meet with you and your staff, we think it would be useful to schedule a meeting with DOJ and IRS regarding the three main issues we have raised, namely (1) that there should be a deduction for the interest paid on the RTC advances; (2) that the Benj. goodwill should have had a taxable basis resulting in a loss when the institution was seized; and (3) that the RTC advances cannot appropriately be taxable income, as well as any other issues that need to be addressed at that time.

I will phone Catherine in the near future to schedule a time for a meeting.

Sincerely yours,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

DSW:cva
Enclosures

KC-1066579-1

# FDIC

**Federal Deposit Insurance Corporation**
550 17th St. NW Washington DC, 20429

Legal Division

## FOR SETTLEMENT PURPOSES ONLY
## SUBJECT TO FED. R. EVID. 408

April 9, 2003

VIA FACSIMILE (202) 682-1639

Don S. Willner, Esq.
Willner & Hooton, LLP
621 SW Morrison Street

Portland, Oregon 97204-3500

Re:    *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Don:

This letter is provided by the FDIC in response to some of the questions raised in a letter from Don Willner dated March 17, 2003, with respect to the federal income tax liability of the FDIC as Receiver for Benj. Franklin Federal Savings and Loan Association.

1.    Amount of prepayment penalties with respect to repayment of the FHLB advances and whether such penalties, if any, were deducted on the 1990 tax return.

   To the best of our knowledge, to the extent that any penalties were paid by the Conservatorship, they would likely have been "expensed" and correspondingly deducted. We do not have extensive Conservatorship records so we have been unable to determine the precise amounts involved.

2.    We plan on discussing this item with you at the meeting tomorrow.

3.    Reconciliation of the gain on FHLB stock with dividends excluded from income in prior years.

   We responded to this question in our letter dated February 7, 2003. FDIC staff refers you to the 1990 amended return, where the items were properly accounted for.

4.    We plan on reviewing our reconciliation of the 1989/1990 NOLs for you at the meeting tomorrow.

Letter to Don Willner
April 9, 2003
Page 2


Yours truly,

Catherine Topping
Counsel


cc: Hugo Zia

Don S. Willner
(Licensed in Oregon and Washington)

ATTORNEYS AT LAW
SUITE 1415 THE AMERICAN BANK BUILDING
621 S.W. MORRISON STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 228-4000
FAX (503) 273-8842

May 2, 2003

**VIA FACSIMILE**

Robert Clark
Senior Counsel
FDIC
550 17th St., NW
Washington DC 20429

Catherine Topping
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Hugo Zia
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Re:   *United States v. Federal Deposit Insurance Company, et al*
      Civil Action No. 02 1427 (USDC D.DC)
      *Suess et al v. FDIC*
      CV 02 807 HA (USDC D.OR)

Dear Bob, Catherine & Hugo:

I am enclosing our spreadsheets and accompanying backup material. In our last telephone call you said that you were reviewing your position on FFA and might be submitting something new to DOJ.

1.    The amounts of the prepayment charges paid by the Benj. Franklin receivership in 1990 when it prepaid the FHLB advances and how those amounts were treated for tax purposes.

2.    Why the Benj. Franklin receivership as an accrual basis taxpayer reported $69,308,085 "Income Recognized On Conversion to Cash Basis—RTC LAS Adjustment" in the receivership's 1990 tax return on line 10 as "Other Income".

3.    The effect on net operating loss carryovers of FHLB stock dividends that had been included in taxable income.

You have also asked me for citations supporting our position that penalties and interest should be abated. I call your attention to the case of *Professional Asset Management, Inc. v. Penn Square Bank, N.A.*, 566 F Supp 134 (W.D. Okla. 1993). I assume that other similar cases can be found.

Similarly, interest on any tax deficiency should be computed at the same rate as was paid on the Benj. Franklin receivership funds for the time periods that those funds were held by the United States Treasury.

Sincerely yours,

DON S. WILLNER & ASSOCIATES, PC

Don Willner

Don S. Willner

DSW:cva
Enclosures

**FDIC**

**·ral Deposit Insurance Corporation**
5t.   , St. NW Washington DC, 20429                                                    Legal Division

_____

## FOR SETTLEMENT PURPOSES ONLY
## SUBJECT TO FED. R. EVID. 408


July 30, 2003


VIA FASCMILE AND REGULAR MAIL

Henry Darmstadter
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

Re:    *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Hank:

This letter responds to your request that the FDIC summarize its arguments concerning the alternative minimum tax ("AMT") liability indicated under the Benj. Franklin receivership tax returns.

The FDIC's examination of the tax returns at issue shows that if the receivership's federal income tax liability is calculated under Notice 89-102, and corrections are allowed for a missed deduction for post insolvency interest, among other things, and the penalties are waived, then the aggregate tax due for 1990 is substantially reduced. The AMT, however, for 1990 would be close to *two times* the amount of the regular tax, including interest accruals. If the receivership's federal income tax liability is calculated under the IRC § 597 Regulations used to calculate tax on federal financial assistance ("FFA"), the aggregate tax due for 1990 is also substantially reduced. In computing tax under this method, however, the AMT limitation on the use of net operating losses (IRC § 56(d)) does not apply to income attributable to FFA. *See* § 1.597-4(g)(3).

The FDIC is willing to consider as a compromise to calculate the tax, if any, under Notice 89-102, notwithstanding our long held concerns regarding the IRS's construction of the Notice and tax on FFA in light of the clear legislative history of § 597 to the contrary. We are doubtful, however, that our board would consider a further compromise that would allow an AMT assessment for 1990, for the reasons below.

We think that it would be manifestly unfair for the IRS to impose the AMT (IRC §§ 55-59) against the Benj. Franklin receivership. The arguments against any *regular* tax assessed under Notice 89-102 apply with equal force to the AMT. Indeed, the AMT result highlights our

long held concerns with the IRS's construction of Notice 89-102 and tax on FFA (*e.g.* that Congress never intended that federal income taxes relating to the receipt of FFA be assessed or collected.)

Similarly, we fail to see how applying the AMT to the Benj. Franklin receivership serves the purpose of the AMT provisions, under any construction. The congressional intent behind the provisions was to ensure that no taxpayer with substantial income would avoid paying federal income tax through the use of exclusions, deductions, or credits. Unlike an ordinary taxpayer, the FDIC's operation of failed financial institution receiverships is governed by statute. For example, the FDIC is required to "maximize the net present value return from the sale or disposition of a failed financial institution's assets." 12 U.S.C. § 1821(d)(13)(E). Surely Congress did not intend for the receiver to be deprived of deductions in these circumstances. Finally, the imposition of the AMT in this situation would not serve the goals of the Inter Agency Agreement that calls for the resolution of tax matters in a manner that promotes "fair administration of the tax laws."

In light of the foregoing issues relating to Notice 89-102, we are continuing to explore the receivership's tax liability, if any, calculated under the final IRC § 597 Regulations. You have raised the issue of whether the Benj. Franklin receivership followed the "election" procedures contained in the regulations. It is our understanding that the Benj. Franklin receivership was ineligible for such an election due to the effective dates of the proposed and final regulations that were issued under IRC §597 (as amended by FIRREA). We have outlined the timeline below.

IRS Notice 89-102, which was issued on October 2, 1989, was the IRS's initial guidance with respect to the tax treatment of post-FIRREA FFA. The Notice applied to all FFA received or accrued on or after May 10, 1989, until replaced by final regulations.

Proposed regulations were issued on April 27, 1992, but they governed the tax treatment of FFA on a *prospective* basis. (Benj. Franklin was placed in receivership on September 7, 1990.) Moreover, the Benj. Franklin receivership was foreclosed from amending the 1990 tax return under the retroactive election provision in the proposed regulations, which stated that:

> (3) *Procedural Rules*. An institution or consolidated group makes the election provided by this paragraph (c) by attaching a written statement to, and including it as part of, the taxpayer's or consolidated group's first annual income tax return filed [*insert the date final regulations under section 597 are filed with the Federal Register.*]

Prop. Reg. § 1.597-7(c)(3). The final regulations were not issued by the IRS until December 1995, over a year *after* the 1990 tax return was closed.

The final regulations affected only bank or thrift institution resolutions occurring on or after April 1992 and expressly prohibited retroactive elections beyond 3 years from the effective date of the regulations. See §1-597-7(c)(2)

Letter to Mr. Darmstadter
July 30, 2003
Page 3

        In sum, Notice 89-102 governed the tax treatment of all FFA received between May 1989
and April 1992 and the Benj. Franklin receivership could not make an election for the application
of the more favorable final regulations until December 1995 and then only for *open* tax years.
Indeed, the IRS National Office insisted that the RTC tax preparers apply Notice 89-102, as
evidenced by the notation on the 1990 amended return.  Thus, the fact that the RTC dutifully
obeyed the IRS's instructions should not be an obstacle to a compromise that allows the
legislative intent of IRC§ 597 to be applied here.

        We appreciate your willingness to consider our views on these issues as we continue our
efforts to reach a negotiated resolution of the receivership's tax liability.

        Please let us know if you wish to discuss these matters further.

                                                Yours truly,

                                                Catherine Topping
                                                Counsel

cc: Don S. Willner, Esq.

3

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

ATTORNEYS AT LAW
SUITE 1415 THE AMERICAN BANK BUILDING
621 S.W. MORRISON STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 228-4000
FAX (503) 273-8842

August 14, 2003

Henry C. Darmstadter
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Washington DC 20044-0683

Catherine Topping
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:  *United States v. Federal Deposit Insurance Company, et al*
     *and Benj Franklin Shareholders Proposed Intervennors*

Dear Hank and Catherine:

In a recent telephone conversation with me, Hank suggested that we again review the alternative minimum tax.

The key issue in this case continues to be whether the loans from the RTC to the Benjamin Franklin receivership, which were repaid in full plus $258 million of interest, could possibly be receivership taxable income,. We have previously submitted detailed memos pointing out that under each of the Internal Revenue Code, its legislative history and the 16th Amendment to the United States Constitution the amount of those loans cannot be treated as taxable income.

The income tax schedules we recently sent you show that if the RTC loans are not included in taxable income, approximately $7.5 million in tax, including the alternative minimum tax, would be owed by the Benj. Franklin receivership to the Internal Revenue Service.

Conversely, as you know, if the RTC loans are included in 1990 receivership taxable income, the receivership's liability for taxes and interest, including the alternative minimum tax, will greatly exceed the receivership funds now held by the FDIC.

Accordingly, the receivership's liability for alternative minimum tax is largely dependent on whether or not the RTC loans are treated as taxable income. In particular, the alternative minimum tax overwhelms the available funds only if the RTC loans are treated as taxable income, and is substantially diminished if they are not so treated. The first issue for resolution therefore must be whether the amount of the loans from the RTC to the Benj. Franklin receivership is excluded or included in 1990 receivership taxable income.

When we started this negotiation process, we never dreamed that almost 14 months would go by since the filing of the tax suit with no resolution. We understand that Susan Weiss has apparently finished her examination of the receivership tax returns. It would therefore appear that the next step is to attempt to resolve the critical RTC loan issue. We request the earliest possible three-way conference to discuss the tax treatment of those loans.

I would appreciate hearing from you at your earliest convenience to schedule that three-way conference.

Sincerely yours,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

DSW:bms

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

ATTORNEYS AT LAW
SUITE 1415 THE AMERICAN BANK BUILDING
621 S.W. MORRISON STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 228-4000
FAX (503) 273-8842

September 25, 2003

Henry C. Darmstadter
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Washington DC 20044-0683

Catherine Topping
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    *United States v. Federal Deposit Insurance Company, et al*
       *and Benj Franklin Shareholders Proposed Intervennors*

Dear Hank and Catherine:

This is to reiterate our request for a meeting with both of you and your staffs in the near future regarding the Benj. Franklin receivership.

We have continued to review the issues in the case and the calculations of regular and alternative minimum tax and interest that would be due under various scenarios. Based on this review, we continue to believe that it will not be possible to reach an appropriate resolution of this case unless (i) the funds advanced to the receivership by the RTC in 1990 are excluded from taxable income or (ii) a numerical settlement is reached that takes into account the substantial hazards to the government of litigating the issue of the taxability of these funds. In other words, the section 597 issue will have to be squarely addressed, in settlement discussions or in litigation

We also think that, in light of recent developments such as the Centex and Home Savings cases, it is increasingly likely that the Court of Federal Claims or the Federal Circuit will conclude that the amount of any tax imposed on the RTC advances should be included in the damages in the Suess case. In that case, there would be no benefit to the government of seeking to maximize the tax judgment.

Unless we can begin meaningful discussions on the question of the taxability of the RTC advances, we believe the shareholders will have no choice but to reassert the motion to intervene in the tax case. Given the constraints on the FDIC's ability to defend this case and the inherent conflict of interest that exists, we are highly confident the motion to intervene would be granted. We note in particular that because the shareholders would be defending the tax case on behalf of Benj., the cases you have referred to in the past suggesting that tax assessments may not be "collaterally attacked" are not relevant.

I will call you shortly to arrange a time for a meeting.

Sincerely yours,

DON S. WILLNER & ASSOCIATES, PC

Don Willner

Don S. Willner

DSW:bms

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th St. NW Washington DC, 20429

RECEIVED

NOV 1 7 2003

Legal Division

BY:

November 12, 2003

VIA REGULAR MAIL

Henry Darmstadter
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

Don S. Willner, Esq.
Don S. Willner & Associates, P.C.
621 S.W. Morrison Street
Portland, Oregon 97205

Michael Moetell, Esq.
Winston & Strawn
1400 L Street
Washington D.C. 20005

Re:     *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)
        *Suess v. FDIC*, CV '02-807-HA (D.Ore.)

Dear Counsel:

Mr. Darmstadter recently requested updated financial information for the Ben Franklin receivership. The most recent financial statements for the receivership showing results as of October 31, 2003 are enclosed. They do not reflect an estimate of the federal income tax liabilities, if any. Additional reports are compiled at year end that include estimates.

Please let me know if you have any questions.

Yours truly,

Catherine Topping
Counsel

cc:  Hugo Zia