**U.S. Department of Justice**

**Tax Division**

*Please reply to: Civil Trial Section, Western Region*
*P.O. Box 683*
*Ben Franklin Station*
*Washington, D.C. 20044*

*Facsimile No. (202) 307-0054*
*Trial Attorney: Henry C. Darmstadter*
*Attorney's Direct Line: (202) 307-6481*

EJO'C:RSW:HCDarmstadt
5-11E-12177
CMN 2002103814

December 19, 2003

**PRIVILEGED SETTLEMENT
COMMUNICATION UNDER
FED.R.EVID. 408**

Via Facsimile and Regular Mail

Robert Clark
Catherine Topping
Hugo Zia
FDIC
550 17th St., N.W.
Wahington, DC 20429

Re:  United States v. Federal Deposit Insurance Company, et. al
    Civil Action No. 02-1427 (USDC) D. DC

Dear Mr. Clark, Ms. Topping and Mr. Zia:

This is in furtherance to our recent telephone conversations regarding our settlement discussions in the above-referenced action. The FDIC has requested that the United States reduce the amount of its Proof of Claim for income tax liabilities in the Benj. Franklin Receivership ("Receivership") based upon the allowance of deductions for post-insolvency interest expenses paid by the Receivership to FDIC/Corporate with respect to Federal Financial Assistance ("FFA") or the subrogated claim. The FDIC has contended that these interest expenses were omitted from the income tax returns filed in this Receivership Proceeding and that the interest expenses should be deducted beginning in 1990.

In examining your request and assuming that the deductions for interest expenses are otherwise allowable, the IRS's National Office has questioned the timing of the deductions and is concerned that because the obligation to pay interest on the FFA was uncertain and contingent, none of the interest expenses would have accrued for income tax purposes until well after 1990. If this position is correct and the interest expenses are not deductible until later tax periods, it will have a material impact on the total amount of the tax liability of the Receivership and the ultimate amount of the United States' Claim for income taxes in this matter.

Based upon schedules and other information supplied by the FDIC, we are assuming the following with respect to the payment of post-insolvency interest on the FFA incurred by the

- 2 -

Receivership. Post-insolvency interest on the FFA was not accrued on the Receivership's financial statements until 1994 in the amount of $207,929,902, with an additional $53,844,327 reflected in 1995. The computation period for this interest began in September 1990 and ended in January 1995 when the last payment of FFA principal was made. The accrual of interest on the FFA was not deducted for income tax purposes but was reported on Schedules M-2 attached to the 1994 and 1995 returns. The post insolvency interest on the FFA was not actually paid by the Receivership to FDIC/Corporate until three years later ($238,625,269 in 1997 and $15,612,670 in 1998). These payments were shown on the Receivership's financial statements as cash distributions. The FDIC has represented to the United States that none of these interest expenses were deducted for any periods on any income tax returns for the Receivership.

With respect to the deductibility of interest for income tax purposes, Internal Revenue Code ("I.R.C.") § 163 provides that deductions may be claimed for interest on indebtedness paid or accrued within a taxable year. For accrual-basis taxpayers, the year in which interest will accrue and properly be deductible is determined under the "all-events" test. This rule, established by case law and incorporated into the regulations under I.R.C. §§ 446 and 461, provides that a liability is incurred and must be taken into account for the taxable year in which (1) all the events have occurred which establish the fact of liability and (2) the amount can be established with reasonable accuracy. A "third" requirement of "economic performance" is added under I.R.C. § 461(h). A fundamental premise underlying the "all-events" test is that, although expenses may be deducted by accrual-basis taxpayers before they become due and payable, liability must first be firmly established. *United States v. General Dynamics Corp.*, 481 U.S. 239, 243 (1987). If there are no contingencies, the present deduction of a future expense will be allowed.

Generally, interest accumulates ratably over time and, because interest is compensation for the use or forbearance of money, "economic performance" is held to occur with the passage of time. However, if the payment of interest is contingent upon a future event, the "first prong" of the "all-events" test is not met and interest will not accrue for tax purposes until the contingency has been satisfied. In situations where a "legal condition" prevents payment, the liability will be viewed as contingent, and interest deductions will not be allowed. *See In re Continental Vending Machine Corp.*, 77-1 U.S.T.C. ¶9121 (D.C. E.D. N.Y. 1976). *See also Guardian Investment Corp. v. Phinney*, 253 F.2d 326 (5th Cir. 1958) and *Burlington Rock Island Railroad Co. v. United States*, 321 F.2d 817 (5th Cir. 1963).

Although we could not find any cases involving the accrual of interest in the context of a RTC/FDIC receivership proceeding, for accrual-basis taxpayers in bankruptcy proceedings, a current deduction for post-petition interest on unsecured claims is not allowed prior to payment of allowed claims because, as a result of the priority scheme governing the payment of claims under the Bankruptcy Code, such obligations cannot be paid unless and until the bankruptcy estate pays all allowed claims and a surplus remains. The interest is not deductible because the liability is not fixed, absolute and firmly established under the "all-events" test under Section 461. Thus, the interest expense deduction is not allowed because it is contingent on the requirement of the prior payment of all allowed claims and on the economic ability of the debtor

- 3 -

to satisfy those obligations. *See In re West Texas Marketing Corp.*, 54 F.3d 1194 (5ᵗʰ Cir. 1995).

We are unaware of any specific contractual terms which would require the Receivership to pay interest on the principal amount of the FFA to the RTC/FDIC Corporate. Accordingly, any legal obligation to pay interest on the FFA would likely be imposed under Title 12 and/or the applicable banking regulations. The priority payment scheme set out under Title 12 imposes conditions on the accrual of post-insolvency interest similar to those under Title 11. 12 C.F.R. § 360.3(a) provides a priority schedule for the payment of claims which establishes the repayment of FFA as a 6th priority claim and the payment of interest on the FFA as a 7th priority claim. Under Section 360.3(d), all claims within a given priority category must be fully paid before any payment can be made on lower-priority claims, and if funds are insufficient to pay all the claims within a given priority category, pro rata payments will be made.

Accordingly, under Section 360.3, it appears that 7th priority claims and lower are not required to be paid unless and until higher priority claims (i.e., priority claims 1 through 6) have been paid in full and there are sufficient funds available to the receivership. Because of the uncertainty regarding the availability of such funds, it is our understanding that the lower priority claims are not immediately accrued on the books of receiverships administered by the RTC/FDIC. For example, we believe it is the policy of the FDIC not to accrue post-insolvency interest on creditor claims until at least 95% of the principal of accepted claims has been paid.

In this case, the Receivership's financial statements do not reflect interest on the FFA until 1994, and we assume that the Receivership did not allow a claim for the interest prior to that time. This appears to demonstrate that the Receivership did not believe it could begin to accrue interest for financial accounting purposes until that time. Furthermore, the FFA, a priority 6 claim, was not fully repaid until 1995, and the Receivership did not begin to pay the claim for interest on the FFA until 1997.

Therefore, it appears that any legal obligation on the part of the Receivership for the payment of interest would be contingent and entirely dependant upon the Receivership having first full paid those claims having a higher-priority to that of the claim for interest on the FFA. At the very least, because interest on the FFA cannot be paid until higher priority claims are satisfied, including repayment of principal for the FFA, interest cannot accrue for tax purposes until the taxable year in which it can be demonstrated that all higher-priority claims will be satisfied with a sufficient surplus remaining from which interest could be paid. Prior to this occurrence, payment of interest on the FFA is contingent and it is very unlikely that any interest on the FFA could have properly accrued under the "all-events" test.

- 4 -

As part of the our ongoing settlement process, we invite and encourage the FDIC to provide us with its comments and views on this important timing issue so that they might fully be considered by the Internal Revenue Service and Justice Department in analyzing the Receivership's request for the subject interest expense deductions. In connection with your reply, we believe it will be particularly helpful for the FDIC to provide us with any available authority that would legally require or obligate a receivership to pay interest on the FFA to FDIC/Corporate.

We are grateful for your continued cooperation and assistance in this matter and look forward to receiving the FDIC's response to this issue. If you have any questions or comments, please telephone me at (202) 307-6481 or Carl Hankla at (202) 307-6448.

Sincerely yours,

HENRY C. DARMSTADTER
Trial Attorney
Civil Trial Section, Western Region

cc:    Thomas Rohall, Esq.
       Sacramento, California

       Revenue Agent Susan Weiss
       Dallas, Texas

**ATTORNEYS**
Don S. Willner*
Matthew U'Ren*
Donald M. Hooton
Constance Wold
*Licensed in Oregon and Washington

ATTORNEYS AT LAW
SUITE 303
111 S.W. NAITO PARKWAY
PORTLAND, OREGON 97204-3500
TELEPHONE (503) 228-4000
FAX (503) 228-4261

**PARALEGAL**
Leslie Martinez-Muñoz

**STAFF**
Misty Plock
Gloria Flores
Sarah Waltemath
Krystle McKinnon

*Se habla español*

December 30, 2003

VIA FACSIMILE and
REGULAR MAIL

Henry C. Darmstadter (Fax No. 202-307-0054)
U.S. Department of Justice, Tax Division
Civil Trial Section, Western Region
PO Box 683, Ben Franklin Station
Washington DC  20044

Catherine Topping (Fax No. 202-736-0385)
Federal Deposit Insurance Corporation
550 17th St. NW
Washington, DC  20429

  Re:  United States v. FDIC (Benj Franklin Shareholders potential interveeniers)

Dear Hank and Catherine:

  Because the case we are working on together should now become more active as we look forward to a settlement conference, would you please send the originals of all communications to me at the Portland address, fax number and email number set forth above, with copies to Don Buchanan and Mitch Moetell (one copy is sufficient for both) and Rosemary Stewart.

        Sincerely,

        Don Willner & Associates, PC

        Don S. Willner

DSW:djb

Don S. Willner
(Licensed in Oregon and Washington)

ATTORNEYS AT LAW
SUITE 1415 THE AMERICAN BANK BUILDING
621 S.W. MORRISON STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 228-4000
FAX (503) 273-8842

December 30, 2003

**VIA FACSIMILE
AND REGULAR MAIL**

Henry C. Darmstadter (Fax No. 202-307-0054)
U.S. Department of Justice, Tax Division
Civil Trial Section, Western Region
PO Box 683, Ben Franklin Station
Washington, DC 20044

**CORRECTED**

Carl Hankla (Fax No. 202-307-0054)
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683, Ben Franklin Station
Washington, DC 20044

Re:     *United States v. Federal Deposit Insurance Company, et al.*
        Civil Action No. 02-1427 (USDC) D.DC

Dear Hank and Carl:

    Our group has reviewed the material that you have sent to me. We would very much
appreciate it if you could expedite getting the interest computations to us under the various
scenarios. Mitch Moettel and Ernie Fleischer are both on vacation until the first of the year. I
hope that these tax computations could be done this coming week so that they could start
reviewing them or January 5. We would then send to you some questions resulting from our
review of the materials, including the tax computations, and would look forward to a meeting of
the three parties in January.

                                    Sincerely yours,

                                    DON S. WILLNER & ASSOCIATES, PC

                                    Don S. Willner

DSW:mag
cc: Catherine Topping (via Facsimile No. 202 736-0385 and Regular Mail)

**Federal Deposit Insurance Corporation**
550 17th St. NW Washington DC, 20429

Legal Division

## FOR SETTLEMENT PURPOSES ONLY
## SUBJECT TO FED. R. EVID. 408

February 5, 2004

VIA FACSIMILE AND REGULAR MAIL

Henry Darmstadter
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

      Re:    *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Hank:

      This letter is provided by the FDIC in connection with the parties' discussions with respect to the federal income tax liability of the FDIC as Receiver for Benj. Franklin Federal Savings and Loan Association ("Benj. Franklin").

      On February 26, 2003, we provided you with copies of correspondence from FDIC personnel to the IRS requesting that the IRS abate the various penalties, together with the interest thereon, assessed against the Benj. Franklin receivership and the returns filed by the RTC and the FDIC as receiver for tax years 1990, 1994, 1999, and 2000.

      You recently requested that the FDIC provide further written justification for abatement with respect to the penalties assessed for late filing. In response to your request, we have reiterated below the circumstantial factors that existed during the return filing periods, which combined constitute reasonable cause for the delay in filing under section 26 U.S.C. §6651(a)(1).

• The RTC was no ordinary taxpayer. On the contrary, the RTC was a temporary federal agency that was created by Congress to resolve a financial institution crisis that, except for the Great Depression, was unheralded in our nation's history. As part of its congressional mandate, the RTC was required by statute to act as conservator and receiver of insolvent thrifts, such as Benj. Franklin.

• When it was established literally from scratch in August 1989, the peak of the savings and loan crisis was virtually right around the corner. (See attached chart.) The RTC suddenly became responsible for an unprecedented workload of both failed and failing thrifts. It immediately assumed responsibility for 262 thrift institutions in conservatorship with assets of $115 billion. By December 31, 1990, the end of its first

full year of operation, the RTC had been appointed conservator or receiver of 531 thrifts that contained \$278.3 billion in assets.

• From 1989 to 1994, the RTC took over 745 thrifts with total assets of \$402.1 billion. In 1995, the RTC's last year, it took over 2 thrifts with \$426 million in assets.

• The tax return preparation for these hundreds of insolvent thrifts far exceeded the RTC's staff resources.

• The RTC was hampered by delays in obtaining funding from Congress, which prevented it from hiring and developing the necessary experienced staff.

• Although the RTC sought assistance from outside accounting firms, the tasks required special training and supervision by the RTC.

• Upon the RTC's sunset in December 1995, the FDIC assumed responsibility for the operation of these receiverships in addition to its own failed bank liquidation and resolution responsibilities.

In light of the foregoing circumstances, the question of whether the RTC (and its successor the FDIC) met the required standard of "ordinary business care and prudence" in its handling of the Benj. Franklin receivership's tax obligations seems nonsensical. The RTC and FDIC staff did all they could under the circumstances to prepare and file tax returns for the receivership, but were nevertheless unable to comply within the prescribed time. *See* Treas. Reg. § 301.6651-1(c)(1); *United States v. Boyle*, 469 U.S. 241. At the very least, the situation is one that requires a special approach to tax return deadlines. There is simply is no good reason for imposing the harsh penalties of §6651.

Please advise me if you have questions or would like to discuss this matter further.

Yours truly,

Catherine Topping
Counsel

Attachment

cc: Don S. Willner, Esq.
    621 SW Morrison Street
    Portland, Oregon 97205

Don S. Willner

(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

February 23, 2004

Henry C. Darmstadter
Trial Attorney
Civil Trial Section
Western Region
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044

RE:    Benj. Franklin

Dear Hank:

We are looking forward to receiving at your earliest possible convenience your interest calculations for Scenario Number 11 (FFA excluded). As you know, we believe this is the only correct option. As soon as we receive it and have the opportunity of analyzing it, we will be back in touch with you.

Sincerely,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

DSW:bms



*Facsimile No. (202) 307-0054*
*Trial Attorney: Henry C. Darmstadter*
*Attorney's Direct Line: (202) 307-6481*

*Please reply to:* Civil Trial Section, Western Region
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044

EJO'C:RSW:HCDarmstadt
5-16-3747
CMN 2002103814

February 27, 2004

## PRIVILEGED SETTLEMENT
## COMMUNICATION UNDER
## FED.R.EVID. 408

Robert Clark
Catherine Topping
Hugo Zia
FDIC
550 17th St., N.W.
Wahington, DC 20429

Re:    United States v. Federal Deposit Insurance Company, et. al
       Civil Action No. 02-1427 (USDC) D. DC

Dear Mr. Clark, Ms. Topping and Mr. Zia:

In furtherance to our correspondence of February 13, 2004, enclosed please find documents pertaining to the interest computations for Tax Computation Schedule No. 11. I have been advised by the Internal Revenue Service that the spreadsheets summarizing the interest calculations are taking longer to prepare than anticipated. We will forward them to you as soon as they are available. In the meantime, if you have any questions or comments, please telephone me at (202) 307-6481 or Carl Hankla at (202) 307-6448.

Sincerely yours,

HENRY C. DARMSTADTER
Trial Attorney
Civil Trial Section, Western Region

Enclosure-as stated

cc:    Thomas Rohall, Esq.
       Sacramento, California
       (without enclosure)

Don S. Willner, Esq.
Portland, Oregon
(Via Federal Express)


Rosemary Stewart, Esq.
Spriggs & Hollingsworth
1350 "I" Street, N.W.
9th Floor
Washington, D.C. 20005


Michael C. Moetell, Esq.
Winston & Strawn
1400 L Street, N.W.
Washington, D.C. 20005-3502

**DON S. WILLNER & ASSOCIATES, PC**

Don S. Willner

(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

April 14, 2004

### PRIVILEGED SETTLEMENT
### COMMUNICATION UNDER FRE 408

BY FAX AND UPS

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683
Washington, DC  20044

Re: U.S. v. FDIC, et al
    Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank:

Attached to this letter, pursuant to your request, is the statement of our position on the $258 million interest deduction. As you can see, we agree with the FDIC. We think it is clear that the accrual of interest beginning in 1990 is compelled by the Dow Corning case. In this regard, contrary to the factual supposition in your December 19, 2003 letter, FDIC's claim was founded on a contractual right to interest, in that the FDIC was subrogated to the claims of the original holders of Benj.'s interest-bearing deposits.

The time has come for the parties to meet and determine whether the case can be resolved without litigation. We want to reach a settlement and not litigate, if this is possible, and are less concerned with theory than with obtaining an appropriate recovery for the shareholders. Thus, it is not necessary that a settlement acknowledge that Benj.'s FFA is not taxable. However, the settlement result will of course have to reflect the substantial litigation risks to the government on this issue, as well as on the others we have raised.

We believe a settlement fixing the Benj. receivership's liability for taxes, interest and penalties at $12 million, for the tax years 1990 through 2002, is appropriate in light of all the circumstances. We request that a date be set now not later than May 15, 2004 for a settlement conference to consider this proposal.[1]

If you are not prepared to set such a date now, this letter is our notice that we will shortly update and reactivate our motion to intervene and transfer to the District of Oregon. In the event of litigation, we of course expect to raise all of the issues we have previously raised, i.e., not only the FFA and interest accrual issues but also the goodwill issue and the fact that the statute of limitations bars collection of tax and interest at this late date for a number of the years at issue. We would also plan to challenge the assessment of interest against the Benj. receivership in light of (i) the failure of the FDIC to make a tax payment or post a cash bond years ago to stop the running of interest and (ii) the inequity of assessing interest at a rate three percentage points above Treasury yields while the Benj. receivership was being credited with interest at Treasury bill rates on the funds being held by the government. We believe we have strong positions on all of these issues. Moreover, if we were to prevail on some or all of these additional issues, as well as on the FFA and interest accrual issues, the receivership's liability would be substantially below the $12 million figure we are offering.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

DSW:rm
Encls.
cc: Catherine Topping, Esq.

---

[1] As you know, any settlement ultimately will need to be approved by a court, after notice to the shareholders.

# DON S. WILLNER & ASSOCIATES, PC
Don S. Willner

(Licensed in Oregon and Washington)

**FILE**

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

April 26, 2004

### PRIVILEGED SETTLEMENT
### COMMUNICATION UNDER FRE 408

BY FAX AND UPS

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683
Washington, DC 20044

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    U.S. v. FDIC, et al
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank and Richard:

I have polled our group to find out their availability for a meeting with DOJ and FDIC for the purpose of settlement negotiations. After comparing all of our calendars, we request a meeting for Thursday, May 13th. If that is not possible, our second choice is Friday, May 14th. We could meet at the FDIC office, or any other location you choose. We should reserve a full day for the meeting.

All the paperwork has been done and the time has come to determine whether we can resolve our differences by compromise and settlement, which is our preference or whether we have to reactivate the motion to intervene and transfer the case to the District of Oregon.

I hope that both of you can confirm at your early convenience that we can have a compromise and settlement meeting on May 13th, or if that date is not available, then May 14th.

I have recently received a copy of a letter from Tom Buchanan and Mitch Moetell addressed to you. So the record is clear, I filed the motion to intervene in this tax court litigation on behalf of all of the plaintiffs. Thereafter, one of the plaintiffs Robert Suess retained the law firm of Winston and Strawn to represent him while my firm and Spriggs and Hollingsworth continue to represent the other plaintiffs. Under rules of the United States Court of Federal Claims there can be one attorney of record and at all times during the almost 14 years that the shareholders case has been pending in the Claims Court I have been the attorney of record. Tom Buchanan (and other attorneys) have also been substantially involved. We will continue our unified approach in our discussions with you because it is in the best interest of our clients and furthers the possibility of a negotiated resolution of the pending tax matter.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don

Don S. Willner

DSW:rm
cc: Rosemary Stewart (by facsimile)
    Tom Buchanan (by facsimile)
    Mitch Moetell (by facsimile)
    Ernie Fleischer (by facsimile)
    Randi Cohn (by facsimile)

**DON S. WILLNER & ASSOCIATES, PC**

Don S. Willner
(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

May 6, 2004

BY UPS

Richard Gill
Federal Deposit Insurance Corporation
550 17th St., NW
Washington DC 20429

Re:   U.S. v. FDIC, et al
      Civil Action No. 02-1427 (USDC) D.D.C.

Dear Richard:

You have a lot of information to review before we have our settlement discussion. Here is some material that is in your voluminous files but should be read first.

1.   The stipulated order of Judge Smith in the Claims court case in which he finds that the shareholders and the FDIC believe that federal financial assistance should not be taxed. (This will come under separate cover.)

2.   The deposition of Michael Duhl taken in the case of Suess et al v. FDIC in which he testified under oath that he represented FDIC in negotiations with the IRS and argued on behalf of FDIC that federal financial assistance should not be taxed.

3.   The affidavit of Tom Buchanan in the case of Suess et al v. FDIC in which Tom stated under oath many of the occasions on which FDIC personnel told him that federal financial assistance should not be taxed.

4.   The memorandum that we submitted to DOJ and FDIC early in the current negotiations explaining why federal financial assistance should not be taxed (omitting enclosure).

5.   The memorandum we submitted explaining why there should be a tax deduction for the loss of the good will (omitting enclosure).

6.     The spreadsheets dated April 2003 provided by the shareholders explaining why the proper tax should be, under one scenario, well under $1 million, and under another scenario, $14 million including interest. (This is the same memorandum that I have faxed to you which did not come through clearly).

We are working on an agenda for our forthcoming meeting.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

DSW:rm
Encls.

Bc (w/o encls):  Rosemary Stewart
                 Tom Buchanan
                 Mitch Moetell
                 Ernie Fleischer
                 Randi Cohn



**U.S. Department of Justice**

**Tax Division**

*Facsimile No. (202) 307-0054*
*Trial Attorney: Henry C. Darmstadter*
*Attorney's Direct Line: (202) 307-6481*

*Please reply to:  Civil Trial Section, Western Region*
*P.O. Box 683*
*Ben Franklin Station*
*Washington, D.C. 20044*

EJO'C:RSW:HCDarmstadt
5-16-3747
CMN 2002103814

May 10, 2004

### PRIVILEGED SETTLEMENT
### COMMUNICATION UNDER
### FED.R.EVID. 408

**Via Facsimile and Regular Mail**

Richard Gill
FDIC
550 17th St., N.W.
Wahington, DC 20429

Re:   United States v. Federal Deposit Insurance Company, et. al
Civil Action No. 02-1427 (USDC) D. DC

Dear Mr. Gill:

This is in response to your letter of March 17, 2004 regarding the accrual for income tax purposes of the post-insolvency interest which you have contended was omitted from Benj. Franklin's income tax returns.

After a review of the analysis provided in your letter, we are of the opinion that the FDIC has placed too much emphasis on financial accounting accrual and too little emphasis on whether financial accounting created a deductible expense for tax purposes and, if so, when that deduction could have been been taken. For a discussion of this dichotomy see *United States v. General Dynamics Corp.*, 481 U.S. 246 (1987) and *Thor Power Tool Co., v Commissioner*, 439 U.S. 522 (1979). The mere fact that the FDIC may be entitled to interest on its subrogated claims computed beginning as of 1990 is not the end of the inquiry. It appears to us that the statutory scheme under Title 12 imposes conditions on the payment of interest in receiverships. We do not believe that your letter sufficiently addresses this issue other than to simply state that 12 C.F.R. § 360.3 does not expressly limit the "accrual" of the interest expense, but only limits the "payment" of the interest.

Where a legal condition prevents payment, the liability will be viewed as contingent, and

SPRIGGS & HOLLINGSWORTH (FRI) 12. 3' 04 14:52/ST. 14:51/NO. 4861852123 P. 4
Case 1:06-cv-01120-EGS Document 13-24 Filed 02/02/2007 Page 20 of 25

- 2 -

assert a further claim for income taxes, penalties or interest against Ben Franklin
for the calendar years 1990 through 2002. Ben Franklin (or the FDIC) cannot
pursue a claim for refund of income taxes, penalties or interest for the calendar
years 1990 through 2002.

4)    The settlement offer does not apply to any income tax liabilities for Ben Franklin
for any periods after calendar year 2002. The $47 million settlement payment will
not satisfy or resolve any federal tax income liabilities for Ben Franklin for the
calendar year 2003 and any period thereafter.

5)    Twenty-five percent of the $47 million settlement payment ($11.75 million) will
be treated as constituting the payment of tax with the remaining seventy-five
percent ($35.25 million) treated as constituting the payment of interest. No
losses for income tax purposes resulting from the $47 million settlement payment
can be carried back by Ben Franklin to claim a refund or reduce income tax
liabilities for calendar years 2002 and earlier.

6)    This settlement offer is contingent upon and subject to the approval of the FDIC's
Board of Directors.

7)    This settlement offer is contingent upon a subsequent good faith determination by
the United States District Court for the District of Columbia in connection with a
"fairness" or "reasonableness" hearing that will be promptly calendared by the
FDIC in the event that this settlement offer is accepted by the United States.

8)    In the event the United States accepts this settlement offer, the FDIC will make
the $47 million settlement payment within ten calendar days of the United States
District Court determining that the settlement is fair or reasonable.

9)    Within seven calendar days of payment of the $47 million, the United States will
dismiss its Complaint in this action. The Complaint will be dismissed with
prejudice except as to the First Claim for Relief under 12 U.S.C. § 1821(d)(6)
with respect to the United States' claim for any future tax liabilities that are not
resolved by this settlement.

If the foregoing comports with your understanding of the offer your have submitted,
please initial a copy of this letter and return it to our offices via facsimile.

Your offer will be processed in accordance with our usual procedure. Final action will
taken by the Attorney General or an official designated by him for this purpose. We are sure that
you understand that unless your receive a notice of acceptance from this office the Department is
no way committed to an settlement.

You will be notified as soon as final action is taken on your offer.

- 3 -

If you have any questions or comments, please contact Henry C. Darmstadter (202) 307-6481 or Carl Hankla at (202) 307-6448.

Sincerely yours,

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By:

ROBERT S. WATKINS
Chief, Civil Trial Section,
Western Region

cc:   Thomas Rohall, Esq.
      Sacramento, California

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

May 12, 2004

BY FAX AND REGULAR MAIL

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683
Washington, DC 20044

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    U.S. v. FDIC, et al
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank and Richard:

I am enclosing our proposed agenda for the May 18 meeting. We will supplement it this week with the estimated numerical impact on the tax and interest of some of the issues we raise in connection with scenario 10.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

DSW:rm
cc: Rosemary Stewart (by facsimile)
    Tom Buchanan (by facsimile)
    Mitch Moetell (by facsimile)
    Ernie Fleischer (by facsimile)
    Randi Cohn (by facsimile)

Henry C. Darmstadter
May 12, 2004

bcc:    Peter Baker (by email)
        Leo Sherry (by email)
        Richard Green (by email)
        Dale Weight (by email)
        Don McIntyre (email)

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

**FILE**

OREGON OFFICE
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

May 12, 2004

BY FAX AND REGULAR MAIL

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683
Washington, DC 20044

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:  U.S. v. FDIC, et al
     Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank and Richard:

Here is our corrected agenda to include a discussion of Hank's letter of May 10, to Richard which we just received.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

DSW:rm
cc: Rosemary Stewart (by facsimile)
    Tom Buchanan (by facsimile)
    Mitch Moetell (by facsimile)
    Ernie Fleischer (by facsimile)
    Randi Cohn (by facsimile)

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone. (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

May 15, 2004

BY FAX AND REGULAR MAIL

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683
Washington, DC 20044

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    U.S. v. FDIC, et al
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank and Richard:

Attached is a summary spreadsheet showing the estimated effects on scenario 10 of the two issues identified and put on our agenda. These are that (1) the amount of FFA that the IRS would tax under the section 597 regulations is overstated (i.e., the IRS did not correctly apply the section 597 regulations) and (2) Benj. should not be held to the RTC's 1990 election to recapture its tax bad debt reserve on an accelerated basis. The spreadsheet shows the effect on taxes and interest due both (1) for all years and (2) for only those years for which the statute of limitations remains open.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

DSW:rm
cc: Rosemary Stewart (by facsimile)