# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

July 29, 2004

**PRIVILEGED SETTLEMENT
COMMUNICATION UNDER FRE 408**

### BY OVERNIGHT DELIVERY

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683 Ben Franklin Station
Washington, DC 20044

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re: U.S. v. FDIC, et al
Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank and Richard:

There has been some delay due to other commitments of lawyers in our group but we
should be able to get to you by the middle of next week an additional memo on option 10 and an
additional memo on the of taxing true loans. In the meantime, I am enclosing some interesting
reading matter. The "Oakland Raider Case" in which the Ninth Circuit in the year 2003 held that
a loan could not be taxed. I am also enclosing a copy of the information package that was
prepared effective March 31, 1900 by the Conservator which was used to obtain bids for the
liability and assets of Benj. Franklin. One of the issues in our case is the strength of Benj.
Franklin in 1990. What I am enclosing is Volume 1, the other volumes were

background material about Oregon and other portions of Benj.'s service area.

Sincerely,

DON S. WILLNER & ASSOCIATES PC



Don S. Willner

Encls.
DSW:rm
cc: Rosemary Stewart (by Email – w/o encls.)
    Tom Buchanan (by Email – w/o encls.)
    Mitch Moetell (by Email – w/o encls.)
    Ernie Fleischer (by Email – w/o encls.)
    Randi Cohn (by Email – w/o encls.)

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

**PRIVILEGED SETTLEMENT**
**COMMUNICATION UNDER FRE 408**

*BY FACSIMILE*

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683 Ben Franklin Station
Washington, DC  20044

Re:    U.S. v. FDIC, et al
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank:

On pages 9, 10 and 11 of the memorandum included with our letter to the FDIC dated March 17, 2003, we explained that the consequences of classifying the RTC advances as loans would be to subject loan proceeds, which are not income, to an income tax and therefore exceed Congress's power of taxation under the Constitution. This analysis is consistent with the observation made by Mr. Justice Whittaker in his opinion concurring and dissenting in part in the case of *James v. United States*, 366 U.S. 213, 248 (1961), pointing out that "[t]he starting point of any inquiry as to what constitutes taxable income must be the Sixteenth Amendment...."

That the RTC advances were loans is clear from the analysis mandated by the case law. In *Welch* v. *Commissioner*, 204 F. 3d 1228, 1230 (9th Cir. 2000), the Ninth Circuit summarized as follows the type of facts that must be examined to determine whether, for tax purposes, a loan exists:

> In classifying a loan, we examine the transaction as a whole. [Citations omitted.] The conventional test is to ask whether, when the funds were advanced, the parties actually intended repayment. [Citations omitted.]

> However, courts have considered a number of other factors as relevant in assessing whether a transaction is a true loan, such as: (1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the

loan; and (7) whether the parties conducted themselves as if the transaction was a loan. [Citations omitted.] Although the factors are non-exclusive and no single factor is dispositive, these indicia of a bona fide loan form a general basis upon which courts may analyze a transaction.

Clearly the foregoing analysis of the *Welch* factors, especially considering the transaction as a whole, shows that the advances are true loans for tax purposes. As such, they are not taxable income. The reason is that, as the United States Supreme Court stated in *Commissioner* v. *Tufts*, 461 U.S.300, 307 (1983):

> When a taxpayer receives a loan, he incurs an obligation to repay that loan at some future date. Because of this obligation, the loan proceeds do not qualify as income to the taxpayer. When he fulfills this obligation, the repayment of the loan likewise has no effect on his tax liability.

Accordingly, as stated by the Fifth Circuit in *U.S.* v. *Rochelle, Jr.,* 384 F. 2d 748, 751 (5th Cir. 1967) "[a] loan does not in itself constitute income to the borrower, because whatever temporary economic benefit he derives from the use of the funds is offset by the corresponding obligation to repay them." The RTC advances were true loans for the reasons set forth above and therefore do not constitute *income*. Thus, they cannot be subject to an *income* tax under the unique Benj. facts.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

Encls.
DSW:rm
cc:   Richard Gill *(by facsimile w/ encls.)*

Bc:  Rosemary Stewart *(by Email – w/ encls.)*
     Tom Buchanan *(by Email – w/ encls.)*
     Mitch Moetell *(by Email – w/ encls.)*
     Ernie Fleischer *(by Email – w/ encls.)*
     Randi Cohn *(by Email – w/ encls.)*

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

September 7, 2004

### PRIVILEGED SETTLEMENT
### COMMUNICATION UNDER FRE 408

**By Facsimile and Mail**

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    *U.S. v. FDIC, et al.*
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Richard:

The Benj. Franklin Shareholder Plaintiffs other than Mr. Suess request that FDIC make an immediate offer to pay the IRS $40 million in settlement of all taxes, interest, and penalties that have been or could be asserted against the Benj. Receivership for all taxable years up to and including the taxable year ended December 31, 2002, including but not limited to amounts claimed by the IRS in the above-captioned lawsuit. The $40 million does not include potential tax claims for taxable events that occur starting January 1, 2003. The offer places no restriction on how the IRS allocates the money between tax, interest and penalties. This offer is conditional upon approval by a federal district court after a fairness hearing with prior notice to all Benj. Franklin shareholders. We would appreciate the opportunity to review and comment on a draft of the offer letter that will be submitted by the FDIC to the Department of Justice.

The Shareholder Plaintiffs, other than Richard Green, as well as most of the original Benj. Franklin shareholders reside in the Pacific Northwest. At the time the motion to intervene and transfer to Oregon was filed, I represented all of the proposed Shareholder Plaintiffs in filing those motions. And, as you know, I am the sole attorney of record for these same Plaintiffs in the shareholders' derivative suit in the U.S. Court of Federal Claims, which specifically approved our group's status as derivative Plaintiffs.

Thereafter Tom Buchanan and Mitch Moetell took over the presentation of Mr. Suess and have participated in these discussions about possible tax settlement. Tom Buchanan has now advised me that Mr. Suess does not consent to this offer, although he understands that the other Shareholder Plaintiffs will be recommending this offer to FDIC and to the Justice Department and IRS.

If this offer is accepted by the Department of Justice, the Plaintiffs other than Mr. Suess will support the offer at the fairness hearing held by the U.S. District Court.

Although my clients agree that a smaller offer would be appropriate on the merits, they are desirous of resolving this despite short of further litigation. Moreover, the $40 million is not a "low ball offer." We believe it is fair and reasonable and should be acceptable to DOJ. We look forward to working together with the FDIC to resolve this tax dispute as expeditiously as possible.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

cc:    Rosemary Stewart
       Ernie Fleischer
       Tom Buchanan
       Mitch Moetell
       Randi Cohn

bcc:   Peter Baker
Leo Sherry
Richard Green
Dale Weight
Don McIntyre

**FDIC®**

**Federal Deposit Insurance Corporation**
560 17th St. NW, Washington DC 20429                                                                              Legal Division

---

## FOR SETTLEMENT PURPOSES ONLY
## SUBJECT TO FED. R. EVID. 408

November 18, 2004

VIA FACSIMILE AND REGULAR MAIL
Henry Darmstadter, Esq.
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

Re:   United States v. FDIC, Civ. No. 02-1427 (D. D.C. 2002)

Dear Mr. Darmstadter:

The Federal Deposit Insurance Corporation ("FDIC"), the Internal Revenue Service
("IRS"), the Department of Justice, and certain shareholders of Benj. Franklin Federal Savings
& Loan Association ("Benj. Franklin") have engaged in extensive settlement discussions over
the past several years.[1] These settlement discussions were undertaken in order to determine the
federal income tax liabilities for Benj. Franklin for the thirteen-year period that begins with the
1990 tax year and ends with the 2002 tax year. The settlement discussions were undertaken to
resolve the case captioned United States v. FDIC, et al., Civil Action No. 02-1247 (USDC D. DC
2002).

The FDIC believes that the proposed settlement is fair and reasonable and is in the best
interest of everyone involved. Accordingly, the FDIC submits the proposal set forth below to
settle all federal tax liabilities for Benj. Franklin for the thirteen-year period beginning January 1,
1990 and including the 2002 tax year that ends on December 31, 2002.

The FDIC offers the Internal Revenue Service the sum of $47,000,000 to settle all taxes,
penalties, and interest that have been assessed or could be assessed against Benj. Franklin for all
tax years beginning with the 1990 tax year that ended on December 31, 1990, and concluding
with the 2002 tax year that ended on December 31, 2002. The $47,000,000 settlement payment
shall also be deemed inclusive of, and in complete settlement of, all interest owed by Benj.
Franklin with respect to the tax years 1990 through 2002 accruing up to and including the date
the settlement payment is made. The settlement offer will resolve and determine to be final and

---

[1] The shareholders were invited to participate in the settlement discussions at the request of the FDIC.

close all federal $t^2$ax matters for Benj. Franklin for the years beginning in 1990 and ending with the 2002 tax year.

The FDIC's settlement offer is contingent on the IRS's agreement that 75 percent of the $47,000,000 settlement payment will be treated as a payment of interest, and the remaining 25 percent will be treated as a payment of federal income taxes, for purposes of determining the effect of the payment on tax years after 2002. In addition, the FDIC and IRS will agree that no part of any tax loss generated by the settlement payment will be carried back to, or considered to be absorbed by income arising in, the tax year ended December 31, 2002. Accordingly, a tax loss generated by the settlement payment to the IRS may be carried back to the tax year ended December 31, 2003 or later years, to the extent such a carryback would otherwise be permitted under section 172 of the Code.

This settlement offer is contingent upon a subsequent good faith determination by the federal district court in the District of Columbia, through the procedural mechanism of a "fairness" or "reasonableness" hearing, that the settlement is fair and reasonable and in the best interest of everyone, including the FDIC, the IRS, and the shareholders of Benj. Franklin.

The settlement offer is also subject to approval by the FDIC's Board of Directors that we will endeavor to obtain in a prompt and expeditious manner. The Legal Division and the other applicable FDIC divisions involved in this case represent that they will recommend its approval to the FDIC's Board of Directors.[3]

The FDIC would appreciate your prompt response to this settlement offer. If you have any questions or concerns regarding this settlement offer, please feel free to contact me at (202) 736-0519 or Richard Gill at (202) 736-0090.

Sincerely,

Robert G. Clark
Senior Counsel

---

[2] We will provide a separate letter in the near future that will provide a fuller discussion of the fairness hearing. In addition, any tax liabilities owed by the Benj. Franklin Receivership for the 2003 tax year and thereafter are not considered closed by this settlement offer.
[3] At the conclusion of the fairness hearing and within ten days from the Court's approval of the settlement, the FDIC will allow the IRS's claim for the 1990 through 2002 tax years in the amount of the settlement and disburse the settlement proceeds to the IRS. The Department of Justice will within seven days from receipt of the settlement proceeds file an agreed-upon motion or stipulation to dismiss with prejudice the above-captioned lawsuit.



**U.S. Department of Justice**

**Tax Division**

Facsimile No. (202) 307-0054
Trial Attorney: Henry C. Darmstadter
Attorney's Direct Line: (202) 307-6481

EJO'C:RSW:HCDarmstadt
5-16-3747
CMN 2002103814

Please reply to:   Civil Trial Section, Western Region
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044

December 2, 2004

**PRIVILEGED SETTLEMENT
COMMUNICATION UNDER
FED.R.EVID. 408**

**Via Facsimile and Regular Mail**

Robert G. Clark
Senior Counsel
FDIC
550 17th St., N.W.
Washington, DC 20429

Attention: Richard Gill

Re:   United States v. Federal Deposit Insurance Corporation, et. al
Civil Action No. 02-1427 (USDC) D. DC

Dear Mr. Clark:

We have received your offer, dated November 19, 2004, to compromise the above-entitled case. Based upon your letter and our recent telephone conversations with Richard Gill, we understand the terms of your offer to be as follows:

1)   The Federal Deposit Insurance Corporation (hereinafter "FDIC"), as receiver for the Benjamin Franklin Federal Saving and Loan Association (hereinafter "Ben Franklin"), agrees to pay the United States of America the total amount of $47,000,000.00 in consideration of any and all liabilities for income taxes, penalties and interest owed by Ben Franklin for the calendar years 1990 up through and including 2002.

2)   The $47 million settlement payment will be inclusive of all interest accruing on the income tax liabilities for Ben Franklin for the calendar years 1990 through 2002 up through the date of payment of the settlement amount.

3)   Upon receipt of the $47 million settlement payment by the United States, all income tax liabilities for Ben Franklin for the calendar years 1990 up through and including 2002 will be determined, resolved and closed. The United States cannot

assert a further claim for income taxes, penalties or interest against Ben Franklin for the calendar years 1990 through 2002. Ben Franklin (or the FDIC) cannot pursue a claim for refund of income taxes, penalties or interest for the calendar years 1990 through 2002.

4) The settlement offer does not apply to any income tax liabilities for Ben Franklin for any periods after calendar year 2002. The $47 million settlement payment will not satisfy or resolve any federal tax income liabilities for Ben Franklin for the calendar year 2003 and any period thereafter.

5) Twenty-five percent of the $47 million settlement payment ($11.75 million) will be treated as constituting the payment of tax with the remaining seventy-five percent ($35.25 million) treated as constituting the payment of interest. No losses for income tax purposes resulting from the $47 million settlement payment can be carried back by Ben Franklin to claim a refund or reduce income tax liabilities for calendar years 2002 and earlier.

6) This settlement offer is contingent upon and subject to the approval of the FDIC's Board of Directors.

7) This settlement offer is contingent upon a subsequent good faith determination by the United States District Court for the District of Columbia in connection with a "fairness" or "reasonableness" hearing that will be promptly calendared by the FDIC in the event that this settlement offer is accepted by the United States.

8) In the event the United States accepts this settlement offer, the FDIC will make the $47 million settlement payment within ten calendar days of the United States District Court determining that the settlement is fair or reasonable.

9) Within seven calendar days of payment of the $47 million, the United States will dismiss its Complaint in this action. The Complaint will be dismissed with prejudice except as to the First Claim for Relief under 12 U.S.C. § 1821(d)(6) with respect to the United States' claim for any future tax liabilities that are not resolved by this settlement.

If the foregoing comports with your understanding of the offer your have submitted, please initial a copy of this letter and return it to our offices via facsimile.

Your offer will be processed in accordance with our usual procedure. Final action will taken by the Attorney General or an official designated by him for this purpose. We are sure that you understand that unless your receive a notice of acceptance from this office the Department is no way committed to an settlement.

You will be notified as soon as final action is taken on your offer.

- 3 -

If you have any questions or comments, please contact Henry C. Darmstadter (202) 307-6481 or Carl Hankla at (202) 307-6448.

Sincerely yours,

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By:   *Robert S. Watkins*

ROBERT S. WATKINS
Chief, Civil Trial Section,
Western Region

cc:   Thomas Rohall, Esq.
Sacramento, California

## DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

December 10, 2004

## VIA FAX (202) 736-0676 AND REGULAR MAIL

Robert G. Clark
Senior Counsel, FDIC
550 17th Street N.W.
H-11006
Washington, D.C. 20429

Re:    Benj. Franklin

Dear Bob:

I enclose my letter of today to Hank. You have continuing relations with D.O.J. tax division, and I do not. I hope you can talk to them about expediting the process. Almost 15 years of waiting is a long time.

Season's Greetings.

Sincerely,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

Enclosure

cc:    Richard Gill

**DON S. WILLNER & ASSOCIATES, PC**
Don S. Willner
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

February 17, 2005

### VIA FAX (202)736-0681 AND REGULAR MAIL

Robert G. Clark
Senior Counsel, FDIC
Room H-11006
550 17th Street, N.W.
Washington, D.C. 20429

Re:    Benj. Franklin

Dear Bob:

On December 10, 2004 I sent you the enclosed letter. I have recently talked to Richard Gill and he tells me that as far as he knows you have not telephoned Henry Darmstadter asking him to expedite the process of obtaining approval of the settlement. As I said in my previous letter, a contact from you would be of far more value than a contact from me, or even a contact from Richard Gill. FDIC and the shareholders have a common interest in getting the approval as soon as possible, so that some shareholders do not get discouraged with the delay and take direct action themselves.

February 21, 2005 will be 15 years from the date that Benj. Franklin was seized. Please help.

Sincerely,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner    per jrp

Don S. Willner

Enclosure
cc:    Richard Gill

DSW/jrp

**DON S. WILLNER & ASSOCIATES, PC**
Case 1:06-cv-01120-EGS    Document 13-25er    Filed 02/02/2007    Page 16 of 26
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

February 21, 2005


VIA FAX (202) 307-0054 AND REGULAR MAIL

Henry Darmstadter, Trial Attorney
Civil Trial Section, Western Region
P.O. Box 683
Benj. Franklin Station
Washington, D.C. 20044

Re:    U.S. v. FDIC
       (Benj. Franklin)

Dear Hank:

Benj. Franklin Federal Savings and Loan Association was seized by the
government 15 years ago today. This institution was founded in 1925; survived the great
depression; made money for 16 consecutive quarters before the passage of FIRREA; was
profitable during the conservatorship; and has a substantial surplus in the Receivership
today. The best measure of the affection and trust of its 6500 shareholders is that 4200
have contributed to our litigation fund, and many of the others have their stock in street
name and we cannot reach them.

The government goes on forever, but the shareholders are dying. Much of the
savings in the employee retirement fund was invested in Benj. Franklin stock. I regularly
receive letters from elderly shareholders pleading for quicker action. I also regularly
receive death notices.

My tax team and I authorized the FDIC to proceed with the $47 million figure
despite the opposition of a few key shareholders because we believed this would result in
an early distribution. The offer was submitted informally to you at your request in
September 2004, and formally on November 19, 2004. It is now five months since the
offer was informally submitted. I get conflicting reports whether the offer has even gone
to the next higher step in the Department of Justice.

Neither you nor anyone can reverse the seizure of Benj. Franklin made 15 years ago today. But you and your colleagues can have a heart and do everything possible to expedite the process. Please share this letter with your colleagues.

Sincerely,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

cc:    Robert Clark

DSW/jrp

bcc:    Dale Weight

Dale – Here is some ammunition for your forthcoming meeting with Senator Smith.        -Don

**DON S. WILLNER & ASSOCIATES, PC**
Don S. Willner
Attorneys at Law
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2530
Fax: (509) 395-2539
donswillner@aol.com

July 8, 2005

## VIA FAX (202) 736-0676 & REGULAR MAIL

Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:    Benj. Franklin

Dear Richard:

The shareholder Plaintiffs whom I represent reluctantly agree with your informal recommendation that the FDIC increase the offer to the government from $47 million to $48 million with the additional $1 million considered as interest. I have no further authority from my clients.

I agree that the best strategy is to have the cover letter signed by the General Counsel of the FDIC and that the best argument is that this additional $1 million is the limit of his authority granted by the Board of Directors of FDIC, as well as the most that my shareholder clients have approved. I think he should also say in his cover letter that he believes that the $47 million negotiated with the trial staff of the Department of Justice and its client, the Internal Revenue Service, is fair. But if this last minute addition of $1 million is the relatively small amount needed to get the shareholders their money, then FDIC reluctantly agrees.

Although the focus of his letter should be the concerns of FDIC, I see some advantage in his pointing out that FDIC does have sympathy for the 6,500 shareholders of Benj. Franklin, who will receive the balance in the receivership after payment of taxes

who have street name accounts for Benj. Franklin shareholders, requesting that they update the information that we have in our files. Many of the original 6,500 shareholders have died and I am telling their families who have notified me that they must talk to their own attorneys about appropriately transferring title to the stock. I look forward to being of assistance to your designated person.

Turning to the tasks on our side of the table, Rosemary and I are preparing the attorneys fee request for submission first to FDIC and then to the Court. Rosemary is contacting the other members of our team to get us updated information on the hours that they have spent on this matter and what they propose to charge. We will try to coordinate these applications and when we have totals available, discuss them preliminarily with you. I believe you will find our totals fair and well supported. Obviously, the best way of proceeding is informally, in the hopes that FDIC and us can reach an agreement as to what would be a reasonable fee. Both of us, as well as my clients, have duties to be fair to the shareholders, and I have always been conscious of my fiduciary obligations. We hope to get you some numbers in the near future.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner
per jrp

cc:   Rick Aboussie (via fax (202) 736-0676 and regular mail)
      I forgot to say in our last telephone call that Laird Kirkpatrick is now Dean of the University of Oregon Law School and Charlie Williamson is a recent past President of the Oregon State Bar, with you as Associate General Counsel of the FDIC. The Portland Legal Aid office has illustrious alumni.

cc:   Rosemary Stewart (via fax (202) 682-1639 and regular mail)

DSW/jrp

**DON S. WILLNER & ASSOCIATES, PC**

Don S. Willner
Attorneys at Law
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

July 13, 2005

## VIA FAX (202) 736-0676 & REGULAR MAIL

Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:    Benj. Franklin

Dear Richard:

As promised, here is my "check list" of the tasks we understand you are handling relative to the tax settlement for the Benj. Franklin Receivership.

1. Editing the Fairness Hearing material that we have provided in draft.

2. Reviewing our draft claim form for the return of the Benj. Franklin shareholders' contributions to the Litigation Fund. Rosemary will be sending you shortly a letter that should persuade the FDIC staff that payment of interest on the return of the shareholder contributions is appropriate.

3. Preparing the FDIC memo to Darmstadter about the Fairness Hearing. I know that Rosemary has already provided you a lot of information about this subject, but please let us know if we may help further.

4. I have not heard from the appropriate FDIC person in Texas about how we start preparing for notifying the shareholders of the Fairness Hearing. This, of course, is an FDIC responsibility, but I have the most up-to-date list of shareholders. In the meantime, I am contacting the shareholders and brokers

who have street name accounts for Benj. Franklin shareholders, requesting that they update the information that we have in our files. Many of the original 6,500 shareholders have died and I am telling their families who have notified me that they must talk to their own attorneys about appropriately transferring title to the stock. I look forward to being of assistance to your designated person.

Turning to the tasks on our side of the table, Rosemary and I are preparing the attorneys fee request for submission first to FDIC and then to the Court. Rosemary is contacting the other members of our team to get us updated information on the hours that they have spent on this matter and what they propose to charge. We will try to coordinate these applications and when we have totals available, discuss them preliminarily with you. I believe you will find our totals fair and well supported. Obviously, the best way of proceeding is informally, in the hopes that FDIC and us can reach an agreement as to what would be a reasonable fee. Both of us, as well as my clients, have duties to be fair to the shareholders, and I have always been conscious of my fiduciary obligations. We hope to get you some numbers in the near future.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner

per jrp

Don S. Willner

cc:   Rick Aboussie (via fax (202) 736-0676 and regular mail)
      I forgot to say in our last telephone call that Laird Kirkpatrick is now Dean of the University of Oregon Law School and Charlie Williamson is a recent past President of the Oregon State Bar, with you as Associate General Counsel of the FDIC. The Portland Legal Aid office has illustrious alumni.

cc:   Rosemary Stewart (via fax (202) 682-1639 and regular mail)

DSW/jrp

Attorneys at Law
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

July 13, 2005

## VIA FAX (202) 736-0676 & REGULAR MAIL

Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:    Benj. Franklin

Dear Richard:

As promised, here is my "check list" of the tasks we understand you are handling relative to the tax settlement for the Benj. Franklin Receivership.

1. Editing the Fairness Hearing material that we have provided in draft.

2. Reviewing our draft claim form for the return of the Benj. Franklin shareholders' contributions to the Litigation Fund. Rosemary will be sending you shortly a letter that should persuade the FDIC staff that payment of interest on the return of the shareholder contributions is appropriate.

3. Preparing the FDIC memo to Darmstadter about the Fairness Hearing. I know that Rosemary has already provided you a lot of information about this subject, but please let us know if we may help further.

4. I have not heard from the appropriate FDIC person in Texas about how we start preparing for notifying the shareholders of the Fairness Hearing. This, of course, is an FDIC responsibility, but I have the most up-to-date list of shareholders. In the meantime, I am contacting the shareholders and brokers

who have street name accounts for Benj. Franklin shareholders, requesting that they update the information that we have in our files. Many of the original 6,500 shareholders have died and I am telling their families who have notified me that they must talk to their own attorneys about appropriately transferring title to the stock. I look forward to being of assistance to your designated person.

Turning to the tasks on our side of the table, Rosemary and I are preparing the attorneys fee request for submission first to FDIC and then to the Court. Rosemary is contacting the other members of our team to get us updated information on the hours that they have spent on this matter and what they propose to charge. We will try to coordinate these applications and when we have totals available, discuss them preliminarily with you. I believe you will find our totals fair and well supported. Obviously, the best way of proceeding is informally, in the hopes that FDIC and us can reach an agreement as to what would be a reasonable fee. Both of us, as well as my clients, have duties to be fair to the shareholders, and I have always been conscious of my fiduciary obligations. We hope to get you some numbers in the near future.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner

cc:    Rick Aboussie (via fax (202) 736-0676 and regular mail)
       I forgot to say in our last telephone call that Laird Kirkpatrick is now Dean of the University of Oregon Law School and Charlie Williamson is a recent past President of the Oregon State Bar, with you as Associate General Counsel of the FDIC. The Portland Legal Aid office has illustrious alumni.

cc:    Rosemary Stewart (via fax (202) 682-1639 and regular mail)

DSW/jrp

## DON S. WILLNER & ASSOCIATES, PC
'Don S. Willner
Attorneys at Law
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

July 22, 2005

## VIA FAX (202) 736-0676 & REGULAR MAIL

Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:    Benj. Franklin

Dear Richard:

I do not yet have approval of my clients to go to the $50 million with the $3 million allocated to interest. I have a conference call with them at 11:00 a.m. EDT, right after our call. I do not have any experience dealing with the Tax Review Committee, although I have made many bargains over 54 years of law practice. I seek the wisdom of you, Richard, and Rosemary. My clients are furious and are talking about raising the money for litigation. FDIC and the shareholders are being blackmailed, and I do not even know whether Darmstadter has forwarded your previous offer to the Tax Review Committee, or even whether $50 million would work. I want the DOJ to know that they are dealing with another agency, not just citizens. I look forward to our call.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner

Don S. Willner

Enclosure

cc:    Rick Aboussie (via fax (202) 736-0676 and regular mail)
       Rosemary Stewart (via fax (202) 682-1639 and regular mail)
DSW/jrp

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th St. NW, Washington DC 20429                                    Legal Division

---

## FOR SETTLEMENT PURPOSES ONLY
## SUBJECT TO FED. R. EVID. 408

July 22, 2005

VIA FACSIMILE AND REGULAR MAIL
Henry Darmstadter, Esq.
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

Re:    United States v. FDIC, Civ. No. 02-1427 (D.D.C.)

Dear Mr. Darmstadter:

The Federal Deposit Insurance Corporation ("FDIC"), the Internal Revenue Service
("IRS"), the Department of Justice, and certain shareholders of Benj. Franklin Federal Savings
& Loan Association ("Benj. Franklin") have engaged in extensive settlement discussions over
the past several years.[1] These settlement discussions were undertaken in order to determine the
federal income tax liabilities for Benj. Franklin for the thirteen-year period that begins with the
1990 tax year and ends with the 2002 tax year. The settlement discussions were undertaken to
resolve the case captioned United States v. FDIC, et al., Civil Action No. 02-1247 (D.D.C.).

The FDIC offers the Internal Revenue Service the sum of $50,000,000 to settle all taxes,
penalties, and interest that have been assessed or could be assessed against Benj. Franklin for all
tax years beginning with the 1990 tax year that ended on December 31, 1990, and concluding
with the 2002 tax year that ended on December 31, 2002. The $50,000,000 settlement offer
includes all the provisions set forth in the December 2, 2004 letter signed by Robert S. Watkins
of the Department of Justice, including the revisions by Robert G. Clark of the FDIC dated
December 7, 2004. That letter is fully incorporated and attached to this letter.

The FDIC's settlement offer is contingent on the IRS/DOJ agreement that 75 percent of
the first $47,000,000 of the settlement proceeds will be treated as a payment of interest, and the
remaining 25 percent of the $47,000,000 will be treated as a payment of federal income taxes,
for purposes of determining the effect of the payment on tax years after 2002. The remaining
$3,000,000 of the settlement payment will be treated solely as a payment of interest, for purposes
of determining the effect of the payment on tax years after 2002.

---

[1]    The shareholders were invited to participate in the settlement discussions at the request of the FDIC.

The FDIC would appreciate your prompt response to this settlement offer.  If you have any questions or concerns regarding this settlement offer, please feel free to contact me at (202) 736-0335 or Richard Gill at (202) 736-0090.

Sincerely,

Richard T. Aboussie
Associate General Counsel

cc:  Don S. Willner, Esq.

Attachment

2