# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WINSTON & STRAWN LLP,** ) <br><br> and ) <br><br> **DON S. WILLNER & ASSOCIATES, P.C.** ) <br><br> and ) <br><br> **BLACKWELL SANDERS PEPER MARTIN** ) <br> and ) <br> **ERNEST M. FLEISCHER** ) <br><br>         Consolidated Plaintiffs, ) <br><br>      v. ) <br><br> **FEDERAL DEPOSIT INSURANCE** ) <br> **CORPORATION, AS RECEIVER FOR** ) <br> **THE BENJ. FRANKLIN FS&LA,** ) <br> **PORTLAND, OREGON** ) <br><br>       Defendant. ) <br> ) | Civil Case No. 06-01120 (EGS) <br><br> [Consolidated with No. 06-01227 (EGS) and No. 06-01273 (EGS)] |

## FDIC-RECEIVER'S EXHIBITS TO ACCOMPANY ITS OPPOSITION AND CROSS MOTION FOR SUMMARY JUDGMENT
### VOL. I

Bruce C. Taylor
Federal Deposit Insurance Corporation
550 17th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2436 (Telephone)
(703) 562-2478 (Facsimile)

Counsel for Federal Deposit Insurance Corporation, as Receiver for The Benj. Franklin FS&LA

Date:   February 22, 2007

## DON S. WILLNER & ASSOCIATES

ATTORNEYS AT LAW

SUITE 505

111 S.W. FRONT AVENUE

PORTLAND, OREGON 97204-3512

———

(503) 223-4000

ON S. WILLNER
ACHARY ZABINSKY
RAIG J. DORSAY *
OSEMARIE CORDELLO
EBECCA E. SWANSON

* Also Admitted in
ashington and New Mexico

FAX (503) 223-4261

August 22, 1990

Mr. Robert Suess
260 East 38th
Eugene, Oregon 97405

Dear Bob:

This law firm agrees to represent you and other shareholders of Benjamin Franklin Savings and Loan Association in a suit against all responsible parties in connection with the takeover of the Association by the federal government, which has resulted in diminishing or eliminating the value of your shares and to explore the possibility of taking over the pending lawsuit by the director of the Association. Here are the terms of our agreement:

1. We will seek to have this case certified as a class action on behalf of all of the shareholders of the Association. If a class is certified it is understood that the court will fix the attorneys fees in the event of a victory or a settlement. In determining the fee, it is understood that the court will usually start with a fair hourly rate and then adjust the fee up or down based upon a series of factors that have been judicially determined. Efforts will be made to bring suit under statutes which provide for attorneys fees to be paid by the defendants, but it may be that the attorneys fees will have to be paid by the class. If the court-fixed fee is to be paid by the shareholders, it is agreed that it will be taken out of the recovery before the recovery is disbursed to the shareholders. It is agreed that any such court-fixed fee should provide for the return of the fees advanced by the initiators of the suit.

FDIC Exhibit ___1___

Mr. Robert Suess
August 22, 1990
Page 2

    2.   Until a court-fixed fee is received, if this case is certified as a class action, or if this case is not certified as a class action by the court, then the fees and costs will be paid by you and other initiators of the suit on the following basis:

    a.   We would be paid $62.50 per hour for my time, $55.00 per hour for Craig Dorsay's time, and $50.00 per hour for the time of Zachary Zabinsky, Rosemarie Cordello or Becky Swanson, and comparable rates for the work of others whom we might choose to associate. It is understood these sums are designed to cover our overhead and that a fair hourly rate would be more than double these amounts.

    b.   You would pay our actual costs, which in this case would include depositions and possibly expert witnesses, and would be substantial. After we learn more about the case we could sit down and work out a budget for costs.

    c.   If this case is not certified as a class action by the court, then in addition to the hourly rates set forth herein, the parties have agreed to the following contingent fee:

        i.   25% of any amount of recovery or settlement obtained without institution of any action, arbitration proceedings, or other legal or equitable proceedings;

        ii.   33-1/3% of any amount of recovery or settlement obtained in the event a suit, action, arbitration proceeding, or other legal or equitable proceeding is instituted but no trial thereof or hearing thereon be had;

        iii.   40% of any amount recovered in the event of settlement during or after the commencement of trial, arbitration, or hearing or collected after judgment at trial, arbitration or hearing.

    d.   In the event of a victory or settlement all amounts previously paid in fees would be deducted from the contingent fee. In the event of loss, client would have no obligation other than the fees and costs set forth herein.

FDIC Exhibit  1

Mr. Robert Suess
August 22, 1990
Page 3

 3. It is understood that we are exploring the possibility of you and the shareholders taking over the existing federal court suit filed by the directors of the Association. Work done by us in connection with this lawsuit will be billed to you at double the rate set forth in paragraph 2(a). If that lawsuit is amended to seek money damages for the shareholders, such work is not subject to this paragraph 3. If there is a later attorneys fee award by the court for this work, it is agreed that any court-fixed fee should provide for the return of the fees advanced by the initiators of the suit.

 4. Fees and costs will be billed monthly and it is agreed that they will be paid promptly. Client will pay a retainer of $10,000 upon the acceptance of this agreement. Failure to pay fees owed in a timely manner is a material breach of this contract and entitles us to withdraw for cause.

 5. It is understood that client will seek to have other shareholders of the Association added as plaintiffs and will seek to have each of these additional plaintiffs contribute to the fees and costs of law firm, but client remains responsible for the amount set forth herein.

 6. It is understood that if it appears to us, after discovery or other developments in the case, that there is not a reasonable likelihood of a successful settlement or result at trial, arbitration or hearing, we are authorized to withdraw from the case upon reasonable written notice. If a recovery is later made on the case, however, Willner & Associates is entitled to be paid a fee proportionate to the time expended by Willner & Associates in its representation, as compared to time reasonably expended by the client's subsequent representative. If a court-fixed fee is awarded, then Willner & Associates is entitled to be paid its fees at double the rate set forth in paragraph 2(a).

 7. It is understood that should Willner & Associates withdraw for cause or be dismissed from representation, Willner & Associates are entitled to be paid a fee calculated at double the rates set forth in paragraph 2(a) and if a recovery is made on the case, a fee proportionate to the time expended by Willner & Associates in its representation, as compared to time reasonably expended by the client's subsequent representative, whichever is greater.

FDIC Exhibit ___1___

Mr. Robert Suess
August 22, 1990
Page 4

     8.   It is understood that the client is obligated to cooperate fully with the attorneys and others working on the client's case and failure to so cooperate constitutes cause for the attorneys to withdraw from further representation.  Such cooperation includes keeping appointments, giving depositions, producing documents and appearing for scheduled court appearances.

          Sincerely,

        WILLNER & ASSOCIATES

         Don S. Willner

DSW/kf

     ACCEPTED this _22_ day of ___Aug_____, 1990.

     _____
           MR. ROBERT SUESS

FDIC Exhibit __1__

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

C. ROBERT SUESS, et al.,               )
                    Plaintiffs,        )
                                       ) Civil No. 02-807-HA
        v.                             )
                                       )
THE FEDERAL DEPOSIT                    ) O R D E R
INSURANCE CORPORATION, a               )
quasi-government Corporation,          )
                    Defendant.         )

HAGGERTY, Judge:

        By Order issued July 2, 2002, this court rescinded a temporary restraining order previously

imposed in this action on June 17, 2002.  Plaintiffs now move for an Order "restoring the temporary

restraining order" pending their appeal to the United States Court of Appeals for the Ninth Circuit

(doc. # 27).  Defendant Federal Deposit Insurance Company ("FDIC") opposes this motion,

construing it correctly as a challenge to the court's interpretation of *Sharpe v. F.D.I.C.*, 126 F.3d

FDIC Exhibit 2

1147 (9th Cir. 1997), in which the Ninth Circuit explicitly recognized that 12 U.S.C. § 1821(j) bars

restraint by the courts on the statutory powers of the FDIC when it acts as receiver.

Section 1821(j), entitled "Limitation on court action," states "[e]xcept as provided in this

section, no court may take any action, except at the request of the Board of Directors by regulation

or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a

receiver."

Congress passed this and other statutes in 1989 to allow the FDIC to act as receiver or

conservator of a failed institution for the protection of depositors and creditors. *Telematics Int'l v.*

*NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992). Congress granted the FDIC broad

powers in conserving and disposing of the assets of the failed institution. As receiver, the FDIC has

broad authority to "take over the assets. . . and conduct all business of the institution," "collect all

obligations and money due the institution," and "preserve and conserve the assets and property of

such institution." 12 U.S.C. § 1821(d)(2)(B)(i), (ii), (iv).

"To enable the FDIC to move quickly and without undue interruption to preserve and

consolidate the assets of the failed institution, Congress enacted a broad limit on the power of courts

to interfere with the FDIC's efforts." *Telematics, Int'l.*, 967 F.2d at 705. "Essential to these

enumerated powers is the FDIC's ability to carry out its basic functions as a receiver free from

judicial restraint, pursuant to 12 U.S.C. § 1821(j)." *Sahni v. American Diversified Partners*, 83

F.3d 1054, 1058 (9th Cir. 1996).

"It is well-established that § 1821(j) bars restraint by the courts on the statutory powers of

the FDIC when it acts as receiver." *Id.*, citing *In re Landmark Land Co.*, 973 F.2d 283, 290 (4[th]

2 - ORDER

FDIC Exhibit 2

Cir. 1992) (comprehensive statutory scheme, including 12 U.S.C. § 1821(j), indicates Congress'

intent to allow FDIC "full reign" in exercising its statutory authority without injunctive restraints

imposed by the courts); *Ward v. Resolution Trust Corp.*, 996 F.2d 99, 102-04 (5th Cir. 1993)

(FDIC is free to liquidate receivership assets without being encumbered by the possibility of

injunctive actions); *Telematics Int'l.*, 967 F.2d at 705.

     The Ninth Circuit in *Sharpe* did note the existence of "few exceptions to this jurisdictional

bar." The *Sharpe* court acknowledged:

> The bar imposed by § 1821(j) does not extend to situations in which the FDIC as
> receiver asserts authority beyond that granted to it as a receiver. Section § 1821(j)
> "shields only 'the exercise of powers or functions' Congress gave to the FDIC; the
> provision does not bar injunctive relief when the FDIC has acted beyond, or contrary
> to, its statutorily prescribed, constitutionally permitted, powers or functions."
>
> *Sharpe*, 126 F.3d at 1155 (citations omitted).

     This court rejected plaintiffs' earlier attempts to portray this action as falling in one of the "few

exceptions" in which the jurisdictional bar is inapplicable. I continue to believe the injunctive relief

plaintiffs seek pertains to the FDIC's proper exercise of powers given to it by Congress.

Accordingly, under 12 U.S.C. § 1821(j), this court lacks jurisdiction to grant such relief. Plaintiffs'

motion (#27) must, therefore, be denied.

IT IS SO ORDERED.

     DATED this 26_____ day of July, 2002.

                    /s/ Ancer L.Haggerty
                      Ancer L. Haggerty
                United States District Judge

3 - ORDER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 02-1427 |
| | ) | |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION; and FEDERAL DEPOSIT | ) | |
| INSURANCE CORPORATION, in its capacity | ) | |
| as receiver for the BENJAMIN FRANKLIN | ) | |
| FEDERAL SAVINGS & LOAN | ) | |
| ASSOCIATION, and as successor | ) | |
| receiver for the RESOLUTION TRUST | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

JOINT UNOPPOSED MOTION BY PLAINTIFF UNITED STATES
AND DEFENDANT FDIC FOR A STAY OF ALL PROCEEDINGS IN ACTION
PENDING RESOLUTION OF INCOME TAX EXAMINATION BY THE INTERNAL
REVENUE SERVICE AND SETTLEMENT NEGOTIATIONS BY THE PARTIES

    a)    <u>Introduction.</u>

    This action involves the determination of the federal income tax liabilities of Benj.

Franklin Federal Savings & Loan Association ("Benj. Franklin"), in a Federal Deposit

Insurance Company ("FDIC") receivership proceeding. The total amount of the income

tax liabilities as reflected on tax returns, including penalties and interest, exceeds one-

billion dollars. Until recently, it appeared that there would be insufficient funds

remaining in the receivership to pay any of the tax liabilities. As a result of this

FDIC Exhibit 3

misapprehension, prior to the filing of this action, neither the FDIC nor the IRS fully scrutinized the subject tax returns in light of the complicated tax issues presented in this matter.  The United States, however, was obligated to commence this action because of potential statute of limitations concerns.

Since this action was filed, the FDIC has advised the IRS that it believes the tax liability should be substantially reduced by reason of a previously unreported large interest deduction.  In order to provide the IRS with sufficient time to review this request, the Court has approved unopposed motions extending the time in which the FDIC has to answer the Complaint.  In addition, the Court has approved unopposed motions extending the time in which the United States and FDIC have to respond to the motion to intervene and motion to transfer venue brought by six shareholders of Benj. Franklin.

Although the IRS has almost completed its review of the requested interest deduction, several other complex tax issues have emerged in this matter as a result of the IRS's examination of the tax liabilities of Benj. Franklin.  Six shareholders of Benj. Franklin who are seeking to intervene in this case have also requested that the IRS consider separate complicated tax issues that, if resolved in the taxpayer's favor, would substantially reduce the amount of the tax liability.  The parties anticipate that it will take several more months to fully analyze these issues in order to determine if they are actually in dispute or can be resolved without the intervention of the Court.  Because of

2

FDIC Exhibit _3__

the large amount of the tax liabilities, consideration of any settlement offer by the

United States will also be time-consuming.

Accordingly, rather than request another extension, the parties believe it is more

appropriate under the circumstances for the Court to stay all proceedings in this matter

until the parties have had an opportunity to investigate and resolve all the tax issues in

dispute and to process a potential settlement offer.  In connection with a stay, the

parties propose the filing of 60-day status reports and would welcome any request by

the Court to hold a status conference in this case, should the Court have any additional

questions regarding this action.

b)    <u>The Court should stay this matter in order to provide the parties
additional time to examine the disputed tax issues and to process any
settlement proposals.</u>

On July 17, 2002, the United States commenced this action for a judicial

determination of the amount of the federal tax claim filed in the FDIC receivership

proceeding of Benj. Franklin and to reduce the accompanying income tax assessments

to judgment.  In late 1990, the Resolution Trust Corporation (hereinafter "RTC") was

appointed receiver for Benj. Franklin, a federally chartered savings association.

Sometime before the end of 1995, the RTC ceased operation and was replaced by the

FDIC, as receiver of Benj. Franklin.

The Internal Revenue Service has made corporate income tax assessments

against Ben Franklin, in receivership, for the years 1990, 1994, 1999 and 2000.  These

income tax assessments were reflected in proofs of claim filed by the Internal Revenue

FDIC Exhibit 3

Service with the RTC/FDIC in the Benj. Franklin receivership proceeding. The FDIC has yet to formally allow or disallow any portion of the federal tax claim. The total outstanding balance on the corporate income tax liabilities for these periods as alleged in the Complaint is $1,077,768,461, including penalties and interest calculated through May 1, 2002 (see Paragraph No. 16 of the Complaint).

Although the United States and the FDIC are, and have been, attempting to settle or narrow the tax issues in dispute in the receivership proceeding, the United States found it necessary to commence this action in July 2002 because of potential statute of limitations concerns (see Internal Revenue Code (Title 26) § 6502 and 12 U.S.C. § 1821(d)(6)). Nevertheless, in order to provide the parties with additional time to examine the complicated tax issues in this case, the United States did not serve the FDIC with the Summons and Complaint until October 1, 2002.

The amounts of the subject income tax assessments and the amounts reflected on the proofs of claim filed with the RTC/FDIC are primarily based upon original and amended federal income tax returns filed by the RTC/FDIC, as receiver for Benj. Franklin. At the time the original and amended returns for Benj. Franklin were filed, it was not anticipated by either the RTC/FDIC or the IRS that there would be any surplus funds remaining in the receivership to pay the tax liabilities. As a result, the IRS did not fully examine the returns when they were filed. The FDIC, however, has represented to the United States that there is currently approximately $90 million dollars in surplus funds remaining in the receivership account.

4

FDIC Exhibit 3

After the filing of this action, the FDIC sought to determine whether the income tax returns it filed for Benj. Franklin in the receivership proceeding accurately set forth the proper amount of the corporate income tax liabilities.   Based upon this review of the subject income tax liabilities, the FDIC has represented to the United States that the income tax returns filed for Benj. Franklin for 1990 inadvertently omitted a large post-insolvency interest deduction which, if allowed, would substantially reduce the total tax liability.

As a result of the request by the FDIC that Benj. Franklin's tax liability be significantly reduced, IRS Revenue Agent Susan Weiss, who is based in Dallas, Texas and who has extensive experience with large RTC/FDIC receivership proceedings, has been assigned to review Benj. Franklin's income tax liabilities for all receivership periods.  Since the filing of the last unopposed motion for an extension of time on January 23, 2003, Revenue Agent Weiss has traveled to the FDIC's headquarters in Washington, D.C. and, on February 5, 2003, met with several representatives of the FDIC with respect to subject tax liabilities of Benj. Franklin.

In order to adequately complete her examination process, Revenue Agent Weiss has requested various documents pertaining to the financial activities of Benj. Franklin. Because much of the requested financial documentation dates from the Eighties or early Nineties, it has proven to be difficult and time-consuming for the FDIC to locate and forward all this material to the United States.  Furthermore, as a result of her examination, Revenue Agent Weiss has identified several additional tax issues which

5

FDIC Exhibit _3_

must be explained and/or resolved before she can adequately complete her review. These additional issues include the proper amount of net-operating loss carry forward for Benj. Franklin, apparent discrepancies between figures reflected on original and amended returns, the applicability of the corporate alternative minimum tax and the proper method for taxation of Federal Financial Assistance provided to Benj. Franklin. Revenue Agent Weiss anticipates that it may take several months for the IRS to fully complete its review process of the newly raised issues. Revenue Agents Weiss' conclusions will, of course, have to be evaluated and accepted by the United States Department of Justice before they become the position of the United States in this proceeding.

The parties do not believe that they can adequately identify all the issues in dispute in this action or engage in any meaningful settlement discussions until Revenue Agent Weiss has received and reviewed the requested financial records and completed her examination of the tax liabilities. Following the conclusion of Revenue Agent Weiss' review, should the FDIC decide to submit a settlement offer in this action, it may take several months for the United States to formally act on any offer. Because of the large amount of the tax assessments involved in this proceeding ($94,306,053 exclusive of interest and penalties), under federal law, settlement authority lies outside the Department of Justice, Tax Division, and has been delegated to the Associate Attorney General.

Following the commencement of this suit, in September 2002, six shareholders of

6

FDIC Exhibit _3__

Benj. Franklin (C. Robert Suess, et. al) filed a motion to intervene as party-defendants in
the action.  The six shareholders in this action claim to represent the shareholders of
Benj. Franklin because they represent the shareholders of Benj. Franklin in a
shareholders derivative suit pending in the United States Court of Federal Claims, C.
Robert Suess, et al v. United States (Case No. 90-cv-981).

The six shareholders seek to become party-defendants to this action because they
contend that as shareholders, they will be entitled to any funds which remain in the
receivership account following the payment of all claims, including the federal tax
claim.  The proposed intervenor-defendants have asserted that they are concerned that
the FDIC will not vigorously oppose the United States in defending this case and may
take positions which conflict with those taken by the shareholders.  The six
shareholders have asked the IRS to consider whether Benj. Franklin should be taxed on
Federal Financial Assistance loans which have been repaid with interest and whether
Benj. Franklin should be permitted to recharacterize for tax purposes the acquisition of
another savings and loan association in 1982 by Benj. Franklin both of which, if allowed,
might substantially reduce the amount of the tax liability in this case.  The six
shareholders have also moved to transfer this case to the District Court for the District
of Oregon as a more convenient forum under 28 U.S.C. §1404(a).  The responses by the
United States and FDIC to both motions are currently due by May 5, 2003.  While the
proposed intervenor-defendants are not parties in this suit, the United States has met
with counsel for the shareholders and the FDIC, and is considering the shareholders'

FDIC Exhibit 3

stated positions.

If necessary, the United States intends to oppose the motion to intervene because, among other things, it contends that only a taxpayer has standing to challenge the amount of a tax liability, and the RTC/FDIC, not the intervenor-defendants, is the taxpayer with respect to the subject tax liabilities of Benj. Franklin, in receivership. The United States also intends to oppose the motion to transfer venue to the District of Oregon because it contends that the United States District Court for the District of Columbia is the appropriate forum for this case. The FDIC is still considering its response to both the motion to intervene and the motion to transfer venue.

In the interest of judicial economy and efficiency, a trial court has broad discretion to stay all proceedings in an action. See generally *Landis v. North America Co.*, 299 U.S. 248, 254 (1936). The power to stay a proceeding is incidental to the power inherent in every court to control the disposition of cases on its docket. *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866 (1998). Also see *National Shopmen Pension Fund v. Folger Adam Security, Inc.*, 274 B.R. 1 (D. D.C. 2002). When circumstances warrant, a trial court may find it efficient for its own docket and in the interests of the parties to stay an action. *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979).

In this case, a stay order is justified because the parties have not had sufficient time to fully examine the accuracy of the tax returns and to determine what specific tax issues are actually in dispute in this complicated receivership proceeding. In addition, the parties will require additional time to process any settlement proposals. Judicial

FDIC Exhibit 3

economy and efficiency will be served by the stay of this action. The parties suggest that in connection with a stay order, the Court order the parties to submit status reports every 60-days with the first status report due 60-days from the date of the stay order. The parties further move that the Court's order allow either party or the proposed intervenor-defendants to seek relief from the stay order upon 30 days notice. Moreover, the parties would welcome the scheduling of a status conference should the Court have any additional questions regarding this action.

108(m) Statement

In accordance with LcvR 7.1(m), on April 10, 2003, the attorneys for the FDIC met in Washington, D.C. with the attorney for the six shareholders, Don S. Willner. Mr. Willner has been advised of the ongoing discussions between the FDIC and the United States with respect to the proper amount of the tax liabilities of Benj. Franklin and has stated that he does not oppose and is in agreement with the relief sought by this joint motion for a stay of all proceedings pending the full examination of the income tax liabilities of Benj. Franklin.

Respectfully submitted,

Dated: April _____, 2003

_____
HENRY C. DARMSTADTER
CHARLES M. DUFFY

9

FDIC Exhibit  3

CARL HANKLA
JEREMY N. HENDON
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6481
                  (202) 307-6406
                  (202) 307-6448
                  (202) 353-2466

Dated: April _____, 2003

_____

HUGO A. ZIA
Attorney for Defendant
Federal Deposit Insurance, as receiver
for Benj. Franklin Savings Association
(202) 736-0385

10

**Stewart, Rosemary**

| | |
|---|---|
| **From:** | Stewart, Rosemary |
| **Sent:** | Wednesday, September 28, 2005 12:34 PM |
| **To:** | 'TBuchanan@winston.com' |
| **Subject:** | To Follow-up on Yesterday .... |



Winstar Settlement
and Damage ...

Tom, Thanks very much for inviting me to join the Bank Enforcement group yesterday. I really appreciate it.

Attached is a chart I prepared a couple of months ago listing the Winstar "settlements" and damage awards as of that date. Its now a little out-of-date, of course, but it does identify the older settlements that you and I were recalling yesterday. The only "new" settlement of which I am aware is the $1 million to Barron Bancshares, whose counsel concluded that she wasn't going to be able to prove many, if any, damages at trial.

I also wanted to tell you that Don Willner and I visited a short time with FDIC Counsel Richard Gill this morning. (Don is here for a deposition in his Portland, Oregon case on behalf of former airport workers, which required him to depose a TSA official in the E.D.Va.) Richard told Don last week that we were welcome to come see him but that we could not add the time to our fee petitions. Don agreed, and we went through the list of things that FDIC is supposed to be doing to get things ready for the tax settlement and receivership pay-out. FDIC is still "processing" the attorneys fee claims and our earlier-submitted claim for a return of the Benj. Franklin Lit. Fund + interest. Richard says that he has prepared the final memo to the FDIC board, recommending the increased settlement amount of $50 million, but it won't go to the board for action until DOJ has finally approved the $50 million settlement. Richard also says that he is nearly done revising the Motion for Fairness Hearing that I drafted and he promised to run it by us again before it is finalized. The FDIC fellow in Dallas who will handle mailings to the shareholders has recently gotten the updated computer list of Benj. Franklin shareholders from Don.

With respect to attorneys fees, Richard Gill said that people in the FDIC's receivership claims division have been very negative in their comments back to him about any payment to counsel beyond regularly hourly rates, and, with respect to Don's claim, they have been expressing unhappiness that he has not identified his actual hourly rate or a proxy for that by reference to another Portland, Oregon or Trout Lake, Washington attorney's fees. Don argued briefly for his submitted rate and asked for an opportunity to speak with the real "decision-makers" on the fee claims before they make a final decision. Richard will pass along this request, but I doubt that this will happen. Richard kept repeating that he doesn't make the decisions about receivership claims, but it was clear that he was trying to prepare us for not getting the full amount of the claims as we filed them. The whole meeting was less than an hour.

Rosemary
(202) 898-5888 (Direct)



1

FDIC Exhibit __4__

## EXHIBIT A

## NOTICE TO ALL CURRENT SHAREHOLDERS
## OF BENJ. FRANKLIN FEDERAL SAVINGS & LOAN ASSOCIATION

### Notice of Proposed Settlement and Fairness Hearing

This Notice is being sent to all shareholders of The Benj. Franklin Federal Savings &

Loan Association, Portland, Oregon (hereafter "Benj. Franklin"), pursuant to the Order of Judge

Emmet G. Sullivan of the U.S. District Court for the District of Columbia.  It advises you about a

proposed settlement of a tax collection lawsuit, which, if approved by the Court, will indirectly

result in a cash distribution to all shareholders of Benj. Franklin.

### A Fairness Hearing will be held on _____, 2006,
### to Discuss and Consider the Proposed Tax Settlement

### Background Information

Judge Sullivan is presiding over a tax collection suit pending in the U.S. District Court

for the District of Columbia captioned *United States v. Federal Deposit Insurance Corporation*

*and Federal Deposit Insurance Corporation, in its capacity as receiver for the Benjamin*

*Franklin Federal Savings & Loan Association, et al.*, Civil Action No. 02-1427.  In this suit, the

plaintiff United States represents the Internal Revenue Service ("IRS"), which alleged that the

Benj. Franklin receivership owed more than $1.2 billion of federal income taxes, interest, and

penalties for tax years 1990 to 2002.  The defendant in the suit is the Federal Deposit Insurance

Corporation ("FDIC"), which is the current receiver of Benj. Franklin.

At the present time, the FDIC as receiver of Benj. Franklin reports that the receivership

has a surplus of approximately $93.4 million.  If the IRS were to prevail in its litigation alleging

that the receivership owes about $1.2 billion in taxes, the entire surplus would of course be

depleted.  However, the parties to the pending tax collection suit have tentatively agreed to a

proposed settlement of the tax claim for a payment of $50 million to the IRS, which settlement

would leave a significant surplus in the Benj. Franklin receivership.  After the proposed tax

settlement and other claims and expenses are paid, the remaining surplus funds will be available

for a *pro rata* cash distribution to all Benj. Franklin shareholders who can demonstrate their

ownership of Benj. Franklin common stock. The purpose of this Notice is to describe the

proposed tax settlement terms as well as to outline the other distributions that the FDIC-Receiver

proposes to make from the surplus before distributing the balance to the current Benj. Franklin

shareholders.

      If you disagree with the proposed settlement of the tax claim, you have the right to tell

the Court about your disagreement or your concern.  If you agree with the proposed settlement,

you may also advise the Court of this fact.  A form is attached at the end of this Notice, which

you may use to communicate with the Court and/or to ask for an opportunity to participate

directly at the Fairness Hearing.

**The Fairness Hearing**

      The hearing will be held at 1:00 p.m. (Eastern Time) on _____ , 2006, in the

Courtroom of Federal Judge Emmet G. Sullivan, which is located in the E. Barrett Prettyman

U.S. Courthouse at 333 Constitution Avenue, N.W., Washington, D.C.  20001.  A simultaneous

session will be held at 10:00 a.m. (Pacific Time) at the U.S. District Courthouse in Portland,

Oregon, with a telephone speaker-phone connection to Judge Sullivan's hearing in Washington,

D.C.

      You are welcome to attend either of these hearings.  If you wish to speak at the hearing or

if you wish to have an attorney speak for you, you must fill out the attached form and return it as

soon as possible to the U.S. District Court in Washington, D.C.  A photocopy of the same form

2

also must be sent to the FDIC attorney whose name appears at the end of that form. Only

shareholders who have returned this form at least one week (*i.e.,* seven calendar days) before the

scheduled date for the fairness hearing will be permitted to speak at the hearing although you are

free to attend the hearing (at either location) to observe the proceedings whether or not you have

returned the form.

**The Proposed Settlement**

Under the proposed settlement of the tax collection suit, the FDIC as receiver of Benj.

Franklin would pay $50 million for the taxes allegedly owed by the receivership for calendar

years 1990 through 2002, which will resolve and close each of those disputed tax years.

Seventy-five percent of the first $47 million of the settlement payment will be treated as a

payment of interest on the alleged tax liability and the remaining 25% of that amount will be

treated as payment of federal income taxes for purposes of determining the effect of the payment

on tax years after 2002. The remaining $3 million of the settlement payment will be treated

solely as a payment of interest for purposes of determining the effect of the payment on tax years

after 2002.

The higher interest allocation (which will apply to $38.25 million of the total $50

million) will be particularly useful to the Benj. Franklin receivership if additional funds come

into the receivership over the next few years. This is because the agreed-upon *interest* payment

will generate a tax deduction that can offset that same amount of future income to the

receivership and thus causes it to pay less taxes in those future years. One possible source of

future income to the Benj. Franklin receivership is a $35 million damage award made to Benj.

Franklin in 2002 by the U.S. Court of Federal Claims ("CFC") based on the CFC's finding that

the government breached contracts made with the institution in the 1980s. (This CFC case is

often described as Benj. Franklin's "*Winstar*-related case.") The $35 million damage award has

not yet been finalized by the CFC or appealed to the U.S. Court of Appeals for the Federal

Circuit due to the pending tax dispute between the IRS and the Benj. Franklin receivership.[1]

And, it is estimated that even if the award is finalized this year and subsequently affirmed or

adjusted by the Federal Circuit, such damages are *years away from being paid* and thus the CFC

damages are not directly relevant to the tax settlement or the other proposed distributions that the

FDIC-Receiver will make if the tax settlement is approved by the U.S. District Court (D.C.).

**Why the Parties will Recommend this Settlement for Approval by the Court**

The parties (and the shareholders' counsel who participated in the settlement discussions)

agree that the Benj. Franklin receivership did owe income taxes to the IRS because it has been a

profitable receivership for a number of years, and receiverships are taxed like other corporations

if they are profitable. But the parties have disagreed about the amount of taxes owed due to

disagreements about several complex issues, including whether certain federal financial

assistance ("FFA") provided to the receivership by a special government fund should have been

treated as income or as a loan to the receivership. The effect of this disagreement about the FFA

involves hundreds of millions of dollars of difference in the tax calculations for the Benj.

Franklin receivership.[2] Both sides have legal support for their positions and it is unknown how

---

[1] If the original $1.2 billion tax claim had been found to be correct, the CFC would likely withdraw the $35 million damage award because the Benj. Franklin shareholders would no longer have a claim to the funds in the Benj. Franklin receivership because the entire surplus would be owed to the IRS. Previous caselaw in other *Winstar*-related cases has confirmed that it is inappropriate for such cases to continue where the damages would all be consumed in satisfying receivership debts owed to the government itself.

[2] Other areas of disagreement between the parties (and the shareholders) include how the Alternative Minimum Tax should have been applied, how the 1990 taxes should have been calculated, whether the bad debt reserve was handled correctly, which statute of limitations would apply, and whether interest and penalties would be appropriate. Any one of these legal issues might have formed the basis of a lengthy lawsuit, but in this case, all of these issues are present in the one pending suit.

FDIC Exhibit 5

this and the other contested issues would be resolved if they were tried in the U.S. District Court and then appealed to the appropriate U.S. Court of Appeals. It is clear that such litigation would take several more years to reach a conclusion.

Any lawsuit involves risk, time, and expense. And the settlement of a lawsuit takes all of these things into account in deciding that the possible result of a trial and an appeal is not worth the additional time, expense, and risk, particularly where the outcome would be risky to both sides. Here, the parties have decided that a settlement payment of $50 million to the IRS is both fair and adequate, as well as being a reasonable way to resolve the many complicated legal issues involved here and to avoid the extremely high costs of additional litigation.

The $50 million compromise amount was the result of considerable negotiation and give-and-take by the U.S. Department of Justice's Tax Division, the IRS, the FDIC, and counsel to various Benj. Franklin shareholders. The 75%-interest and 25%-tax allocations also were the product of the parties' negotiations. The bottom-line result is that the amount claimed by the IRS has been reduced from more than $1.2 billion to $50 million in the proposed settlement. If this proposed compromise is not found to be fair and reasonable by the Court, the tax litigation may in all likelihood resume and take several more years before it is resolved, with the ultimate outcome being uncertain.

**The Support of Benj. Franklin Shareholders Counsel**

Don S. Willner is the Portland, Oregon attorney who represents shareholders of Benj. Franklin in the above-described CFC litigation, which is a shareholders' derivative action. Mr. Willner also filed a motion to intervene in the tax litigation pending before Judge Sullivan in the U.S. District Court (D.C.) in order to argue that the Benj. Franklin shareholders were the real parties in interest because the claimed tax would have eliminated any hope of the shareholders'

FDIC Exhibit 5

receiving a cash distribution from the Benj. Franklin receivership estate.[3]  Mr. Willner also filed

a still-pending suit against the FDIC-Receiver in the U.S. District Court in Portland, Oregon,

seeking to enjoin FDIC from making the disputed tax payment to the IRS.  After these actions

were filed by Mr. Willner and recognizing the interest of the Benj. Franklin shareholders, the

FDIC invited Mr. Willner and other attorneys representing Benj. Franklin shareholders to meet

with the FDIC and representatives of the IRS and the Department of Justice Tax Division to

discuss the possible compromise or settlement of the tax dispute.  Mr. Willner and the other

shareholders' counsel and consultants participated actively in these discussions over many

months, and Mr. Willner and other shareholders counsel now support the proposed tax settlement

described herein and will speak in favor of the proposed tax settlement at the Fairness Hearing.

**Other Proposed Distributions from the Receivership**

After the $50 million tax payment is made, the receivership's current balance of $93.4

million will be reduced to $43.4 million.[4]  Additional distributions will then be made by the

FDIC-Receiver from the balance in the receivership, which FDIC presently estimates as follows:

(1)    The creation of a reserve for future years' receivership and administrative

expenses and other legal contingencies that must be maintained by the

FDIC as Receiver for Benj. Franklin until it "closes" its receivership.  It is

estimated that this reserve will be approximately $1 million, but the FDIC

may be able to reduce this amount prior to the FDIC-Receiver's

distribution of the remaining surplus to the Benj. Franklin shareholders.

---

[3] It is unknown whether the Benj. Franklin shareholders would be permitted to intervene in the pending tax suit if it does not settle.  Thus, there is no guarantee that the shareholders' various tax arguments would be made to the Court.

[4] The receivership surplus will continue to earn interest until the surplus funds are distributed.

FDIC Exhibit 5

(2)    A distribution of approximately $3 million to the Benj. Franklin

Shareholders Litigation Fund to reimburse all shareholder contributions to

that fund.  The FDIC has approved this payment pursuant to the statutory

receivership claims procedures administered by the FDIC.  This $3 million

distribution will reimburse 4200 shareholders of Benj. Franklin who made

contributions to the Litigation Fund over the last 15 years for the CFC

litigation and for the tax-related litigation in Portland, Oregon and

Washington, DC (as described above).[5]  The FDIC also is considering the

Litigation Fund's request that interest be paid on the $3 million principal

amount.  If interest is approved, it could amount to as much as an

additional $2 to $3 million to be distributed to the Litigation Fund

contributors.

(3)    The FDIC also has agreed to distribute an amount representing the

reasonable fees and expenses of the shareholders' attorneys and

consultants in connection with such persons' work to reduce the $1.2

billion tax liability alleged by the IRS down to the $50 million settlement

amount.  This will compensate for the time, expense, and expertise that all

shareholders' counsel and consultants brought to the Courtroom and to the

settlement table in order to achieve a fair tax settlement.  While the FDIC

has not yet determined the total amount of legal fees and expenses it will

---

[5]  Don S. Willner, the attorney for the previously described group of derivative shareholders, is the sole
trustee of the Benj. Franklin Shareholders Litigation Fund.

7

FDIC Exhibit 5

approve pursuant to its receivership claims procedures, the amount will likely be between $1 and $2 million.[6]

After distribution of these payments, the resulting balance (estimated to be between $34.4 million and $38.4 million of "surplus" funds) will be distributed by the FDIC-Receiver to the current shareholders of Benj. Franklin who submit proof of their stock ownership in the manner specified by FDIC.[7] If the settlement described herein is approved by the Court, you will be notified by the FDIC-Receiver at a later time about how to prove your ownership of Benj. Franklin shares in order to receive your *pro rata* share of the receivership surplus available for distribution.

## Conclusion

For all of the reasons discussed above, the FDIC as receiver of Benj. Franklin and shareholders' counsel, including Mr. Willner, recommend that the proposed tax settlement be found to be fair, adequate, and reasonable. If you wish to advise the Court about your views on the proposed settlement, please use the attached form to do so.

**IF YOU DO NOT SEND THE ATTACHED FORM, THE COURT WILL ASSUME THAT YOU DO NOT OBJECT TO THE PROPOSED SETTLEMENT DESCRIBED IN THIS NOTICE.**

---

[6] The FDIC's receivership claims process provides an opportunity for judicial appeal if a claimant is not satisfied with a claim determination made by the FDIC.

[7] The amount of the surplus cannot be estimated with precision at this time due to the unresolved claims still pending with the FDIC as described in paragraphs 2 and 3 above. However, the FDIC expects to determine these amounts prior to the distribution of the surplus to shareholders and such other distributions do not affect in any way the proposed tax settlement payment to be addressed at the fairness hearing.

FDIC Exhibit 5

To:     Clerk of the Court
        U.S. District Court for the
            District of Columbia
        United States Courthouse
        333 Constitution Avenue, N.W.
        Washington, DC  20001

                Re:     *United States v. FDIC*
                        Civil Action No. 02-1427 (EGS)


1.      My name is _____
                            (please print)

2.      I own _____ shares of the common stock of Benj. Franklin Federal Savings and
        Loan Association, Portland, Oregon ("Benj. Franklin").

3.      I have read the Notice to All Shareholders of Benj. Franklin explaining the proposed
        settlement of the tax claim in *United States v. Federal Deposit Insurance
        Corporation, et al.*, Civil Action No. 02-1427, as well as explaining the other
        proposed distributions to be made from the receivership surplus of Benj. Franklin.

4.      After reading the Notice (check one box):

                I agree with the proposed tax settlement, or

                I disagree with the proposed tax settlement.

5.      My additional views on this proposed settlement are as follows (attach extra pages if
        necessary):

        _____
        _____
        _____
        _____
        _____
        _____


6.      In addition, I would like to participate at the Fairness Hearing by (check one box):

        ☐       Appearing in person at the Fairness Hearing at the U.S. District Court in
                the District of Columbia to advise the Court of my views

        ☐       Sending my attorney (fill in attorney's name and address):

                _____
                to participate on my behalf at the Fairness Hearing at the U.S. District
                Court in the District of Columbia


                                9

                        FDIC Exhibit  5

☐    Appearing in person at the telephonic hook-up to the hearing to be held at the U.S. District Courthouse in Portland, Oregon, to advise the Court of my views.

☐    Sending my attorney (fill in attorney's name and address):

_____

to participate on my behalf at the telephonic hook-up to the hearing to be held at the U.S. District Courthouse in Portland, Oregon.

☐    I will not appear at the hearing, but I would like the Court to consider my written views noted above in Paragraph No. 5.

7.     I state under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Date:_____

_____
Print Name

_____
Signature

_____
Street Address

_____
City, State, and Zip Code

_____
Telephone No.

Send the original of this form to the Clerk of the Court at the address shown above.  A copy of this completed form also must be sent to the following FDIC counsel, who will provide copies to the plaintiff United States and to designated counsel for the Benj. Franklin shareholders:

        Richard S. Gill
        Federal Deposit Insurance Corporation
        Legal Division
        3501 Fairfax Drive
        Arlington, Virginia  22226-3500

368210v1

FDIC Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 02-1427 |
| ) | |
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, *et al.* ) | FILED |
| ) | |
| Defendants. ) | MAY − 2 2006 |
| ) | |
| | NANCY MAYER WHITTINGTON, CLERK |
| | U.S. DISTRICT COURT |

## ORDER

On May 2, 2006, the Court presided at a fairness hearing to consider a proposed

settlement of the tax claim made against the Federal Deposit Insurance Corporation ("FDIC") as

the receiver for The Benj. Franklin Federal Savings & Loan Association, Portland, Oregon,

("Benj. Franklin"). Because the amount of any tax settlement payment will directly affect the

amount of money remaining in the Benj. Franklin receivership to be distributed to approximately

6,500 shareholders of Benj. Franklin, the Court previously approved a Notice to Shareholders

and directed that it be sent by the FDIC to all known shareholders to advise them of the hearing

about the fairness of the proposed tax settlement and to invite such shareholders to advise the

Court of their views on the proposed settlement. *See* Order dated March 20, 2006.

Both parties to this action, the United States represented by the U.S. Department of

Justice Tax Division and the FDIC, have agreed to a proposed settlement that would require the

FDIC-Receiver to pay $50 million for the federal income taxes allegedly due for calendar years

1990 through 2002, which will resolve and close each of those disputed tax years. The

remaining terms of the settlement are set out in the attached letter agreement between the

FDIC Exhibit  6

Department of Justice and the FDIC, which is made a part of this Order. That agreement was conditioned on the approval of this Court after the conduct of a fairness hearing.

At the May 2, 2006 fairness hearing, the Court heard from counsel for the plaintiff United States and for the defendant FDIC and also heard statements by several Benj. Franklin shareholders and by counsel for other Benj. Franklin shareholders, all of whom, except one, spoke in favor of the proposed settlement. Prior to the hearing, the Court also received the votes of approximately 446 shareholders, representing the ownership of approximately 3,000,000 shares of Benj. Franklin stock. Most of the shareholders who sent written views to the Court, expressed agreement with the proposed settlement. Of the total number of shares owned by these responding shareholders, 99.3% of the shares agreed with the settlement and .7% of the shares disagreed with the proposed settlement. Most of the shareholders who voted and disagreed do not believe that any taxes should be paid by the Benj. Franklin receivership because of the way in which the institution was seized back in 1990. In the Notice previously approved by this Court and sent to Benj. Franklin shareholders, they were advised that if they did not send the response form back to the Court, it would assume that such nonresponding shareholders did not object to the proposed settlement described in the Notice. Accordingly, 7,682,958 of the 7,705,000 million shares of common stock of Benj. Franklin voted in favor of the settlement.

Based on all of the views expressed at the hearing and set out in the forms submitted by Benj. Franklin shareholders, the Court finds that the settlement reached between the United States and the FDIC, with various counsel for Benj. Franklin shareholders also participating actively in the settlement discussions, was the product of arms-length negotiations. The Court further finds that the settlement is a fair, adequate, and reasonable way to resolve the tax controversy between the parties, particularly considering the early stage of the litigation

2

proceeding and the opinions expressed by the experienced counsel to the parties and to the

shareholders.  Moreover, the issues related to the bank's seizure in 1990 are not before this Court

and thus would not have been resolved in this forum, even if this tax case had been litigated to

conclusion.

   Accordingly, the terms of settlement set out in the attached letter agreement between the

Department of Justice and the FDIC are approved by this Court, and the parties are directed to

carry out the settlement in the manner set out in that agreement.

Dated: May 2 2006

Emmet G. Sullivan
United States District Judge

3



**Federal Deposit Insurance Corporation**

1910 Pacific Ave. Dallas TX, 75201                              Division of Resolutions and Receiverships

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

May 17, 2006

Rosemary Stewart, Esq.
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005

SUBJECT:    7166–The Benj. Franklin Federal S&LA
            Portland, OR – In Receivership
            <u>NOTICE OF PARTIAL DISALLOWANCE OF CLAIM FOR REASONABLE
            ATTORNEY'S FEES</u>

Dear Ms. Stewart:

The Receiver of The Benj. Franklin Federal S&LA has reviewed your claim against the receivership
insofar as it requests reasonable attorney's fees in connection with the recent tax settlement.   After a
thorough review of your claim for reasonable attorney's fees, along with your supporting documentation,
the Receiver has determined to allow your claim in part.

The Receiver will allow Spriggs & Hollingsworth to be reimbursed for 459.9 hours at the firm's standard
hourly billing rates, less any reimbursements from the Litigation Trust Fund, plus expenses of $1,739.74.
Accordingly, the Receiver will allow the claim for recovery of attorney's fees and expenses in the amount
of $131,968.24.

The Receiver has disallowed 40.8 hours of attorney's time that relates to the preparation of various
attorneys' fee petitions and includes attorney time devoted to another case.  In addition, the Receiver has
determined that an enhancement that would result in double your standard billing rates is not appropriate
in this case because this would not constitute reasonable attorney's fees.  Accordingly, these portions of
your claim are denied.

Pursuant to 12 U.S.C. Section 1821 (d) (6), if you do not agree with this disallowance, you have the right
to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the
Receiver), in the United States District (or Territorial) Court for the District within which the failed
institution's principal place of business was located or the United States District Court for the District of
Columbia within 60 days from the date of this notice.

**IF YOU DO NOT FILE A LAWSUIT** (or continue any lawsuit commenced before the appointment of the
Receiver) **BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL,
YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR
REMEDIES WITH RESPECT TO YOUR CLAIM.  12 U.S.C. Section 1821(d)(6)(B).**

If you have any questions about this letter, please contact the undersigned at (972) 761-2666.

RLS7218                            FDIC Exhibit  7

Sincerely,


Glenn Glinsmann
Claims Department

FDIC Exhibit 7

c Robert Joss
260-E 38th    (Oregon Office)
Eugene, OR 97405
541- 342- 3060

FDIC
3501-North Fairfax Dr.
Arlington, Virginia 22226
Attention Richard Gill Esg.

Dear Richard.                   Re: Attorney Depositions

Possibly the enclosed will assist in defeating
Don Willners Claim. The FDIC May 19, 2006 letter
left no doubt as to reasonable fees and charges,
Mr Willner now ignores the sound advice

Winston and Strawns volume of research,
presentation and negotiations to end the
tax issue were most valuable. Mr Willners
uneducated Tax knowledge provided little or no
benefit.

Winston and Strawn prior to Settlement
received 25% of their established rates.
Willner receiving $125, per hour, particularly for
most work in Trout Lake, where comparable
rates for legal fees are just slightly higher,
and include secretarial work as well as office
expense. FDIC allowance was most generous
@ $250. based on Portland rates.

Sincerely

FDIC Exhibit  8

**C. Robert Suess**

260 East 38th Street
Eugene, Oregon 97405
◆
Phone: (541) 342-3060
Fax: (541) 683-1164

January 4, 2007

Richard Gill, Esq.
FDIC
3501 North Fairfax Drive
Arlington, Virginia 22226

RE:    Benj. Funding Reimbursement

Dear Richard:

Judge Sullivan ordered prompt payment to all parties upon Settlement Approval May 3, 2006. Having accepted full responsibility for seeking justice in the Benj. situation over 16 years ago it appears as though my full reimbursement remains unresolved.

FDIC's payment to Winston & Strawn discounted the financial amount I personally had paid to W/S over a 5 year period to resolve the Tax Issue. Paid outside of Litigation Fund, I received no refund.

My personal funding to Litigation Fund in 5 situations was not recorded properly, as well as agreed out of pocket expenses. Don Willner as Trustee states FDIC should reimburse. Enclose Willner Dec. 19, 2006 Item b.

FDIC requested and W/S complied with positive documentation of the foregoing well over four months ago. Is there a reason for extended delay?

It is possible FDIC lacks authority to expedite. If so should this issue be referred to Judge Sullivan along with Motion for Summary Judgments?

In closing, allow me to reemphasize, I personally, as well as Benj. owners representing over four million shares oppose Mr. Willner's request for additional hourly fees. We all feel FDIC was very generous in paying him $250.00 per hour.

Yours truly,

C. Robert Suess

Cc:   Tom Buchanan

FDIC Exhibit  9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------x
WINSTON & STRAWN, LLP, et al., :
                                :
              Plaintiffs,       :
                                :
              v.                : No. 06-01120 (EGS)
                                :     06-01227 (EGS)
FEDERAL DEPOSIT INSURANCE        :     06-01273 (EGS)
CORPORATION,                     :
                                :
              Defendant.        :
-------------------------------x


                              Washington, D.C.

                    Wednesday, January 17, 2007

Deposition of

            THOMAS M. BUCHANAN

a witness, called for examination by counsel for

Defendant, pursuant to notice and agreement of

counsel, beginning at approximately 5:00 p.m., at

the law offices of Winston & Strawn, 1700 K Street,

NW., Washington, D.C., before Mary Ann Payonk of

Beta Court Reporting, notary public in and for the

District of Columbia, when were present on behalf

of the respective parties: