# Willner Firm's Response to
# FDIC's Statement of Material Facts

1. "The IRS prepared 11 tax scenarios for use in the settlement discussions in the Tax Case that resulted in a cumulative tax liability, without interest and penalties, ranging from approximately $11 million to $97 million."

    Willner firm response: Admits.

2. "The IRS ultimately agreed to settle the Tax Case on terms nearly matching the results of its Scenario #10, which included a tax liability of approximately $12 million and interest of approximately $38 million, if run to the date of settlement."

    Willner firm response: Denies, but admits scenario which described a tax payment of $47 million. The ultimate tax settlement had a tax payment of $12.5 million and an interest payment of $37.5 million.

3. "The FDIC-Receiver, without assistance from counsel for the shareholders, convinced the IRS's Tax Division to permit the receivership to reopen the tax returns and receive full credit for the post-insolvency interest payments."

    Willner firm response: Denies because the shareholders attorneys sent a letter supporting reopening the tax returns on April 14, 2004 letter, Exhibit 11 to this Memorandum). Furthermore the need for reopening the tax returns was because of RTC's negligence or breach of fiduciary duty in failing to file for the $258 million deduction when it was due. The RTC was the predecessor in interest to FDIC – Receiver and FDIC – Receiver succeeded to the liabilities of RTC.

4. "On September 29, 2005, Don Willner and Rosemary Stewart, an attorney for Spriggs & Hollingsworth met with Richard Gill, an attorney for the FDIC-Receiver, and discussed, among other things, the issue of attorney's fees. Mr. Gill advised Mr. Willner and Ms. Stewart that the FDIC's receivership claims division had been very negative regarding paying fees beyond regular hourly rates. The same day, Ms. Stewart sent an email to Tom Buchanan, counsel for Winston and Strawn, that recounted the meeting and specifically said that 'it was clear that [Richard] is trying to prepare us for not getting the full amount as we filed them.'"

    Willner firm response: Admits the statements were made but does not admit they are admissible. Fed.R.Ev. 408, Furthermore, it has no evidentiary value since Richard Gill, not the receivership claims division, made the effective decision about the fees the FDIC agreed to pay. The FDIC determination is not a material fact in any event because this is a *de novo* determination by this Court. And finally Don Willner, on behalf of the shareholders, and FDIC had previously agreed that the reasonable fee determination would first go to this Court, not FDIC. This agreement was breached by FDIC.

5. "The Notice to Shareholders in *United States v. FDIC,* No. 02-1427 (D.D.C) provided that after payment of $50 million to the IRS, the remaining receivership surplus funds of about $42 million would be distribution *pro rata* to all Benj. Franklin shareholders who could demonstrate their ownership of Benj. Franklin common stock, after other claims and expenses are paid."

    Willner firm response: Admits, except the amount of receivership surplus funds is approximately $44 million, not $42 million.

6. "The Notice to Shareholders also provided for the creation of a reserve for future years' receivership and administrative expenses and other legal contingencies. At the time the FDIC-Receiver estimated that this reserve would be about $1 million."

   Willner firm response: Admits.

7. "The Notice to Shareholders also provided for the distribution of approximately $3 million to the Benj. Franklin Shareholders Litigation Fund to reimburse."

   Willner firm response: Admits.

8. "The Notice to Shareholders also stated that the FDIC-Receiver agreed to distribute an amount representing the reasonable fees and expenses of the shareholders' attorneys and consultants in connection with such persons' work to reduce the $1.2 billion tax liability alleged by the IRS down to the $50 million settlement amount. The FDIC-Receiver estimated that the amount of reasonable fees and expenses would be between $1 million and $2 million."

   Willner firm response: Denies but admits that FDIC estimated that it expected to approve $1 million to $2 million. Furthermore the expected estimated award was unilaterally made by FDIC without consultation with shareholder attorneys and is not a material fact and is irrelevant. See response to paragraph 5.

9. "The Notice to Shareholders elicited a response from about 446 of Benj. Franklin's estimated 6500 shareholders. The respondents represented about 3,000,000 shares of Benj. Franklin stock, 99.3% of which agreed with the proposed settlement."

   Willner firm response: Admits.

3

10. "Rosemary Stewart testified that she believed that the FDIC-Receiver's payment of about $89,000 to Ernest Fleischer was reasonable compensation for his contribution to the settlement process."

    Willner firm response: Admits.

11. "C. Robert Suess, a major shareholder and organizer of the Goodwill Litigation, has stated that the FDIC-Receiver was generous to Willner & Associates by paying that firm $250 per hour and urged the FDIC-Receiver not to pay Willner & Associates any more."

    Willner firm response: Admits contents of the statement but these letters are unsworn statements based on hearsay and lack of personal knowledge and therefore do not meet the test of admissibility set forth in FRCP 56(e). To the extent the Suess statement recounts statements to him by third parties, the statement is inadmissible hearsay. Fed.R.Ev. 801, 803.

12. "During a telephone conversation in October 2006, Robert Suess told FDIC attorney Richard Gill that he know the FDIC-Receiver was trying to do the right thing by trying to keep control of the legal fees in this case."

    Willner firm response: Willner firm has no knowledge about the truth of this paragraph or the context of the statement and therefore denies paragraph 12. The comments are, in any event, hearsay and inadmissible. Fed.R.Ev. 801-803; Fed.R.Civ.P. 56(e).

13. "The FDIC-Receiver currently is reviewing an additional claim submitted by Winston & Strawn on behalf of Robert Suess for $217,000 that was not included in earlier submissions."

5

Willner firm response: Willner firm has no knowledge of the truth of this paragraph and FDIC has denied Willner firm access to the claim to verify the information, and therefore denies paragraph 13. (Ex. 6 to this Memorandum.)

The facts supporting the denials or qualified admissions are set forth in the Memoranda of Willner firm.