```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF OREGON

 3   C. ROBERT SUESS, et al.,   )
                                )
 4             Plaintiffs,      ) No. 02-00807-HA
                                )
 5        vs.                   ) July 2, 2002
                                )
 6   THE FEDERAL DEPOSIT        ) Portland, Oregon
     INSURANCE CORPORATION,     )
 7   a quasi-government         )
     corporation,               )
 8                              )
               Defendant.       )
 9   ----------------------------

10
                  TRANSCRIPT OF PROCEEDINGS
11
            BEFORE THE HONORABLE ANCER L. HAGGERTY
12
                UNITED STATES DISTRICT COURT JUDGE
13

14
                           APPEARANCES
15
     FOR THE PLAINTIFFS:   Don S. Willner
16                         Willner, Wren, Hill & U'Ren, LLP
                           111 S. W. Naito Parkway
17                         Suite 303
                           Portland, OR  97204-3500
18
     FOR THE DEFENDANT:    Hugo Zia
19                         Catherine Topping
                           Robert G. Clark
20                         Federal Deposit Insurance Corp.
                           550 17th Street, NW
21                         Washington, DC  20429-0002

22   COURT REPORTER:       Nancy M. Walker, RMR, CRR
                           4641 S. W. View Point Terrace
23                         Portland, OR  97201
                           (503) 703-1515
24
              Proceedings recorded stenographically,
25                 computer-aided transcription
```

1    MR. WILLNER: Well, our concern is to have
2 anything -- to have, in effect, a restraining order or
3 a preliminary injunction. If the restraining order is
4 lifted or if a preliminary injunction does not follow,
5 we have been told that there is a likelihood they're
6 going to pay the money over to the IRS. So,
7 therefore, we believe this is the only court that can
8 maintain the status quo while the matter gets up to
9 the Federal Circuit.
10    THE COURT: Okay. If I can interrupt you, in
11 the FDIC's briefing, they indicate that they wouldn't
12 transfer the money without at least two days' notice
13 to the plaintiffs. What's the purpose of that two-day
14 lag?
15    MR. ZIA: Well, Your Honor, as a stakeholder
16 in this case, which is how we perceive ourselves
17 being, since we have no interest ourselves in that
18 $87 million which is sitting in receivership, we're
19 honestly trying to seek a solution which doesn't
20 affect the interests of either -- adversely affect
21 either the shareholder plaintiffs or the IRS,
22 understanding that we're going to be sued -- well,
23 we're being sued presently by them. If we pay the
24 IRS, they can sue us for breach of duty. If we don't
25 pay the IRS, the IRS is going to sue us, understanding

1    as well that we face a statute of limitations
2    deadline, which was not in the briefs, of July 20th,
3    2002, which is looming in front of us, where the IRS
4    has to bring a lawsuit on the 10-year statute on the
5    assessment that occurred back in 1992 in order to
6    preserve their right to the taxes that are owed.
7            But the purpose of that was that we think
8    that the proper -- one possible solution here is
9    interpleader, but since we don't have authority to, at
10   this point, to request interpleader, we thought we do
11   have authority, as represented, to at least provide
12   two days' notice.
13           MR. WILLNER: May I comment, Your Honor?
14           THE COURT: All right, Mr. Willner.
15           MR. WILLNER: Two days' notice doesn't help
16   us very much. I know to get this case together, I
17   worked day and night from the moment Mr. Taylor wrote
18   me.
19           I believe we have a strong case for an
20   injunction here. The Court has presumably read my
21   papers and particularly read Mr. Duhl's deposition.
22           THE COURT: I read that this morning, and I
23   have a question from reading his deposition. His
24   premise is there shouldn't be a tax if the Resolution
25   Trust Corporation, slash, FDIC recouped all of the

1  money it advanced to Ben Franklin.  Now, from the
2  papers, it's my understanding that was in the
3  neighborhood of $1.3 billion.  Now, did Ben Franklin
4  or the FDIC recoup the full $1.3 billion that was
5  advanced?
6        MR. WILLNER:  Yes, Your Honor.  The figure
7  was $1.7 billion, and after the RTC receiver obtained
8  that money and paid it to the Bank of America, they
9  received back the assets, and they resold the assets
10 for a profit and paid the loan in full, plus
11 $259 million of interest.  And it is Mr. Duhl's
12 belief -- and I think he's the nationally known expert
13 in this field -- that once there was assurance that no
14 federal money would be used to pay the depositors,
15 that the FFA tax should not apply; and also that was,
16 as Mr. Buchanan's affidavit points out, that was the
17 opinion of all the FDIC's attorneys, and in the
18 stipulation before Judge Smith, they didn't think that
19 the FFA tax was proper.
20       Responding more directly to the Court's
21 question about a 48-hour hold, I have -- in 51 years
22 of law practice, I'm always happy to sit down and
23 resolve matters with opponents.  The day I graduated
24 from law school, I thought every case had to be
25 litigated.