UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACKWELL SANDERS PEPER MARTIN, LLP, a Missouri limited liability partnership, and ERNEST M. FLEISCHER, et al., </br></br>　　　　Plaintiffs, </br></br>v. </br></br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the Benj. Franklin Federal Savings and Loan Association, </br></br>　　　　Defendant. | Civil Case No. 06-01120 (EGS) </br></br>[Consolidated with Nos. 06-1227 (EGS) and 06-01273(EGS)] |

## BLACKWELL PLAINTIFFS' REPLY
## IN SUPPORT OF
## THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

The Federal Deposit Insurance Corporation ("FDIC") filed its Opposition to Plaintiffs' Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment as one document. The FDIC submitted a separate Statement of Material Facts, consisting of thirteen paragraphs. The Blackwell plaintiffs have responded to the thirteen paragraphs in an attachment to this brief which is incorporated herein by reference.

### INTRODUCTION

The FDIC Brief does not directly challenge the central issue of the Blackwell plaintiffs' Motion. The Blackwell plaintiffs argue that they are entitled to a reasonable percentage fee from the assets of the Benj Receivership because such assets constitute a common fund that the Blackwell plaintiffs, together with others, preserved for the Benj shareholders. The FDIC (a) does not specifically deny any of the statements in the Blackwell plaintiffs' Statement of

Uncontroverted Facts, (b) states that the "Issue Presented" is the amount of the fee (not the right to a fee), (c) admits that it has already paid a portion of the fee claimed by the Blackwell plaintiffs, and (d) presents facts directed more toward the amount of the fee rather than the right to a fee.

By implication, however, the FDIC denies that this is a case to which the common fund doctrine applies. The FDIC says that the plaintiff law firms cannot show that they were responsible for preserving the Fund, and thus, presumably cannot show that they are entitled to a percentage fee from the Fund. The FDIC argues that it alone preserved the Fund, that it invited the plaintiff law firms to assist it, and that the only role of the plaintiff law firms was to provide counsel to the FDIC while the FDIC conducted negotiations with the Internal Revenue Service. According to the FDIC, because the plaintiff law firms acted only at the invitation of the FDIC and were merely advisors to the FDIC, they are entitled only to their normal hourly rates. In other words, the argument is that the relationship with the FDIC controls the fees, and the plaintiff law firms must be paid their normal hourly rates rather than a percentage of the fund.

These arguments, however, are not supported by the facts present in the FDIC's brief. Instead of denying the facts asserted as uncontroverted by the plaintiff law firms, and instead of citing contradictory facts, the FDIC cites other facts from which it seeks to persuade the Court that the role of plaintiff law firms was minimal. Because the FDIC has not controverted the Blackwell plaintiffs' facts, no genuine issue remains for trial. Because the FDIC's arguments are not supported by evidence from the factual record, the Blackwell plaintiffs are entitled to summary judgment.

## STANDARD OF REVIEW

Rule 56(e), F.R.Civ.P., provides in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest on the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate shall be entered against the adverse party.

To comply with the local rules for the United States District Court for the District of Columbia, the FDIC must also accompany its opposition to Blackwell's Motion with a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include reference to the parts of the record relied on to support the statement." Local Rule LCvR 7.1(h). The Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion. Banner Fund, 211 F.3d at 616. The district court is under no obligation to sift through the record" and should "instead…deem as admitted the [Plaintiff's] facts that are uncontroverted by Rule [LCvR 7.1(h)] statement." Id. citing Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 154 (D.C. Cir. 1996).

## ISSUE PRESENTED

The FDIC has identified the issue presented as whether it is "reasonable under the circumstances of this case to require the FDIC-Receiver to pay [additional amounts] to the Plaintiff Law Firms for their participation in the settlement discussions." Although this statement of the issue may be interpreted to oppose the Blackwell plaintiffs' contention that the common fund doctrine applies, and that they are entitled to a reasonable percentage fee from the preserved assets, the FDIC has submitted a Statement of Material Facts which does not

contradict or oppose the facts submitted by Blackwell plaintiffs in support of their Motion. Similarly, the FDIC's arguments may contradict and oppose the Blackwell plaintiffs' motion, but the FDIC's facts do not support its arguments.

## ARGUMENT

### I.   The Role of the Plaintiff Law Firms

The FDIC claims that because the only parties in the Tax Case were the IRS and the FDIC, and because the plaintiff law firms did not represent either party, the plaintiff law firms have no standing to seek additional fees. FDIC brief, p. 5. Based on hearsay evidence[1], the FDIC claims that it "invited" the plaintiff law firms to participate in the settlement discussions. Id. Yet the FDIC has not challenged the factual record presented by the Blackwell plaintiffs and the other law firms that the FDIC began negotiations with the IRS only after it was restrained by a court order obtained by Mr. Willner, and even then, except for the $258 million interest deduction issue, it took a neutral position in the negotiations and left it to the plaintiff law firms to negotiate the settlement. Second Fleischer Dec. ¶2. Far from voluntarily seeking assistance in negotiating with the IRS, the FDIC had to be strong-armed into permitting the plaintiff law firms to participate, and it had to be threatened with court orders to prevent it from capitulating to the IRS.

In any event, the FDIC says only that the plaintiff law firms were "invited" to participate, not that they were retained by or had any formal agreement with the FDIC. The relationship between the plaintiff law firms and the FDIC does not depend upon and does not control the application of the common fund doctrine to this case. "Recovery under the common fund doctrine stems from the equitable power of a court to create the obligation for attorney fees

---

[1]   The Richard Gill's Declaration, FDIC Exhibit 14, says the plaintiff law firms were invited to participate (paragraph 2). He states that negotiations began in 2002, but in his deposition, he said he did not become involved in the Tax Case until 2004. Gill depo., pp. 53,61,62.

against benefits some received as a result of the advocacy of another" Democratic Central Committee v. Washington Metropolitan Area Transit Comm'n, 38 F.3d 603, 605, 309 U.S.App.D.C. 28 (1994), citing Knight v. United States, 982 F.2d 1573, 1580-81 (Fed.Cir. 1993). It is not controlled by the parties to the litigation or the arrangements between them. Thus the unsubstantiated claim of the FDIC concerning the invitation to or retention of the plaintiff law firms is irrelevant to the application of the common fund doctrine. The issue is whether the plaintiff law firms were responsible for the reduction in taxes, which is argued in the next section of this brief.

> II. **The Blackwell Plaintiffs Have Shown That, Together With the Other Firms, They Were Responsible for a Reduction In Taxes.**

The Blackwell plaintiffs set forth in their Statement of Uncontroverted Facts the role which Mr. Fleischer played in identifying issues, deciding on strategy and negotiating a 96% reduction in the IRS claim. The FDIC has not controverted those factual assertions, and under the standards of review cited above, the facts stand as admitted.

The only facts cited by the FDIC are that the plaintiff law firms cannot show a "specific contribution" to the reduced taxes. FDIC Brief, p. 6. The only facts cited in support of this contention as to Ernest Fleischer are twofold. First, the FDIC cites the opinion of another lawyer involved in the case, Rosemary Stewart, that she does not believe Mr. Fleischer should receive additional fees. FDIC Brief, pp. 15-16. She was opining as to the amount of his fee, not whether he made a contribution or whether he should receive a fee.

Second, the FDIC cites testimony of Mr. Fleischer in response to a question as to "how" his contributions to the settlement process had resulted in a reduction in taxes. FDIC Brief, p. 16. He had described the nature of his contribution in the preceding questions in his deposition,

Fleischer Dep. FDIC Ex. 12, pp. 7-13, and his inability to identify the specific arguments which persuaded the IRS to settle is not important or relevant.

### III. The FDIC's Role in Obtaining A $258 Million Tax Deduction Does Not Defeat Summary Judgment.

The FDIC cites its role in obtaining a $258 million tax deduction from the IRS. FDIC Brief, p. 17. First, even if it did, such action is irrelevant to whether the actions of plaintiff law firms also preserved the Fund through a negotiated settlement of the $1.2 billion IRS claim for taxes, penalties and interest. Second, the deduction would never have been an issue if the receiver had claimed the deduction when the tax returns were filed. Second Fleischer Dec. ¶2. Third, the FDIC contention that the Plaintiff Law Firms were not involved in obtaining this deduction is incorrect. The firms were heavily involved and contributed substantially in achieving the result. Second Fleischer Dec. ¶2.

If the FDIC claims its actions preserved the Fund instead of the actions of the plaintiff law firms, then the FDIC is controverting a material fact which would defeat summary judgment for the Blackwell plaintiffs. But the FDIC does not explain how or why its obtaining of the deduction was causative and defeats plaintiffs' claims. Thus neither the facts which it cites nor its argument are sufficient to defeat summary judgment for the Blackwell plaintiffs.

### IV. The FDIC's Evidence of The IRS "Scenarios" Is Insufficient To Controvert The Role Played By The Plaintiff Law Firms.

The FDIC apparently wants the Court to infer from the preparation of the IRS scenarios that the work of the plaintiff law firms was of no importance because the IRS merely agreed to settle for what it was always willing to settle for. If so, the $1.2 billion claim was a sham, and the IRS knew that $50 million was the correct amount.

If this is what the FDIC contends, the facts are otherwise. Consider these uncontroverted facts:

1. The IRS and the RTC/FDIC had an interagency agreement wherein the RTC/FDIC agreed that the agency "will not challenge, in any forum, the amount finally determined by the IRS." p. 4

2. Bruce Taylor, counsel for the FDIC, wrote a letter to Don Willner containing the following statements:

> In accordance with the agreements, the FDIC met with the IRS in an attempt to reduce the tax liability asserted against the Ben [sic] Franklin receivership. . . . As you know, this attempt was unsuccessful. Further, as you know, repeated other efforts by the FDIC to get the IRS to reduce the asserted tax liability also have been unsuccessful. It appears unlikely that further efforts will be successful in lowering the IRS assessment of taxes, penalties, and interest below the projected assets of the receivership estate. In fact, the IRS has not given any indication that it will lower its assessments at all.
>
> * * *
>
> We can tell you, however, that a decision may be made soon on how to handle the IRS's claim, in light of the IRS's latest indication that it does not intend to abate any portion of the tax liability of the Ben [sic] Franklin receivership. Further, we will let you know if a payment is made to the IRS, so you can advise your clients accordingly.

June 6, 2002, letter from Bruce Taylor, FDIC, to Don Willner, attached as Exhibit 5 to Blackwell's Motion for Partial Summary Judgment (Doc #14).

3. The FDIC told Don Willner that it considered itself "neutral" on the tax issues, and it took such a position throughout the negotiations in which the plaintiff law firms were involved. Willner Brief, p. 7. Except for that $258 million interest deduction the FDIC did not advocate any position favorable to the receivership. Second Fleischer Dec. ¶ 2.

4. Negotiations with the IRS began in the fall of 2002 and extended to the following year. The scenarios were prepared by the IRS in response to the insistence by the plaintiff law firms that the IRS was owed less than $1 million. Second Fleischer Dec. ¶ 2, 4. The IRS

prepared and presented its scenarios over a year after negotiations began. Gill Dec. ¶ 3; Second Fleischer Dec. ¶ 5.

5. The fact that the compromise settlement was close to one of the scenarios prepared by the IRS is irrelevant. The settlement was a number resulting from negotiation, and was not based on any scenario. Second Fleischer Dec. ¶ 6.

Once again, if the IRS scenarios somehow prove that plaintiff law firms had no impact on preserving the Fund, we have a dispute of a material fact and summary judgment cannot be granted. On the other hand, we submit that these facts have not been sufficiently explained to disprove any of the contentions of plaintiff law firms, and they should therefore be disregarded.

### V. The Consent Of Shareholders In Not Required.

The FDIC says the shareholders have either not spoken or are opposed to payment of additional fees. If true, their position is irrelevant. The shareholders may have a voice in the amount of the fees paid, but they do not have any voice in whether a reasonable fee must be paid from the common fund. That is decided by the Court, not the shareholders.

### VI. The Efforts Of The Plaintiff Law Firms Did Not Result In a Loss Of $50 Million.

In view of the FDIC acknowledgement that the IRS claim exceeded $1 billion and would have exhausted all of the assets in the receivership if paid, this argument is ludicrous.

### VII. Receivership Principles Do Not Prevent Additional Fees.

The Blackwell plaintiffs have no problem with the proposition that courts should be cautious in awarding fees. These plaintiffs contend, however, that a reasonable fee is substantially more than the FDIC has granted for the reasons stated in their motion. The FDIC's claim that no other fees are due because it voluntarily invited the Plaintiff Law Firms to participate is incorrect, as argued in an earlier portion of this brief.

Dated March 15, 2007                     Respectfully submitted,


                                         /s/ William F. Demarest
                                         William F. Demarest, Jr. (D.C. Bar No. 266312)
                                         Blackwell Sanders Peper Martin LLP
                                         750 17th Street NW, Suite 1000
                                         Washington, D.C. 20006-3901
                                         (202) 378-2300

                                         and

                                         James Borthwick    MO #19722
                                         Nancy S. Jochens    MO #49022
                                         Blackwell Sanders Peper Martin LLP
                                         4801 Main Street, Suite 1000
                                         Kansas City, Missouri  64112
                                         (816) 983-8000
                                         (816) 983-8080 (Facsimile)

                                         *Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

   I hereby certify that on the 15 day of March, 2007, I electronically filed the above and foregoing document with the clerk of the court, by using the CM/ECF system which will send a notice of electronic filing to all parties.



                                         /s/ William F. Demarest