# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BLACKWELL SANDERS PEPER  )
MARTIN, LLP, a Missouri limited  )
liability partnership, and ERNEST M.  )
FLEISCHER, et al.,  )
　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,  )
　　　　　　　　　　　　　　　)　　Civil Case No. 06-01120 (EGS)
v.  )
　　　　　　　　　　　　　　　)　　[Consolidated with Nos. 06-1227
FEDERAL DEPOSIT INSURANCE  )　　(EGS) and 06-01273(EGS)]
CORPORATION, as Receiver for the  )
Benj. Franklin Federal Savings and  )
Loan Association,  )
　　　　　　　　　　　　　　　)
　　　　　　Defendant.  )

## <u>SECOND DECLARATION OF ERNEST FLEISCHER</u>

I, Ernest Fleischer, have personal knowledge of the facts set out below because I was a participant in the discussions and negotiations at the times indicated. I therefore make the following declaration:

1.　　　The plaintiff attorneys, for the benefit of the shareholders, began negotiations with the Department of Justice ("DOJ"), which represented the Internal Revenue Service ("IRS"), in the fall of 2002. I prepared the initial explanation of the issues, the applicable law to be discussed and the statements of position and participated in the preparation of the subsequent discussion of all such matters.

2.　　　The Government had filed a Complaint seeking $1.2 billion on the basis of tax returns filed by the FDIC or its predecessor, the RTC, (a) that were factually in error (such as that the receivership was insolvent), (b) that were prepared contrary to the requirements of the Internal Revenue Code (such as failing to use the accrual method of accounting), and (c) that failed to take those tax positions which were in accordance with litigated cases that would have

reduced significantly any tax owing (such as reporting the prior acquisition of a stock association as a taxable acquisition as mandated by a decision of The Supreme Court of the United States instead of as a tax-deferred merger as had been initially reported by the thrift prior to that decision). If those tax returns had been prepared in the way in which such returns of a taxpayer represented by competent tax counsel would have advised, far less that $1,000,000 in tax would have been paid and no amount of interest or penalties would have been at issue. Had the returns been so filed it is highly unlikely, based upon my more than 40 years of experience as a practicing tax lawyer, that the IRS would have proposed assessments of any additional taxes. Accordingly, initially the plaintiff law firms and the DOJ sought to determine the correct facts and the application of the law to such facts, with the plaintiff law firms advocating positions favorable to the taxpayer and the DOJ advocating positions favorable to the IRS. One issue—the accrual of $258 million of interest that the IRS had challenged based primarily on the erroneous representation by the RTC that the receivership was insolvent—would never have arisen but for that factual RTC misrepresentation. Only with respect to that issue did the FDIC seek to advocate any position favorable to the taxpayer.

3.      The FDIC's predecessor, the RTC, had entered into an interagency agreement with the IRS not to litigate any tax dispute. At no point did the FDIC state that it would dishonor that agreement and vigorously defend against the Government Complaint. Fearing a lack of standing to litigate the issues, the plaintiff attorneys procedurally were at a significant disadvantage because DOJ, and its client the IRS, knew of the procedural detriment that the plaintiff attorneys faced.

4.      Several months after the plaintiff attorneys had pointed out the erroneous treatment of the $258 million interest deduction, in March 2004 the FDIC sent a letter to the IRS

setting out its position concerning the right to deduct that amount on the accrual basis of accounting. The plaintiff attorneys thereafter drafted a letter in support of the FDIC's position and attached additional reasons that the deduction should be allowed. A copy of the letter is attached. I contributed to the preparation of several drafts of the letter and approved the final version before it was sent.

5.     The scenarios which the FDIC mentions in its Statement of Material Facts were not prepared by the IRS as a starting point for negotiations. Instead, they were prepared by the IRS in response to the legal positions advocated by the plaintiff attorneys that the IRS misunderstood the facts, and therefore its legal conclusions were incorrect. I contributed to drafting a letter to the IRS in November 2003 which articulated our concerns.

6.     The IRS scenarios were not produced until 2004. Scenario #10 contained positions which the plaintiff attorneys disputed and attempted to get the IRS to modify those positions. It refused.

7.     Because the IRS was unwilling to stipulate to any particular version of the facts, we ultimately agreed that we would simply negotiate on the basis of numbers rather than a particular factual scenario which generated specific numbers. The settlement which was achieved was not based on Scenario #10, and the numbers are not the same. The IRS never stated that it was willing to settle on the basis of Scenario #10 or any other Scenario.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 15, 2007.

_____/s/ Ernest Fleischer_____
Ernest Fleischer