# INTERNAL REVENUE SERVICE AND RESOLUTION TRUST CORPORATION INTER-AGENCY AGREEMENT

## I. PREAMBLE

This Inter-Agency Agreement (Agreement) is entered into between the Internal Revenue Service (IRS) and the Resolution Trust Corporation (RTC) to facilitate the disposition of cases involving Thrifts Under RTC Jurisdiction in an orderly and cost efficie manner. This Agreement functions as a master agreement with respect to federal income t matters between the IRS and the RTC that arise at all stages of case processing.

The parties acknowledge that this Agreement will cause them to resolve federal income tax matters different from the way they might be resolved absent this Agreement. The IRS and the RTC agree that it is in the best interest of the IRS, RTC, and the United States to resolve tax matters administratively between the IRS and the RTC in a manner th conserves government resources, carries out statutory responsibilities of the RTC, and promotes fair administration of the tax laws.

## II. DEFINITIONS

The following definitions apply for purposes of this Agreement:

A. **Thrift(s) Under RTC Jurisdiction.** Any federal or state chartered savings institution for which the RTC has been appointed conservator or receiver. This definition is not limited to associations described in § 7701(a)(19) of the Internal Revenue Code of 1986 (IRC).

B. **Consolidated Subsidiary.** A member of an affiliated group of corporations, as defin in IRC § 1504(a)(1), for which a Thrift Under RTC Jurisdiction is the common parent and which files a consolidated return with such common parent.

C. **Eligible Subsidiary.** A subsidiary of a Thrift Under RTC Jurisdiction that files, or i required to file, a consolidated return with a common parent not under RTC jurisdiction, b only if 80% or more of the subsidiary is owned in the aggregate by the thrift and/or its 80 or more owned subsidiaries. For purposes of this Agreement, an entity owns 80% of a



EXHIBIT NO. 4
Wit:
Date: 1-17-
Rptr:

subsidiary if it owns 80% or more of the total voting power of the stock of the subsidiary and at least 80% of the total value of the stock of the subsidiary.

D. Treasury Funds. Funds appropriated by the United States Congress and funds obtained by the RTC from the Department of the Treasury and the Resolution Funding Corporation pursuant to 12 U.S.C. § 1441a(i) and 12 U.S.C. § 1441b. A Thrift Under RTC Jurisdiction is considered to use Treasury Funds whenever the RTC provides the certification specified in Section IV of this Agreement.

E. Federal Income Tax Liability(ies). The amount of income tax, interest, additions to tax, and penalties related to such taxes.

## III. SCOPE OF AGREEMENT AND EFFECTIVE DATE

A. Entities Affected. 1. This Agreement applies to Thrifts Under RTC Jurisdiction, their Consolidated Subsidiaries, and their Eligible Subsidiaries, except that when a Thrift Under RTC Jurisdiction files, or is required to file, a consolidated return with a parent corporation not under RTC jurisdiction, Section V (Assessment) of this Agreement does not apply to such thrift and its Eligible Subsidiaries because the RTC cannot bind the consolidated group.

2. This agreement shall not apply to any thrift under a receivership created by resolution of the Federal Home Loan Bank Board, unless the thrift is placed under RTC jurisdiction following the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

B. Period of Applicability. This Agreement shall apply to a Thrift Under RTC Jurisdiction, and to any of its subsidiaries covered by this Agreement, while such entity is under RTC jurisdiction.

C. Tax Liabilities Affected. The federal tax liabilities to which this Agreement applies are Federal Income Tax Liabilities, and excise tax liabilities to the extent described in Section VIII, of:

1. a Thrift Under RTC Jurisdiction and its Consolidated Subsidiaries if such tax liabilities arise prior to or during the period of RTC jurisdiction; and

2. any Eligible Subsidiary for the period in which it joins in the filing of a

consolidated return with the Thrift Under RTC Jurisdiction if such tax liabilities arise prior to or during the period of RTC jurisdiction.

D. <u>Criminal Cases</u>.   This Agreement is not intended to limit in any way the IRS's right or ability to initiate and recommend prosecution of criminal cases involving individuals and financial institutions.   ·

E. <u>Effective Date</u>.   This Agreement is effective upon execution by the IRS and the RTC and applies to all Thrifts under RTC Jurisdiction on this date and to all thrifts that are placed under RTC jurisdiction in the future. The preceding sentence also applies to Consolidated Subsidiaries and Eligible Subsidiaries.

## IV.  RTC CERTIFICATION OF TREASURY FUNDS USAGE

The RTC will provide prompt written certification for each taxable year for each Thrift Under RTC Jurisdiction that meets the certification criteria.  The certification shall state that (1) the assets of such thrift are insufficient to satisfy the claims of the thrift's depositors (or the RTC as successor for depositors' claims); (2) if the IRS were to collect taxes before all depositors (or the RTC as successor for depositors' claims) were paid in full, additional Treasury Funds would be used to satisfy deposit claims; and (3) the Federal Income Tax Liability will not be borne by the Thrift Under RTC Jurisdiction on account of a tax sharing arrangement.  Certification will be made by the RTC's National Office and will be provided to the IRS in accordance with IRS written guidance.  To ensure uniform treatment of the tax liabilities of Thrifts Under RTC Jurisdiction, the parties intend that the RTC will provide certification for each thrift that meets the certification criteria.

## V.  ASSESSMENT

The IRS will assess tax, interest, additions to tax, and penalties related thereto against Thrifts Under RTC Jurisdiction and Consolidated Subsidiaries.  The assessed amount, which includes Federal Income Tax Liabilities, will be based upon all available information including all appropriate adjustments and offsets concerning each Thrift Under RTC Jurisdiction and any Consolidated Subsidiaries.  After consultation between IRS and RTC, the tax thus determined will reflect the best efforts of the IRS and the RTC to ensure that it is the proper amount of tax due.

3

Ex. D-3

APR-30-2002  16:57      FDIC                              202 942 3553   P.06/12

For cases in which the RTC provides the certification specified in Section IV of this Agreement, the RTC will agree to the Federal Income Tax Liabilities of the Thrift and its Consolidated Subsidiaries. The amount of the income tax assessment will be agreed upon by the IRS and the RTC at the examination level. For those cases which are beyond the IRS examination level at the time this Agreement is executed or when the thrift is placed under RTC jurisdiction, the IRS and the RTC will determine expeditiously the proper Federal Income Tax Liability at that level. If agreement at the IRS level where the case is pending is not possible, the RTC National Office will present the case to the IRS National Office for a final determination by the IRS. It is anticipated that this National Office procedure will function primarily to resolve questions of tax policy and to ensure consistent treatment of tax issues. The RTC will not challenge, in any forum, the amount finally determined by the IRS.

Each assessment will be memorialized in a written agreement indicating the amounts of Federal Income Tax Liabilities due. The written agreement will contain a waiver with respect to refunds in accordance with Section VII of this Agreement. Each agreement will be specific in its findings and will not be made public by either party except as required by IRS information sharing agreements with the various states, or other provisions of law. Both parties intend that in accordance with the principles of IRC §§ 6110 and 7121, these agreements are not precedent for any other taxpayer.

## VI.  COLLECTION

A.  Non-Collection by IRS.  1,  Although the IRS will assess all federal tax liabilities of a Thrift Under RTC Jurisdiction and its Consolidated Subsidiaries, it will not collect income tax, interest, additions to tax, and penalties related thereto (defined as Federal Income Tax Liabilities in this Agreement) whenever the RTC provides the certification specified in Section IV. This non-collection provision also applies to the several liability of a Thrift Under RTC Jurisdiction and its Eligible Subsidiaries when the common parent of a group filing consolidated returns is not under RTC jurisdiction.

2.  This non-collection provision applies to levies and notices of lien whenever the RTC provides the certification specified in Section IV. The IRS should not file notices of federal tax lien or use its levy authority for any tax liabilities of a Thrift Under RTC Jurisdiction and any of its subsidiaries covered by this Agreement during the period of RTC jurisdiction. If a notice of lien is filed, an appropriate recordable document to withdraw the notice of lien will be filed with the same office where the original notice was filed. Any

6

Ex D.4

levy made contrary to this non-collection provision shall be released promptly.

B.  Exceptions to Non-Collection.  1.  The non-collection provision does not apply to the following:  (a) taxes other than income taxes (e.g., social security, unemployment, and withholding taxes); (b) excise taxes, except to the extent specifically provided in Section VIII;  (c) refunds made to the RTC that later are recouped by the IRS pursuant to the provisions of the Agreement By and Between the Resolution Trust Corporation and the Internal Revenue Service, dated September 27, 1991, concerning IRC § 6402(i); and (d) cases in which the certification required by this Agreement is erroneous.

2.  The non-collection provision shall not apply to the separate liability of a subsidiary of a Thrift Under RTC Jurisdiction for any period for which the subsidiary was not a Consolidated Subsidiary or an Eligible Subsidiary.

## VII. REFUND CLAIMS AND REFUND SUITS

When the RTC certifies to the information required in Section IV of this Agreement, the Thrift Under RTC Jurisdiction will not file claims for refund and will not pursue refunds on behalf of such thrift or any of its subsidiaries in any forum, except as contemplated by § 6402(i).  The RTC will seek dismissal with prejudice of any refund litigation.  Except as contemplated under the § 6402(i), the IRS will not pay refunds to or on behalf of a Thrift Under RTC Jurisdiction.  These limitations on claims for refund will not apply if the certification pursuant to Section IV is erroneous.

## VIII. EXCISE TAXES

A.  Transfers of REMIC Residual Interests to RTC Corporate.  1.  If a Thrift Under RTC Jurisdiction transfers a residual interest in a Real Estate Mortgage Investment Conduit (REMIC) to the RTC in its corporate capacity, the tax imposed by IRC § 860E(e) upon a transfer to a disqualified organization will be due but collection will be deferred in accordance with the limitations set forth in this Section.  In addition, the transfer of the residual interest to the RTC will not cause the REMIC to fail to satisfy the definition of a REMIC under IRC § 860D(a).

2.  To qualify for the deferral of the collection of tax due under IRC § 860E(e), the RTC in its corporate capacity must agree in writing, under procedures established by the IRS, to the following:

a.  to accept transferee liability for the tax imposed by IRC § 860E(e);

5



    b.  to extend the statute of limitations on transferee liability for assessment and collection of tax until 180 days after written notice is provided by the RTC to the IRS that this deferral terminates in accordance with the terms of this Section.

3.  The deferral terminates if:

    a.  the RTC transfers the REMIC interest to its successor unless the RTC provides notice to the IRS that the deferral period continues and the RTC provides a written statement from its successor that such transferee assumes the deferred tax liability under the conditions imposed by this Section; or

    b.  the RTC or its successor transfers the REMIC interest to any other person; or

    c.  the RTC or its successor terminates in writing the extension of the statute of limitations for assessment and collection.

For purposes of this Section, the term "successor" means the federal agency or office that succeeds by operation of law to the rights and obligations of the RTC.

4.  The amount due when the deferral terminates because of sections 3a. or 3c. will be the full tax imposed by IRC § 860E(e) as of the date the REMIC interest was transferred to the RTC and interest under IRC § 6601. The amount due when the deferral terminates because of subsection 3b. will be the lesser of (a) the tax imposed by IRC § 860E(e) as of the date the REMIC interest was transferred to the RTC and interest under IRC § 6601, or (b) the total amount for which the RTC transfers the residual interest. The amount due when the deferral terminates will be paid immediately by the RTC or its successor.

5.  The IRS will not collect the tax computed under paragraph 4 of this Section if the REMIC residual interest is retained by the RTC or by a successor to which the deferral period applies, and the REMIC terminates before the deferral period terminates.

B. Other Excise Taxes.  The provisions of this Agreement may be extended to other excise taxes. Therefore, the parties, to the extent that they later agree that this Agreement, including the non-collection provision, will apply to such other excise taxes, will execute written amendments to this Agreement, incorporating by reference the terms to be applied with respect to such other excise tax or taxes.

## IX. SECTION 7507

A. RTC Agreement.  In view of the non-collection provision contained in Section VI,



6

IRC § 7507 will not be asserted or pursued by the RTC, except that the RTC may assert §
7507 as follows:

    1.    cases in which the IRS pursues litigation as described in Section XI; or

    2.    cases in which there are direct insurance payments to depositors in full
        satisfaction of their insured deposit claims. The RTC agrees, however, that it will
        not assert IRC § 7507 for any insured deposit transfer whenever this Agreement
        applies.

**B. Prior Filings.**    Any Federal income tax return filed prior to the date of this Agreement
asserting IRC § 7507 will be processed in accordance with the terms of this Agreement.

## X. NOTICES AND PROOFS OF CLAIM

**A. IRS as Claimant.**    Because the IRS is a creditor at least for federal employment taxes
of each operating thrift at the time it is placed in receivership, the RTC intends to provide
the IRS with a claimant's specific notice for every receivership. Written notice will be
given to the Chief, Special Procedures function, for the IRS district in which the Thrift
Under RTC Jurisdiction operated and will include the Taxpayer Identification Number
(TIN), and such other information as mutually agreed upon.

**B. Filing Claims.**    In general, the IRS will file proofs of claim using the IRS proof of
claim form specifying tax, interest, additions to tax, and penalties. When appropriate, the
period for consideration of the IRS proof of claim will be extended by written agreement
between the IRS and the Thrift Under RTC Jurisdiction. If the IRS did not receive specific
notice as stated above, upon discovery of that failure, the RTC will mail the required written
notification to the IRS within 30 days. The IRS will then have 30 days to file its proof of
claim to the extent permitted by 12 U.S.C. § 1821(d).

## XI. CIVIL LITIGATION

**A. In General.**    The RTC will not litigate federal income tax issues against the United
States involving a Thrift Under RTC Jurisdiction or its Consolidated Subsidiaries in any
court to the extent that the IRS would forego collection pursuant to this Agreement. If a
thrift has filed a petition in the United States Tax Court at the time the thrift is placed under
RTC jurisdiction, the IRS and the RTC will inform the Court of the thrift's change of status

and request the Court to stay further proceedings to allow the parties time to resolve any
pending issues in accordance with this Agreement.

B.  Appellate Litigation.   Notwithstanding the provisions of Subsection A, the IRS will
not be barred by this Agreement from appellate litigation involving Federal Income Tax
Liabilities if abandonment by the IRS of such litigation would result in adverse precedent to
the IRS.  Similarly, the RTC will not be barred by this Agreement from appellate litigation
if abandonment by the RTC of such litigation would result in adverse precedent to the RTC
on a non-tax issue relating to banking or receivership law.  Neither the IRS nor the RTC is
obligated by this Agreement to defend any appellate litigation.

C.  Summonses.   The IRS will not be barred by this Agreement from pursuing judicial
enforcement of summonses relating to the operation of a Thrift Under RTC Jurisdiction.

## XII.  INTER-AGENCY COOPERATION

A.  In General.   The IRS and the RTC will cooperate with respect to the determination of
proper tax liabilities and proofs of claim for a Thrift Under RTC Jurisdiction.

B.  Conditional Commitment Discharges.   In order to reduce administrative expenditures
of the IRS and RTC, the IRS will not be joined in any judicial mortgage foreclosure action
to remove a federal tax lien against property in which a Thrift Under RTC Jurisdiction has a
secured interest.  Instead, the IRS will accept the valuation of the property submitted by the
RTC in an application for conditional discharge.  The IRS will act on such applications
within seven days.

C.  Notice of Fiduciary Status, Form 56-F.   The RTC will file IRS Form 56-F (Notice
Concerning Fiduciary Relationship of Financial Institution) for all Thrifts Under RTC
Jurisdiction.  Filing of the Form 56-F will not substitute for the claimant's specific notice by
the RTC described in Section X.

D.  Information Exchanges.   The RTC will voluntarily release information without a
summons or other written documentation when permitted by law.  The RTC will cooperate
with the IRS to resolve promptly disputes concerning the application of the Right to
Financial Privacy Act.

8

Ex. D-8

APR-30-2002 16:39    FDIC                              202 942 3653   P.11/12

## XIII. INTERPRETATION OF THE PROVISIONS OF THIS AGREEMENT

The parties will attempt in good faith to resolve promptly at the National Office levels of the RTC and the IRS any questions relating to the interpretation of the provisions of this Agreement.

## XIV.  GENERAL PROVISIONS

A.  Amendments.  This Agreement may be amended by an instrument in writing signed on behalf of each of the parties hereto or their successors.

B.  Subsequent Legislation.  In the event federal legislation that is inconsistent with the purpose or provisions of this Agreement is enacted after this Agreement becomes effective, the IRS and RTC will renegotiate the provisions of this Agreement to consider the effect of subsequent legislation.

C.  Successors.  To the extent permitted by law, all the terms and provisions of this Agreement shall be binding upon, and inure to the benefit of, the IRS and the RTC and its successors.

D.  Sole Benefit.  This Agreement and all of its provisions are for the sole benefit of the IRS, the RTC and any successor, and any Thrift Under RTC Jurisdiction.  No third party may rely on the terms of this Agreement.

E.  Governing Law.  This Agreement is governed by, and construed in accordance with, the statutes of the United States.

F.  Effect of Erroneous Certification.  If this Agreement is inapplicable due to an erroneous certification under Section IV of this Agreement, or for any other reason, none of the provisions of this Agreement alter the tax rules that apply to Thrifts Under RTC Jurisdictions, their Consolidated Subsidiaries, and their Eligible Subsidiaries in the absence of this agreement.

G.  Severability.  The IRS and the RTC agree that the mutual promises contained in this Agreement are interdependent and indivisible.  Specific terms of this Agreement cannot be



APR-30-2002  16:39      FDIC                          202 942 3653    P.12/12

severed from other provisions.

H.  Return-Filing Responsibilities.   Nothing in this Agreement is intended to relieve the
RTC of its obligation, as a receiver or conservator, to file federal tax returns for any Thrift
Under RTC Jurisdiction.

On behalf of the Internal Revenue Service and the Resolution Trust
Corporation, we, the undersigned, do hereby agree to the foregoing provisions of this
Agreement effective this __10__ day of December, 1992.


Michael P. Dolan
Deputy Commissioner,
Internal Revenue Service

William H. Roelle
Senior Vice President and
  Chief Financial Officer,
Resolution Trust Corporation

10

TOTAL P.12

Px D - 1C

PR-30-2002  16:35          FDIC                        202 942 5855   P.22/22

INTERNAL REVENUE SERVICE AND RESOLUTION TRUST CORPORATION
INTER-AGENCY AGREEMENT

Affirmation by Federal Deposit Insurance Corporation

The Federal Deposit Insurance Corporation ("FDIC"), as
statutory successor receiver for Resolution Trust Corporation
("RTC") receiverships, hereby affirms the Internal Revenue
Service ("IRS") and RTC Inter-Agency Agreement ("Agreement") that
became effective December 10, 1992, for institutions described in
Section III.A of the Agreement.

In accordance with Section 21A(b)(m) of the Federal Home
Loan Bank Act, as amended (12 U.S.C. 1441a(m)), the RTC
terminated on December 31, 1995, and the FDIC succeeded the RTC
as receiver for such institutions.

As successor receiver of RTC receiverships, the FDIC agrees
to all terms and provisions of the Agreement.  In affirming this
Agreement, the FDIC understands and agrees that:

1.  The Agreement does not apply to any institution as to
which the FDIC has been appointed conservator or receiver other
than as a successor receiver to the RTC receiver.

2.  All references to a thrift "under RTC jurisdiction" also
includes such thrift while under the jurisdiction of the FDIC as
successor receiver to the RTC.

3.  All references to a period of time that a thrift is
under "RTC jurisdiction" is understood to include such period of
time that the thrift is under the jurisdiction of the FDIC as
successor receiver to the RTC.

4.  All actions required to be taken by RTC as receiver are
to be taken by FDIC as successor receiver to the RTC.

5.  All actions required to be taken by RTC in its corporate
capacity (as in Part VIII, for example) may be taken by FDIC, as
manager of the FSLIC Resolution Fund.

6.  By affirming this Agreement, the FDIC does not waive its
right to assert or pursue any argument or position it may advance
with respect to any tax, situation or institution not covered by
the Agreement (including, for example, arguments regarding the
proper application of Section 7507 of the Internal Revenue Code).

February 23, 1996
Date

Alvin E. Kitchen, Deputy Director
Division of Finance
Federal Deposit Insurance Corporation

Ex. D-11