AUG.20.2003 3:31PM    UPTON&GALTON    Winston & Strawn * Pg 4/6    NO.273 P.4/6
202 736 0575  P.02/04

**FDIC**
Federal Deposit Insurance Corporation
550 17th St. NW Washington DC, 20429

Legal Division

## FOR SETTLEMENT PURPOSES ONLY
## SUBJECT TO FED. R. EVID. 408

July 30, 2003

<u>VIA FASCMILE AND REGULAR MAIL</u>

Henry Darmstadter
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

    Re:    *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Hank:

    This letter responds to your request that the FDIC summarize its arguments concerning the alternative minimum tax ("AMT") liability indicated under the Benj. Franklin receivership tax returns.

    The FDIC's examination of the tax returns at issue shows that if the receivership's federal income tax liability is calculated under Notice 89-102, and corrections are allowed for a missed deduction for post insolvency interest, among other things, and the penalties are waived, then the aggregate tax due for 1990 is substantially reduced. The AMT, however, for 1990 would be close to *two times* the amount of the regular tax, including interest accruals. If the receivership's federal income tax liability is calculated under the IRC § 597 Regulations used to calculate tax on federal financial assistance ("FFA"), the aggregate tax due for 1990 is also substantially reduced. In computing tax under this method, however, the AMT limitation on the use of net operating losses (IRC § 56(d)) does not apply to income attributable to FFA. See § 1.597-4(g)(3).

    The FDIC is willing to consider as a compromise to calculate the tax, if any, under Notice 89-102, notwithstanding our long held concerns regarding the IRS's construction of the Notice and tax on FFA in light of the clear legislative history of § 597 to the contrary. We are doubtful, however, that our board would consider a further compromise that would allow an AMT assessment for 1990, for the reasons below.

    We think that it would be manifestly unfair for the IRS to impose the AMT (IRC §§ 55-59) against the Benj. Franklin receivership. The arguments against any *regular* tax assessed under Notice 89-102 apply with equal force to the AMT. Indeed, the AMT result highlights our

AUG.20.2003  3:31PM   UPTON&GALTON    Winston & Strawn * Pg 5/6         NO.273   P.5/6
                                                                    202 736 8575  P.03/04

Letter to Mr. Darmstadter
July 30, 2003
Page 2

long held concerns with the IRS's construction of Notice 89-102 and tax on FFA (*e.g.* that Congress never intended that federal income taxes relating to the receipt of FFA be assessed or collected.)

Similarly, we fail to see how applying the AMT to the Benj. Franklin receivership serves the purpose of the AMT provisions, under any construction. The congressional intent behind the provisions was to ensure that no taxpayer with substantial income would avoid paying federal income tax through the use of exclusions, deductions, or credits. Unlike an ordinary taxpayer, the FDIC's operation of failed financial institution receiverships is governed by statute. For example, the FDIC is required to "maximize the net present value return from the sale or disposition of a failed financial institution's assets." 12 U.S.C. § 1821(d)(13)(E). Surely Congress did not intend for the receiver to be deprived of deductions in these circumstances. Finally, the imposition of the AMT in this situation would not serve the goals of the Inter Agency Agreement that calls for the resolution of tax matters in a manner that promotes "fair administration of the tax laws."

In light of the foregoing issues relating to Notice 89-102, we are continuing to explore the receivership's tax liability, if any, calculated under the final IRC § 597 Regulations. You have raised the issue of whether the Benj. Franklin receivership followed the "election" procedures contained in the regulations. It is our understanding that the Benj. Franklin receivership was ineligible for such an election due to the effective dates of the proposed and final regulations that were issued under IRC §597 (as amended by FIRREA). We have outlined the timeline below.

IRS Notice 89-102, which was issued on October 2, 1989, was the IRS's initial guidance with respect to the tax treatment of post-FIRREA FFA. The Notice applied to all FFA received or accrued on or after May 10, 1989, until replaced by final regulations.

Proposed regulations were issued on April 27, 1992, but they governed the tax treatment of FFA on a *prospective* basis. (Benj. Franklin was placed in receivership on September 7, 1990.) Moreover, the Benj. Franklin receivership was foreclosed from amending the 1990 tax return under the retroactive election provision in the proposed regulations, which stated that:

> (3) *Procedural Rules.* An institution or consolidated group makes the election provided by this paragraph (c) by attaching a written statement to, and including it as part of, the taxpayer's or consolidated group's first annual income tax return filed [insert the date *final regulations under section 597 are filed with the Federal Register.*]

Prop. Reg. § 1.597-7(c)(3). The final regulations were not issued by the IRS until December 1995, over a year *after* the 1990 tax return was closed.

The final regulations affected only bank or thrift institution resolutions occurring on or after April 1992 and expressly prohibited retroactive elections beyond 3 years from the effective date of the regulations. See §1-597-7(c)(2)

Letter to Mr. Darmstadter
July 30, 2003
Page 3

In sum, Notice 89-102 governed the tax treatment of all FFA received between May 1989 and April 1992 and the Benj. Franklin receivership could not make an election for the application of the more favorable final regulations until December 1995 and then only for *open* tax years. Indeed, the IRS National Office insisted that the RTC tax preparers apply Notice 89-102, as evidenced by the notation on the 1990 amended return. Thus, the fact that the RTC dutifully obeyed the IRS's instructions should not be an obstacle to a compromise that allows the legislative intent of IRC§ 597 to be applied here.

We appreciate your willingness to consider our views on these issues as we continue our efforts to reach a negotiated resolution of the receivership's tax liability.

Please let us know if you wish to discuss these matters further.

Yours truly,

*Catherine Topping*
Catherine Topping
Counsel

cc: Don S. Willner, Esq.

3

TOTAL P.04