UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WINSTON & STRAWN LLP, <br><br>and<br><br>WILLNER & ASSOCIATES,<br><br>and<br><br>BLACKWELL SANDERS PEPER MARTIN<br>and<br>ERNEST M. FLEISCHER,<br><br>    Consolidated Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, AS RECEIVER FOR<br>THE BENJ. FRANKLIN FS&LA,<br><br>    Defendant. | Civil Case No. 06-1120 (EGS)<br><br>[Consolidated with No. 06-1227<br>(EGS) and No. 06-1273 (EGS)] |

## SUPPLEMENTAL DECLARATION OF THOMAS M. BUCHANAN

I, Thomas M. Buchanan, certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

1. I am over 21 years of age, and I have personal knowledge of the facts and matters attested to in this Declaration, and I am competent to be a witness to the facts and matters attested to in this Declaration.

2. On numerous occasions I asked the Federal Deposit Insurance Corporation, as receiver for the Benj. Franklin FS&LA ("FDIC-Receiver") to submit the fee petition submitted by Winston & Strawn LLP ("Winston & Strawn") seeking a success fee equal to two times the law firm's normal hourly rate, to the Benj. Franklin FS&LA shareholders ("Plaintiff

shareholders") for their approval. The procedure would have been the same as the notice sent to shareholders of the fairness hearing. FDIC-Receiver, however, rejected those requests.

3. The legal bills of Winston & Strawn cover two time periods: August 1998 to December 1999, and August 2002 to May 2006. Although the tax lawsuit filed by the United States at issue in this case ("Tax Case") was filed in 2002, Winston & Strawn began evaluating the issues in that case in August 1998 at the direction of the Plaintiff shareholders. It was at that time when the Plaintiff shareholders first learned of the tax claim against the receivership. The Plaintiff shareholders requested that Winston & Strawn bill their time on the tax claim to the account pertaining to the shareholder derivative action pending in the Court of Federal Claims, rather than open a new matter. After the Tax Case was filed in 2002, Winston & Strawn opened a separate billing matter under the name "Robert Suess," and all of the firm's time as to that matter was dedicated exclusively to the Tax Case.

4. While Winston & Strawn did work on the Tax Case during this period, August 1998 to December 1999, the vast majority of the work on the Tax Case was accomplished after the government filed suit, during the second period, August 2002 to May 2006.

5. On August 21, 2006, Winston & Strawn on behalf of its client C. Robert Suess, filed a Proof of Claim for reimbursement of legal fees and expenses in the amount of $216,599.50 incurred by Mr. Suess. Ex. A. The Proof of Claim represented legal fees and expenses that should have been included in the original Proof of Claim submitted by Don. S. Willner on behalf of the Shareholder's Litigation Fund but were not. At the request of the FDIC, Winston & Strawn, on behalf of its client Mr. Suess, sent a letter to the FDIC on February 7, 2007, to provide additional support and clarification for Mr. Suess' August 21, 2006, Proof of Claim. Ex. B.

6.On April 9, 2003, counsel for Benj. Franklin met with the representatives of the FDIC concerning the IRS' tax claim against the receivership estate of Benj. Franklin. Present on behalf of the shareholders of Benj. Franklin were Tom Buchanan, Mitch Moetell, Don Willner, Rosemary Stewart and Ernie Fleischer (the "April 9 meeting"). Present on behalf of the FDIC were attorneys Hugo Zia and Catherine Topping, as well as Rich Peyster and Rick Cyzwinski. At the April 9 meeting:

a. The FDIC indicated that it had not attempted to argue that Federal Financial Assistance was not a taxable event because it had decided to pursue the "path of least resistance."

b. The FDIC stated that its approach towards settlement with the Department of Justice ("DOC") and Internal Revenue Service ("IRS") was driven, in part, by the Inter-Agency Agreement ("IAA") between the FDIC and the IRS. The FDIC explained that under the IAA the FDIC was constrained from contesting in litigation the IRS tax claim against the Benj. Franklin receivership. The FDIC explained that under the IAA the FDIC could not challenge any tax assessed against an FDIC receivership by the IRS in exchange for the IRS' agreement to defer the tax.

c. The FDIC indicated that the IRS had implicitly raised the IAA in its negotiations with the FDIC.

d. The FDIC advised that one of the reasons, if not the primary reason, that the IRS was so willing to negotiate on its tax claim was because of a threat by the FDIC that it would interplead the shareholders into the litigation, and place the receivership surplus in the custody of the court, and allow the shareholders and

3

the IRS to fight it out. The IRS did not like this concept; it is something that is foreign to it.

e. The FDIC added that it considered itself a stakeholder, not an advocate, and it did not consider itself to have a fiduciary obligation to the shareholders.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on March 15, 2007.

                                                    Thomas M. Buchanan

DC:506771.1