03/19/2000 21:49  17603245710                CROBERTSUES                              PAGE 02
202-282-5100              8/21/2006 1:18:21 PM     PAGE 002/005    Fax Server
FROM: WINSTON & STRAWN LLP

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

C. ROBERT SUESS, et al,

   Plaintiffs,

v.

UNITED STATES OF AMERICA

   Defendant.

No. 90-981C
(Chief Judge Smith)

### DECLARATION OF C. ROBERT SUESS

I, C. Robert Suess, declare:

1. I submit this declaration in support of the Motion for Substitution of Counsel on Behalf of Plaintiffs, C. Robert Suess, et al, filed in this action. I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently thereto.

2. I am the Lead Plaintiff in this lawsuit, which has been brought as a shareholder derivative action on behalf of Benjamin Franklin Savings and Loan Association ("Benj. Franklin"). I presently hold 371,000 shares of Benj. Franklin stock in seven family entities.

3. On August 22, 1990, Don S. Willner and I entered into a contract ("Retainer Agreement") that governs our attorney-client relationship. At that time, I was the only shareholder who agreed to finance this action, but Mr. Willner and I contemplated that "other shareholders" would become co-Plaintiffs and contribute to the litigation. In the event other shareholders became co-Plaintiffs, however, I agreed that I would remain responsible for the legal fees owed to Mr. Willner under the Retainer Agreement. I assumed this responsibility based on my discussions with Mr. Willner and at least certain of the prospective additional

plaintiffs that I was to be the Lead Plaintiff in this action and would exclusively manage the litigation and control expenses.

4. Shortly after the Retainer Agreement was executed, the other historical Plaintiffs (Richard A. Green, Leo C. Sherry, Jr., and Irving M. Roberts) entered into short-form retainer agreements with Mr. Willner that referenced, attached and incorporated by reference the Retainer Agreement. These short-form retainer agreements all say, among other things: "I agree that management of the lawsuit will be delegated to C. Robert Suess but that he will stay in contact with me and the other plaintiffs and he will be available for discussion upon reasonable notice." To the best of my recollection, I received a copy of these agreements at or about the time they were executed. Foster, Paulsell & Baker Inc. later reluctantly agreed to sign a similar short-form retainer agreement limiting their participation to 5 cents a share.

5. With the comfort of knowing that I had received authority from the other Plaintiffs to manage this litigation through its conclusion, and thus control its scope and cost, I continued to infuse hundreds of thousands of dollars into this litigation. To date, I have invested more than $800,000 of my personal funds in this litigation. This figure includes moneys paid to the Benj. Franklin Shareholders Litigation Fund and directly to Winston & Strawn LLP. Through my personal contacts with shareholders, I increased the amount in the Litigation Fund by an added $1.5 million.

6. In fact, at the conclusion of trial, Mr. Willner approached me and raised concerns that creditors involved in the litigation, including experts, were seeking payment directly from him for their services. Mr. Willner specifically raised the specter that his firm might have to declare bankruptcy. I personally offered to pay the creditors first before paying counsel. Mr. Willner, however, insisted on being paid before the creditors or Winston & Strawn LLP. Mr.

2

03/19/2000  21:49  17603245710                    CROBERTSUES                                    PAGE  04
                                    8/21/2006 1:18:21 PM    PAGE 004/005   Fax Server
FROM:  WINSTON & STRAWN LLP

Willner did pay the creditors in small increments out of the Litigation Fund over many months. I elected to pay the balance outright out of my own pocket.

7.  Although Mr. Willner and I had a good working relationship for years, that relationship began to deteriorate in late 1999. Since then, Mr. Willner has refused to recognize my authority as manager of the litigation and to control expenditures.

8.  For this and other reasons, I authorized Thomas M. Buchanan to file a Motion for Substitution of Counsel seeking Court approval to substitute Mr. Buchanan for Mr. Suess as counsel of record, primarily for purposes of the anticipated appeal. Mr. Buchanan, who is the head of the Washington, D.C. Litigation Department of Winston & Strawn LLP, has played an integral role in this litigation from its inception. He and his law firm have extensive trial and appellate experience in *Winstar*-related cases and other litigation. For these reasons, and based on my personal relationship with Mr. Buchanan, I firmly believe that the appointment of Mr. Buchanan as counsel of record for Plaintiffs in this litigation would be in the best interest of Benj. Franklin and its shareholders.

9.  To date, I have received letters from hundreds of Benj. Franklin shareholders expressing support for my decision to substitute counsel of record. These shareholders collectively hold about 1.7 million shares of Benj. Franklin stock. (In lieu of attaching these letters to this affidavit, Mr. Buchanan will have them available for inspection at the hearing on the Motion for Substitution of Counsel and, if deemed appropriate, they can be submitted into the record at that time.) In addition, two large shareholders who collectively hold more than 1.1 million shares, Abe Siemens and Gary Hindes, signed declarations that similarly support my position. Including my ownership interest in Benj. Franklin, shareholders holding more than 3.2 million outstanding shares of Benj. Franklin have affirmatively expressed approval of the

3

proposed substitution of counsel. In contrast, per the database maintained by Jerry Young (who submitted a declaration on behalf of the Objecting Plaintiffs), the four named Plaintiffs who have opposed the Motion for Substitution of Counsel collectively hold 242,340 shares of Benj Franklin stock, which numbers includes shares owned by the Estate of Mike Foster and Foster, Baker and Paulsell.

10. This is not to say that, in my opinion, Mr. Willner should have no role in connection with this action. To the contrary, I have no objection to him serving in an "of counsel" role.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief. Executed this 21 day of August, 2006.

*C. Robert Suess* (signature)
C. Robert Suess

4

DC:4406391