# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **WINSTON & STRAWN LLP,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DON S. WILLNER & ASSOCIATES, P.C.** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **BLACKWELL SANDERS PEPER MARTIN** | ) | |
| and | ) | Civil Case No. 06-01120 (EGS) |
| **ERNEST M. FLEISCHER** | ) | |
| | ) | [Consolidated with No. 06-01227 |
| Consolidated Plaintiffs, | ) | (EGS) and No. 06-01273 (EGS)] |
| | ) | |
| v. | ) | |
| | ) | |
| **FEDERAL DEPOSIT INSURANCE** | ) | |
| **CORPORATION, AS RECEIVER FOR** | ) | |
| **THE BENJ. FRANKLIN FS&LA,** | ) | |
| **PORTLAND, OREGON** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## FDIC-RECEIVER'S EXHIBITS TO ACCOMPANY ITS REPLY TO OPPOSITIONS FILED BY PLAINTIFFS, INCLUDING INDEX TO ALL FDIC-RECEIVER'S EXHIBITS

Bruce C. Taylor
Federal Deposit Insurance Corporation
550 17th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2436 (Telephone)
(703) 562-2478 (Facsimile)

Counsel for Federal Deposit Insurance Corporation,
as Receiver for The Benj. Franklin FS&LA

Date:   March 30, 2007

## INDEX TO ALL FDIC-RECEIVER'S EXHIBITS

**NOTE** – FDIC Exhibits 1 through 14 appear in three volumes accompanying the
FDIC-Receiver's opposition and cross motion filed February 22, 2007 (Doc. 15). The
FDIC Exhibits accompanying the FDIC-Receiver's reply filed March 30, 2007,
continue with FDIC Ex. 15. For convenience, this index lists all FDIC Exhibits.

<u>**Document**</u>                                                                                      <u>**Ex. No.**</u>

### <u>VOL I (2/22/2007)</u>

Letter to Robert Suess from Don Willner (8/22/1990) ...................................................1

Order, *Suess v. FDIC*, No. 02-807-HA (D.Ore.) (7/26/2002). .....................................2

Joint Unopposed Motion, *United States v. FDIC*, No. 02-1427 (D.D.C.)
(4/22/2003)..........................................................................................................................3

Email to Tom Buchanan from Rosemary Stewart (9/28/2005) ....................................4

Notice to Shareholders, *United States v. FDIC*, No. 02-1427 (D.D.C.)
(2/3/2006)............................................................................................................................5

Order, *United States v. FDIC*, No. 02-1427 (D.D.C.) (5/2/2006) ...............................6

Notice of Partial Disallowance of Claim to Rosemary Stewart from
Glenn Glinsmann (5/17/2006) ........................................................................................7

Undated letter to FDIC from Robert Suess.....................................................................8

Letter to Richard Gill from Robert Suess (1/4/2007) ...................................................9

### <u>VOL. II (2/22/2007)</u>

Buchanan Deposition (1/17/2007)................................................................................10

Willner Deposition (1/18/2007).....................................................................................11

### <u>VOL. III (2/22/2007)</u>

Fleischer Deposition (1/18/2007) .................................................................................12

Stewart Deposition (1/18/2007)....................................................................................13

Gill Declaration (2/22/2007)..........................................................................................14

## EXHIBITS TO FDIC-RECEIVER'S REPLY (3/30/2007)

Letter to Robert Clark from Tax Division (12/2/2004) ................................................15

Letter to Tax Division from Richard Aboussie (7/13/2005)........................................16

Letter to Richard Aboussie from Tax Division (11/16/2005)....................................17

Email to Henry Darmstadter from Richard Gill (3/1/2005).........................................18

Email to Henry Darmstadter from Richard Gill (3/4/2005)........................................19

Letter to Tom Buchanan from FDIC (3/19/2007)......................................................20

Second Declaration of Richard Gill (3/30/2007) ........................................................21



**U.S. Department of Justice**

**Tax Division**

|  | Please reply to: | Civil Trial Section, Western Region |
|---|---|---|
| *Facsimile No. (202) 307-0054* | | *P.O. Box 683* |
| *Trial Attorney: Henry C. Darmstadter* | | *Ben Franklin Station* |
| *Attorney's Direct Line: (202) 307-6481* | | *Washington, D.C. 20044* |

EJO'C:RSW:HCDarmstadt
5-16-3747
CMN 2002103814                                December 2, 2004

**PRIVILEGED SETTLEMENT
COMMUNICATION UNDER
FED.R.EVID. 408**

**Via Facsimile and Regular Mail**

Robert G. Clark
Senior Counsel
FDIC
550 17th St., N.W.
Washington, DC 20429

           Attention: Richard Gill

           Re:    United States v. Federal Deposit Insurance Corporation, et. al
                  <u>Civil Action No. 02-1427 (USDC) D. DC</u>

Dear Mr. Clark:

       We have received your offer, dated November 19, 2004, to compromise the above-entitled case.  Based upon your letter and our recent telephone conversations with Richard Gill, we understand the terms of your offer to be as follows:

   1)    The Federal Deposit Insurance Corporation (hereinafter "FDIC"), as receiver for the Benjamin Franklin Federal Saving and Loan Association (hereinafter "Ben Franklin"), agrees to pay the United States of America the total amount of $47,000,000.00 in consideration of any and all liabilities for income taxes, penalties and interest owed by Ben Franklin for the calendar years 1990 up through and including 2002.

   2)    The $47 million settlement payment will be inclusive of all interest accruing on the income tax liabilities for Ben Franklin for the calendar years 1990 through 2002 up through the date of payment of the settlement amount.

   3)    Upon receipt of the $47 million settlement payment by the United States, all income tax liabilities for Ben Franklin for the calendar years 1990 up through and including 2002 will be determined, resolved and closed.  The United States cannot

assert a further claim for income taxes, penalties or interest against Ben Franklin for the calendar years 1990 through 2002. Ben Franklin (or the FDIC) cannot pursue a claim for refund of income taxes, penalties or interest for the calendar years 1990 through 2002.

4)      The settlement offer does not apply to any income tax liabilities for Ben Franklin for any periods after calendar year 2002. The $47 million settlement payment will not satisfy or resolve any federal tax income liabilities for Ben Franklin for the calendar year 2003 and any period thereafter.

5)      Twenty-five percent of the $47 million settlement payment ($11.75 million) will be treated as constituting the payment of tax with the remaining seventy-five percent ($35.25 million) treated as constituting the payment of interest. No losses for income tax purposes resulting from the $47 million settlement payment can be carried back by Ben Franklin to claim a refund or reduce income tax liabilities for calendar years 2002 and earlier.

6)      This settlement offer is contingent upon and subject to the approval of the FDIC's Board of Directors.

7)      This settlement offer is contingent upon a subsequent good faith determination by the United States District Court for the District of Columbia in connection with a "fairness" or "reasonableness" hearing that will be promptly calendared by the FDIC in the event that this settlement offer is accepted by the United States.

8)      In the event the United States accepts this settlement offer, the FDIC will make the $47 million settlement payment within ten calendar days of the United States District Court determining that the settlement is fair or reasonable.

9)      Within seven calendar days of payment of the $47 million, the United States will dismiss its Complaint in this action. The Complaint will be dismissed with prejudice except as to the First Claim for Relief under 12 U.S.C. § 1821(d)(6) with respect to the United States' claim for any future tax liabilities that are not resolved by this settlement.

If the foregoing comports with your understanding of the offer your have submitted, please initial a copy of this letter and return it to our offices via facsimile.

Your offer will be processed in accordance with our usual procedure. Final action will taken by the Attorney General or an official designated by him for this purpose. We are sure that you understand that unless your receive a notice of acceptance from this office the Department is no way committed to an settlement.

You will be notified as soon as final action is taken on your offer.

If you have any questions or comments, please contact Henry C. Darmstadter  (202) 307-6481 or Carl Hankla at (202) 307-6448.

Sincerely yours,

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By: *Robert S. Watkins*

ROBERT S. WATKINS
Chief, Civil Trial Section,
Western Region

cc:    Thomas Rohall, Esq.
       Sacramento, California

FDIC Ex. 15

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th St. NW, Washington DC  20429                                                    Legal Division

---

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FED. R. EVID. 408**

July 13, 2005

<u>VIA FACSIMILE AND REGULAR MAIL</u>
Henry Darmstadter, Esq.
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

  Re:  <u>United States v. FDIC</u>, Civ. No. 02-1427 (D.D.C.)

Dear Mr. Darmstadter:

  The Federal Deposit Insurance Corporation ("FDIC"), the Internal Revenue Service ("IRS"), the Department of Justice, and certain shareholders of Benj. Franklin Federal Savings & Loan Association ("Benj. Franklin") have engaged in extensive settlement discussions over the past several years.[1]  These settlement discussions were undertaken in order to determine the federal income tax liabilities for Benj. Franklin for the thirteen-year period that begins with the 1990 tax year and ends with the 2002 tax year.   The settlement discussions were undertaken to resolve the case captioned <u>United States v. FDIC, et al.</u>, Civil Action No. 02-1247 (D.D.C.).

  The FDIC has carefully reviewed this matter, after recent discussions with you and after consultation with shareholders' counsel for Benj. Franklin.  As a result, the FDIC is now prepared to offer you the maximum amount and the outer limit of authority approved by the FDIC's Board of Directors to settle the above-captioned case.  The FDIC and counsel represent-ting certain shareholders of Benj. Franklin have reluctantly agreed to this revised offer.

  The FDIC believes that the revised settlement offer set forth below is fair and reasonable and is in the best interest of everyone involved.  Accordingly, the FDIC submits the proposal set forth below to settle all federal tax liabilities, including penalties and interest, for Benj. Franklin for the thirteen-year period beginning January 1, 1990 and including the 2002 tax year that ends on December 31, 2002.

  The FDIC offers the Internal Revenue Service the sum of $48,000,000 to settle all taxes, penalties, and interest that have been assessed or could be assessed against Benj. Franklin for all tax years beginning with the 1990 tax year that ended on December 31, 1990, and concluding with the 2002 tax year that ended on December 31, 2002.  The $48,000,000 settlement payment

---

[1]   The shareholders were invited to participate in the settlement discussions at the request of the FDIC.

FDIC Ex. 16

shall be deemed inclusive of, and in complete settlement of, all federal tax liabilities, penalties, and interest owed by Benj. Franklin with respect to the tax years 1990 through 2002 accruing up to and including the date the settlement payment is made. The settlement offer will resolve and determine to be final and close all federal tax matters for Benj. Franklin for the years beginning in 1990 and ending with the 2002 tax year. The United States cannot assert a further claim for income taxes, penalties or interest against Benj. Franklin or the FDIC for calendar years 1990 through 2002, and Benj. Franklin or the FDIC cannot pursue a claim for refund of income taxes, penalties or interest for the taxable years 1990 through 2002.

The FDIC's settlement offer is contingent on the IRS's agreement that 75 percent of the first $47,000,000 of the settlement proceeds will be treated as a payment of interest, and the remaining 25 percent of the $47,000,000 will be treated as a payment of federal income taxes, for purposes of determining the effect of the payment on tax years after 2002. The remaining $1,000,000 of the settlement payment will be treated solely as a payment of interest, for purposes of determining the effect of the payment on tax years after 2002.

This settlement offer is contingent upon a subsequent good faith determination by a federal district court, through the procedural mechanism of a "fairness" or "reasonableness" hearing, that the settlement is fair and reasonable and in the best interest of everyone, including the FDIC, the IRS, and the shareholders of Benj. Franklin.

The FDIC will make the $48 million settlement payment within ten calendar days of the United States District Court determining that the settlement is fair and reasonable. Within seven calendar days of payment of the $48 million settlement proceeds, the United States will dismiss the Complaint in this action with prejudice. Dismissal of this Complaint will not bar the United States from claiming and/or collecting future tax liabilities that are not resolved by this settlement.

The FDIC would appreciate your prompt response to this settlement offer. If you have any questions or concerns regarding this settlement offer, please feel free to contact me at (202) 736-0335 or Richard Gill at (202) 736-0090.

Sincerely,

Richard T. Aboussie
Associate General Counsel

cc: Don S. Willner, Esq.

2



**U.S. Department of Justice**

**Tax Division**
*Washington, D.C.  20530*

---

EJO'C:JAD:ETPerelmuter
5-11E-12177
2002103814

November 16, 2005

Richard T. Aboussie
Associate General Counsel
Federal Deposit Insurance Corporation
550 17th St., NW
Washington, DC 20429

Re:    *United States v. FDIC, Civ. No. 02-1427 (D.D.C.)*

Dear Mr. Aboussie:

This refers to your amended offer dated July 22, 2005, submitted on behalf of the defendant to compromise the above-entitled case on the following basis:

The FDIC offers to pay the United States the sum of $50,000,000 to settle all taxes, penalties and interest that have been assessed or could be assessed against Benjamin Franklin Savings and Loan Association for the taxable years ending December 31, 1990, through December 31, 2002.

The $50,000,000 settlement payment will be inclusive of all interest accruing on the income tax liabilities for Benjamin Franklin for the calendar years 1990 through 2002 up through the date of payment of the settlement amount.

Upon receipt of the $50,000,000 settlement payment by the United States, all income tax liabilities for Benjamin Franklin for the calendar years 1990 up through and including 2002 will be determined, resolved and closed.  The United States cannot assert a further claim for income taxes, penalties or interest against Benjamin Franklin for the calendar years 1990 through 2002.  Benjamin Franklin (or the FDIC) cannot pursue a claim for refund of income taxes, penalties or interest for the calendar years 1990 through 2002.

The settlement offer does not apply to any income tax liabilities for Benjamin Franklin for any periods after calendar year 2002.  The $50,000,000 settlement payment will not satisfy or resolve any federal income tax liabilities for Benjamin Franklin for the calendar year 2003 and any subsequent period.

75% of the first $47,000,000 of the settlement payment will be treated as a payment of interest, and the remaining 25% of that amount will be treated as payment of federal income taxes for purposes of determining the effect of the payment on tax years after 2002.  The remaining $3,000,000 of the settlement payment will be treated solely as a payment of interest for purposes of determining the effect of the payment on tax years after 2002.

FDIC Ex. 17

The settlement offer is contingent upon and subject to approval by the FDIC's Board of Directors.

The settlement offer is contingent upon a subsequent good faith determination by the United States District Court for the District of Columbia in connection with a "fairness" or "reasonableness" hearing that will be promptly calendered by the FDIC in the event that this settlement offer is accepted by the United States.

The FDIC will make the $50 million settlement payment within 10 calendar days of the date that the United States District Court determines that the settlement is fair or reasonable.

Within seven calendar days of payment of the $50 million, the United States will dismiss its complaint in this action with prejudice. Dismissal of the complaint will not bar the United States from claiming and/or collecting future tax liabilities of Benjamin Franklin Savings and Loan Association that are not resolved by this settlement.

This offer has been accepted on behalf of the Attorney General. The Chief Counsel, Internal Revenue Service, has been notified of this action.

Please deposit with this office within 10 calendar days of the date that the United States District Court determines that the settlement is fair or reasonable a cashier's or certified check payable to the "United States Treasury" bearing the taxpayer's employer identification number.

Enclosed are an original and one copy of a stipulation for dismissal of this case. Please sign the original and return it to this office. When we receive the amount due, we will sign the stipulation and file it with the court, and return a signed copy to you.

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By:

JOHN A. DiCICCO
Chief, Office of Review

FDIC Ex. 17

## Gill, Richard

| | |
|---|---|
| **From:** | Gill, Richard |
| **Sent:** | Tuesday, March 01, 2005 6:12 PM |
| **To:** | 'Henry.C.Darmstadter@usdoj.gov' |
| **Cc:** | Peyster, Richard; Clark, Robert G. |
| **Subject:** | Penalties Against a Receiver |

**Attachments:**    harris.rtf; missouri.rtf

I will be sending you emails this week attaching cases regarding the points we talked about last week regarding the assessment of penalties. We certainly recognize that the IRS has the equitable discretion to waive penalties, and we trust that the FDIC has satisfied these equitable considerations.

I am attaching two Supreme Court cases that deal with the statutory construction as to when penalties can be assessed against a receiver. In United States v. Harris, 177 U.S. 305 (1900), the Court found that because a penalty was in essence a penal statute, a strict construction should be applied. Even though a penalty was to be applied when the entity was open and operating, the Court would not expand liability to include a receiver because the statute did not specifically reference receivers.

In Missouri Pacific Railroad v. Ault, 256 U.S. 554 (1921), the statute actually provided for penalties for back wages to be assessed against a receiver. However, the Court determined that even though the Director General who was operating the railroad on behalf of the President was acting like a common law receiver, he was in essence the Government. The Court reversed the imposition of the penalty against the railroad estate. The Court noted in this connection:

The Government undertook as carrier to observe all existing laws…, but it did not undertake to punish itself for any departure by the imposition upon itself            of fines and penalties or to permit any other sovereignty to punish it. Congress is not to be assumed to have adopted the method of fines paid out of            public funds to insure obedience to the law on the part of the government's railway employees….

The Landmark opinion that I have previously sent you that money paid from judgments against the government will come out of the FSLIC Resolution Fund that is in essence Treasury funded. Similar to the Missouri Railroad case, the government would in effect be assessing penalties against itself.



harris.rtf (83 KB)



missouri.rtf (142 KB)

FDIC Ex. 18

**Gill, Richard**

| | |
|---|---|
| **From:** | Gill, Richard |
| **Sent:** | Friday, March 04, 2005 5:36 PM |
| **To:** | 'Henry.C.Darmstadter@usdoj.gov' |
| **Cc:** | Clark, Robert G.; Peyster, Richard |
| **Subject:** | Three More Cases--Penalty Issue |

**Attachments:**    Bank%20One.rtf; monrad.rtf; schilling.rtf

I am attaching three more cases for your review that provide more good wisdom demonstrating that penalties should be waived in the present case.

The first case is a 1992 case out of the Fifth Circuit and styled as the Bank One case. It relates to the demise of M Bank, a very large failed financial institution in Texas. The district court awarded over $5 million in punitive damages that are similar in nature to penalties. The Fifth Circuit reversed the district court and found that sovereign immunity would act as a bar to recovery against the FDIC. The Court noted in this connection that, "[i]nasmuch as the punitive damages would operate against the United States, and there being no express Congressional waiver of sovereign immunity, we conclude that the district court abused its discretion." Id. at 17. Since penalties would come out of the FSLIC Resolution Fund, a judgment for penalties against the FDIC in the present case would in essence be a judgment against the United States because Treasury funds would be used to satisfy the judgment. The Fifth Circuit cites a number of cases that are consistent with its holding.

The second case is a 1995 decision out of the 9th circuit and is styled as the Monrad case. Judge Haggarty, who was sitting by designation and is handling the Oregon tax case, wrote the opinion for the 9th Circuit. The case involved severance payments and the consequent late payment penalties. He found that late penalties are not appropriate to assert against the FDIC because they are punitive in nature, and "the deterrent effect is minimal and other innocent creditors would be punished by diminishing available assets." Id at 7. While the holding in this case relates to the provisions of state law not being applicable to the FDIC, the logic of his analysis equally applies to the present situation in Benj. Franklin. Judge Haggarty cites several other cases that are consistent with hid holding.

The third case is a 1929 decision issued by the Supreme Court of Oregon. The mater is styled as the Schilling case. The Court found that while punitive damages could be assessed against an open and operating bank, they cannot be assessed against its receiver. The Court noted that "the right of plaintiff to punish innocent stockholders and creditors, by adding to their burdens, not only what he is entitled to as a matter of right, but as a matter of grace, is not tolerable." Id. at 5. This decision acknowledges that innocent stockholders, such as the equity holders of Benj. Franklin, would be adversely and inappropriate affected by the imposition of punitive damages.



Bank%20One.rtf
(693 KB)



monrad.rtf (231 KB)



schilling.rtf (117 KB)

\\

FDIC Ex. 19

**Federal Deposit Insurance Corporation**
1910 Pacific Ave. Dallas TX, 75201                                                        Division of Resolutions and Receiverships

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

March 19, 2007

Thomas M. Buchanan, Esq.
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C.  20006

SUBJECT:     7166–The Benj. Franklin Federal S&LA
             Portland, OR – In Receivership
             <u>NOTICE OF PARTIAL DISALLOWANCE OF CLAIM FOR REIMBURSEMENT OF</u>
             <u>REASONABLE ATTORNEY'S FEES</u>

Dear Mr. Buchanan:

The Receiver of The Benj. Franklin Federal S&LA has reviewed your claim on behalf of Robert Suess against the receivership insofar as it requests reimbursement to Mr. Suess in connection with the payment of reasonable attorney's fees and other expenses in connection with the relatively recent tax settlement.

The Suess supplemental claim is composed of three separate components: 1) $165,081.85 paid to the Winston & Strawn law firm by Suess for legal work relating to the tax case, 2) $11,349.81 paid to the Don Willner law firm by Suess that was not placed into the Shareholder's Litigation Trust Fund, and 3) and $40,167.84 in administrative expenses that Suess expended in his ongoing communications with the shareholders of Benj. Franklin.

After a thorough review of your claim for the reimbursement of reasonable attorney's fees, along with your supporting documentation, the Receiver has determined to allow your claim in part.

The Receiver will allow Mr. Suess to be reimbursed for $165,081.85 that was paid directly by Mr. Suess to the Winston & Strawn law firm for which he was not reimbursed by the Shareholder's Litigation Trust Fund.  The Receiver will also permit Mr. Suess to be reimbursed for reasonable attorney's fees paid to the Don S. Willner law firm that were not reimbursed through the Shareholder's Litigation Trust Fund. These fees amount to $5,849.81.  Accordingly, the Receiver will allow the claim for the reimbursement of reasonable attorney's fees in the amount of $170,931.66.

The Receiver has disallowed the $5,500 that was supposedly placed in the Shareholder's Litigation Trust Fund for which Mr. Suess did not receive reimbursement.  After a review of this matter, Winston & Strawn has not provided the supporting documentation necessary to demonstrate that Mr. Suess was not reimbursed for these payments.  In addition, the approximately $40,100 in fees and expenses that Mr. Suess incurred in communicating with the shareholders of Benj. Franklin do not constitute the reimbursement of reasonable attorney's fees and were not approved as part of the tax settlement. Accordingly, these portions of your claim are denied.  In addition, you have requested that the FDIC pay interest on the approved portion of your claim.  This portion of your claim is denied because the FDIC does not pay interest on this type of claim.

Pursuant to 12 U.S.C. Section 1821 (d) (6), if you do not agree with this disallowance, you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver), in the United States District (or Territorial) Court for the District within which the failed institution's principal place of business was located or the United States District Court for the District of Columbia within 60 days from the date of this notice.

RLS7218

**IF YOU DO NOT FILE A LAWSUIT** (or continue any lawsuit commenced before the appointment of the Receiver) **BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM. 12 U.S.C. Section 1821(d)(6)(B).**

If you have any questions about this letter, please contact the undersigned at (972) 761-2666.

Sincerely,

Glenn Glinsmann
Claims Department

RLS7218

FDIC Ex. 20

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **WINSTON & STRAWN LLP,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DON S. WILLNER & ASSOCIATES, P.C.** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **BLACKWELL SANDERS PEPER MARTIN** | ) | Civil Case No. 06-01120 (EGS) |
| and | ) | |
| **ERNEST M. FLEISCHER** | ) | |
| | ) | [Consolidated with No. 06-01227 |
| Consolidated Plaintiffs, | ) | (EGS) and No. 06-01273 (EGS)] |
| | ) | |
| v. | ) | |
| | ) | |
| **FEDERAL DEPOSIT INSURANCE** | ) | |
| **CORPORATION, AS RECEIVER FOR** | ) | |
| **THE BENJ. FRANKLIN FS&LA,** | ) | |
| **PORTLAND, OREGON** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SECOND DECLARATION OF RICHARD S. GILL

I, Richard S. Gill, being over the age of 21 and competent to testify in this case, hereby make this declaration to correct any technical deficiencies associated with my declaration signed February 22, 2007, to supplement my earlier declaration, and to reply to certain objections made by the Plaintiff Law Firms in their oppositions filed March 15, 2007. Paragraphs 1 through 15 restate paragraphs 1 through 15 of my original declaration, except where noted. Deleted text is denoted by strikethrough and new text is underlined. Paragraphs 16 through 31 are new.

1. I am an attorney employed by the Federal Deposit Insurance Corporation. My current title is Counsel.

1

FDIC Ex. 21

2.  During November 2002, the FDIC-Receiver began an extensive exchange of correspondence and memoranda and convened multiple meetings with the Department of Justice in the course of settlement negotiations concerning *United States v. FDIC*, No. 02-1427 (D.D.C.) (the "Tax Case"). On it own initiative, the FDIC-Receiver invited attorney representatives of the shareholders of the former Benj. Franklin FS&LA to participate in the settlement discussions in an attempt to resolve the Tax Case. During this same time period, the IRS undertook an "audit" of the receivership tax returns for the thirteen year period from 1990 to the end of 2002, which the assigned revenue agent completed in October 2003.

3.  In a letter dated December 16, 2003, FDIC received schedules from the Tax Division of the Department of Justice reflecting the government's conclusions as to the proper amount of income tax liability (without any penalties) owed by the receivership under 11 different assumed tax scenarios. The different scenarios computed taxes based on various assumptions, resulting in a cumulative tax liability, without interest and penalties, ranging from approximately $11 million to $97 million. In a letter dated March 29, 2004, the FDIC received schedules from the Tax Division that provided interest calculations for 12 alternate tax scenarios. I reviewed these scenarios as part of my duties as lead counsel for the FDIC-Receiver. In addition, I participated in discussions regarding the scenarios with Don Willner, attorneys from Winston & Strawn, including Tom Buchanan, Rosemary Stewart, and various representatives of the Department of Justice, the IRS, and the FDIC.

FDIC Ex. 21

4.  Tax Scenario #10 set forth the tax positions taken by the FDIC-Receiver, which the FDIC-Receiver believed accurately calculated the correct amount of tax applicable for the Benj. Franklin receivership.

5.  The attorneys for the shareholders advocated positions that resulted in significantly less tax being owed by the receivership than Scenario #10. These positions were non-starters for the Department of Justice and the IRS and were never accepted as the basis for a settlement. The FDIC-Receiver searched for a compromise that the IRS would accept and would still save substantial funds in the receivership surplus for distribution to the shareholders.

6.  ~~The IRS agreed for settlement purposes to accept Scenario #10 for resolving the disputed tax issues.~~ Scenario #10 included a tax liability of approximately $12 million and interest of approximately ~~$38~~ $35 million~~, if run to the date of settlement~~.

7.  The tax treatment of approximately $1.7 billion in Federal Financial Assistance ("FFA") given to Benj. Franklin at the time of its failure in September 1990 was one of the primary tax issues for resolution. As alleged in the Complaint in the Tax Case, if the FFA were considered taxable income at the time of failure, the tax assessment for 1990 would have consisted of past due taxes of $94 million, penalties of $210 million, and accrued interest on the tax and penalties of $774 million.

8.  IRC § 597 addresses the tax treatment of FFA. In October of 1989, shortly after the enactment of the current § 597 (enacted as part of FIRREA), the IRS had published Notice 89-102 in the Federal Register. Notice 89-102 provided preliminary guidance with regard to the tax treatment of FFA until regulations could be promulgated. The Notice provided that in a Purchase and Assumption type transaction – the type used in the

FDIC Ex. 21

Benj. Franklin failure – FFA is taken into income in the year of closing. Notice 89-102 governed the tax treatment of FFA until proposed regulations were promulgated in April of 1992. Because Benj. Franklin was closed in 1990, the IRS insisted that the Benj. Franklin amended tax return for tax year 1990, though filed on November 19, 1993, be prepared in accordance with Notice 89-102.

9. As a result, under Notice 89-102 tax was calculated on the FFA, creating the bulk of the tax liability that was in dispute. The FDIC-Receiver disputed the appropriateness of Notice 89-102 on the grounds that Congress did not intend for federal income tax to be assessed or collected on FFA.

10. The FDIC considered Scenario #10 to be a favorable compromise because it provided the appropriate tax liability. Scenario #10 reduced the amount of FFA income that would be taxed in a given year, because it was matched in each year against deductible losses, consistent with the final IRC § 597 regulations. In effect, Scenario #10 resulted in the non-taxability of FFA. In addition, Scenario #10 allowed the FDIC to take a deduction for post-insolvency interest expense (explained below), among other things, and waived tax penalties. As a result, the total tax liability for the thirteen year period from 1990 through 2002 was reduced to approximately $12 million, with an additional ~~$38~~ $35 million assessed as interest.

11. In 1990 the Resolution Trust Corporation ("RTC") paid about $2.6 billion in insured deposit liabilities when Benj. Franklin failed. The RTC then had a subrogated insured deposit claim against the Benj. Franklin receivership. By operation of law the FDIC in its corporate capacity ("FDIC-Corporate") succeeded to the rights of the RTC when the RTC ceased to exist on December 31, 1995. The subrogated insured deposit claim is

FDIC Ex. 21

entitled to interest, and the FDIC-Receiver paid almost $258 million in post-insolvency interest on the subrogated insured deposit claim.

12. None of the interest paid to FDIC-Corporate was deducted on the receivership's tax forms.  While all or almost all of the subrogated interest was paid after the tax returns for earlier years were "final," the FDIC-Receiver, without assistance from counsel for the shareholders, took the lead to convinced in convincing the IRS's Tax Division to permit the receivership to reopen the tax returns and receive full credit for the post-insolvency interest payments in 1990, when the deduction could be offset against substantial income. *If this $258 million deduction had not been allowed for the tax year 1990, the entire receivership surplus would have been consumed.*

13. Before the FDIC-Receiver asked this Court to send a notice to the shareholders of Benj. Franklin FS&LA with respect to the settlement of the Tax Case, including the FDIC-Receiver's agreement to pay reasonable attorneys' fees, I advised the participating law firms that the FDIC-Receiver would pay standard hourly rates for the work they performed related to the settlement.  As reflected in FDIC Ex. 4, on or about September 28, 2005, I met with Don Willner and Rosemary Stewart to discuss several issues. During the meeting I told Mr. Willner and Ms. Stewart that it was unlikely that the FDIC-Receiver would agree to pay more than standard hourly rates to the attorneys who participated in the settlement discussions related to the Tax Case.

14. During a telephone conversation in October 2006, Robert Suess told me that he knew the FDIC-Receiver was trying to do the right thing by trying to control fees in this case.

15. The FDIC-Receiver currently is reviewing an additional claim submitted by Winston & Strawn on behalf of Robert Suess for almost $217,000 that was not included in earlier

~~submissions.~~ When I executed my first declaration on February 22, 2007, the FDIC-Receiver was reviewing an additional claim submitted by Winston & Strawn on behalf of Robert Suess for almost $217,000. On March 19, 2007, the FDIC-Receiver approved $170,931.66 of that claim. FDIC Ex. 20 is a true and exact copy of the letter to Tom Buchanan notifying him that the FDIC-Receiver had partially allowed the claim. In addition, I certify that I assisted in preparing FDIC Ex. 20 and that Glenn Glinsmann sent me a signed copy at my request.

16. Beginning in April 2004, I was the FDIC-Receiver's lead attorney in the Tax Case. My involvement included review of documents, legal analysis, preparation of correspondence, memoranda, and pleadings, and meetings and discussions with attorneys from the Department of Justice, the IRS, Winston & Strawn, Willner & Associates, Blackwell Sanders Peper Martin, Spriggs & Hollingsworth, and FDIC in-house attorneys and business representatives.

17. During several settlement meetings the parties extensively discussed IRS Scenario #10, which included a total net tax, without penalties, of about $12 million and interest of about $35 million. A copy of Scenario #10 appears at page 31 of Doc. 20-9 to Winston & Strawn's opposition filed March 22, 2007.

18. I considered Scenario #10 as an acceptable compromise between the position taken by counsel for the shareholders, who argued for little or no tax liability (a non-starter for the IRS, as noted above, and which was never accepted by the United States, as admitted by Mr. Willner at his deposition), and the position taken by the United States, which argued for significantly more tax liability. Thus, the FDIC-Receiver prepared a settlement

6

FDIC Ex. 21

proposal based on Scenario #10 and presented it to counsel for the United States in a letter dated November 19, 2004.

19. By letter dated December 2, 2004, the Tax Division for the Department of Justice responded to the FDIC-Receiver's settlement offer of November 19, 2004. The letter repeated the terms of the FDIC's offer, which in substance provided that the FDIC-Receiver agreed to pay the United States $47 million, with 25% ($11.75 million) treated as constituting the payment of tax and the remaining 75% ($35.25 million) treated as constituting the payment of interest. FDIC Ex. 15 is a true and exact copy of the Tax Division's December 2, 2004, delivered to my attention and maintained in the FDIC's files.

20. By letter dated July 13, 2005, the FDIC-Receiver offered an additional $1 million to be treated as interest and again provided that 75% of the first $47 million would be treated as interest and the remaining 25% of the first $47 million would be treated as a payment of taxes. FDIC Ex. 16 is a true and exact copy of the FDIC's July 13, 2005 letter maintained in the FDIC's files.

21. The IRS ultimately required an additional $3 million in interest to settle the Tax Case, so on July 22, 2005, the FDIC-Receiver amended the offer accordingly.

22. By letter dated November 16, 2005, the Tax Division for the Department of Justice accepted the FDIC-Receiver's amended offer dated July 22, 2005. The United States accepted the FDIC-Receiver's amended offer, which in substance provided that the FDIC-Receiver would pay $50 million to the United States, with 75% of the first $47 million treated as a payment of interest and the remaining 25% of the first $47 million treated as payment of federal income taxes (both of which terms were identical to the

FDIC Ex. 21

FDIC-Receiver's initial offer) and the remaining $3 million treated solely as a payment of interest for purposes of determining the effect of the payment on tax years after 2002. FDIC Ex. 17 is a true and exact copy of the Tax Division's November 16, 2005 letter, delivered to FDIC Associate General Counsel Richard Aboussie and maintained in the FDIC's files.

23. On March 1, 2005, and March 4, 2005, I sent requests to the DOJ/IRS by email asking the IRS to waive penalties against the Benj. Franklin receivership and supplied supporting authority for my request. Following my requests, the DOJ/IRS waived the penalties. If the IRS had not waived the penalties, the receivership surplus would have been eliminated, leaving nothing for distribution to the shareholders. FDIC Ex. 18 and FDIC Ex. 19 are true and exact copies of the emails I sent to IRS attorney Henry Darmstadter requesting the waiver of penalties.

24. I assisted in preparing the Notice to Shareholders submitted to this Court on February 2, 2006, in the Tax Case and sent to the shareholders of Benj. Franklin FS&LA. The Notice to Shareholders is in the Court's records as Ex. A to the Motion for Fairness Hearing filed February 2, 2006. FDIC Ex. 5 is a true and exact copy of the Notice to Shareholders.

25. The Motion for Fairness Hearing and Notice to Shareholders was circulated among counsel for the FDIC-Receiver and counsel for the shareholders. No one expressed any disagreement with the terms or language of those documents.

26. I represented the FDIC-Receiver at the fairness hearing conducted before this Court on May 2, 2007. Counsel for the shareholders appeared at the hearing, including Tom Buchanan and Don Willner, and expressed their support for the terms of the settlement in the Tax Case as reflected in the Notice to Shareholders. The Notice to Shareholders

8

FDIC Ex. 21

stated that the FDIC "has agreed to distribute an amount representing the reasonable fees

and expenses of the shareholders' attorneys and consultants." FDIC Ex. 5 at 5. The

Notice to Shareholders estimated that the amount "will likely be between $1 million and

$2 million." FDIC Ex. 5 at 6. None of the attorneys for the shareholders objected to this

fee estimate.

27. The Notice to Shareholders explicitly stated that "the FDIC invited Mr. Willner and

other attorneys representing Benj. Franklin shareholders to meet with FDIC and

representatives of the IRS and the Department of Justice Tax Division to discuss the

possible compromise or settlement of the tax dispute." Notice at p. 6. None of the

attorneys for the shareholders objected to this statement. In addition, after I became lead

attorney for the FDIC-Receiver, I personally invited counsel for the shareholders to

attend meetings with representatives from the Department of Justice and the IRS.

28. I certify that FDIC Ex. 7 is a true and exact copy of the text of a letter to Rosemary

Stewart from the FDIC that was signed and delivered to Ms. Stewart. In addition, I

certify that I assisted in the preparation of FDIC Ex. 7.

29. I certify that FDIC Ex. 8 is a true and exact copy of a letter to me from Robert Suess.

30. I certify that FDIC Ex. 9 is a true and exact copy of a letter to me from Robert Suess.

31. I certify that FDIC Exs. 10, 11, 12, and 13 are true and exact copies of deposition

transcripts sent to the FDIC by Beta Court Reporting, the court reporting service engaged

to record and transcribe the depositions.

9

FDIC Ex. 21

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 22, 2007.

Richard S. Gill
Counsel
3501 Fairfax Drive, Room VS-E7028
Arlington, VA 22226
703-562-2425 (office)

FDIC Ex. 21