# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WINSTON & STRAWN LLP,**<br><br>and<br><br>**DON S. WILLNER & ASSOCIATES, P.C.**<br><br>and<br><br>**BLACKWELL SANDERS PEPER MARTIN**<br>and<br>**ERNEST M. FLEISCHER**<br><br>  Consolidated Plaintiffs,<br><br>  v.<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR THE BENJ. FRANKLIN FS&LA, PORTLAND, OREGON**<br><br>  Defendant. | Civil Case No. 06-01120 (EGS)<br><br>[Consolidated with No. 06-01227 (EGS) and No. 06-01273 (EGS)] |

**FDIC-RECEIVER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS FOR LEAVE TO FILE SUR-REPLIES FILED BY WINSTON & STRAWN, AND ERNEST FLEISCHER AND BLACKWELL SANDERS PEPER MARTIN**

The FDIC-Receiver opposes the motions for leave to file sur-replies filed by Winston & Strawn on April 10, 2007 (as corrected April 19, 2007), and Ernest Fleischer and Blackwell Sanders Peper Martin ("Blackwell Plaintiffs") April 16, 2007, and requests the Court to deny both motions for failure to meet the standard of this Court for granting leave to file a sur-reply and for lack of merit.

**The Motions Fail To Meet The Standard For Granting Leave To File A Sur-Reply**

The stated purpose of the motions is to correct an alleged material misstatement made by the FDIC-Receiver in its reply. The stated purpose of the motions fails to meet the standard for granting leave to file a sur-reply.

"The standard for granting leave to file a sur-reply is whether the party making the motion would be unable to contest *matters presented to the court for the first time* in the opposing party's reply."[1]  "The matter must be truly new."[2]  If the basis for the motion is "an alleged mischaracterization," rather than a new matter, the motion should be denied.[3]

A side-by-side comparison of pertinent language in the FDIC-Receiver's opening brief and its reply shows that the FDIC-Receiver's reply did not introduce a new matter.

| FDIC Opposition Filed Feb. 22, 2007 | FDIC Reply Filed Mar. 30, 2007 |
|---|---|
| In all, in connection with the settlement of the Tax Case, the FDIC-Receiver paid about $4 million from the receivership surplus for legal fess and expenses related to the Tax Case and other shareholder-related matters.[4] | The FDIC-Receiver has paid over $4 million from the receivership surplus to cover legal fees under the terms of the settlement of the Tax Case. . . . In all, payments for legal fees amount to about 10% of the gross surplus of $40+ million left over for distribution to the shareholders in the wake of the settlement.[5] |

The statement in the FDIC-Receiver's opposition and the statement in its reply are materially indistinguishable. The salient point is that the FDIC-Receiver has paid $4 million from the receivership surplus to cover legal fees and expenses – a point clearly made in the FDIC-Receiver's opening brief.

---

[1] *United States v. Diabetes Treatment Centers of America*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002).
[2] *Id*. at 277.
[3] *Cf. Diabetes Treatment Centers*, 238 F. Supp. at 277.
[4] FDIC Opp. 25-26.  *See also* FDIC Opp. 3.
[5] FDIC Reply 3-4.

The FDIC-Receiver's reply did not introduce a new matter which Winston & Strawn and the Blackwell Plaintiffs did not otherwise have an opportunity to contest in their replies. Thus, the motions filed by Winston & Strawn and the Blackwell Plaintiffs fail to meet the standard in this Court for granting leave to file a sur-reply and should be denied.

In any event, there is nothing for Winston & Strawn and the Blackwell Plaintiffs to contest, as discussed in the next section.

### The Statement That The FDIC-Receiver Paid Over $4 Million From The Receivership Surplus Under The Terms Of The Settlement In The Tax Case Is Not A Material Misstatement

Winston & Strawn alleges that the FDIC-Receiver's statement that it paid $4 million from the receivership surplus to cover legal fees under the terms of the settlement of the Tax Case is a material misstatement.[6] The Blackwell Plaintiffs join with Winston & Strawn to correct the "erroneous statement."[7] But the allegation that the FDIC-Receiver's statement is a material misstatement is itself a glaring error.

The Notice to Shareholders stated in pertinent part:

> After the $50 million tax payment is made, the receivership's current balance of $93.4 million will be reduced to $43.4 million. Additional distributions will then be made by the FDIC-Receiver from the balance in the receivership, which FDIC presently estimates as follows:
>
> * * *
>
> (2) A distribution of approximately $3 million to the Benj. Franklin Shareholders Litigation Fund to reimburse all shareholder contribution to that fund.
>
> * * *
>
> (3) The FDIC also has agreed to distribute an amount representing the reasonable fees and expenses of the shareholders' attorneys and consultants in connection with such persons' work to reduce the $1.2 billion tax liability alleged by the IRS down to the $50 million settlement amount. . . .While the FDIC has not yet determined the

---

[6] Winston & Strawn (Proposed) Sur-Reply Memorandum 1.
[7] Blackwell Plaintiffs' (Proposed) Sur-Reply Memorandum 1.

3

>total amount of legal fees and expenses it will approve pursuant to its receivership claims procedures, the amount will likely be between $1 and $2 million.[8]

Although the exact *amount* of fees was not before the Court when the terms of the tax settlement were presented to the Court and the shareholders, the FDIC's agreement to pay reasonable attorney fees estimated at between $1 million and $2 million to participating lawyers was as much a part of the tax settlement as the FDIC's agreement to pay $3 million to the Benj. Franklin Shareholder Litigation Fund. And as the Court and parties know, the $3 million payment to the litigation fund reimbursed shareholders for contributions used to pay legal fees and expenses, a portion of which covered fees already paid to attorneys for work on the Tax Case.

The statement that the FDIC-Receiver paid over $4 million from the receivership surplus to cover legal fees under the terms of the settlement of the Tax Case is not a material misstatement.[9]

## Conclusion

In sum, the statement in the FDIC-Receiver's reply that it paid over $4 million from the receivership surplus to cover legal fees under the terms of the settlement of the Tax Case is not new and is not a material misstatement.

Thus, the motions for leave to file sur-replies filed by Winston & Strawn and the Blackwell Plaintiffs fail on both legal and factual grounds.

---

[8] FDIC Opp. 3, 25-25; FDIC Ex. 5 at 6-8.

[9] For clarification, however, instead of "over $4 million," the statement should have been "about $4 million," as stated in the FDIC-Receiver's opening brief. Counsel inadvertently included in the payment total the entire $217,000 claim filed by Winston & Strawn on behalf of shareholder Robert Suess, instead of the $170,932 that the FDIC-Receiver paid on that claim. *See* FDIC Reply 4. But counsel's error does not materially change the statement.

4

Therefore, the FDIC-Receiver requests the Court to deny both motions for failure to meet the standard for granting sur-replies in this Court and for lack of merit. A proposed order accompanies this opposition.

                                                  Respectfully submitted,

Date: April 20, 2007                          /s/ Bruce C. Taylor
                                                Bruce C. Taylor
                                                Federal Deposit Insurance Corporation
                                                550 17th Street, NW
                                                Room VS-E7118
                                                Washington, DC 20429
                                                (703) 562-2436 (Telephone)
                                                (703) 562-2478 (Facsimile)

                                                Counsel for Federal Deposit Insurance Corporation,
                                                as Receiver for The Benj. Franklin FS&LA