**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————  )
                                          )
WINSTON & STRAWN LLP, *et al.*,           )
                                          )
              Plaintiffs,                 )
                                          )  Civil Action No. 06-1120(EGS)
              v.                          )
                                          )
FEDERAL DEPOSIT INSURANCE                 )
CORPORATION,                              )
                                          )
              Defendant.                  )
———————————————————  )

**MEMORANDUM OPINION**

In this consolidated case, plaintiffs Winston & Strawn, LLP ("Winston & Strawn"), Don S. Willner and Associates P.C. ("Willner"), Blackwell Sanders Peper Martin ("Blackwell"), and Ernest Fleischer bring suit against the Federal Deposit Insurance Corporation ("FDIC") in its capacity as receiver for the Benjamin Franklin Savings & Loan Association ("Ben. Franklin"), in order to challenge the FDIC's decisions regarding attorney fee payments to plaintiffs.  Currently pending before the Court are cross-motions for summary judgment filed by each of the parties. Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, the Court rejects plaintiffs' arguments for a percentage-based award of attorney fees, but concludes that the record does not contain enough information to fully evaluate the fees awarded by the FDIC, and thus all the motions for summary judgment are **DENIED**.

**BACKGROUND**[1]

Ben. Franklin was placed in receivership in February 1990. The FDIC, created by Congress in 1933 as a body corporate and authorized by statute to act in several different capacities, currently serves as the receiver for Ben. Franklin.  In September 1990, Willner and Winston & Strawn filed a shareholder derivative suit and class action on behalf of the Ben. Franklin shareholders in the U.S. Court of Federal Claims.

During their representation of the Ben. Franklin shareholders, Willner and Winston & Strawn learned that the IRS had asserted a claim against the Ben. Franklin receivership for approximately $1.2 billion in alleged taxes and penalties.  The amount of this claim far exceeded the surplus of the receivership.  The shareholders had an interest in the IRS's claim because any payment to the IRS would have been made out of the receivership's surplus, which would otherwise be distributed to the shareholders.  On July 17, 2002, the Untied States filed suit in this Court against the FDIC, as the Ben. Franklin receiver, seeking more than $1 billion in damages based on this tax claim.  Compl., *United States v. FDIC*, No. 02-1427-EGS (D.D.C.) (hereinafter the "Tax Case").

---

[1]  Unless otherwise indicated, the facts are drawn from the parties' statements of undisputed material facts that were not disputed by an opposing party.  *See* LCvR 56.1.

2

Willner and Winston & Strawn represented the Ben. Franklin shareholders with regard to the Tax Case.  Willner also retained Ernest Fleischer, who worked at Blackwell, to assist on the Tax Case.  In addition, the law firm Spriggs & Hollingsworth helped to represent the shareholders on the matter.  Between 2002 and 2005, Willner, Winston & Strawn, Blackwell (including Fleisher), and Spriggs & Hollingsworth worked with the FDIC and the IRS to negotiate a settlement concerning the alleged tax liability of the Ben. Franklin receivership.  During this negotiation process, the Tax Case was stayed by the Court.  Order, No. 02-1427-EGS (D.D.C. Apr. 22, 2003).  Several Ben. Franklin shareholders initially moved to intervene in the Tax Case, but the motion was denied without prejudice because the case had been stayed.  Order, No. 02-1427-EGS (D.D.C. June 20, 2003).

After two years of settlement negotiations with the IRS, the matter was settled for $50 million.  As part of the settlement, the FDIC agreed to pay attorneys' fees to the attorneys representing the shareholders in the settlement negotiations.  This agreement was memorialized in the notice of proposed settlement that was distributed to the Ben. Franklin shareholders.  This notice described the proposed settlement, informed the shareholders of a fairness hearing scheduled for May 2, 2006, stated why the parties as well as the shareholders' counsel recommended the settlement, and described other proposed

distributions by the receivership in addition to the payment to the IRS.  Notice to Ben. Franklin Shareholders, Def.'s Ex. 5, at 3-8.  Specifically, the notice stated that after the $50 million tax payment was made, the FDIC would make additional distributions, including "an amount representing the reasonable fees and expenses of the shareholders' attorneys and consultants in connection with such persons' work to reduce the $1.2 billion tax liability alleged by the IRS down to the $50 million settlement amount."  *Id.* at 7.  These fees were to "compensate for the time, expense, and expertise that all shareholders' counsel and consultants brought to the Courtroom and to the settlement table in order to achieve a fair tax settlement."  *Id.* It further stated that while "the FDIC has not yet determined the total amount of legal fees and expenses it will approve pursuant to its receivership claims procedures, the amount will likely be between $1 and $2 million."  *Id.* at 7-8.  This notice was mailed to shareholders after it was approved by the Court in 2006.  *See* Order, No. 02-1427-EGS (D.D.C. Mar. 10, 2006).

Prior to distribution of the notice to shareholders, on September 29, 2005, Don Willner and Rosemary Stewart, an attorney for Spriggs & Hollingsworth, met with Richard Gill, an attorney for the FDIC, and discussed, among other things, the issue of attorney's fees.  Gill advised Willner and Stewart that the FDIC's receivership claims division had been negatively

4

disposed to paying fees beyond regular hourly rates.  The same day, Stewart sent an email to Tom Buchanan, counsel for Winston & Strawn, that recounted the meeting and specifically said that "it was clear that [Richard] is trying to prepare us for not getting the full amount of the claims as we filed them." Email to Tom Buchanan from Rosemary Stewart, Sept. 28, 2005, Def.'s Ex. 4. Pursuant to the agreement, Winston & Strawn submitted a claim for attorneys' fees to the FDIC in November 2005.  Willner submitted a claim for attorneys' fees on behalf of itself and other retained individuals, including Mr. Fleischer.  Willner's Ex. 3. It is unclear when Willner's claim was submitted to the FDIC.

On May 2, 2006, following the fairness hearing advertised to the Ben. Franklin shareholders, this Court approved the $50 million settlement of the alleged tax liability of the receivership and payment to the IRS, which left approximately $44 million surplus in the receivership.  Subsequently, the FDIC made the additional distributions from the receivership that were contemplated by the settlement agreement.  On May 17, 2006, the FDIC sent notice that Winston & Strawn's claims would be allowed in part.  Specifically, the FDIC reimbursed Winston & Strawn at their standard hourly billing rate, minus fees already paid by the shareholders, for a total of $400,812.75.  FDIC Notice, Winston & Strawn's Ex. 1, at 1.  On May 19, 2006, the FDIC sent notice that Willner's claims would be allowed in part.

5

Specifically, the FDIC reimbursed Willner for 842.35 hours of work at a rate of $250 per hour, plus $13,984.84 in expenses, minus $101,793.90 already paid Willner by the shareholders, for a total of $122,731.44.  FDIC Notice, Willner's Ex. 5, at 1.  The FDIC allowed payment to Mr. Fleischer in the amount of $89,465.34, plus $13,937.84 in expenses.  *Id.*  The FDIC also approved reimbursement to Spriggs & Hollingsworth in the amount of $131,968.

Winston & Strawn filed suit in this Court on June 20, 2006, claiming that the FDIC should have paid an additional $574,937.99 in attorneys' fees.  Compl., *Winston & Strawn v. FDIC*, No. 06-1120-EGS (D.D.C.).  Willner filed suit in this Court on July 7, 2006, claiming that the FDIC should have paid it $780,000 in total for attorneys' fees, plus an additional $2700 for retained services and an additional $1204.14 for expenses.  Compl., *Willner v. FDIC*, No. 06-1227-EGS (D.D.C.).  Blackwell and Fleischer filed suit in this Court on July 18, 2006, claiming that the FDIC should have paid Fleischer an amount not less than 5% of the total fund retained by the receivership, i.e. at least $2 million.  Compl., *Blackwell v. FDIC*, No. 06-1273-EGS (D.D.C.).[2]  All three cases were consolidated by the Court.  Order, Oct. 3, 2006.  After a brief period of discovery, all parties filed motions for summary judgment.

_____

[2]  Spriggs & Hollingsworth did not appeal their award.

6

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed.  *Shays v. FEC*, 424 F. Supp. 2d 100, 109 (D.D.C. 2006).  In addition, this Court reviews *de novo* claims filed with, and processed by, the FDIC under its administrative claims process.  12 U.S.C. § 1821(d)(6); *Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995).

7

**ANALYSIS**

When acting as a receiver, the FDIC has the power to "determine claims," and "to the extent funds are available, pay creditor claims which are allowed by the receiver." 18 U.S.C. § 1821(d)(3)(A), (10)(A). In addition, under the statute as it existed in 1990, when Ben. Franklin went into receivership, funds are distributed to shareholders after "all depositors, creditors, other claimants, and administrative expenses are paid." 18 U.S.C. § 1821(d)(11)(B) (1990) (as enacted in 1989 and before amendment in 1993). In this case, the FDIC agrees that plaintiffs should be paid attorney fees out of the receivership. The parties primarily contest the amounts of these payments, but to resolve this issue, the Court must first determine the proper source of the FDIC's obligation to pay attorney fees.

**I. Plaintiffs' Motions**

All plaintiffs base their motions on the argument that they should have been compensated with a percentage of the funds left in the receivership after the settlement under the "common fund doctrine." The common fund doctrine, "typically applied in class actions," "allows a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993). Thus, "a litigant or lawyer who

8

recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* The doctrine is an exception to the general rule that each party to litigation bears its own attorneys' fees absent a fee-shifting statute, and is applied by courts awarding attorneys' fees to ensure that the fees are "reasonable." *Id.*

The D.C. Circuit has held that "a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases." *Id.* at 1271. Specifically, common fund fee awards are generally between twenty and thirty percent of the fund. *Id.* at 1272; *see also In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 19 (D.D.C. 2003) (finding a 32% award to be "at the high end of the scale," but comparable to awards in similar cases).

Plaintiffs contend that the common fund doctrine applies to this case and that they should have been awarded a percentage of the remaining receivership fund under *Swedish Hospital*. Plaintiffs' arguments, however, are misconceived. Plaintiffs proceed under the assumption that the Court's role here is to determine appropriate attorney fee awards as it typically would at the conclusion of litigation. For several reasons though, this is not the case. Plaintiffs are not seeking attorney fees in the Tax Case itself. Nor were plaintiffs' clients, the Ben.

Franklin shareholders, even parties in the Tax Case. *See* Order, No. 02-1427-EGS (D.D.C. June 20, 2003) (denying without prejudice shareholders' motion to intervene). Nor are plaintiffs seeking an award from the opposing party in interest in the Tax Case, the United States. Therefore, the Court is not acting here pursuant to its obligation to determine reasonable attorneys' fees for a prevailing party.

Instead, plaintiffs sought payment from the FDIC, and this Court's only purpose is to review the FDIC's payment decisions. The plaintiffs have not relied upon some freestanding duty of the FDIC to reasonably reimburse attorneys who assist in matters related to the receivership. Rather, the FDIC's payments here are part of an overall agreement reached amongst the parties and the United States to settle the Tax Case. *See H.C. Bailey, Jr. v. United States*, 53 Fed. Cl. 251, 254 (Fed. Cl. 2002) (recognizing that the FDIC would pay attorney's fees out of the receivership "pursuant to a contract of sale"). The agreement stated that the FDIC would pay plaintiffs "an amount representing the reasonable fees and expenses."

To be sure, the agreement does not further define "reasonable," and the term must be interpreted in part by reference to the prevailing law concerning "reasonable" attorney fee awards. *See United States v. Grunley Const.*, 433 F. Supp. 2d 104, 110 (D.D.C. 2006) ("Where language has a generally

10

prevailing meaning, it is interpreted in accordance with that meaning unless a different intention is manifested." (citing Restatement 2d. Contracts § 202)). At the very least though, there is definitive evidence in the agreement itself that "reasonable fees" was not meant to be determined by the percentage-of-the-fund method endorsed in *Swedish Hospital*. Because awards under that method are generally between twenty and thirty percent of the fund, and the receivership fund contained approximately $40 million following the IRS payment, reasonable fees under *Swedish Hospital* would be approximately $8-12 million. The settlement agreement stated, however, that the total attorneys' fees would "likely be between $1 and $2 million." If the parties expected the fees to be in that range, they clearly did not contemplate that fees would be calculated with the standard percentage-of-the-fund method. *See NRM Corp. v. Hercules Inc.*, 758 F.2d 676, 681 (D.C. Cir. 1985) ("the judicial task in construing a contract is to give effect to the mutual intentions of the parties"). Therefore, plaintiffs' motions, which solely rely on *Swedish Hospital*'s percentage-of-the-fund method, must be denied.[3]

---

[3]    Winston & Strawn and Blackwell have also filed motions for leave to file a sur-reply in order to quibble with particular statements made in the FDIC's reply memorandum. Because the arguments made in the proposed sur-replies would not affect the Court's analysis herein, these motions are **DENIED** as moot.

## II. Defendant's Motion

In its cross-motion for summary judgment, defendant FDIC contends that its attorney fee payments to the plaintiffs are sufficient. Based on the FDIC's award notices, the FDIC apparently utilized the standard lodestar method for calculating attorney fees. *See Swedish Hosp.*, 1 F.3d at 1266 (stating that the "lodestar" is computed by multiplying the reasonable hours expended by a reasonable hourly rate). In order to grant the FDIC's motion for summary judgment, the Court must conduct a *de novo* review of the FDIC fee determinations. *See Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995). The record before the Court, however, is inadequate to allow such review. The FDIC has not provided any evidence to justify its lodestar calculations for the payments to plaintiffs. Defendant has not explained how it decided the appropriate hourly rate for each plaintiff or how many hours were reasonably expended by each plaintiff. Without any evidentiary justification for the FDIC's calculations, the Court cannot conduct a *de novo* review of the FDIC's payment decisions.

Also problematic is defendant's assumption that the standard lodestar amount would provide "reasonable fees" in this case. In addition to the percentage-of-the-fund and standard lodestar methods, courts have also used the "lodestar/multiplier" approach. This method starts with the lodestar amount, and then

12

adjusts the amount "upward or downward, based on additional factors such as the contingent nature of the case and the quality of the attorneys' work." *Swedish Hosp.*, 1 F.3d at 1266; *see also In re Baan*, 288 F. Supp. 2d at 19-20 (noting that a lodestar multiplier of 2.0 or less "falls well within a range that is fair and reasonable," and collecting cases). Because the settlement agreement only speaks in terms of "reasonable" fees, a multiplier may be appropriate to account for additional factors such as the contingent nature of the case. At this juncture and without any argument to the contrary, the Court cannot reject this possibility. *See Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347, 349 (D.C. Cir. 1997) ("Where a case turns on the construction of a contract, the District Court may decide the matter on summary judgment if the agreement admits of only one reasonable interpretation."). Therefore, defendant's motion must be denied as well.

## CONCLUSION

For the foregoing reasons, all of the motions for summary judgment are **DENIED**. A status hearing will be scheduled to discuss future proceedings in this case. An appropriate Order, which includes further instructions regarding this status hearing, accompanies this Memorandum Opinion.

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **July 13, 2007**

13