**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WINSTON & STRAWN LLP,** <br><br> and <br><br> **DON S WILLNER & ASSOCIATES, P.C.** <br><br> and <br><br> **BLACKWELL SANDERS PEPER MARTIN** <br> and <br> **ERNEST M. FLEISCHER** <br><br>   Consolidated Plaintiffs, <br><br> v. <br><br> **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR THE BENJ. FRANKLIN FS&LA, PORTLAND, OREGON** <br><br>   Defendant. | Civil Case No. 06-01120 (EGS) <br><br> [Consolidated with No. 06-01227 (EGS) and No. 06-01273 (EGS)] |

**BLACKWELL PLAINTIFFS' MOTION FOR AN ORDER CLARIFYING
WHAT EVIDENCE MAY BE PRESENTED AT TRIAL**

This lawsuit is one of three consolidated cases seeking an award of attorneys' fees pursuant to 12 U.S.C. § 1821(d)(6).[1] In this case, Plaintiffs Blackwell Sanders Peper Martin, LLP ("Blackwell") and Ernest M. Fleischer ("Mr. Fleischer") (collectively, the "Blackwell Plaintiffs") claim they are entitled under the common fund doctrine to a reasonable percentage fee from the $44 million common fund which they helped preserve for the shareholders of The Benj. Franklin Savings and Loan Association ("Benj"). Defendant Federal Deposit Insurance

---

[1] The case filed by Winston and Strawn LLP has been settled, while the cases filed by Don S. Willner & Associates, P.C. and the Blackwell Plaintiffs remain pending.

Corporation ("FDIC") opposes the claim, arguing that the Blackwell Plaintiffs are entitled only to fees based on a standard hourly rate (i.e., the standard lodestar method), without any compensation for such things as the risks associated with the contingent nature of the representation or the time delay in receiving payment.

The Blackwell Plaintiffs previously moved the Court to grant partial summary judgment finding that they are entitled as a matter of law to a reasonable percentage fee from the common fund which was preserved. The FDIC filed a cross-motion for summary judgment which acknowledged that the Blackwell Plaintiffs are entitled to a reasonable fee for their services but argued that it should be calculated based on standard hourly rates. This Court denied both motions in a Memorandum Opinion dated July 13, 2007. The Blackwell Plaintiffs file the instant motion in order to seek clarification with respect to whether the denial of the summary judgment motions was intended by this Court to limit the evidence and arguments that may be presented at trial and, if that is what was intended, to request that the Court reconsider that position.[2]

## DISCUSSION

In the Complaint, the Blackwell Plaintiffs allege that they are entitled to a reasonable percentage fee from the $44 million common fund which was preserved for the shareholders of Benj. as a result of the Blackwell Plaintiffs' efforts in securing a favorable settlement of the IRS lawsuit against Benj. for $1.2 billion in federal income taxes and related interest and penalties. In ruling the summary judgment motions, this Court noted that the D.C. Circuit has held that the percentage-of-the-fund method is the appropriate mechanism for calculating a reasonable fee in common fund cases. Memorandum Opinion at 9. This Court further noted that the FDIC has

---

[2] At the status hearing held on March 22, 2008, the Court invited the parties to file summary judgment motions consistent with the lodestar method of calculating attorney fees. Because the Blackwell Plaintiffs do not believe summary judgment is appropriate based on their particular factual situation, they have elected not to pursue summary judgment on their claims.

KC-1604774-3     2

acknowledged its obligation to pay a reasonable fee, and that a reasonable fee should ordinarily be interpreted by reference to the prevailing law. *Id.* at 10. Nevertheless, the Court found that the parties' "agreement" which "was memorialized in the notice of proposed settlement" of the IRS lawsuit demonstrates that the reasonable fees in this case were not meant to be determined by the usual percentage-of-the-fund method. *Id.* at 3, 11. Specifically, the FDIC had inserted the following paragraph in a proposed shareholder notice ("Notice") that it had drafted and attached as an exhibit to its motion for a fairness hearing to approve the settlement of the IRS lawsuit:

> The FDIC also has agreed to distribute an amount representing the reasonable fees and expenses of the shareholders' attorneys and consultants in connection with such persons' work to reduce the $1.2 billion tax liability alleged by the IRS down to the $50 million settlement amount. This will compensate for the time, expense, and expertise that all shareholders' counsel and consultants brought to the Courtroom and to the settlement table in order to achieve a fair tax settlement. While the FDIC has not yet determined the total amount of legal fees and expenses it will approve pursuant to its receivership claims procedures, the amount will likely be between $1 and $2 million.

Notice, attached as Exhibit A, at pp. 7-8. Based on the FDIC's unilateral estimate that the amount of legal fees it will approve "will likely be between $1 and $2 million", and this Court's assumption that this reflected the agreement of all the parties, this Court reasoned that the percentage-of-the-fund method did not apply:

> At the very least though, there is definitive evidence in the agreement itself that "reasonable fees" was not meant to be determined by the percentage-of-the-fund method endorsed in *Swedish Hospital*. Because awards under that method are generally between twenty and thirty percent of the fund, and the receivership fund contained approximately $40 million following the IRS payment, reasonable fees under *Swedish Hospital* would be approximately $8-12 million. The settlement agreement stated, however, that the total attorneys' fees would "likely be between $1 and $2 million." If the parties expected the fees to be in that range, they clearly did not contemplate that fees would be calculated with the standard percentage-of-the-fund method. . . . Therefore, plaintiffs' motions, which solely rely on *Swedish Hospital's* percentage-of-the-fund method, must be denied.

Memorandum Opinion at 11 (legal citations omitted).

The Court concluded that the FDIC's cross motion for summary should also be denied because the standard lodestar method advocated by the FDIC is not the only alternative to the percentage-of-the-fund method. Courts have also used the lodestar/multiplier approach, which adjusts the standard lodestar amount upward or downward based on additional factors such as the contingent nature of the case and quality of the attorneys' work. *Id.* at 12-13. The Court concluded that the lodestar/multiplier method might apply under the facts presented and thus denied the FDIC's motion for summary judgment. *Id.* at 13.

### A. The Denial of Summary Judgment Ordinarily Does Not Constitute the Law of the Case and Does Not Affect the Evidence and Arguments That Can Be Presented At Trial.

"A court's denial of summary judgment does not preclude the party from raising at trial any of the issues considered in the summary judgment proceeding." 73 Am. Jur. 2d Summary Judgment § 62 (2001). An order denying summary judgment:

> is merely a judge's determination that genuine issues of material fact exist. It is not a judgment, and does not foreclose trial on the issues on which summary judgment was sought. It does not settle or even tentatively decide anything about the merits of the claim. Denial of summary judgment is strictly a pretrial order that decides only one thing-that the case should go to trial, i.e., that the claim remains pending for trial.

*Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed. Cir. 1986) (citations omitted). *See Lind v. UPS, Inc.*, 254 F.3d 1281, 1284 (11th Cir. 2001) (quoting *Glaros*); *Paquin v. Federal Natl. Mortgage Assn.*, 20 F. Supp.2d 94, 96 (D.D.C. 1998) (denial of summary judgment motion does not constitute the "law of the case").

This Court's conclusion that the percentage-of-the-fund method does not apply was based solely on the facts presented at the summary judgment stage. The Court denied the motions for summary judgment. Therefore, under prevailing law, the Court is not bound by its conclusion at

trial, but may reach a different determination if the evidence presented at trial convinces it that the percentage-of-the-fund method does indeed apply.

The Blackwell Plaintiffs therefore intend to present evidence and argument at trial in an effort to convince this Court that the usual percentage-of-the-fund method applies to this case.[3] Specifically, the Court's prior conclusions were based on the mistaken factual assumption that the language in the Notice purports to limit total fees to between $1 and 2 million, and that the FDIC's estimate constitutes an agreement of the parties, or at least is a summary of the terms of an agreement by the parties. No party – not even the FDIC – took those positions in the summary judgment briefing.[4]

First, this Court incorrectly found that the Notice contains the parties' estimate that total recoverable fees will be between $1 and $2 million. As discussed below, this was a statement by the FDIC of the amount it expected to approve, not what the parties agreed was reasonable or appropriate. More important, the FDIC appended the following footnote to the sentence containing its $1 to $2 million estimate:

> The FDIC's receivership claims process provides an opportunity for judicial appeal if a claimant is not satisfied with a claim determination made by the FDIC.

Notice, at p. 8 (attached hereto as Exhibit A).

---

[3] Under the common fund doctrine, the proper measure of attorney fees in cases where a fund is preserved for the benefit of its owners is a reasonable percentage of that fund. *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993). Here, as was demonstrated in the summary judgment papers, the Blackwell Plaintiffs have presented evidence that they preserved funds for the shareholders of Benj. by helping to secure a favorable resolution of the IRS lawsuit. While the FDIC may argue, as it did at the summary judgment stage, that the efforts of the Blackwell Plaintiffs did not result in the preservation of the fund, that is a question of fact to be decided at trial.

[4] At most, the FDIC argued that the language in the Notice evidenced the FDIC's unilateral intent to likely approve between $1 and 2 million. The FDIC's statement of what it believes is a reasonable fee is not binding on the other parties and most certainly does not alter the method by which the amount of reasonable fees is determined.

This language, drafted by the FDIC, made it clear that although the FDIC estimated that it would approve fees between $1 to $2 million, the claimants could appeal that determination if they are not satisfied with the amount. In other words, the claimants are free to seek any amount above $1 to $2 million and a court is free to award such an amount if it agrees it is a reasonable fee under the prevailing law. Accordingly, the language of the Notice did not alter the method by which the amount of reasonable fees is to be determined.

In any event, the language in the Notice was merely the FDIC's estimate of what it thought would be a reasonable fee. None of the claimants agreed to the estimate. The Notice was prepared solely by the FDIC without any input from the Blackwell Plaintiffs. The Blackwell Plaintiffs did not write any portion of the Notice, did not file it or join in it, and did not see it until after the FDIC filed it. *See* Fleischer Decl., attached as Exhibit B, at ¶¶ 4-7. It did not constitute a contract between the parties, or a summary of the terms of an agreement by the parties. The $1 to $2 million estimate was solely a creation of the FDIC. It is a statement of the FDIC's position, not an agreement. The FDIC's statement of the amount it expects to approve is not binding on the Blackwell Plaintiffs any more than a statement by the Blackwell Plaintiffs of the amount it expects to seek is binding on the FDIC. Neither statement can alter the method by which the Court determines a reasonable fee.

Indeed, the FDIC acknowledges in its summary judgment motion that it knew when it drafted the Notice that the claimants were taking a contrary position. *See* FDIC's SOF ¶ 4; FDIC Exhibit 4 (reciting September 2005 acknowledgment by FDIC's counsel that the amount claimed as reasonable fees is beyond the amount the FDIC is likely to approve). The FDIC knew the fee claims were not limited to its $1 to $2 million estimate, but rather the claimants believed a higher fee was due under prevailing law. Again, this shows that there was merely a difference in

opinion over what fee is reasonable. The claimants' statements prior to the Notice that they are entitled to a higher amount no more affects the method of determining the reasonable fee than does the FDIC's statement in the Notice of the amount it is likely to approve.

Had the FDIC taken the position in its summary judgment briefing that its unilateral estimates in the Notice are in reality binding estimates by the parties, then the Blackwell Plaintiffs would have responded with contrary evidence, including:

- Correspondence from Mr. Willner to counsel for the FDIC reciting an agreement that the FDIC will pay "the reasonable fees and expenses of shareholders' counsel and consultants" but saying nothing about any $1 to $2 million estimate. *See* Exhibit C. A response letter from FDIC counsel states that he concurs with Mr. Willner's correspondence. *See* Exhibit D. Therefore, it appears the agreement was to pay the reasonable fees, period. There was nothing about estimated fees. It appears that after the parties agreed to the payment of reasonable fees, the FDIC came up with the $1 to $2 million estimate on its own. It was not part of the deal.

- The Blackwell Plaintiffs did not see the Notice before it was filed, were not consulted regarding its contents, and took no part in its preparation. The Blackwell Plaintiffs did not know the Notice would contain the FDIC's estimate of the amount of fees it would likely approve and did not even know that such an estimate existed. (Fleischer Decl., Ex. B, at ¶ 4).

- The Blackwell Plaintiffs did not agree to any specific amount of fees or the range of fees that would be approved. The Blackwell Plaintiffs did not agree that the total fees and expenses to which all counsel and consultants would be entitled would be between $1 and $2 million. (*Id.* at ¶ 5). We anticipate the evidence at trial will also be that none of the other claimants agreed that fees would be limited to between $1 and $2 million.

- The Blackwell Plaintiffs never had any discussions with the FDIC about what portion of the fee claim would be approved. The Blackwell Plaintiffs were not aware that the FDIC estimated that it would approve only $1 to $2 million in fees until they received a copy of the Notice as part of this litigation. (*Id.* at ¶ 6).

- The Blackwell Plaintiffs had no discussions with the FDIC regarding the amount of fees that were considered to be reasonable. Mr. Fleischer expected that a federal judge would decide the amount of fees that were reasonable. (*Id.* at ¶ 7).

For all of these reasons, the Blackwell Plaintiffs believe that this Court erroneously found that the language of the Notice definitively establishes the parties' intent that the reasonable fees

in this case were not meant to be determined by the usual percentage-of-the-fund method. At the very least, a question of fact exists as to whether the estimate provided by the FDIC was agreed to by the Blackwell Plaintiffs or any other claimant or is otherwise binding on them. Under the previously cited authorities, the Blackwell Plaintiffs should be permitted at trial to present evidence and argument for the application of the percentage-of-the-fund method.

      **B.**     **In the Event This Court Intended Its Summary Judgment Ruling to Restrict the Evidence and Arguments That Can Be Presented At Trial, This Court Should Reconsider That Position.**

As previously stated, a denial of summary judgment does not preclude the parties from raising at trial any of the issues considered in the summary judgment proceeding. Nevertheless, this Court's Memorandum Opinion might be interpreted as foreclosing the Blackwell Plaintiffs from arguing at trial that the percentage-of-the-fund method applies, or from presenting the evidence necessary to prove up each of the factors relevant for assessing fees under that method. If that is what was intended, then the Blackwell Plaintiffs request that the Court reconsider its position for all the reasons stated above.

A district court has the inherent power to revisit and modify its earlier rulings at any time prior to final judgment. *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997); *Bailey v. Potter*, 498 F. Supp.2d 320, 321 (D.D.C. 2007). "This authority does not rest in any particular federal rule, but emanates from the inherent power of the court." *United States v. Rezaq*, 899 F. Supp. 697, 701 (D.D.C. 1995). The district judge may therefore alter or amend its prior rulings in the exercise of its discretion and under the "as justice requires" standard. *Id.*; *MK v. Tenet*, 196 F. Supp.2d 8, 12 (D.D.C. 2001).

Here, the Court erroneously assumed that the FDIC's estimate of the likely amount of fees it would approve was in reality an estimate by all the parties, and as a result reached the

incorrect conclusion that the parties did not intend for the percentage-of-the-fund method to apply to this case. The Court should revisit its prior ruling and permit the parties to present evidence and argument at trial in an effort to convince the Court that the percentage-of-the-fund method applies. This is not a jury case so there is no possibility of prejudice or tainting the jury. Moreover, such evidence would likely need to be presented anyway as part of an offer of proof to preserve the issues for appeal. The Court can disregard the evidence if it concludes that its prior ruling was correct even under the facts presented at trial.

## **CONCLUSION**

The Blackwell Plaintiffs are not asking at this time that the Court reverse its summary judgment denial and rule that the percentage-of-the-fund method applies, only that it keep an open mind at trial and permit the Blackwell Plaintiffs to attempt to convince it that the percentage-of-the-fund method applies to this case. The Blackwell Plaintiffs thus file this motion in order to clarify whether it will be permitted to present such evidence and argument at trial.

WHEREFORE the Blackwell Plaintiffs respectfully request that this Court issue an Order clarifying whether they will be permitted to present evidence and argument at trial in an effort to convince this Court that the percentage-of-the-fund method applies to the facts of this case.

Dated June 23, 2008                Respectfully submitted,

    /s/ William F. Demarest
William F. Demarest, Jr. (D.C. Bar No. 266312)
Husch Blackwell Sanders LLP
750 17th Street NW, Suite 1000
Washington, D.C. 20006-3901
(202) 378-2300

and

>James Borthwick  - Pro Hac Vice
>Michael C. Phillips     MO #40581
>Husch Blackwell Sanders LLP
>4801 Main Street, Suite 1000
>Kansas City, Missouri  64112
>(816) 983-8000
>(816) 983-8080 (Facsimile)
>
>*Attorneys for the Blackwell Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of June, 2008, I electronically filed the above and foregoing document with the clerk of the court, by using the CM/ECF system which will send a notice of electronic filing to all parties.


   /s/ William F. Demarest