## EXHIBIT A

## NOTICE TO ALL CURRENT SHAREHOLDERS OF BENJ. FRANKLIN FEDERAL SAVINGS & LOAN ASSOCIATION

### Notice of Proposed Settlement and Fairness Hearing

This Notice is being sent to all shareholders of The Benj. Franklin Federal Savings & Loan Association, Portland, Oregon (hereafter "Benj. Franklin"), pursuant to the Order of Judge Emmet G. Sullivan of the U.S. District Court for the District of Columbia. It advises you about a proposed settlement of a tax collection lawsuit, which, if approved by the Court, will indirectly result in a cash distribution to all shareholders of Benj. Franklin.

### A Fairness Hearing will be held on _____, 2006, to Discuss and Consider the Proposed Tax Settlement

### Background Information

Judge Sullivan is presiding over a tax collection suit pending in the U.S. District Court for the District of Columbia captioned *United States v. Federal Deposit Insurance Corporation and Federal Deposit Insurance Corporation, in its capacity as receiver for the Benjamin Franklin Federal Savings & Loan Association, et al.*, Civil Action No. 02-1427. In this suit, the plaintiff United States represents the Internal Revenue Service ("IRS"), which alleged that the Benj. Franklin receivership owed more than $1.2 billion of federal income taxes, interest, and penalties for tax years 1990 to 2002. The defendant in the suit is the Federal Deposit Insurance Corporation ("FDIC"), which is the current receiver of Benj. Franklin.

At the present time, the FDIC as receiver of Benj. Franklin reports that the receivership has a surplus of approximately $93.4 million. If the IRS were to prevail in its litigation alleging that the receivership owes about $1.2 billion in taxes, the entire surplus would of course be depleted. However, the parties to the pending tax collection suit have tentatively agreed to a

EXHIBIT A

proposed settlement of the tax claim for a payment of $50 million to the IRS, which settlement would leave a significant surplus in the Benj. Franklin receivership. After the proposed tax settlement and other claims and expenses are paid, the remaining surplus funds will be available for a *pro rata* cash distribution to all Benj. Franklin shareholders who can demonstrate their ownership of Benj. Franklin common stock. The purpose of this Notice is to describe the proposed tax settlement terms as well as to outline the other distributions that the FDIC-Receiver proposes to make from the surplus before distributing the balance to the current Benj. Franklin shareholders.

If you disagree with the proposed settlement of the tax claim, you have the right to tell the Court about your disagreement or your concern. If you agree with the proposed settlement, you may also advise the Court of this fact. A form is attached at the end of this Notice, which you may use to communicate with the Court and/or to ask for an opportunity to participate directly at the Fairness Hearing.

**The Fairness Hearing**

The hearing will be held at 1:00 p.m. (Eastern Time) on _____, 2006, in the Courtroom of Federal Judge Emmet G. Sullivan, which is located in the E. Barrett Prettyman U.S. Courthouse at 333 Constitution Avenue, N.W., Washington, D.C. 20001. A simultaneous session will be held at 10:00 a.m. (Pacific Time) at the U.S. District Courthouse in Portland, Oregon, with a telephone speaker-phone connection to Judge Sullivan's hearing in Washington, D.C.

You are welcome to attend either of these hearings. If you wish to speak at the hearing or if you wish to have an attorney speak for you, you must fill out the attached form and return it as soon as possible to the U.S. District Court in Washington, D.C. A photocopy of the same form

also must be sent to the FDIC attorney whose name appears at the end of that form. Only shareholders who have returned this form at least one week (*i.e.,* seven calendar days) before the scheduled date for the fairness hearing will be permitted to speak at the hearing although you are free to attend the hearing (at either location) to observe the proceedings whether or not you have returned the form.

**The Proposed Settlement**

Under the proposed settlement of the tax collection suit, the FDIC as receiver of Benj. Franklin would pay $50 million for the taxes allegedly owed by the receivership for calendar years 1990 through 2002, which will resolve and close each of those disputed tax years. Seventy-five percent of the first $47 million of the settlement payment will be treated as a payment of interest on the alleged tax liability and the remaining 25% of that amount will be treated as payment of federal income taxes for purposes of determining the effect of the payment on tax years after 2002. The remaining $3 million of the settlement payment will be treated solely as a payment of interest for purposes of determining the effect of the payment on tax years after 2002.

The higher interest allocation (which will apply to $38.25 million of the total $50 million) will be particularly useful to the Benj. Franklin receivership if additional funds come into the receivership over the next few years. This is because the agreed-upon *interest* payment will generate a tax deduction that can offset that same amount of future income to the receivership and thus causes it to pay less taxes in those future years. One possible source of future income to the Benj. Franklin receivership is a $35 million damage award made to Benj. Franklin in 2002 by the U.S. Court of Federal Claims ("CFC") based on the CFC's finding that the government breached contracts made with the institution in the 1980s. (This CFC case is

3

often described as Benj. Franklin's "*Winstar*-related case.") The $35 million damage award has not yet been finalized by the CFC or appealed to the U.S. Court of Appeals for the Federal Circuit due to the pending tax dispute between the IRS and the Benj. Franklin receivership.[1] And, it is estimated that even if the award is finalized this year and subsequently affirmed or adjusted by the Federal Circuit, such damages are *years away from being paid* and thus the CFC damages are not directly relevant to the tax settlement or the other proposed distributions that the FDIC-Receiver will make if the tax settlement is approved by the U.S. District Court (D.C.).

## Why the Parties will Recommend this Settlement for Approval by the Court

The parties (and the shareholders' counsel who participated in the settlement discussions) agree that the Benj. Franklin receivership did owe income taxes to the IRS because it has been a profitable receivership for a number of years, and receiverships are taxed like other corporations if they are profitable. But the parties have disagreed about the amount of taxes owed due to disagreements about several complex issues, including whether certain federal financial assistance ("FFA") provided to the receivership by a special government fund should have been treated as income or as a loan to the receivership. The effect of this disagreement about the FFA involves hundreds of millions of dollars of difference in the tax calculations for the Benj. Franklin receivership.[2] Both sides have legal support for their positions and it is unknown how

---

[1] If the original $1.2 billion tax claim had been found to be correct, the CFC would likely withdraw the $35 million damage award because the Benj. Franklin shareholders would no longer have a claim to the funds in the Benj. Franklin receivership because the entire surplus would be owed to the IRS. Previous caselaw in other *Winstar*-related cases has confirmed that it is inappropriate for such cases to continue where the damages would all be consumed in satisfying receivership debts owed to the government itself.

[2] Other areas of disagreement between the parties (and the shareholders) include how the Alternative Minimum Tax should have been applied, how the 1990 taxes should have been calculated, whether the bad debt reserve was handled correctly, which statute of limitations would apply, and whether interest and penalties would be appropriate. Any one of these legal issues might have formed the basis of a lengthy lawsuit, but in this case, all of these issues are present in the one pending suit.

this and the other contested issues would be resolved if they were tried in the U.S. District Court and then appealed to the appropriate U.S. Court of Appeals. It is clear that such litigation would take several more years to reach a conclusion.

Any lawsuit involves risk, time, and expense. And the settlement of a lawsuit takes all of these things into account in deciding that the possible result of a trial and an appeal is not worth the additional time, expense, and risk, particularly where the outcome would be risky to both sides. Here, the parties have decided that a settlement payment of $50 million to the IRS is both fair and adequate, as well as being a reasonable way to resolve the many complicated legal issues involved here and to avoid the extremely high costs of additional litigation.

The $50 million compromise amount was the result of considerable negotiation and give-and-take by the U.S. Department of Justice's Tax Division, the IRS, the FDIC, and counsel to various Benj. Franklin shareholders. The 75%-interest and 25%-tax allocations also were the product of the parties' negotiations. The bottom-line result is that the amount claimed by the IRS has been reduced from more than $1.2 billion to $50 million in the proposed settlement. If this proposed compromise is not found to be fair and reasonable by the Court, the tax litigation may in all likelihood resume and take several more years before it is resolved, with the ultimate outcome being uncertain.

**The Support of Benj. Franklin Shareholders Counsel**

Don S. Willner is the Portland, Oregon attorney who represents shareholders of Benj. Franklin in the above-described CFC litigation, which is a shareholders' derivative action. Mr. Willner also filed a motion to intervene in the tax litigation pending before Judge Sullivan in the U.S. District Court (D.C.) in order to argue that the Benj. Franklin shareholders were the real parties in interest because the claimed tax would have eliminated any hope of the shareholders'

5

receiving a cash distribution from the Benj. Franklin receivership estate.[3] Mr. Willner also filed a still-pending suit against the FDIC-Receiver in the U.S. District Court in Portland, Oregon, seeking to enjoin FDIC from making the disputed tax payment to the IRS. After these actions were filed by Mr. Willner and recognizing the interest of the Benj. Franklin shareholders, the FDIC invited Mr. Willner and other attorneys representing Benj. Franklin shareholders to meet with the FDIC and representatives of the IRS and the Department of Justice Tax Division to discuss the possible compromise or settlement of the tax dispute. Mr. Willner and the other shareholders' counsel and consultants participated actively in these discussions over many months, and Mr. Willner and other shareholders counsel now support the proposed tax settlement described herein and will speak in favor of the proposed tax settlement at the Fairness Hearing.

**Other Proposed Distributions from the Receivership**

After the $50 million tax payment is made, the receivership's current balance of $93.4 million will be reduced to $43.4 million.[4] Additional distributions will then be made by the FDIC-Receiver from the balance in the receivership, which FDIC presently estimates as follows:

(1)  The creation of a reserve for future years' receivership and administrative expenses and other legal contingencies that must be maintained by the FDIC as Receiver for Benj. Franklin until it "closes" its receivership. It is estimated that this reserve will be approximately $1 million, but the FDIC may be able to reduce this amount prior to the FDIC-Receiver's distribution of the remaining surplus to the Benj. Franklin shareholders.

---

[3] It is unknown whether the Benj. Franklin shareholders would be permitted to intervene in the pending tax suit if it does not settle. Thus, there is no guarantee that the shareholders' various tax arguments would be made to the Court.

[4] The receivership surplus will continue to earn interest until the surplus funds are distributed.

(2) A distribution of approximately $3 million to the Benj. Franklin Shareholders Litigation Fund to reimburse all shareholder contributions to that fund. The FDIC has approved this payment pursuant to the statutory receivership claims procedures administered by the FDIC. This $3 million distribution will reimburse 4200 shareholders of Benj. Franklin who made contributions to the Litigation Fund over the last 15 years for the CFC litigation and for the tax-related litigation in Portland, Oregon and Washington, DC (as described above).[5] The FDIC also is considering the Litigation Fund's request that interest be paid on the $3 million principal amount. If interest is approved, it could amount to as much as an additional $2 to $3 million to be distributed to the Litigation Fund contributors.

(3) The FDIC also has agreed to distribute an amount representing the reasonable fees and expenses of the shareholders' attorneys and consultants in connection with such persons' work to reduce the $1.2 billion tax liability alleged by the IRS down to the $50 million settlement amount. This will compensate for the time, expense, and expertise that all shareholders' counsel and consultants brought to the Courtroom and to the settlement table in order to achieve a fair tax settlement. While the FDIC has not yet determined the total amount of legal fees and expenses it will

---

[5] Don S. Willner, the attorney for the previously described group of derivative shareholders, is the sole trustee of the Benj. Franklin Shareholders Litigation Fund.

approve pursuant to its receivership claims procedures, the amount will likely be between $1 and $2 million.[6]

After distribution of these payments, the resulting balance (estimated to be between $34.4 million and $38.4 million of "surplus" funds) will be distributed by the FDIC-Receiver to the current shareholders of Benj. Franklin who submit proof of their stock ownership in the manner specified by FDIC.[7] If the settlement described herein is approved by the Court, you will be notified by the FDIC-Receiver at a later time about how to prove your ownership of Benj. Franklin shares in order to receive your *pro rata* share of the receivership surplus available for distribution.

**Conclusion**

For all of the reasons discussed above, the FDIC as receiver of Benj. Franklin and shareholders' counsel, including Mr. Willner, recommend that the proposed tax settlement be found to be fair, adequate, and reasonable. If you wish to advise the Court about your views on the proposed settlement, please use the attached form to do so.

**IF YOU DO NOT SEND THE ATTACHED FORM, THE COURT WILL ASSUME THAT YOU DO NOT OBJECT TO THE PROPOSED SETTLEMENT DESCRIBED IN THIS NOTICE.**

---

[6] The FDIC's receivership claims process provides an opportunity for judicial appeal if a claimant is not satisfied with a claim determination made by the FDIC.

[7] The amount of the surplus cannot be estimated with precision at this time due to the unresolved claims still pending with the FDIC as described in paragraphs 2 and 3 above. However, the FDIC expects to determine these amounts prior to the distribution of the surplus to shareholders and such other distributions do not affect in any way the proposed tax settlement payment to be addressed at the fairness hearing.

To:    Clerk of the Court
U.S. District Court for the
    District of Columbia
United States Courthouse
333 Constitution Avenue, N.W.
Washington, DC 20001

    Re:    *United States v. FDIC*
           Civil Action No. 02-1427 (EGS)

1. My name is _____
                     (please print)

2. I own _____ shares of the common stock of Benj. Franklin Federal Savings and Loan Association, Portland, Oregon ("Benj. Franklin").

3. I have read the Notice to All Shareholders of Benj. Franklin explaining the proposed settlement of the tax claim in *United States v. Federal Deposit Insurance Corporation, et al.*, Civil Action No. 02-1427, as well as explaining the other proposed distributions to be made from the receivership surplus of Benj. Franklin.

4. After reading the Notice (check one box):

       I agree with the proposed tax settlement, or

       I disagree with the proposed tax settlement.

5. My additional views on this proposed settlement are as follows (attach extra pages if necessary):

   _____
   _____
   _____
   _____
   _____
   _____

6. In addition, I would like to participate at the Fairness Hearing by (check one box):

   ☐ Appearing in person at the Fairness Hearing at the U.S. District Court in the District of Columbia to advise the Court of my views

   ☐ Sending my attorney (fill in attorney's name and address):

   _____
   to participate on my behalf at the Fairness Hearing at the U.S. District Court in the District of Columbia

9

    ☐    Appearing in person at the telephonic hook-up to the hearing to be held at the U.S. District Courthouse in Portland, Oregon, to advise the Court of my views.

    ☐    Sending my attorney (fill in attorney's name and address):

_____

to participate on my behalf at the telephonic hook-up to the hearing to be held at the U.S. District Courthouse in Portland, Oregon.

    ☐    I will not appear at the hearing, but I would like the Court to consider my written views noted above in Paragraph No. 5.

7. I state under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Date:_____

_____
Print Name

_____
Signature

_____
Street Address

_____
City, State, and Zip Code

_____
Telephone No.

Send the original of this form to the Clerk of the Court at the address shown above. A copy of this completed form also must be sent to the following FDIC counsel, who will provide copies to the plaintiff United States and to designated counsel for the Benj. Franklin shareholders:

    Richard S. Gill
    Federal Deposit Insurance Corporation
    Legal Division
    3501 Fairfax Drive
    Arlington, Virginia 22226-3500

368210v1