

**U.S. Department of Justice**

**EXHIBIT K**

**Tax Division**

*Please reply to:   Civil Trial Section, Western Region*
*P.O. Box 683*
*Ben Franklin Station*
*Washington, D.C.  20044*

*Facsimile No. (202) 307-0054*
*Trial Attorney: Henry C. Darmstadter*
*Attorney's Direct Line: (202) 307-6481*

EJO'C:RSW:HCDarmstadt
5-11E-12177
CMN 2002103814

November 1, 2002

**PRIVILEGED SETTLEMENT
COMMUNICATION UNDER
FED.R.EVID. 408**

**Via Federal Express**

Don S. Willner
Willner & Hooton, LLP
111 S.W. Naito Parkway
Portland, Oregon 97204-3500

Re:   United States v. Federal Deposit Insurance Company, et. al
      <u>Civil Action No. 02-1427 (USDC) D. DC</u>

Dear Mr. Willner:

As agreed, in connection with the upcoming informal settlement conference currently scheduled for November 19, 2002 at the FDIC's headquarters in Washington, DC, enclosed please find provisional schedules indicating the IRS's preliminary calculations of the income tax liabilities for the Benjamin Franklin Federal Savings & Loan Association, in receivership. The tax liabilities are calculated under three different scenarios with respect to the taxation of Federal Financial Assistance (FFA).

Schedule #1 reflects Ben Franklin's income tax liability based upon the tax on the FFA being determined in accordance with Notice 89-102. Schedule #2 reflects Ben Franklin's income tax liability based upon the tax on the FFA being determined in accordance with the proposed and final regulations promulgated under IRC § 597. Schedule #3 reflects Ben Franklin's income tax liability based upon the tax on the FFA being excluded entirely from the tax computation. Detailed interest calculations up through October 31, 2002 are attached to each Schedule. The amounts shown on the Schedules do not include any of the assessed penalties, and the interest computations do not include any interest on the assessed penalties.

Please understand that these computations are tentative and subject to revision. The pertinent

- 2 -

figures are derived from returns and amended returns filed by the RTC/FDIC as receiver. These returns have not been fully examined or audited by the IRS, and, of course, should this matter proceed through litigation, the United States retains the right to amend these figures as circumstances warrant. Furthermore, the United States considers both this correspondence and the attached Schedules to constitute statements made in connection with compromise or settlement negotiations and, therefore, privileged as provided under Rule 408 of the Federal Rule of Evidence.

In addition, please recognize that we do not consider your clients to be the taxpayers in this case or to have standing to intervene in this action. This material is being directly sent to you at the behest of the FDIC and in accordance with the Consent to Disclose Tax Information Form executed by the FDIC in this matter.

In accordance with our understanding of the mutual exchange agreement regarding the upcoming settlement conference, you will be providing us with Ben Franklin Shareholders' estimation of the subject tax liabilities on November 4, 2002, by sending a copy of your calculations by both facsimile machine and overnight mail. The United States and the FDIC have agreed to hand deliver to each other on November 4, 2002 each party's respective calculations as to the subject tax liabilities.

We appreciate your assistance in this matter and look forward to receiving the Shareholders' analysis as to the correct amount of the subject tax liabilities. If you have any questions or comments, please telephone me at (202) 307-6481 or Charles M. Duffy at (202) 307-6406.

Sincerely yours,

HENRY C. DARMSTADTER
Trial Attorney
Civil Trial Section, Western Region

Enclosure-as stated

cc:    Thomas Rohall, Esq.
       Sacramento, California

       Catherine Topping, Esq.
       FDIC
       Washington, DC

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th St. NW Washington DC  20429

Legal Division

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FED. R. EVID. 408**

November 1, 2002

**VIA Messenger on 11-4-02**
Henry Darmstadter
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

**VIA OVERNIGHT MAIL on 11-1-02**
Don S. Willner, Esq
Willner & Hooton, LLP
111 SW Naito Parkway, Suite 303
Portland, Oregon 97204-3500

Re:    *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Hank and Don:

This letter and accompanying 5 exhibits are provided by the FDIC for the sole purpose of facilitating settlement and compromise discussions by and among the FDIC, the United States, and the *Suess* shareholders, regarding claims arising out of *United States v. FDIC*, Civil Action No. 02-1427, (D. D.C.) and *Suess v. FDIC*, Civil Action No. 02-807, (D. Ore.) (collectively the "Pending Actions"). The attached exhibits consist of the following spreadsheets or schedules relating to the federal income tax liability of the FDIC as Receiver for Benj. Franklin Savings and Loan Association ("FDIC") during the years 1990 through 2001:

- Exh. 1.  Tax liability for each year as indicated on the tax returns as *actually filed (governed by 89-102)*;

- Exh. 2.  Federal Income Tax Calculation *under Notice 89-102*, but correcting for interest expense and the overstatement of deduction for federal financial assistance ("FFA") repayments in 1995;

- Exh. 3.  Estimate of interest due on the recalculated tax amount in Exhibit 2;

- Exh. 4.  Summary of interest expense (for interest accrued and paid to receivership claimants) ; and

- Exh. 5.  Detail of interest expense accrued.

The materials are confidential and subject to both Federal Rule of Evidence 408 and the §6103 Consent to Disclose entered into between the FDIC and the United States. The FDIC specifically reserves all rights, claims, and defenses it has or may have in the Pending Actions

Letter to Messrs. Darmstadter and Willner
November 1, 2002
Page 2 of 3

and in the United States Court of Claims litigation known as *Suess v. United States*, Civil No. 90-981 C (the "goodwill" action).

We begin with the mutual understanding that the purpose of our settlement discussions and information exchange is to arrive at the correct tax amount that may be owed by the FDIC as receiver of Benj. Franklin.[1] This understanding is also founded on the existing Inter-Agency Agreement executed by the IRS and RTC which states, in pertinent part in the Preamble, that the parties agree that "it is in the best interest of the IRS, RTC, and the United States to resolve tax matters administratively between the IRS and the RTC in a manner that conserves government resources, carries out statutory responsibilities of the RTC and promotes fair administration of the tax laws."

FDIC tax personnel conducted a review of the Benj. Franklin receivership tax returns for 1990 through 2001. They identified two material issues with the earlier returns: a deduction for interest expense (for interest accrued and paid to receivership claimants) in the amount of $257,923,388 that was simply not utilized in any of the tax years; and the deduction for FFA repayments in the amount of $195,073,386 was identified to be overstated in 1995. These issues are discussed in more detail below.

Some of the original tax liability in 1990 arose from other non-FFA income consisting of accrued interest on escrowed funds.[2] A corresponding interest expense was in fact calculated but was not deducted. Basic tax principles should allow the Receivership to take the deduction for interest expense (for interest accrued and paid to receivership claimants) beginning in 1990.

The overstatement of the deduction for FFA in 1995 arose from a computational error. Specifically, under Notice 89-102, the amount of cumulative repayments of FFA cannot exceed the FFA income recorded in 1990. In 1995, the repayment amount recorded had exceeded the FFA income, and thus was overstated. The 1995 tax return was never amended to correct for the overstated FFA deduction. Instead, the NOL carryforward was simply reduced.

---

[1] Of course, the IRS may, as part of a compromise and settlement, permit a taxpayer to reopen a tax return. *See generally* IRC § 6511.

[2] "Escrowed funds" were an interest-bearing asset of the Benj. Franklin receivership that arose from the resolution of the Benj. Franklin failure in 1990. At resolution, the RTC in its Corporate capacity would typically enter into a Purchase & Assumption agreement with an insured depository institution for the purchase of certain assets and assumption of the insured deposit liabilities of the failed institution. Typically, this would result in a net wire transaction to/from the acquirer from/to the Corporation for the net amount of assumed liabilities, assets purchased, and premium paid by/to the acquirer. The receivership recognizes a liability for the deposit claims subrogated by the Corporation, while the Corporation would reflect a corresponding receivable. In turn, the receivership would recognize an "escrowed funds" receivable for the amount of assets sold and premium received, whereas the Corporation would reflect a corresponding liability. Interest is accrued on the "escrowed funds" due from Corporate until the outstanding principal and interest amounts are fully satisfied.

Letter to Messrs. Darmstadter and Willner
November 1, 2002
Page 3 of 3

If the foregoing corrections are made, then the tax liability indicated under the tax returns for years 1990 through 2001, as governed by Notice 89-102, would have been significantly reduced from $94 million to $12.3 million. *See* FDIC Exh. 2. We calculate that the latter tax amount, with interest calculated through September 30, 2002, using rates for large corporation underpayments, equals approximately $39 million.[3] *See* FDIC Exh. 3.

The foregoing is not intended to preclude consideration of any other scenarios which would also result in a reduced tax liability (e.g., such as under IRC § 597). We look forward to meeting with you on November 19th.

Very truly yours,

Catherine Topping

cc:     Hugo A. Zia

---

[3] The interest rates were compiled from the table provided by the *BNA TAX Library*.

# WILLNER & HOOTON, LLP

**FILE**

ATTORNEYS
Don S. Willner*
Donald M. Hooton
Constance Wold
*Licensed in Oregon and Washington

ATTORNEYS AT LAW
SUITE 303
111 S.W. NAITO PARKWAY
PORTLAND, OREGON 97204-3500
TELEPHONE (503) 228-1000
FAX (503) 228-4201

PARALEGAL
Leslie Martinez-Muñoz

STAFF
Carl V. Anderson
Sharon Albert Davis
Gloria A. Martinez
Krystle McKinnon

Se habla español

November 4, 2002

## VIA FACSIMILE AND OVERNIGHT DELIVERY

Henry C. Darmstadter
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Washington DC 20044-0683

Robert Clark
Senior Counsel
FDIC
550 17th St., NW
Washington DC 20429

Charles M. Duffy
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Washington DC 20044-0683

Catherine Topping
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Carl Hankla
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Washington DC 20044-0683

Hugo Zia
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Re:    ***United States v. Federal Deposit Insurance Company, et al***
       Civil Action No. 02-1427 (USDC D.DC)
       ***Suess et al v. FDIC***
       CV 02-807 HA (USDC D.OR)

Dear Hank, Charles, Carl, Robert, Catherine & Hugo:

    Here is the Statement of Benj. Franklin Shareholders, Proposed Intervenors-Defendants, of November 4, 2002. This has been prepared with the assistance of other attorneys, CPAs, and clients. I will overnight express another copy of the statement plus the enclosures.

Page 2
November 4, 2002


We look forward to reviewing your material, and to our meeting November 19th.

Sincerely yours,

WILLNER & HOOTON, LLP


Don S. Willner

DSW:eva
Enclosure

**FDIC**
Federal Deposit Insurance Corporation
550 17th St. NW Washington DC, 20429

Legal Division

FOR SETTLEMENT PURPOSES ONLY
SUBJECT TO FED. R. EVID. 408

February 7, 2003

VIA FACSIMILE

Don S. Willner, Esq.
Willner & Hooton, LLP
621 SW Morrison Street
Portland, Oregon 97204-3500

VIA FACSIMILE

Michael Moetell, Esq.
Winston & Strawn
1400 L Street
Washington D.C. 20005

Re:    *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Don and Michael:

This letter is provided by the FDIC in response to questions raised in a letter from Michael Moetell dated January 11, 2003, with respect to the federal income tax liability of the FDIC as Receiver for Benj. Franklin Federal Savings and Loan Association.  The enclosed materials are subject to the conditions set forth in the FDIC's November 4, 2002 proposal.

1.    A copy of Benj. Franklin's 1989 tax return was delivered to Winston & Strawn.

2.    RTC account number 1773 – "Funds Borrowed From Corporation (Pre-Closing)".

As we explained in our December 12, 2002 letter, the FHLB borrowings would have been a liability of the Conservatorship, and any amounts remaining to be paid upon termination of the Conservatorship would have been paid at the inception of the Receivership as required under 12 CFR § 360.2. The pro forma balance sheet for the Receivership shows $503 million in advances owed to RTC Corporate as of the September 7, 1990 inception date of the Receivership. The pro forma balance sheet does not indicate whether the $503 million liability was due in whole or part to the FHLB borrowings.

We do know, however, that the Receiver repaid the $503 million loan and associated $23.6 million interest to RTC Corporate by August 1991, 11 months after the establishment of the Receivership. The interest paid by the Receiver on these loans would, typically, have been based on the average of the prior months' overnight funds rate at the U.S. Treasury. See schedule (Exh. 1) attached to our December 12, 2002 letter listing those accounts reporting the loan principal and interest amounts due and paid.

Letter to Messrs. Willner and Moetell
February 7, 2003
Page 2

Pursuant to the receivership payment distribution scheme, 12 CFR § 360.3, the repayment of the $503 million in loans was treated as an administrative claim of the Receiver, which is a Priority 1 claim (§ 360.3(a)). Likewise, the $23.6 million in interest paid on the $503 million was also paid as an administrative expense of the Receiver. These claim amounts were paid before both the subrogated deposit claim, which is Priority 6, and the post-insolvency interest on the subrogated deposit claim, which is Priority 7.

Under the receivership payment distribution scheme, the Receiver's repayment of the $503 million loan and $23.6 million in interest was a separate transaction from, and unrelated to, the Receiver's payment of the $2.6 billion subrogated claim amount reflected in the post-insolvency interest schedule (FDIC Exh. IV). Accordingly, the $23.6 million in interest was not included in the post-insolvency interest schedule.

The $1.7 B of federal financial assistance ("FFA"), in a purchase and assumption transaction such as this one, is the amount of the claims funded by the RTC ($2.65 BB + $503 MM ≈ $3.1 B) less the amounts of the assets purchased by the acquirer ($911 MM + $503MM = $1.4 B). Thus, the $503MM is included in the calculation of FFA.

3. Dates and amounts of cash payments made to Bank of America for put-back assets.

It is our understanding that this question was raised and answered in the deposition of Robert J. Ferrer, FDIC, taken by the plaintiffs in the goodwill case on August 21, 1998. The transcript and exhibits should be responsive.

4. "[G]ain on sale of FHLB stock" of $23,289,874.

We do not have workpapers regarding the calculation of the $23 million gain and the amount of FHLB stock dividends received by Benj. Franklin. However, the amount appears to be correct based upon our review of the second amended tax return for 1988, which claims an exclusion for the dividends at page 2 of the return.

5. We were unable to determine the meaning of your question. The figures referenced in the question do not relate to FFA.

Please call me if you have further questions.

Yours truly,

Catherine Topping
Counsel

cc: Hugo Zia



U.S. Departn   of Justice

**Tax Division**

Please reply to:   Civil Trial Section, Western Region
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044

Facsimile No. (202) 307-0054
Trial Attorney: Henry C. Darmstadter
Attorney's Direct Line: (202) 307-6481

EJO'C:RSW:HCDarmstadt
5-11E-12177
CMN 2002103814

February 13, 2004

**PRIVILEGED SETTLEMENT
COMMUNICATION UNDER
FED.R.EVID. 408**

Robert Clark
Catherine Topping
Hugo Zia
FDIC
550 17th St., N.W.
Wahington, DC 20429

Re:    United States v. Federal Deposit Insurance Company, et. al
Civil Action No. 02-1427 (USDC) D. DC

Dear Mr. Clark, Ms. Topping and Mr. Zia:

In furtherance to our settlement discussions, enclosed please find documents pertaining to interest computations for the various assumed tax scenarios which were set forth in our previous correspondence of December 16, 2003. In order to better assist you in understanding and verifying the accuracy of these calculations, we are including many of the background or supporting documents that were generated by the IRS in connection with determining the interest amounts.

The IRS is currently preparing an Excel spreadsheet that will summarize these interest calculations. Please note that we are <u>not</u> at this time including the interest calculations for Scenario Number 11 (FFA excluded and interest accrual in 1990) because the IRS has recently advised us that its computations under this scenario may be in error (Bates Stamp Nos. 247-257). We hope to have corrected computations for Scenario No. 11 in the very near future. In addition, the IRS has included interest calculations for a Scenario No. 12. Scenario No. 12 assumes that FFA is taxed under IRS Notice 89-102 and that interest on the FFA does not accrue until 1995.

As we have discussed, the total amount of interest under some of the scenarios may appear to be disproportionate to the amount of the tax liability. This is the result of the affect of a NOL carrybacks on the interest calculations. Under IRC § 6601(d), reduction or satisfaction of a tax liability by way of the application of a carryback does not stop the accrual of interest on the

- 2 -

underpayment until the time of the application of the carryback. Section 6601(d) specifically provides that a reduction in tax by reason of a carryback shall not affect the computation of interest on the underpayment for the period ending with the filing date for the year in which the NOL carryback arises.

As with the prior tax schedules, once you have had an opportunity to review and analyze these interest calculations, it may be useful to hold a meeting and/or conference call to discuss the matter further. In the meantime, if you have any questions or comments, please telephone me at (202) 307-6481 or Carl Hankla at (202) 307-6448.

Sincerely yours,

HENRY C. DARMSTADTER
Trial Attorney
Civil Trial Section, Western Region

Enclosure-as stated

cc:    Thomas Rohall, Esq.
       Sacramento, California
       (without enclosure)

       Don S. Willner, Esq.
       Portland, Oregon
       (Via Federal Express)

       Rosemary Stewart, Esq.
       Spriggs & Hollingsworth
       1350 "I" Street, N.W.
       9th Floor
       Washington, D.C. 20005

       Michael C. Moetell, Esq.
       Winston & Strawn
       1400 L Street, N.W.
       Washington, D.C. 20005-3502



# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

ATTORNEYS AT LAW
SUITE 1415 THE AMERICAN BANK BUILDING
621 S.W. MORRISON STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 228-4000
FAX (503) 273-8842

March 17, 2003

Robert Clark
Senior Counsel
FDIC
550 17th St., NW
Washington DC 20429

Catherine Topping
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Hugo Zia
Counsel
FDIC
550 17th St., NW
Washington DC 20429

**CONFIDENTIAL**
**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FRE RULE 408**

Re:   *United States v. Federal Deposit Insurance Corporation, et al.*
      Civil Action No. 02-1427 (USDC D.DC)
      *Suess et al. v. FDIC*
      CV 02-807 HA (USDC D.OR)

Dear Bob, Catherine & Hugo:

In late January, I talked by telephone with Catherine and Hank Darmstadter. I said that we would be preparing a further memorandum demonstrating that the amount of the loans from the RTC to the Benj. Franklin receivership are not includible in the receivership's taxable income. A copy of that memorandum is enclosed. For your convenience, I have enclosed in the same binder copies of (i) our prior memorandum on this issue and (ii) our memorandum on the tax treatment of the Benj. goodwill.

CC-1606574

Page 2
March 17, 2003

We believe it would be beneficial to see whether the Benj. shareholders and the FDIC can develop a common position on the tax treatment of the RTC advances. We therefore ask that you not share or discuss the enclosed memorandum with the Department of Justice or the Internal Revenue Service at this time. Instead, we would like to meet with you at your earliest convenience to obtain your reaction to the memorandum and discuss whether we can reach an agreed position on the tax treatment of the RTC advances. This meeting would be preparatory to a subsequent meeting among DOJ, IRS, FDIC and the Benj. shareholders to consider whether all the issues in the case can be settled.

At our meeting with you, we would propose to discuss three topics: (i) the tax treatment of the loans from the RTC, (ii) the tax treatment of the Benj. goodwill, and (iii) several outstanding factual issues, which are outlined below.

With regard to the goodwill issue, we thank Catherine for her letter of the 13th, which we have reviewed. We agree that the tax returns filed by Benj. from 1982 forward, as well as other documents prepared by Benj., consistently treated the Equitable acquisition as a non-taxable reorganization. However, for the reasons set out in our memorandum, we believe that position was incorrect as a matter of law in light of the Supreme Court's *Paulsen* decision in 1985. Moreover, the position taken by Benj. in those years does not control the treatment of the goodwill on the 1990 return. It is well settled that a mistake of law on a prior return does not prevent a taxpayer from applying the law correctly in a subsequent year.

In this regard, we have not been able to locate any explanation of the legal reasoning underlying Benj.'s assertion that the Equitable acquisition remained nontaxable even after the *Paulsen* decision. We would be interested to know whether in your review of the files you have found any indication why Benj.'s management and their advisers believed that the Supreme Court's holding in that case was not relevant to the Equitable acquisition. We also would be interested to discuss your views of the legal arguments that we raised in our December 6, 2002 submission and your views on the correct post-1985 treatment of the Equitable acquisition.

Catherine also raised in her letter the question of whether prior tax years of Benj. or of the selling Equitable shareholders should be reopened. We believe the statute of limitations prevents the reopening of any such years. We would agree, however, that the amount of the net operating loss carryover and any other carryovers into Benj.'s 1990 year would need to be redetermined to reflect the treatment of the Equitable transaction as taxable.

At our meeting, we would also like to discuss with you several factual issues which should be resolved before any meeting with DOJ and the IRS. These issues are as follows:

Page 3
March 17, 2003

1. We understand that Benj. incurred very substantial prepayment penalties when it repaid its FHLB advances in 1990. We believe these penalties would have been deductible for federal income tax purposes, but we have not been able to identify where, if at all, such a deduction was claimed on the 1990 return. We are interested in any information you have regarding the amount of the penalties and whether a deduction for these penalties was in fact claimed.

2. We would like to discuss further with your tax staff the amounts of, and rationale for, the adjustments on the 1990 return to put the Benj. receivership, an accrual basis taxpayer, on a cash basis.

3. We would like to discuss further with your tax staff the reconciliation of the gain on FHLB stock sold in 1990 with the amounts of FHLB stock dividends excluded from income in prior years. We understand from your last letter that you are satisfied that these amounts can be reconciled, but we have not been able to do so on the basis of the information available to us.

4. We would like to discuss further with your tax staff whether $113,095,275 or $139,026,176 is the applicable NOL from 1989 to be deducted in the 1990 Benj. Franklin return. If you believe the $139 million figure is the correct one, it would be useful to be able to review a reconciliation of that figure with the NOL reported on the 1989 return.

Once we have had the opportunity to meet with you and your staff, we think it would be useful to schedule a meeting with DOJ and IRS regarding the three main issues we have raised, namely (1) that there should be a deduction for the interest paid on the RTC advances; (2) that the Benj. goodwill should have had a taxable basis resulting in a loss when the institution was seized; and (3) that the RTC advances cannot appropriately be taxable income, as well as any other issues that need to be addressed at that time.

I will phone Catherine in the near future to schedule a time for a meeting.

Sincerely yours,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

DSW:eva
Enclosures

KC- 900379

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th St. NW Washington DC, 20429

Legal Division

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FED. R. EVID. 408**

April 9, 2003

<u>VIA FACSIMILE  (202) 682-1639</u>

Don S. Willner, Esq.
Willner & Hooton, LLP
621 SW Morrison Street

Portland, Oregon 97204-3500

  Re: *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Don:

  This letter is provided by the FDIC in response to some of the questions raised in a letter from Don Willner dated March 17, 2003, with respect to the federal income tax liability of the FDIC as Receiver for Benj. Franklin Federal Savings and Loan Association.

1. Amount of prepayment penalties with respect to repayment of the FHLB advances and whether such penalties, if any, were deducted on the 1990 tax return.

  To the best of our knowledge, to the extent that any penalties were paid by the Conservatorship, they would likely have been "expensed" and correspondingly deducted. We do not have extensive Conservatorship records so we have been unable to determine the precise amounts involved.

2. We plan on discussing this item with you at the meeting tomorrow.

3. Reconciliation of the gain on FHLB stock with dividends excluded from income in prior years.

  We responded to this question in our letter dated February 7, 2003. FDIC staff refers you to the 1990 amended return, where the items were properly accounted for.

4. We plan on reviewing our reconciliation of the 1989/1990 NOLs for you at the meeting tomorrow.

Letter to Don Winner
April 9, 2003
Page 2


Yours truly,

Catherine Topping
Counsel


cc: Hugo Zia

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

ATTORNEYS AT LAW
SUITE 1415 THE AMERICAN BANK BUILDING
621 S.W. MORRISON STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 228-4000
FAX (503) 273-8842

May 2, 2003

**VIA FACSIMILE**

Robert Clark
Senior Counsel
FDIC
550 17th St., NW
Washington DC 20429

Catherine Topping
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Hugo Zia
Counsel
FDIC
550 17th St., NW
Washington DC 20429

Re:     ***United States v. Federal Deposit Insurance Company, et al***
        Civil Action No. 02 1427 (USDC D.DC)
        ***Suess et al v. FDIC***
        CV 02 807 HA (USDC D.OR)

Dear Bob, Catherine & Hugo:

I am enclosing our spreadsheets and accompanying backup material. In our last telephone call you said that you were reviewing your position on FFA and might be submitting something new to DOJ.

Page 2
May 2, 2003


1.      The amounts of the prepayment charges paid by the Benj. Franklin receivership in 1990 when it prepaid the FHLB advances and how those amounts were treated for tax purposes.

2.      Why the Benj. Franklin receivership as an accrual basis taxpayer reported $69,308,085 "Income Recognized On Conversion to Cash Basis—RTC LAS Adjustment" in the receivership's 1990 tax return on line 10 as "Other Income".

3.      The effect on net operating loss carryovers of FHLB stock dividends that had been included in taxable income.

You have also asked me for citations supporting our position that penalties and interest should be abated. I call your attention to the case of *Professional Asset Management, Inc. v. Penn Square Bank, N.A.*, 566 F Supp 134 (W.D. Okla. 1993). I assume that other similar cases can be found.

Similarly, interest on any tax deficiency should be computed at the same rate as was paid on the Benj. Franklin receivership funds for the time periods that those funds were held by the United States Treasury.


Sincerely yours,

DON S. WILLNER & ASSOCIATES, PC


Don S. Willner


DSW:eva
Enclosures

**FDIC**

.· ral Deposit Insurance Corporation
5ι   , St. NW Washington DC, 20429

Legal Division

---

## FOR SETTLEMENT PURPOSES ONLY
## SUBJECT TO FED. R. EVID. 408

July 30, 2003

VIA FASCMILE AND REGULAR MAIL

Henry Darmstadter
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

Re:   *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Hank:

This letter responds to your request that the FDIC summarize its arguments concerning the alternative minimum tax ("AMT") liability indicated under the Benj. Franklin receivership tax returns.

The FDIC's examination of the tax returns at issue shows that if the receivership's federal income tax liability is calculated under Notice 89-102, and corrections are allowed for a missed deduction for post insolvency interest, among other things, and the penalties are waived, then the aggregate tax due for 1990 is substantially reduced. The AMT, however, for 1990 would be close to *two times* the amount of the regular tax, including interest accruals. If the receivership's federal income tax liability is calculated under the IRC § 597 Regulations used to calculate tax on federal financial assistance ("FFA"), the aggregate tax due for 1990 is also substantially reduced. In computing tax under this method, however, the AMT limitation on the use of net operating losses (IRC § 56(d)) does not apply to income attributable to FFA. *See* § 1.597-4(g)(3).

The FDIC is willing to consider as a compromise to calculate the tax, if any, under Notice 89-102, notwithstanding our long held concerns regarding the IRS's construction of the Notice and tax on FFA in light of the clear legislative history of § 597 to the contrary. We are doubtful, however, that our board would consider a further compromise that would allow an AMT assessment for 1990, for the reasons below.

We think that it would be manifestly unfair for the IRS to impose the AMT (IRC §§ 55-59) against the Benj. Franklin receivership. The arguments against any *regular* tax assessed under Notice 89-102 apply with equal force to the AMT. Indeed, the AMT result highlights our

Letter to Mr. Darmstadter
July 30, 2003
Page 2

long held concerns with the IRS's construction of Notice 89-102 and tax on FFA (*e.g.* that
Congress never intended that federal income taxes relating to the receipt of FFA be assessed or
collected.)

Similarly, we fail to see how applying the AMT to the Benj. Franklin receivership serves
the purpose of the AMT provisions, under any construction. The congressional intent behind the
provisions was to ensure that no taxpayer with substantial income would avoid paying federal
income tax through the use of exclusions, deductions, or credits. Unlike an ordinary taxpayer,
the FDIC's operation of failed financial institution receiverships is governed by statute. For
example, the FDIC is required to "maximize the net present value return from the sale or
disposition of a failed financial institution's assets." 12 U.S.C. § 1821(d)(13)(E). Surely
Congress did not intend for the receiver to be deprived of deductions in these circumstances.
Finally, the imposition of the AMT in this situation would not serve the goals of the Inter
Agency Agreement that calls for the resolution of tax matters in a manner that promotes "fair
administration of the tax laws."

In light of the foregoing issues relating to Notice 89-102, we are continuing to explore the
receivership's tax liability, if any, calculated under the final IRC § 597 Regulations. You have
raised the issue of whether the Benj. Franklin receivership followed the "election" procedures
contained in the regulations. It is our understanding that the Benj. Franklin receivership was
ineligible for such an election due to the effective dates of the proposed and final regulations that
were issued under IRC §597 (as amended by FIRREA). We have outlined the timeline below.

IRS Notice 89-102, which was issued on October 2, 1989, was the IRS's initial guidance
with respect to the tax treatment of post-FIRREA FFA. The Notice applied to all FFA received
or accrued on or after May 10, 1989, until replaced by final regulations.

Proposed regulations were issued on April 27, 1992, but they governed the tax treatment
of FFA on a *prospective* basis. (Benj. Franklin was placed in receivership on September 7,
1990.) Moreover, the Benj. Franklin receivership was foreclosed from amending the 1990 tax
return under the retroactive election provision in the proposed regulations, which stated that:

(3) *Procedural Rules.* An institution or consolidated group makes the election provided
by this paragraph (c) by attaching a written statement to, and including it as part of, the
taxpayer's or consolidated group's first annual income tax return filed [*insert the date
final regulations under section 597 are filed with the Federal Register.*]

Prop. Reg § 1.597-7(c)(3). The final regulations were not issued by the IRS until December
1995, over a year *after* the 1990 tax return was closed.

The final regulations affected only bank or thrift institution resolutions occurring on or
after April 1992 and expressly prohibited retroactive elections beyond 3 years from the effective
date of the regulations. See §1-597-7(c)(2)

Letter to Mr. Darmstadter
July 30, 2003
Page 3

In sum, Notice 89-102 governed the tax treatment of all FFA received between May 1989 and April 1992 and the Benj. Franklin receivership could not make an election for the application of the more favorable final regulations until December 1995 and then only for *open* tax years. Indeed, the IRS National Office insisted that the RTC tax preparers apply Notice 89-102. as evidenced by the notation on the 1990 amended return. Thus, the fact that the RTC dutifully obeyed the IRS's instructions should not be an obstacle to a compromise that allows the legislative intent of IRC§ 597 to be applied here.

We appreciate your willingness to consider our views on these issues as we continue our efforts to reach a negotiated resolution of the receivership's tax liability.

Please let us know if you wish to discuss these matters further.

Yours truly,

Catherine Topping
Counsel


cc: Don S. Willner, Esq.

3

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

ATTORNEYS AT LAW
SUITE 1415 THE AMERICAN BANK BUILDING
621 S.W. MORRISON STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 228-4000
FAX (503) 273-8842

August 14, 2003

Henry C. Darmstadter
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Washington DC 20044-0683

Catherine Topping
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    *United States v. Federal Deposit Insurance Company, et al*
       *and Benj Franklin Shareholders Proposed Intervennors*

Dear Hank and Catherine:

In a recent telephone conversation with me, Hank suggested that we again review the alternative minimum tax.

The key issue in this case continues to be whether the loans from the RTC to the Benjamin Franklin receivership, which were repaid in full plus $258 million of interest, could possibly be receivership taxable income.. We have previously submitted detailed memos pointing out that under each of the Internal Revenue Code, its legislative history and the 16th Amendment to the United States Constitution the amount of those loans cannot be treated as taxable income.

The income tax schedules we recently sent you show that if the RTC loans are not included in taxable income, approximately $7.5 million in tax, including the alternative minimum tax, would be owed by the Benj. Franklin receivership to the Internal Revenue Service.

Page 2
August 14, 2003

Conversely, as you know, if the RTC loans are included in 1990 receivership taxable income, the receivership's liability for taxes and interest, including the alternative minimum tax, will greatly exceed the receivership funds now held by the FDIC.

Accordingly, the receivership's liability for alternative minimum tax is largely dependent on whether or not the RTC loans are treated as taxable income. In particular, the alternative minimum tax overwhelms the available funds only if the RTC loans are treated as taxable income, and is substantially diminished if they are not so treated. The first issue for resolution therefore must be whether the amount of the loans from the RTC to the Benj. Franklin receivership is excluded or included in 1990 receivership taxable income.

When we started this negotiation process, we never dreamed that almost 14 months would go by since the filing of the tax suit with no resolution. We understand that Susan Weiss has apparently finished her examination of the receivership tax returns. It would therefore appear that the next step is to attempt to resolve the critical RTC loan issue. We request the earliest possible three-way conference to discuss the tax treatment of those loans.

I would appreciate hearing from you at your earliest convenience to schedule that three-way conference.

Sincerely yours,

DON S. WILLNER & ASSOCIATES. PC

Don S. Willner

DSW:bms

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

ATTORNEYS AT LAW
SUITE 1415 THE AMERICAN BANK BUILDING
621 S.W. MORRISON STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 228-4000
FAX (503) 273-8842

September 25, 2003

Henry C. Darmstadter
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Washington DC 20044-0683

Catherine Topping
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:     *United States v. Federal Deposit Insurance Company, et al*
        *and Benj Franklin Shareholders Proposed Intervennors*

Dear Hank and Catherine:

This is to reiterate our request for a meeting with both of you and your staffs in the near future regarding the Benj. Franklin receivership.

We have continued to review the issues in the case and the calculations of regular and alternative minimum tax and interest that would be due under various scenarios. Based on this review, we continue to believe that it will not be possible to reach an appropriate resolution of this case unless (i) the funds advanced to the receivership by the RTC in 1990 are excluded from taxable income or (ii) a numerical settlement is reached that takes into account the substantial hazards to the government of litigating the issue of the taxability of these funds. In other words, the section 597 issue will have to be squarely addressed, in settlement discussions or in litigation.

We also think that, in light of recent developments such as the Centex and Home Savings cases, it is increasingly likely that the Court of Federal Claims or the Federal Circuit will conclude that the amount of any tax imposed on the RTC advances should be included in the damages in the Suess case. In that case, there would be no benefit to the government of seeking to maximize the tax judgment.

Page 2
September 25, 2003

Unless we can begin meaningful discussions on the question of the taxability of the RTC advances, we believe the shareholders will have no choice but to reassert the motion to intervene in the tax case. Given the constraints on the FDIC's ability to defend this case and the inherent conflict of interest that exists, we are highly confident the motion to intervene would be granted. We note in particular that because the shareholders would be defending the tax case on behalf of Benj., the cases you have referred to in the past suggesting that tax assessments may not be "collaterally attacked" are not relevant.

I will call you shortly to arrange a time for a meeting.

Sincerely yours,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

DSW:bms

Page 3
September 25, 2003


Bcc:    Rosemary Stewart
        Ernie Fleischer
        Mitch Moettel
        Thomas Buchanan
        Randi Cohn

        6 clients



**FDIC**
**Federal Deposit Insurance Corporation**
550 17th St. NW Washington DC, 20429

```
RECEIVED
NOV 17 2003
BY:_____
```
Legal Division

November 12, 2003

VIA REGULAR MAIL

Henry Darmstadter
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

Don S. Willner, Esq.
Don S. Willner & Associates, P.C.
621 S.W. Morrison Street
Portland, Oregon 97205

Michael Moetell, Esq.
Winston & Strawn
1400 L Street
Washington D.C. 20005

Re:    *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)
       *Suess v. FDIC*, CV '02-807-HA (D.Ore.)

Dear Counsel:

Mr. Darmstadter recently requested updated financial information for the Ben Franklin receivership. The most recent financial statements for the receivership showing results as of October 31, 2003 are enclosed. They do not reflect an estimate of the federal income tax liabilities, if any. Additional reports are compiled at year end that include estimates.

Please let me know if you have any questions.

Yours truly,

Catherine Topping
Counsel

cc: Hugo Zia



U.S. Department of Justice

Tax Division

*Please reply to:*  Civil Trial Section, Western Region
                    P.O. Box 683
                    Ben Franklin Station
                    Washington, D.C. 20044

*Facsimile No. (202) 307-0054*
*Trial Attorney: Henry C. Darmstadter*
*Attorney's Direct Line: (202) 307-6481*

EJO'C:PSW:HCDarmstadt
5-11E-12177
CMN 2002103814

December 19, 2003

PRIVILEGED SETTLEMENT
COMMUNICATION UNDER
FED.R.EVID. 408

Via Facsimile and Regular Mail

Robert Clark
Catherine Topping
Hugo Zia
FDIC
550 17th St., N.W.
Washington, DC 20429

Re:     United States v. Federal Deposit Insurance Company, et. al
        Civil Action No. 02-1427 (USDC) D. DC

Dear Mr. Clark, Ms. Topping and Mr. Zia:

This is in furtherance to our recent telephone conversations regarding our settlement discussions in the above-referenced action. The FDIC has requested that the United States reduce the amount of its Proof of Claim for income tax liabilities in the Benj. Franklin Receivership ("Receivership") based upon the allowance of deductions for post-insolvency interest expenses paid by the Receivership to FDIC/Corporate with respect to Federal Financial Assistance ("FFA") or the subrogated claim. The FDIC has contended that these interest expenses were omitted from the income tax returns filed in this Receivership Proceeding and that the interest expenses should be deducted beginning in 1990.

In examining your request and assuming that the deductions for interest expenses are otherwise allowable, the IRS's National Office has questioned the timing of the deductions and is concerned that because the obligation to pay interest on the FFA was uncertain and contingent, none of the interest expenses would have accrued for income tax purposes until well after 1990. If this position is correct and the interest expenses are not deductible until later tax periods, it will have a material impact on the total amount of the tax liability of the Receivership and the ultimate amount of the United States' Claim for income taxes in this matter.

Based upon schedules and other information supplied by the FDIC, we are assuming the following with respect to the payment of post-insolvency interest on the FFA incurred by the

- 2 -

Receivership. Post-insolvency interest on the FFA was not accrued on the Receivership's financial statements until 1994 in the amount of $207,929,902, with an additional $53,844,327 reflected in 1995. The computation period for this interest began in September 1990 and ended in January 1995 when the last payment of FFA principal was made. The accrual of interest on the FFA was not deducted for income tax purposes but was reported on Schedules M-2 attached to the 1994 and 1995 returns. The post insolvency interest on the FFA was not actually paid by the Receivership to FDIC/Corporate until three years later ($238,625,269 in 1997 and $15,612,670 in 1998). These payments were shown on the Receivership's financial statements as cash distributions. The FDIC has represented to the United States that none of these interest expenses were deducted for any periods on any income tax returns for the Receivership.

With respect to the deductibility of interest for income tax purposes, Internal Revenue Code ("I.R.C.") § 163 provides that deductions may be claimed for interest on indebtedness paid or accrued within a taxable year. For accrual-basis taxpayers, the year in which interest will accrue and properly be deductible is determined under the "all-events" test. This rule, established by case law and incorporated into the regulations under I.R.C. §§ 446 and 461, provides that a liability is incurred and must be taken into account for the taxable year in which (1) all the events have occurred which establish the fact of liability and (2) the amount can be established with reasonable accuracy. A "third" requirement of "economic performance" is added under I.R.C. § 461(h). A fundamental premise underlying the "all-events" test is that, although expenses may be deducted by accrual-basis taxpayers before they become due and payable, liability must first be firmly established. *United States v. General Dynamics Corp.*, 481 U.S. 239, 243 (1987). If there are no contingencies, the present deduction of a future expense will be allowed.

Generally, interest accumulates ratably over time and, because interest is compensation for the use or forbearance of money, "economic performance" is held to occur with the passage of time. However, if the payment of interest is contingent upon a future event, the "first prong" of the "all-events" test is not met and interest will not accrue for tax purposes until the contingency has been satisfied. In situations where a "legal condition" prevents payment, the liability will be viewed as contingent, and interest deductions will not be allowed. *See In re Continental Vending Machine Corp.*, 77-1 U.S.T.C. ¶9121 (D.C. E.D. N.Y. 1976). *See also Guardian Investment Corp. v. Phinney*, 253 F.2d 326 (5th Cir. 1958) and *Burlington Rock Island Railroad Co. v. United States*, 321 F.2d 817 (5th Cir. 1963).

Although we could not find any cases involving the accrual of interest in the context of a RTC/FDIC receivership proceeding, for accrual-basis taxpayers in bankruptcy proceedings, a current deduction for post-petition interest on unsecured claims is not allowed prior to payment of allowed claims because, as a result of the priority scheme governing the payment of claims under the Bankruptcy Code, such obligations cannot be paid unless and until the bankruptcy estate pays all allowed claims and a surplus remains. The interest is not deductible because the liability is not fixed, absolute and firmly established under the "all-events" test under Section 461. Thus, the interest expense deduction is not allowed because it is contingent on the requirement of the prior payment of all allowed claims and on the economic ability of the debtor

- 3 -

to satisfy those obligations. *See In re West Texas Marketing Corp.*, 54 F.3d 1194 (5th Cir. 1995).

We are unaware of any specific contractual terms which would require the Receivership to pay interest on the principal amount of the FFA to the RTC/FDIC Corporate. Accordingly, any legal obligation to pay interest on the FFA would likely be imposed under Title 12 and/or the applicable banking regulations. The priority payment scheme set out under Title 12 imposes conditions on the accrual of post-insolvency interest similar to those under Title 11. 12 C.F.R. § 360.3(a) provides a priority schedule for the payment of claims which establishes the repayment of FFA as a 6th priority claim and the payment of interest on the FFA as a 7th priority claim. Under Section 360.3(d), all claims within a given priority category must be fully paid before any payment can be made on lower-priority claims, and if funds are insufficient to pay all the claims within a given priority category, pro rata payments will be made.

Accordingly, under Section 360.3, it appears that 7th priority claims and lower are not required to be paid unless and until higher priority claims (i.e., priority claims 1 through 6) have been paid in full and there are sufficient funds available to the receivership. Because of the uncertainty regarding the availability of such funds, it is our understanding that the lower priority claims are not immediately accrued on the books of receiverships administered by the RTC/FDIC. For example, we believe it is the policy of the FDIC not to accrue post-insolvency interest on creditor claims until at least 95% of the principal of accepted claims has been paid.

In this case, the Receivership's financial statements do not reflect interest on the FFA until 1994, and we assume that the Receivership did not allow a claim for the interest prior to that time. This appears to demonstrate that the Receivership did not believe it could begin to accrue interest for financial accounting purposes until that time. Furthermore, the FFA, a priority 6 claim, was not fully repaid until 1995, and the Receivership did not begin to pay the claim for interest on the FFA until 1997.

Therefore, it appears that any legal obligation on the part of the Receivership for the payment of interest would be contingent and entirely dependant upon the Receivership having first full paid those claims having a higher priority to that of the claim for interest on the FFA. At the very least, because interest on the FFA cannot be paid until higher priority claims are satisfied, including repayment of principal for the FFA, interest cannot accrue for tax purposes until the taxable year in which it can be demonstrated that all higher-priority claims will be satisfied with a sufficient surplus remaining from which interest could be paid. Prior to this occurrence, payment of interest on the FFA is contingent and it is very unlikely that any interest on the FFA could have properly accrued under the "all-events" test.

- 4 -

As part of the our ongoing settlement process, we invite and encourage the FDIC to provide us with its comments and views on this important timing issue so that they might fully be considered by the Internal Revenue Service and Justice Department in analyzing the Receivership's request for the subject interest expense deductions. In connection with your reply, we believe it will be particularly helpful for the FDIC to provide us with any available authority that would legally require or obligate a receivership to pay interest on the FFA to FDIC/Corporate.

We are grateful for your continued cooperation and assistance in this matter and look forward to receiving the FDIC's response to this issue. If you have any questions or comments, please telephone me at (202) 307-6481 or Carl Hankla at (202) 307-6448.

Sincerely yours,

HENRY C. DARMSTADTER
Trial Attorney
Civil Trial Section, Western Region

cc:    Thomas Rohall, Esq.
       Sacramento, California

       Revenue Agent Susan Weiss
       Dallas, Texas

# WILLNER U'REN & HOOTON, LLP

**ATTORNEYS**
Don S. Willner*
Matthew U'Ren*
Donald M. Hooton
Constance Wold
*Licensed in Oregon and Washington

ATTORNEYS AT LAW
SUITE 303
111 S.W. NAITO PARKWAY
PORTLAND, OREGON 97204-3500
TELEPHONE (503) 228-4000
FAX (503) 228-4261

**PARALEGAL**
Leslie Martinez-Muñoz

**STAFF**
Misty Plock
Gloria Flores
Sarah Wahemath
Krystle McKinnon

*Se habla español*

December 30, 2003

VIA FACSIMILE and
REGULAR MAIL

Henry C. Darmstadter (Fax No. 202-307-0054)
U.S. Department of Justice, Tax Division
Civil Trial Section, Western Region
PO Box 683, Ben Franklin Station
Washington DC  20044

Catherine Topping (Fax No. 202-736-0385)
Federal Deposit Insurance Corporation
550 17th St. NW
Washington, DC  20429

    Re:  United States v. FDIC (Benj Franklin Shareholders potential interveeniers)

Dear Hank and Catherine:

    Because the case we are working on together should now become more active as we look forward to a settlement conference, would you please send the originals of all communications to me at the Portland address, fax number and email number set forth above, with copies to Don Buchanan and Mitch Moetell (one copy is sufficient for both) and Rosemary Stewart.

        Sincerely,

        Don Willner & Associates, PC

        Don S. Willner

DSW:djb

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

ATTORNEYS AT LAW
SUITE 1415 THE AMERICAN BANK BUILDING
621 S.W. MORRISON STREET
PORTLAND, OREGON 97205
TELEPHONE (503) 228-4000
FAX (503) 273-8842

December 30, 2003

**VIA FACSIMILE**
**AND REGULAR MAIL**

Henry C. Darmstadter (Fax No. 202-307-0054)
U.S. Department of Justice, Tax Division
Civil Trial Section, Western Region
PO Box 683, Ben Franklin Station
Washington, DC 20044

**CORRECTED**

Carl Hankla (Fax No. 202-307-0054)
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683, Ben Franklin Station
Washington, DC 20044

Re:    ***United States v. Federal Deposit Insurance Company, et al.***
       Civil Action No. 02-1427 (USDC) D.DC

Dear Hank and Carl:

Our group has reviewed the material that you have sent to me. We would very much appreciate it if you could expedite getting the interest computations to us under the various scenarios. Mitch Moettel and Ernie Fleischer are both on vacation until the first of the year. I hope that these tax computations could be done this coming week so that they could start reviewing them or January 5. We would then send to you some questions resulting from our review of the materials, including the tax computations, and would look forward to a meeting of the three parties in January.

Sincerely yours,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

DSW:mag
cc: Catherine Topping (via Facsimile No. 202 736-0385 and Regular Mail)



**Federal Deposit Insurance Corporation**
550 17th St. NW Washington DC, 20429

Legal Division

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FED. R. EVID. 408**

February 5, 2004

VIA FACSIMILE AND REGULAR MAIL

Henry Darmstadter
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

     Re:    *United States v. FDIC*, Civ. No. 02-1427 (D. D.C.)

Dear Hank:

    This letter is provided by the FDIC in connection with the parties' discussions with respect to the federal income tax liability of the FDIC as Receiver for Benj. Franklin Federal Savings and Loan Association ("Benj. Franklin").

    On February 26, 2003, we provided you with copies of correspondence from FDIC personnel to the IRS requesting that the IRS abate the various penalties, together with the interest thereon, assessed against the Benj. Franklin receivership and the returns filed by the RTC and the FDIC as receiver for tax years 1990, 1994, 1999, and 2000.

    You recently requested that the FDIC provide further written justification for abatement with respect to the penalties assessed for late filing. In response to your request, we have reiterated below the circumstantial factors that existed during the return filing periods, which combined constitute reasonable cause for the delay in filing under section 26 U.S.C. §6651(a)(1).

    • The RTC was no ordinary taxpayer. On the contrary, the RTC was a temporary federal agency that was created by Congress to resolve a financial institution crisis that, except for the Great Depression, was unheralded in our nation's history. As part of its congressional mandate, the RTC was required by statute to act as conservator and receiver of insolvent thrifts, such as Benj. Franklin.

    • When it was established literally from scratch in August 1989, the peak of the savings and loan crisis was virtually right around the corner. (See attached chart.) The RTC suddenly became responsible for an unprecedented workload of both failed and failing thrifts. It immediately assumed responsibility for 262 thrift institutions in conservatorship with assets of $115 billion. By December 31, 1990, the end of its first

Letter to Mr. Darmstadter
February 5, 2004
Page 2

full year of operation, the RTC had been appointed conservator or receiver of 531 thrifts that contained $278.3 billion in assets.

• From 1989 to 1994, the RTC took over 745 thrifts with total assets of $402.1 billion. In 1995, the RTC's last year, it took over 2 thrifts with $426 million in assets.

• The tax return preparation for these hundreds of insolvent thrifts far exceeded the RTC's staff resources.

• The RTC was hampered by delays in obtaining funding from Congress, which prevented it from hiring and developing the necessary experienced staff.

•Although the RTC sought assistance from outside accounting firms, the tasks required special training and supervision by the RTC.

•Upon the RTC's sunset in December 1995, the FDIC assumed responsibility for the operation of these receiverships in addition to its own failed bank liquidation and resolution responsibilities.

In light of the foregoing circumstances, the question of whether the RTC (and its successor the FDIC) met the required standard of "ordinary business care and prudence" in its handling of the Benj. Franklin receivership's tax obligations seems nonsensical. The RTC and FDIC staff did all they could under the circumstances to prepare and file tax returns for the receivership, but were nevertheless unable to comply within the prescribed time. *See* Treas. Reg. § 301.6651-1(c)(1); *United States v. Boyle*, 469 U.S. 241. At the very least, the situation is one that requires a special approach to tax return deadlines. There is simply is no good reason for imposing the harsh penalties of §6651.

Please advise me if you have questions or would like to discuss this matter further.

Yours truly,

Catherine Topping
Counsel

Attachment

cc: Don S. Willner, Esq.
    621 SW Morrison Street
    Portland, Oregon 97205

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

February 23, 2004

Henry C. Darmstadter
Trial Attorney
Civil Trial Section
Western Region
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044

RE:     Benj. Franklin

Dear Hank:

We are looking forward to receiving at your earliest possible convenience your interest calculations for Scenario Number 11 (FFA excluded). As you know, we believe this is the only correct option. As soon as we receive it and have the opportunity of analyzing it, we will be back in touch with you.

Sincerely,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

DSW:bms



**U.S. Department of Justice**

**Tax Division**

*Please reply to:  Civil Trial Section, Western Region*
*Facsimile No. (202) 307-0054*                                          *P.O. Box 683*
*Trial Attorney: Henry C. Darmstadter*                                  *Ben Franklin Station*
*Attorney's Direct Line: (202) 307-6481*                                *Washington, D.C. 20044*

EJO'C:RSW:HCDarmstadt
5-16-3747
CMN 2002103814                                        February 27, 2004

### PRIVILEGED SETTLEMENT
### COMMUNICATION UNDER
### FED.R.EVID. 408

Robert Clark
Catherine Topping
Hugo Zia
FDIC
550 17th St., N.W.
Wahington, DC 20429

        Re:    United States v. Federal Deposit Insurance Company, et. al
               Civil Action No. 02-1427 (USDC) D. DC

Dear Mr. Clark, Ms. Topping and Mr. Zia:

        In furtherance to our correspondence of February 13, 2004, enclosed please find
documents pertaining to the interest computations for Tax Computation Schedule No. 11. I have
been advised by the Internal Revenue Service that the spreadsheets summarizing the interest
calculations are taking longer to prepare than anticipated. We will forward them to you as soon
as they are available.  In the meantime, if you have any questions or comments, please telephone
me at (202) 307-6481 or Carl Hankla at (202) 307-6448.

                                Sincerely yours,

                                HENRY C. DARMSTADTER
                                Trial Attorney
                                Civil Trial Section, Western Region

Enclosure·as stated

cc:     Thomas Rohall, Esq.
        Sacramento, California
        (without enclosure)

- 2 -

Don S. Willner, Esq.
Portland, Oregon
(Via Federal Express)

Rosemary Stewart, Esq.
Spriggs & Hollingsworth
1350 "I" Street, N.W.
9th Floor
Washington, D.C. 20005

Michael C. Moetell, Esq.
Winston & Strawn
1400 L Street, N.W.
Washington, D.C. 20005-3502

# DON S. WILLNER & ASSOCIATES, PC    FILE

Don S. Willner
(licensed in Oregon and Washington)

OREGON OFFICE
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4900
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
650 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2049
donswillner@aol.com

April 14, 2004

**PRIVILEGED SETTLEMENT
COMMUNICATION UNDER FRE 408**

BY FAX AND UPS

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683
Washington, DC  20044

Re:    U.S. v. FDIC, et al
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank:

Attached to this letter, pursuant to your request, is the statement of our position on the $258 million interest deduction. As you can see, we agree with the FDIC. We think it is clear that the accrual of interest beginning in 1990 is compelled by the Dow Corning case. In this regard, contrary to the factual supposition in your December 19, 2003 letter, FDIC's claim was founded on a contractual right to interest, in that the FDIC was subrogated to the claims of the original holders of Benj.'s interest-bearing deposits.

The time has come for the parties to meet and determine whether the case can be resolved without litigation. We want to reach a settlement and not litigate, if this is possible, and are less concerned with theory than with obtaining an appropriate recovery for the shareholders. Thus, it is not necessary that a settlement acknowledge that Benj.'s FFA is not taxable. However, the settlement result will of course have to reflect the substantial litigation risks to the government on this issue, as well as on the others we have raised.

Henry C. Darmstadter
Page 2
April 14, 2004

We believe a settlement fixing the Benj. receivership's liability for taxes, interest and penalties at $12 million, for the tax years 1990 through 2002, is appropriate in light of all the circumstances. We request that a date be set now not later than May 15, 2004 for a settlement conference to consider this proposal.

If you are not prepared to set such a date now, this letter is our notice that we will shortly update and reactivate our motion to intervene and transfer to the District of Oregon. In the event of litigation, we of course expect to raise all of the issues we have previously raised, i.e., not only the FFA and interest accrual issues but also the goodwill issue and the fact that the statute of limitations bars collection of tax and interest at this late date for a number of the years at issue. We would also plan to challenge the assessment of interest against the Benj. receivership in light of (i) the failure of the FDIC to make a tax payment or post a cash bond years ago to stop the running of interest and (ii) the inequity of assessing interest at a rate three percentage points above Treasury yields while the Benj. receivership was being credited with interest at Treasury bill rates on the funds being held by the government. We believe we have strong positions on all of these issues. Moreover, if we were to prevail on some or all of these additional issues, as well as on the FFA and interest accrual issues, the receivership's liability would be substantially below the $12 million figure we are offering.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

DSW:rm
Encls.
cc:  Catherine Topping, Esq.

---

As you know, any settlement ultimately will need to be approved by a court, after notice to the shareholders.

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**FILE**

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

April 26, 2004

**PRIVILEGED SETTLEMENT**
**COMMUNICATION UNDER FRE 408**

BY FAX AND UPS

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683
Washington, DC 20044

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    U.S. v. FDIC, et al
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank and Richard:

I have polled our group to find out their availability for a meeting with DOJ and FDIC for the purpose of settlement negotiations. After comparing all of our calendars, we request a meeting for Thursday, May 13th. If that is not possible, our second choice is Friday, May 14th. We could meet at the FDIC office, or any other location you choose. We should reserve a full day for the meeting.

All the paperwork has been done and the time has come to determine whether we can resolve our differences by compromise and settlement, which is our preference or whether we have to reactivate the motion to intervene and transfer the case to the District of Oregon.

I hope that both of you can confirm at your early convenience that we can have a compromise and settlement meeting on May 13th, or if that date is not available, then May 14th.

Henry C. Darmstadter
Richard Gill
Page 2
April 26, 2004


I have recently received a copy of a letter from Tom Buchanan and Mitch Moetell addressed to you. So the record is clear, I filed the motion to intervene in this tax court litigation on behalf of all of the plaintiffs. Thereafter, one of the plaintiffs Robert Suess retained the law firm of Winston and Strawn to represent him while my firm and Spriggs and Hollingsworth continue to represent the other plaintiffs. Under rules of the United States Court of Federal Claims there can be one attorney of record and at all times during the almost 14 years that the shareholders case has been pending in the Claims Court I have been the attorney of record. Tom Buchanan (and other attorneys) have also been substantially involved. We will continue our unified approach in our discussions with you because it is in the best interest of our clients and furthers the possibility of a negotiated resolution of the pending tax matter.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don

Don S. Willner

DSW:rm
cc:  Rosemary Stewart (by facsimile)
     Tom Buchanan (by facsimile)
     Mitch Moetell (by facsimile)
     Ernie Fleischer (by facsimile)
     Randi Cohn (by facsimile)

# DON S. WILLNER & ASSOCIATES, PC 

Don S. Willner
(Licensed in Oregon and Washington)

OREGON OFFICE.
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

May 6, 2004

BY UPS

Richard Gill
Federal Deposit Insurance Corporation
550 17th St., NW
Washington DC 20429

Re:    U.S. v. FDIC, et al
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Richard:

You have a lot of information to review before we have our settlement discussion. Here is some material that is in your voluminous files but should be read first.

1.    The stipulated order of Judge Smith in the Claims court case in which he finds that the shareholders and the FDIC believe that federal financial assistance should not be taxed. (This will come under separate cover.)

2.    The deposition of Michael Duhl taken in the case of Suess et al v. FDIC in which he testified under oath that he represented FDIC in negotiations with the IRS and argued on behalf of FDIC that federal financial assistance should not be taxed.

3.    The affidavit of Tom Buchanan in the case of Suess et al v. FDIC in which Tom stated under oath many of the occasions on which FDIC personnel told him that federal financial assistance should not be taxed.

4.    The memorandum that we submitted to DOJ and FDIC early in the current negotiations explaining why federal financial assistance should not be taxed (omitting enclosure).

5.    The memorandum we submitted explaining why there should be a tax deduction for the loss of the good will (omitting enclosure).

Richard Gill
May 6, 2004
Page 2

6.     The spreadsheets dated April 2003 provided by the shareholders explaining why the proper tax should be, under one scenario, well under $1 million, and under another scenario, $14 million including interest. (This is the same memorandum that I have faxed to you which did not come through clearly).

We are working on an agenda for our forthcoming meeting.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don

Don S. Willner

DSW:rm
Encls.

Richard Gill
May 6. 2004
Page 3

Bc (w/o encls):  Rosemary Stewart
                 Tom Buchanan
                 Mitch Moetell
                 Ernie Fleischer
                 Randi Cohn



**U.S. Department of Justice**

**Tax Division**

---

*Please reply to:   Civil Trial Section, Western Region*
*Facsimile No. (202) 307-0054                                          P.O. Box 683*
*Trial Attorney: Henry C. Darmstadter                              Ben Franklin Station*
*Attorney's Direct Line: (202) 307-6481                            Washington, D.C. 20044*

EJO'C:RSW:HCDarmstadt
5-16-3747
CMN 2002103814                                          May 10, 2004

PRIVILEGED SETTLEMENT<br>COMMUNICATION UNDER<br>FED.R.EVID. 408

**Via Facsimile and Regular Mail**

Richard Gill
FDIC
550 17th St., N.W.
Washington, DC 20429

    Re:    United States v. Federal Deposit Insurance Company, et. al
           Civil Action No. 02-1427 (USDC) D. DC

Dear Mr. Gill:

    This is in response to your letter of March 17, 2004 regarding the accrual for income tax purposes of the post-insolvency interest which you have contended was omitted from Benj. Franklin's income tax returns.

    After a review of the analysis provided in your letter, we are of the opinion that the FDIC has placed too much emphasis on financial accounting accrual and too little emphasis on whether financial accounting created a deductible expense for tax purposes and, if so, when that deduction could have been taken. For a discussion of this dichotomy see *United States v. General Dynamics Corp.*, 481 U.S. 246 (1987) and *Thor Power Tool Co., v Commissioner*, 439 U.S. 522 (1979). The mere fact that the FDIC may be entitled to interest on its subrogated claims computed beginning as of 1990 is not the end of the inquiry. It appears to us that the statutory scheme under Title 12 imposes conditions on the payment of interest in receiverships. We do not believe that your letter sufficiently addresses this issue other than to simply state that 12 C.F.R. § 360.3 does not expressly limit the "accrual" of the interest expense, but only limits the "payment" of the interest.

    Where a legal condition prevents payment, the liability will be viewed as contingent, and

FROM SPRIGGS & HOLLINGSWORTH         FDIC LEGAL         (FRI) 12. 3'04 14:52/ST. 14:52/NO. 4861852123 P 4

- 2 -

assert a further claim for income taxes, penalties or interest against Ben Franklin for the calendar years 1990 through 2002. Ben Franklin (or the FDIC) cannot pursue a claim for refund of income taxes, penalties or interest for the calendar years 1990 through 2002.

4)  The settlement offer does not apply to any income tax liabilities for Ben Franklin for any periods after calendar year 2002. The $47 million settlement payment will not satisfy or resolve any federal tax income liabilities for Ben Franklin for the calendar year 2003 and any period thereafter.

5)  Twenty-five percent of the $47 million settlement payment ($11.75 million) will be treated as constituting the payment of tax with the remaining seventy-five percent ($35.25 million) treated as constituting the payment of interest. No losses for income tax purposes resulting from the $47 million settlement payment can be carried back by Ben Franklin to claim a refund or reduce income tax liabilities for calendar years 2002 and earlier.

6)  This settlement offer is contingent upon and subject to the approval of the FDIC's Board of Directors.

7)  This settlement offer is contingent upon a subsequent good faith determination by the United States District Court for the District of Columbia in connection with a "fairness" or "reasonableness" hearing that will be promptly calendared by the FDIC in the event that this settlement offer is accepted by the United States.

8)  In the event the United States accepts this settlement offer, the FDIC will make the $47 million settlement payment within ten calendar days of the United States District Court determining that the settlement is fair or reasonable.

9)  Within seven calendar days of payment of the $47 million, the United States will dismiss its Complaint in this action. The Complaint will be dismissed with prejudice except as to the First Claim for Relief under 12 U.S.C. § 1821(d)(6) with respect to the United States' claim for any future tax liabilities that are not resolved by this settlement.

If the foregoing comports with your understanding of the offer your have submitted, please initial a copy of this letter and return it to our offices via facsimile.

Your offer will be processed in accordance with our usual procedure. Final action will taken by the Attorney General or an official designated by him for this purpose. We are sure that you understand that unless your receive a notice of acceptance from this office the Department is no way committed to an settlement.

You will be notified as soon as final action is taken on your offer.

FROM SPRIGGS & HOLLINGSWORTH          FDIC LEGAL          (FRI) 2  3'04 14:52/ST. 14:51/NO. 4861852123 P  5

- 3 -

If you have any questions or comments, please contact Henry C. Darmstadter (202) 307-6481 or Carl Hankla at (202) 307-6448.

Sincerely yours,

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By: *Robert S. Watkins*

ROBERT S. WATKINS
Chief, Civil Trial Section,
Western Region

cc:    Thomas Rohall, Esq.
       Sacramento, California

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

(Licensed in Oregon and Washington)

**OREGON OFFICE**
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

**WASHINGTON OFFICE**
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

May 12, 2004

BY FAX AND REGULAR MAIL

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683
Washington, DC 20044

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:     U.S. v. FDIC, et al
        Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank and Richard:

I am enclosing our proposed agenda for the May 18 meeting. We will supplement it this week with the estimated numerical impact on the tax and interest of some of the issues we raise in connection with scenario 10.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

DSW:rm
cc: Rosemary Stewart (by facsimile)
    Tom Buchanan (by facsimile)
    Mitch Moetell (by facsimile)
    Ernie Fleischer (by facsimile)
    Randi Cohn (by facsimile)

Henry C. Darmstadter
Page 2
May 12, 2004

bcc:    Peter Baker (by email)
        Leo Sherry (by email)
        Richard Green (by email)
        Dale Weight (by email)
        Don McIntyre (email)



# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
Licensed in Oregon and Washington

FILE

OREGON OFFICE
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4900
Fax: (503) 277-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

May 12, 2004

BY FAX AND REGULAR MAIL

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683
Washington, DC 20044

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    U.S. v. FDIC, et al
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank and Richard:

        Here is our corrected agenda to include a discussion of Hank's letter of May 10, to
Richard which we just received.

                                        Sincerely,

                                        DON S. WILLNER & ASSOCIATES PC

                                        Don S. Willner

DSW:rm
cc: Rosemary Stewart (by facsimile)
    Tom Buchanan (by facsimile)
    Mitch Moetell (by facsimile)
    Ernie Fleischer (by facsimile)
    Randi Cohn (by facsimile)

MAY.15.2004  10:59AM    OPTCH&GPL.TUN                                NO.214    P.2/3

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

OREGON OFFICE
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone (503) 228-4000
Fax (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

May 15, 2004

BY FAX AND REGULAR MAIL

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683
Washington, DC 20044

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    U.S. v. FDIC, et al.
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank and Richard:

Attached is a summary spreadsheet showing the estimated effects on scenario 10 of the two issues identified and put on our agenda. These are that (1) the amount of FFA that the IRS would tax under the section 597 regulations is overstated (i.e., the IRS did not correctly apply the section 597 regulations) and (2) Benj. should not be held to the RTC's 1990 election to recapture its tax bad debt reserve on an accelerated basis. The spreadsheet shows the effect on taxes and interest due both (1) for all years and (2) for only those years for which the statute of limitations remains open.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

DSW:rm
cc  Rosemary Stewart (by facsimile)

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

OREGON OFFICE
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
650 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

July 29, 2004

PRIVILEGED SETTLEMENT
COMMUNICATION UNDER FRE 408

*BY OVERNIGHT DELIVERY*

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683 Ben Franklin Station
Washington, DC  20044

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    U.S. v. FDIC, et al
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank and Richard:

There has been some delay due to other commitments of lawyers in our group but we should be able to get to you by the middle of next week an additional memo on option 10 and an additional memo on the of taxing true loans. In the meantime, I am enclosing some interesting reading matter. The "Oakland Raider Case" in which the Ninth Circuit in the year 2003 held that a loan could not be taxed. I am also enclosing a copy of the information package that was prepared effective March 31, 1990 by the Conservator which was used to obtain bids for the liability and assets of Benj. Franklin. One of the issues in our case is the strength of Benj. Franklin in 1990. What I am enclosing is Volume 1, the other volumes were

Henry C. Darmstadter
Richard Gill
Page 3
July 29, 2004

bcc:   Peter Baker (by Email - w/o encls.)
       Leo Sherry (by Email - w/o encls.)
       Richard Green (by Email -- w/o encls.)
       Dale Weight (by Email – w/o encls.)
       Don McIntyre (by Email – w/o encls.)

Henry C. Darmstadter
Richard Gill
Page 2
July 29, 2004

background material about Oregon and other portions of Benj.'s service area.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

Encls.
DSW:rm
cc:  Rosemary Stewart (by Email – w/o encls.)
     Tom Buchanan (by Email – w/o encls.)
     Mitch Moetell (by Email, w/o encls.)
     Ernie Fleischer (by Email – w/o encls.)
     Randi Cohn (by Email – w/o encls.)

*~~ August 13, 2004 ~~*

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

(Licensed in Oregon and Washington)

FILE

OREGON OFFICE
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone (503) 228-4000
Fax (503) 223-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Phone 509-395-2000
Fax 509-395-2939
donswillner@aol.com

**PRIVILEGED SETTLEMENT
COMMUNICATION UNDER FRE 408**

**BY FACSIMILE**

Henry C. Darmstadter, Esq.
Trial Attorney
Civil Trial Section, Western Region
PO Box 683 Ben Franklin Station
Washington, DC 20044

Re:    U.S. v. FDIC, et al
       Civil Action No. 02-1427 (USDC) D.D.C.

Dear Hank:

On pages 9, 10 and 11 of the memorandum included with our letter to the FDIC dated March 17, 2003, we explained that the consequences of classifying the RTC advances as loans would be to subject loan proceeds, which are not income, to an income tax and therefore exceed Congress's power of taxation under the Constitution. This analysis is consistent with the observation made by Mr. Justice Whittaker in his opinion concurring and dissenting in part in the case of *James v. United States*, 366 U.S. 213, 248 (1961), pointing out that "[t]he starting point of any inquiry as to what constitutes taxable income must be the Sixteenth Amendment...."

That the RTC advances were loans is clear from the analysis mandated by the case law. In *Welch v. Commissioner*, 204 F. 3d 1228, 1230 (9th Cir. 2000), the Ninth Circuit summarized as follows the type of facts that must be examined to determine whether, for tax purposes, a loan exists:

In classifying a loan, we examine the transaction as a whole. [Citations omitted.] The conventional test is to ask whether, when the funds were advanced, the parties actually intended repayment. [Citations omitted.]

However, courts have considered a number of other factors as relevant in assessing whether a transaction is a true loan, such as: (1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the

Henry C. Darmstadter, Esq.
August 13, 2004
Page 2

loan; and (7) whether the parties conducted themselves as if the transaction was a loan. [Citations omitted.]   Although the factors are non-exclusive and no single factor is dispositive, these indicia of a bona fide loan form a general basis upon which courts may analyze a transaction.

Clearly the foregoing analysis of the *Welch* factors, especially considering the transaction as a whole, shows that the advances are true loans for tax purposes. As such, they are not taxable income. The reason is that, as the United States Supreme Court stated in *Commissioner* v. *Tufts*, 461 U.S.300, 307 (1983):

> When a taxpayer receives a loan, he incurs an obligation to repay that loan at some future date.  Because of this obligation, the loan proceeds do not qualify as income to the taxpayer.  When he fulfills this obligation, the repayment of the loan likewise has no effect on his tax liability.

Accordingly, as stated by the Fifth Circuit in *U.S.* v. *Rochelle, Jr.*, 384 F. 2d 748, 751 (5th Cir. 1967) "[a] loan does not in itself constitute income to the borrower, because whatever temporary economic benefit he derives from the use of the funds is offset by the corresponding obligation to repay them."  The RTC advances were true loans for the reasons set forth above and therefore do not constitute *income*.  Thus, they cannot be subject to an *income* tax under the unique Benj. facts.

Sincerely,

DON S. WILLNER & ASSOCIATES PC

Don S. Willner

Encls.
DSW:rm
cc:    Richard Gill *(by facsimile w/ encls.)*

Henry C. Darmstadter, Esq.
August 13, 2004
Page 4


bcc:    Peter Baker *(by Email    w/ encls.)*

Henry C. Darmstadter. Esq.
August 13, 2004
Page 3

Bc:   Rosemary Stewart *(by Email – w/ encls.)*
      Tom Buchanan *(by Email – w/ encls.)*
      Mitch Moetell *(by Email - w/ encls.)*
      Ernie Fleischer *(by Email – w/ encls.)*
      Randi Cohn *(by Email – w/ encls.)*

# DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

(Licensed in Oregon and Washington)

OREGON OFFICE
Suite 1415 The American Bank Building
621 S.W. Morrison Street
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Phone: 509-395-2000
Fax: 509-395-2939
donswillner@aol.com

September 7, 2004

## PRIVILEGED SETTLEMENT
## COMMUNICATION UNDER FRE 408

**By Facsimile and Mail**

Richard Gill
Counsel, FDIC
550 17th St., N.W.
Washington, D.C. 20429

Re:    *U.S. v. FDIC, et al.*
          Civil Action No. 02-1427 (USDC) D.D.C.

Dear Richard:

The Benj. Franklin Shareholder Plaintiffs other than Mr. Suess request that FDIC make an immediate offer to pay the IRS $40 million in settlement of all taxes, interest, and penalties that have been or could be asserted against the Benj. Receivership for all taxable years up to and including the taxable year ended December 31, 2002, including but not limited to amounts claimed by the IRS in the above-captioned lawsuit. The $40 million does not include potential tax claims for taxable events that occur starting January 1, 2003. The offer places no restriction on how the IRS allocates the money between tax, interest and penalties. This offer is conditional upon approval by a federal district court after a fairness hearing with prior notice to all Benj. Franklin shareholders. We would appreciate the opportunity to review and comment on a draft of the offer letter that will be submitted by the FDIC to the Department of Justice.

The Shareholder Plaintiffs, other than Richard Green, as well as most of the original Benj. Franklin shareholders reside in the Pacific Northwest. At the time the motion to intervene and transfer to Oregon was filed, I represented all of the proposed Shareholder Plaintiffs in filing those motions. And, as you know, I am the sole attorney of record for these same Plaintiffs in the shareholders' derivative suit in the U.S. Court of Federal Claims, which specifically approved our group's status as derivative Plaintiffs.

Richard Gill
September 7, 2004
Page 2


Thereafter Tom Buchanan and Mitch Moetell took over the presentation of Mr. Suess and have participated in these discussions about possible tax settlement. Tom Buchanan has now advised me that Mr. Suess does not consent to this offer, although he understands that the other Shareholder Plaintiffs will be recommending this offer to FDIC and to the Justice Department and IRS.

If this offer is accepted by the Department of Justice, the Plaintiffs other than Mr. Suess will support the offer at the fairness hearing held by the U.S. District Court.

Although my clients agree that a smaller offer would be appropriate on the merits, they are desirous of resolving this despite short of further litigation. Moreover, the $40 million is not a "low ball offer." We believe it is fair and reasonable and should be acceptable to DOJ. We look forward to working together with the FDIC to resolve this tax dispute as expeditiously as possible.

Sincerely,

DON S. WILLNER & ASSOCIATES PC



Don S. Willner

cc:    Rosemary Stewart
       Ernie Fleischer
       Tom Buchanan
       Mitch Moetell
       Randi Cohn

Richard Gill
September 7, 2004
Page 3

bcc:    Peter Baker
        Leo Sherry
        Richard Green
        Dale Weight
        Don McIntyre



**Federal Deposit Insurance Corporation**
550 17th St. NW, Washington DC  20429

Legal Division

FOR SETTLEMENT PURPOSES ONLY
SUBJECT TO FED. R. EVID. 408

November 18, 2004

<u>VIA FACSIMILE AND REGULAR MAIL</u>
Henry Darmstadter, Esq.
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

     Re:    <u>United States v. FDIC</u>, Civ. No. 02-1427 (D. D.C. 2002)

Dear Mr. Darmstadter:

     The Federal Deposit Insurance Corporation ("FDIC"), the Internal Revenue Service ("IRS"), the Department of Justice, and certain shareholders of Benj. Franklin Federal Savings & Loan Association ("Benj. Franklin") have engaged in extensive settlement discussions over the past several years.[1] These settlement discussions were undertaken in order to determine the federal income tax liabilities for Benj. Franklin for the thirteen-year period that begins with the 1990 tax year and ends with the 2002 tax year.  The settlement discussions were undertaken to resolve the case captioned <u>United States v. FDIC, et al.</u>, Civil Action No. 02-1247 (USDC D. DC 2002).

     The FDIC believes that the proposed settlement is fair and reasonable and is in the best interest of everyone involved.  Accordingly, the FDIC submits the proposal set forth below to settle all federal tax liabilities for Benj. Franklin for the thirteen-year period beginning January 1, 1990 and including the 2002 tax year that ends on December 31, 2002.

     The FDIC offers the Internal Revenue Service the sum of $47,000,000 to settle all taxes, penalties, and interest that have been assessed or could be assessed against Benj. Franklin for all tax years beginning with the 1990 tax year that ended on December 31, 1990, and concluding with the 2002 tax year that ended on December 31, 2002.  The $47,000,000 settlement payment shall also be deemed inclusive of, and in complete settlement of, all interest owed by Benj. Franklin with respect to the tax years 1990 through 2002 accruing up to and including the date the settlement payment is made. The settlement offer will resolve and determine to be final and

---

[1] The shareholders were invited to participate in the settlement discussions at the request of the FDIC.

close all federal $t^2$ax matters for Benj. Franklin for the years beginning in 1990 and ending with the 2002 tax year.

The FDIC's settlement offer is contingent on the IRS's agreement that 75 percent of the $47,000,000 settlement payment will be treated as a payment of interest, and the remaining 25 percent will be treated as a payment of federal income taxes, for purposes of determining the effect of the payment on tax years after 2002. In addition, the FDIC and IRS will agree that no part of any tax loss generated by the settlement payment will be carried back to, or considered to be absorbed by income arising in, the tax year ended December 31, 2002. Accordingly, a tax loss generated by the settlement payment to the IRS may be carried back to the tax year ended December 31, 2003 or later years, to the extent such a carryback would otherwise be permitted under section 172 of the Code.

This settlement offer is contingent upon a subsequent good faith determination by the federal district court in the District of Columbia, through the procedural mechanism of a "fairness" or "reasonableness" hearing, that the settlement is fair and reasonable and in the best interest of everyone, including the FDIC, the IRS, and the shareholders of Benj. Franklin.

The settlement offer is also subject to approval by the FDIC's Board of Directors that we will endeavor to obtain in a prompt and expeditious manner. The Legal Division and the other applicable FDIC divisions involved in this case represent that they will recommend its approval to the FDIC's Board of Directors.[3]

The FDIC would appreciate your prompt response to this settlement offer. If you have any questions or concerns regarding this settlement offer, please feel free to contact me at (202) 736-0519 or Richard Gill at (202) 736-0090.

Sincerely,


Robert G. Clark
Senior Counsel


---

[2] We will provide a separate letter in the near future that will provide a fuller discussion of the fairness hearing. In addition, any tax liabilities owed by the Benj. Franklin Receivership for the 2003 tax year and thereafter are not considered closed by this settlement offer.

[3] At the conclusion of the fairness hearing and within ten days from the Court's approval of the settlement, the FDIC will allow the IRS's claim for the 1990 through 2002 tax years in the amount of the settlement and disburse the settlement proceeds to the IRS. The Department of Justice will within seven days from receipt of the settlement proceeds file an agreed-upon motion or stipulation to dismiss with prejudice the above-captioned lawsuit.

2



U.S. Department of Justice

**Tax Division**

Facsimile No. (202) 307-0054
Trial Attorney: Henry C. Darmstadter
Attorney's Direct Line: (202) 307-6481

*Please reply to:* Civil Trial Section, Western Region
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044

EJO'C:RSW:HCDarmstadt
5-16-3747
CMN 2002103814

December 2, 2004

**PRIVILEGED SETTLEMENT
COMMUNICATION UNDER
FED.R.EVID. 408**

**Via Facsimile and Regular Mail**

Robert G. Clark
Senior Counsel
FDIC
550 17th St., N.W.
Washington, DC 20429

Attention: Richard Gill

Re: United States v. Federal Deposit Insurance Corporation, et. al
<u>Civil Action No. 02-1427 (USDC) D. DC</u>

Dear Mr. Clark:

We have received your offer, dated November 19, 2004, to compromise the above-entitled case. Based upon your letter and our recent telephone conversations with Richard Gill, we understand the terms of your offer to be as follows:

1) The Federal Deposit Insurance Corporation (hereinafter "FDIC"), as receiver for the Benjamin Franklin Federal Saving and Loan Association (hereinafter "Ben Franklin"), agrees to pay the United States of America the total amount of $47,000,000.00 in consideration of any and all liabilities for income taxes, penalties and interest owed by Ben Franklin for the calendar years 1990 up through and including 2002.

2) The $47 million settlement payment will be inclusive of all interest accruing on the income tax liabilities for Ben Franklin for the calendar years 1990 through 2002 up through the date of payment of the settlement amount.

3) Upon receipt of the $47 million settlement payment by the United States, all income tax liabilities for Ben Franklin for the calendar years 1990 up through and including 2002 will be determined, resolved and closed. The United States cannot

assert a further claim for income taxes, penalties or interest against Ben Franklin for the calendar years 1990 through 2002. Ben Franklin (or the FDIC) cannot pursue a claim for refund of income taxes, penalties or interest for the calendar years 1990 through 2002.

4)    The settlement offer does not apply to any income tax liabilities for Ben Franklin for any periods after calendar year 2002. The $47 million settlement payment will not satisfy or resolve any federal tax income liabilities for Ben Franklin for the calendar year 2003 and any period thereafter.

5)    Twenty-five percent of the $47 million settlement payment ($11.75 million) will be treated as constituting the payment of tax with the remaining seventy-five percent ($35.25 million) treated as constituting the payment of interest. No losses for income tax purposes resulting from the $47 million settlement payment can be carried back by Ben Franklin to claim a refund or reduce income tax liabilities for calendar years 2002 and earlier.

6)    This settlement offer is contingent upon and subject to the approval of the FDIC's Board of Directors.

7)    This settlement offer is contingent upon a subsequent good faith determination by the United States District Court for the District of Columbia in connection with a "fairness" or "reasonableness" hearing that will be promptly calendared by the FDIC in the event that this settlement offer is accepted by the United States.

8)    In the event the United States accepts this settlement offer, the FDIC will make the $47 million settlement payment within ten calendar days of the United States District Court determining that the settlement is fair or reasonable.

9)    Within seven calendar days of payment of the $47 million, the United States will dismiss its Complaint in this action. The Complaint will be dismissed with prejudice except as to the First Claim for Relief under 12 U.S.C. § 1821(d)(6) with respect to the United States' claim for any future tax liabilities that are not resolved by this settlement.

If the foregoing comports with your understanding of the offer your have submitted, please initial a copy of this letter and return it to our offices via facsimile.

Your offer will be processed in accordance with our usual procedure. Final action will taken by the Attorney General or an official designated by him for this purpose. We are sure that you understand that unless your receive a notice of acceptance from this office the Department is no way committed to an settlement.

You will be notified as soon as final action is taken on your offer.

- 3 -

If you have any questions or comments, please contact Henry C. Darmstadter (202) 307-6481 or Carl Hankla at (202) 307-6448.

Sincerely yours,

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By: *Robert S. Watkins*

ROBERT S. WATKINS
Chief, Civil Trial Section,
Western Region

cc:     Thomas Rohall, Esq.
        Sacramento, California

## DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
(Licensed in Oregon and Washington)

| OREGON OFFICE | WASHINGTON OFFICE |
|---|---|
| 621 S.W. Morrison, Suite 1415 | 630 Sunnyside Road |
| Portland, OR 97205 | Trout Lake, WA 98650 |
| Telephone: (503) 228-4000 | Telephone: (509) 395-2000 |
| Fax: (503) 273-8842 | Fax: (509) 395-2939 |
| donswillner@aol.com | donswillner@aol.com |

December 10, 2004

**VIA FAX (202) 736-0676 AND REGULAR MAIL**

Robert G. Clark
Senior Counsel, FDIC
550 17th Street N.W.
H-11006
Washington, D.C. 20429

Re:    Benj. Franklin

Dear Bob:

I enclose my letter of today to Hank. You have continuing relations with D.O.J. tax division, and I do not. I hope you can talk to them about expediting the process. Almost 15 years of waiting is a long time.

Season's Greetings.

Sincerely,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner

Enclosure

cc:    Richard Gill

## DON S. WILLNER & ASSOCIATES, PC
Don S. Willner
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

February 17, 2005

### VIA FAX (202)736-0681 AND REGULAR MAIL

Robert G. Clark
Senior Counsel, FDIC
Room H-11006
550 17th Street, N.W.
Washington, D.C. 20429

Re:    Benj. Franklin

Dear Bob:

On December 10, 2004 I sent you the enclosed letter. I have recently talked to Richard Gill and he tells me that as far as he knows you have not telephoned Henry Darmstadter asking him to expedite the process of obtaining approval of the settlement. As I said in my previous letter, a contact from you would be of far more value than a contact from me, or even a contact from Richard Gill. FDIC and the shareholders have a common interest in getting the approval as soon as possible, so that some shareholders do not get discouraged with the delay and take direct action themselves.

February 21, 2005 will be 15 years from the date that Benj. Franklin was seized. Please help.

Sincerely,

DON S. WILLNER & ASSOCIATES, PC

Don S. Willner    per JRP

Enclosure
cc:    Richard Gill

DSW/jrp

**DON S. WILLNER & ASSOCIATES, PC**

Don S. Willner

(Licensed in Oregon and Washington)

<table>
<tr>
<td>

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

</td>
<td>

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

</td>
</tr>
</table>

February 21, 2005

VIA FAX (202) 307-0054 AND REGULAR MAIL

Henry Darmstadter, Trial Attorney
Civil Trial Section, Western Region
P.O. Box 683
Benj. Franklin Station
Washington, D.C. 20044

Re:    U.S. v. FDIC
       (Benj. Franklin)

Dear Hank:

Benj. Franklin Federal Savings and Loan Association was seized by the government 15 years ago today. This institution was founded in 1925; survived the great depression; made money for 16 consecutive quarters before the passage of FIRREA; was profitable during the conservatorship; and has a substantial surplus in the Receivership today. The best measure of the affection and trust of its 6500 shareholders is that 4200 have contributed to our litigation fund, and many of the others have their stock in street name and we cannot reach them.

The government goes on forever, but the shareholders are dying. Much of the savings in the employee retirement fund was invested in Benj. Franklin stock. I regularly receive letters from elderly shareholders pleading for quicker action. I also regularly receive death notices.

My tax team and I authorized the FDIC to proceed with the $47 million figure despite the opposition of a few key shareholders because we believed this would result in an early distribution. The offer was submitted informally to you at your request in September 2004, and formally on November 19, 2004. It is now five months since the offer was informally submitted. I get conflicting reports whether the offer has even gone to the next higher step in the Department of Justice.

Henry Darmstadter
February 21, 2005
Page 2 of 2

Neither you nor anyone can reverse the seizure of Benj. Franklin made 15 years ago today. But you and your colleagues can have a heart and do everything possible to expedite the process. Please share this letter with your colleagues.

Sincerely,

DON S. WILLNER & ASSOCIATES, PC

/s/

Don S. Willner

cc:     Robert Clark

DSW/jrp

bcc:    Dale Weight

Dale – Here is some ammunition for your forthcoming meeting with Senator Smith.          -Don

**DON S. WILLNER & ASSOCIATES, PC**

Don S. Willner

Attorneys at Law

(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4300
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2590
Fax: (509) 395-2594
donswillner@aol.com

July 8, 2005

**VIA FAX (202) 736-0676 & REGULAR MAIL**

Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:   Benj. Franklin

Dear Richard:

The shareholder Plaintiffs whom I represent reluctantly agree with your informal recommendation that the FDIC increase the offer to the government from $47 million to $48 million with the additional $1 million considered as interest. I have no further authority from my clients.

I agree that the best strategy is to have the cover letter signed by the General Counsel of the FDIC and that the best argument is that this additional $1 million is the limit of his authority granted by the Board of Directors of FDIC, as well as the most that my shareholder clients have approved. I think he should also say in his cover letter that he believes that the $47 million negotiated with the trial staff of the Department of Justice and its client, the Internal Revenue Service, is fair. But if this last minute addition of $1 million is the relatively small amount needed to get the shareholders their money, then FDIC reluctantly agrees.

Although the focus of his letter should be the concerns of FDIC, I see some advantage in his pointing out that FDIC does have sympathy for the 6,500 shareholders of Benj. Franklin, who will receive the balance in the receivership after payment of taxes.

Richard Gill, Esq.
July 13, 2005
Page 2 of 2

who have street name accounts for Benj. Franklin shareholders, requesting that they update the information that we have in our files. Many of the original 6,500 shareholders have died and I am telling their families who have notified me that they must talk to their own attorneys about appropriately transferring title to the stock. I look forward to being of assistance to your designated person.

Turning to the tasks on our side of the table, Rosemary and I are preparing the attorneys fee request for submission first to FDIC and then to the Court. Rosemary is contacting the other members of our team to get us updated information on the hours that they have spent on this matter and what they propose to charge. We will try to coordinate these applications and when we have totals available, discuss them preliminarily with you. I believe you will find our totals fair and well supported. Obviously, the best way of proceeding is informally, in the hopes that FDIC and us can reach an agreement as to what would be a reasonable fee. Both of us, as well as my clients, have duties to be fair to the shareholders, and I have always been conscious of my fiduciary obligations. We hope to get you some numbers in the near future.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner

cc:    Rick Aboussie (via fax (202) 736-0676 and regular mail
       I forgot to say in our last telephone call that Laird Kirkpatrick is now Dean of the University of Oregon Law School and Charlie Williamson is a recent past President of the Oregon State Bar, with you as Associate General Counsel of the FDIC. The Portland Legal Aid office has illustrious alumni.

cc:    Rosemary Stewart (via fax (202) 682-1639 and regular mail)

DSW/jrp

**DON S. WILLNER & ASSOCIATES, PC**
Don S. Willner
Attorneys at Law
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

July 13, 2005

**VIA FAX (202) 736-0676 & REGULAR MAIL**

Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:    Benj. Franklin

Dear Richard:

As promised, here is my "check list" of the tasks we understand you are handling relative to the tax settlement for the Benj. Franklin Receivership.

1.  Editing the Fairness Hearing material that we have provided in draft.

2.  Reviewing our draft claim form for the return of the Benj. Franklin shareholders' contributions to the Litigation Fund. Rosemary will be sending you shortly a letter that should persuade the FDIC staff that payment of interest on the return of the shareholder contributions is appropriate.

3.  Preparing the FDIC memo to Darmstadter about the Fairness Hearing. I know that Rosemary has already provided you a lot of information about this subject, but please let us know if we may help further.

4.  I have not heard from the appropriate FDIC person in Texas about how we start preparing for notifying the shareholders of the Fairness Hearing. This, of course, is an FDIC responsibility, but I have the most up-to-date list of shareholders. In the meantime, I am contacting the shareholders and brokers

Richard Gill, Esq.
July 13, 2005
Page 2 of 2

who have street name accounts for Benj. Franklin shareholders, requesting that they update the information that we have in our files. Many of the original 6,500 shareholders have died and I am telling their families who have notified me that they must talk to their own attorneys about appropriately transferring title to the stock. I look forward to being of assistance to your designated person.

Turning to the tasks on our side of the table, Rosemary and I are preparing the attorneys fee request for submission first to FDIC and then to the Court. Rosemary is contacting the other members of our team to get us updated information on the hours that they have spent on this matter and what they propose to charge. We will try to coordinate these applications and when we have totals available, discuss them preliminarily with you. I believe you will find our totals fair and well supported. Obviously, the best way of proceeding is informally, in the hopes that FDIC and us can reach an agreement as to what would be a reasonable fee. Both of us, as well as my clients, have duties to be fair to the shareholders, and I have always been conscious of my fiduciary obligations. We hope to get you some numbers in the near future.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner

cc:    Rick Aboussie (via fax (202) 736-0676 and regular mail)
       I forgot to say in our last telephone call that Laird Kirkpatrick is now Dean of the
       University of Oregon Law School and Charlie Williamson is a recent past
       President of the Oregon State Bar, with you as Associate General Counsel of the
       FDIC. The Portland Legal Aid office has illustrious alumni.

cc:    Rosemary Stewart (via fax (202) 682-1639 and regular mail)

DSW/jrp

## DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
Attorneys at Law
(Licensed in Oregon and Washington)

<table>
<tr><td>OREGON OFFICE</td><td>WASHINGTON OFFICE</td></tr>
<tr><td>621 S.W. Morrison, Suite 1415</td><td>630 Sunnyside Road</td></tr>
<tr><td>Portland, OR 97205</td><td>Trout Lake, WA 98650</td></tr>
<tr><td>Telephone: (503) 228-4000</td><td>Telephone: (509) 395-2000</td></tr>
<tr><td>Fax: (503) 273-8842</td><td>Fax: (509) 395-2939</td></tr>
<tr><td>donswillner@aol.com</td><td>donswillner@aol.com</td></tr>
</table>

July 13, 2005

**VIA FAX (202) 736-0676 & REGULAR MAIL**

Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:    Benj. Franklin

Dear Richard:

As promised, here is my "check list" of the tasks we understand you are handling relative to the tax settlement for the Benj. Franklin Receivership.

1. Editing the Fairness Hearing material that we have provided in draft.

2. Reviewing our draft claim form for the return of the Benj. Franklin shareholders' contributions to the Litigation Fund. Rosemary will be sending you shortly a letter that should persuade the FDIC staff that payment of interest on the return of the shareholder contributions is appropriate.

3. Preparing the FDIC memo to Darmstadter about the Fairness Hearing. I know that Rosemary has already provided you a lot of information about this subject, but please let us know if we may help further.

4. I have not heard from the appropriate FDIC person in Texas about how we start preparing for notifying the shareholders of the Fairness Hearing. This, of course, is an FDIC responsibility, but I have the most up-to-date list of shareholders. In the meantime, I am contacting the shareholders and brokers

Richard Gill, Esq.
July 13, 2005
Page 2 of 2

who have street name accounts for Benj. Franklin shareholders, requesting that they update the information that we have in our files. Many of the original 6,500 shareholders have died and I am telling their families who have notified me that they must talk to their own attorneys about appropriately transferring title to the stock. I look forward to being of assistance to your designated person.

Turning to the tasks on our side of the table, Rosemary and I are preparing the attorneys fee request for submission first to FDIC and then to the Court. Rosemary is contacting the other members of our team to get us updated information on the hours that they have spent on this matter and what they propose to charge. We will try to coordinate these applications and when we have totals available, discuss them preliminarily with you. I believe you will find our totals fair and well supported. Obviously, the best way of proceeding is informally, in the hopes that FDIC and us can reach an agreement as to what would be a reasonable fee. Both of us, as well as my clients, have duties to be fair to the shareholders, and I have always been conscious of my fiduciary obligations. We hope to get you some numbers in the near future.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.


Don S. Willner

cc:    Rick Aboussie (via fax (202) 736-0676 and regular mail)
       I forgot to say in our last telephone call that Laird Kirkpatrick is now Dean of the
       University of Oregon Law School and Charlie Williamson is a recent past
       President of the Oregon State Bar, with you as Associate General Counsel of the
       FDIC. The Portland Legal Aid office has illustrious alumni.

cc:    Rosemary Stewart (via fax (202) 682-1639 and regular mail)

DSW/jrp

## DON S. WILLNER & ASSOCIATES, PC

`Don S. Willner
Attorneys at Law
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

July 22, 2005


## VIA FAX (202) 736-0676 & REGULAR MAIL

Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:    Benj. Franklin

Dear Richard:

I do not yet have approval of my clients to go to the $50 million with the $3 million allocated to interest. I have a conference call with them at 11:00 a.m. EDT, right after our call. I do not have any experience dealing with the Tax Review Committee, although I have made many bargains over 54 years of law practice. I seek the wisdom of you, Richard, and Rosemary. My clients are furious and are talking about raising the money for litigation. FDIC and the shareholders are being blackmailed, and I do not even know whether Darmstadter has forwarded your previous offer to the Tax Review Committee, or even whether $50 million would work. I want the DOJ to know that they are dealing with another agency, not just citizens. I look forward to our call.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner

Enclosure

cc:    Rick Aboussie (via fax (202) 736-0676 and regular mail)
       Rosemary Stewart (via fax (202) 682-1639 and regular mail)
DSW/jrp

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th St. NW, Washington DC 20429

---

FOR SETTLEMENT PURPOSES ONLY
SUBJECT TO FED. R. EVID. 408

July 22, 2005

VIA FACSIMILE AND REGULAR MAIL
Henry Darmstadter, Esq.
Trial Attorney
7th Floor Tax Division
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

    Re:    United States v. FDIC, Civ. No. 02-1427 (D.D.C.)

Dear Mr. Darmstadter:

    The Federal Deposit Insurance Corporation ("FDIC"), the Internal Revenue Service ("IRS"), the Department of Justice, and certain shareholders of Benj. Franklin Federal Savings & Loan Association ("Benj. Franklin") have engaged in extensive settlement discussions over the past several years.[1] These settlement discussions were undertaken in order to determine the federal income tax liabilities for Benj. Franklin for the thirteen-year period that begins with the 1990 tax year and ends with the 2002 tax year. The settlement discussions were undertaken to resolve the case captioned United States v. FDIC, et al., Civil Action No. 02-1247 (D.D.C.).

    The FDIC offers the Internal Revenue Service the sum of $50,000,000 to settle all taxes, penalties, and interest that have been assessed or could be assessed against Benj. Franklin for all tax years beginning with the 1990 tax year that ended on December 31, 1990, and concluding with the 2002 tax year that ended on December 31, 2002. The $50,000,000 settlement offer includes all the provisions set forth in the December 2, 2004 letter signed by Robert S. Watkins of the Department of Justice, including the revisions by Robert G. Clark of the FDIC dated December 7, 2004. That letter is fully incorporated and attached to this letter.

    The FDIC's settlement offer is contingent on the IRS/DOJ agreement that 75 percent of the first $47,000,000 of the settlement proceeds will be treated as a payment of interest, and the remaining 25 percent of the $47,000,000 will be treated as a payment of federal income taxes, for purposes of determining the effect of the payment on tax years after 2002. The remaining $3,000,000 of the settlement payment will be treated solely as a payment of interest, for purposes of determining the effect of the payment on tax years after 2002.

---

[1] The shareholders were invited to participate in the settlement discussions at the request of the FDIC.

The FDIC would appreciate your prompt response to this settlement offer. If you have any questions or concerns regarding this settlement offer, please feel free to contact me at (202) 736-0335 or Richard Gill at (202) 736-0090.

Sincerely,

Richard T. Aboussie
Associate General Counsel

cc: Don S. Willner, Esq.

Attachment

2

## DON S. WILLNER & ASSOCIATES, PC

Don S. Willner
Attorneys at Law
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

September 5, 2005

VIA FAX (202) 736-0676 AND REGULAR MAIL

Rick Aboussie
Associate General Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Richard S. Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:    Benj. Franklin

Dear Rick and Richard:

I have the sense that not too much work gets done at the Department of Justice before Labor Day, but with at least six weeks having passed since the approval by the Review Committee, it is time to remind the D.O.J. that they owe us two signatures. Here is a check list of where we stand:

1.    Could either of you call Darmstadter today? He had told you that once the Review Committee approved, the signatures would be easy and soon. Please understand the pressure on me from the shareholders for the predicted early D.O.J. action.

2.    Working together, we should get all the other documents in final form so the motion can be filed in the District Court within days of receipt of the final D.O.J. letter. Please let Rosemary or me know if we can be of further help.

3.    I assume the report by you to the Board of FDIC approving the settlement, has been written so they can act by phone once we receive the D.O.J. letter.

Rick Aboussie
Richard Gill
September 5, 2005
Page 2 of 2

4.    I wrote Mr. Glinsman about ten days ago asking if he wanted our shareholder
list by email, disk or CD, and have received no answer.

The Claims Court case was filed on September 14, 1990.  Fifteen years is a long time
for the shareholders who are still living (or their heirs) to receive justice.

Please do everything you can as soon as possible.  We appreciate your good
efforts.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner

cc:    Rosemary Stewart

DSW/jrp

**DON S. WILLNER & ASSOCIATES, PC**
Don S. Willner
Attorneys at Law
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-1850
Fax: (503) 273-8842
dswillner@aol.com

WASHINGTON OFFICE
636 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2940
Fax: (509) 395-2939
dswillner@aol.com

November 18, 2005

<u>VIA FAX (202) 736-0676 AND REGULAR MAIL</u>

Rick Aboussie
Associate General Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0062

<u>VIA FAX (202) 736-0676 AND REGULAR MAIL</u>

Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0062

Re:    Benj. Franklin

Dear Rick and Richard:

In the twelve months since we made the offer, which was accepted on Wednesday, November 16, 2005 by the government, we have talked with you about getting all of the paper work completed before the final agreement was approved so that we could immediately start the process of the Fairness Hearing. In an effort to be helpful, Rosemary and I have been turning in the necessary applications, legal memoranda, and drafts of the Fairness Hearing motion and the Notice to Shareholders, starting in December, 2004.

When Hank Darmstacter called me, after he called Richard Gill to tell me that the settlement had been approved by the Associate Attorney General, he said that he would be out of town starting December 19, 2005 for the rest of the month of December and

Rick Aboussie
Richard Gill
November 18, 2005
Page 2 of 2

also the first week of January. He suggested we have a Fairness Hearing in January, 2006.

Would it be possible for all of the internal recommendations within the FDIC to be made and reviewed in the near future and the FDIC Board approval obtained? Then the objective would be to file the Unopposed Motion for a Fairness Hearing and the supporting material in the first week of December. With the final government approval obtained, it is my assumption that Richard has forwarded to Hank Darmstadter our draft of the Unopposed Motion, which is really the only matter of concern to Darmstadter. Hank and I agreed that he should have no interest in how FDIC proposes to distribute the money. This is covered in part by an agreement between Bob Clark and myself and in part will depend upon decisions that you still have to make. In the papers that we should file in the first week of December, which we hope Judge Sullivan will sign without a hearing, we should designate a proposed date in January for the Fairness Hearing itself. Since Glenn Glinsmann has had the Benj. Franklin shareholder list for a couple of months, everything should be in readiness to send out the material immediately after Judge Sullivan signs the order for a Fairness Hearing and approves the documents that are going out. Hank is not always on the fast side, but he is now. Let us compare our calendars for yourselves, Hank and our group, and pick a date to suggest to Judge Sullivan.

The FDIC and the shareholders have worked together closely to obtain the government approval. Let us work together closely to get to the Fairness Hearing as soon as possible.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner

cc:    Rosemary Stewart

DSW:jrp

## DON S. WILLNER & ASSOCIATES, PC
Don S. Willner
Attorneys at Law
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 223-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

December 30, 2005


__VIA FAX (202) 36-0676 & EXPRESS MAIL__
Richard Gill, Esq.
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002


Re:   Benj. Franklin

Dear Richard:

        In accordance with our previous phone call I enclose a draft newspaper ad for you
to review and then forward to Glenn Glinsmann. He now has everything he needs to get
out a prompt mailing to the shareholders, plus the newspaper ads which I recommend he
place in several editions of the Portland Oregonian, the Seattle Times, and the Wall Street
Journal. I have purposely made it brief so it is more likely to be read. I hope Glinsmann
is now producing addressed envelopes so he does not have to start that process after
January 10th.

        Hank Darmstadter told me before he left that he could be reached by email, and
that there are others in his office who can cover for him. Two other lawyer names were
signed to the D.O.J. pleadings in the tax case.

        Assuming FDIC Board approval at the January 10, 2006 Board meeting, I hope
that FDIC can propose and D.O.J. concur immediately thereafter in an unopposed motion
and attached notice to shareholders, to be signed by the Judge without a hearing. If he
needs a hearing, I should be there.

        As we discussed before, I hope everything can go out quickly so we can have a
February Fairness Hearing no later than the week of February 20th, which would give the
shareholders 30 days notice which is sufficient.

Richard Gill, Esq
December 30, 2015
Page 2 of 2

I have made inquiries of the local Federal Court staff about use of a courtroom in Portland for participation by Pacific Northwest shareholders in the Fairness Hearing. The staff person sees no problem, but a formal letter request should be made to Chief Judge Ancer L. Haggerty, United States District Court, District of Oregon, 1000 S.W. Third Avenue, Portland, OR 97204. They can do video conferencing, or just install a speaker phone in a courtroom. The former would be more expensive (I assume FDIC would pay). This would allow Judge Sullivan to see the speaker in Portland. I think that is not necessary, and as long as they can be heard in Washington, D.C. on a speaker phone that would be sufficient. Since, as everyone periodically reminds us, we are not parties, the written request should probably come from you with a copy to me.

Let us know how we can help move this process along.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner

Don S. Willner

Enclosure

cc:    Rosemary Stewart

DSW/jrp

# DON S. WILLNER & ASSOCIATES, PC
Don S. Willner
Attorneys at Law
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

January 23, 2006

VIA FAX (202) 736-0676 AND REGULAR MAIL
Rick Aboussie
Associate General Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

VIA FAX (202) 736-0676 AND REGULAR MAIL
Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:    Benj. Franklin

Dear Rick and Richard:

In the many discussions that I have had with Richard Gill, we have agreed that the mailing about to be made to the shareholders notifying them of the Fairness Hearing should go to all possible shareholders. This means using our list which we forwarded months ago to Mr. Glinsmann.

My independent CPA Jerry Young, who is in charge of the list, on Thursday received a call from Ben Burke who identified himself as working with Mr. Glinsmann. He told Jerry Young that his instructions were to only use the Manufacturer's Hanover list, which was a list in existence at the time Benj. Franklin was seized on February 21, 1990. In addition to being hopelessly out-of-date, that list would not accurately show who had stock in street name, nor would it show the Benj. Franklin employees' savings accounts which were used to purchase stock. It obviously would not show all of the changes due to death, change of address, or selling the stock to others. When Jerry Young asked Mr. Burke whether he wanted Jerry to update the list with recent changes of addresses that we had received, Mr. Burke said that that was not necessary.

Rick Aboussie
Richard Gill
January 23, 2006
Page 2 of 2

Since Jerry received that letter I have talked Friday morning with Richard Gill and he explained to me that Mr. Burke was mistaken and that the instructions were clearly to use our list so the largest possible number of shareholders could receive notification of the Fairness Hearing. Richard asked me if Jerry Young could sort out the shareholders on our list who are not on the original 1990 list. Jerry can do it and he will be forwarding that to Mr. Glinsmann's office either today (Friday, January 20th), or if that is not possible, on Monday, January 23, 2006.

Later on when FDIC is in position to distribute the balance to the shareholders, I assume that another letter will be written to all possible shareholders explaining what they have to do to meet FDIC requirements of ownership. I have been telling the shareholders that FDIC will be making the determination of ownership, but in the meantime if the original shareholder died, they should contact their personal attorney to legally transfer the stock to the name of the heirs. It is important that they contact their own personal attorney because the probate rules are different in the 50 states.

I think we have this problem solved and Richard and I agree on what should be done, but both of us thought that Mr. Glinsmann's office understood what was wanted months ago when we first sent him the list. I am writing this letter to confirm my conversation with Richard because as attorney of record in the derivative shareholders' suit, I have fiduciary duty to all of the shareholders, not just those who are on the original Manufacturer's Hanover list. We share the common desire to give the widest possible notice to possible shareholders, and to make sure that later distribution only goes to the persons who can prove ownership, but it is crucial to accomplish this result, that all of the potential shareholders receive notice so that they can learn of the probable forthcoming settlement and later learn of the proper procedure to protect their rights.

On another matter, I understand that Richard will very soon be presenting the motion and notice to shareholders to the Court with the hope that it can be presented to the Judge for signature without the necessity of a hearing. The best way would be for Richard to talk to the Court Clerk. If for any reason Judge Sullivan does require a hearing before granting the motion and approving notice to shareholders, I need to be there. In that event I can come to Washington, D.C. on short notice. Let us proceed with the greatest possible speed.

Sincerely,

DON S. WILLNER & ASSOCIATES, P.C.

Don S. Willner

cc:    Rosemary Stewart
DSW/jrp

**FDIC**
Case 1:06-cv-01120-EGS   Document 48-14   Filed 06/23/2008   Page 89 of 91

**Federal Deposit Insurance Corporation**
550 17th St. NW, Washington DC 20429                                    Legal Division

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FED. R. EVID. 408**

January 25, 2006

VIA FACSIMILE
Don S. Willner, Esq.
630 Sunnyside Road
Trout Lake, Washington  98650

     Re:    United States v. FDIC, Civ. No. 02-1427 (D.D.C.)

Dear Mr. Willner:

     The FDIC has received your letter dated January 23, 2006, relating to the form of notice to be sent to the shareholders of Benj. Franklin. The FDIC shares your concern that the FDIC attempt to locate all the current shareholders of Benj. Franklin.

     To that end, the FDIC proposes to send notice to all the shareholders of Benj. Franklin at the time of its failure as well as the supplemental list that will be submitted to the FDIC by Jerry Young. The FDIC will also publish a notice in three newspapers subsequent to Judge Sullivan's approval of the form of notice. The FDIC is also in the process of establishing appropriate procedures for the shareholders of Benj. Franklin to demonstrate proof of ownership of the common stock of Benj. Franklin.

     If you have any questions regarding the matters discussed in this letter, please do not hesitate to contact me.

              Sincerely,

              Richard S. Gill
              Counsel

Don - F.Y.I

Den 2 pgs.

# DON S. WILLNER & ASSOCIATES, PC
Don S. Willner
(Licensed in Oregon and Washington)

OREGON OFFICE
621 S.W. Morrison, Suite 1415
Portland, OR 97205
Telephone: (503) 228-4000
Fax: (503) 273-8842
donswillner@aol.com

WASHINGTON OFFICE
630 Sunnyside Road
Trout Lake, WA 98650
Telephone: (509) 395-2000
Fax: (509) 395-2939
donswillner@aol.com

January 30, 2006

VIA FAX (202) 307-0054 AND REGULAR MAIL
Henry Darmstadter, Trial Attorney
Civil Trial Section, Western Region
P.O. Box 683
Benj. Franklin Station
Washington, D.C. 20044

VIA FAX (202) 736-0676 & REGULAR MAIL
Richard Gill
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-0002

Re:    Benj. Franklin Federal Savings & Loan Association

Dear Hank and Richard:

We all have been trying to get the unopposed motion and Notice to Shareholders to the Federal Court since November 16, 2005, the date of the Attorney General approval. The shareholders and I hope you can get them filed in the next day or two.

I hope the Judge will sign the proposed Order without a hearing. If the Judge requires a hearing, please seek the earliest possible date. I need to be present, and can come on short notice.

I had first hoped that the Fairness Hearing would be in January. Now I hope it will be in February. If it has to go over to March, please make it early in March. I have a two week trial in Federal Court in Portland in April.

Henry Darmstadter
Richard Gill
January 30, 2006
Page 2 of 2

      Benj. Franklin was seized on February 21, 1990.

             Sincerely,

             DON S. WILLNER & ASSOCIATES, PC

             Don S. Willner

cc:    Rosemary Stewart (via email and fax)

DSW/jrp