<u>Plaintiff Don S. Willner and Associates P.C.</u>
<u>Statement of Material Facts</u>

1. The IRS lawsuit for $1.2 billion was reduced by settlement to $50 million of which 75% was allocated to interest and 25% was allocated to the tax. After the payment of the tax $44 million remained in the Receivership. (Willner Declaration, Ex. A)

2. The amount allocated to interest can be used to offset future corporate taxes owed by the Benj. Franklin Receivership if the judgment in the U.S. Court of Federal Claims either remains $52 million or any other positive amount as a result of the appeal to the Federal Circuit. (Ex. A)

3. Don S. Willner and Associates, P.C., or its principal, Don S. Willner, or predecessor law firms ("Willner") filed the shareholders derivative law suit in the U.S. Court of Federal Claims on September 14, 1990. (Ex. A)  In that lawsuit, Willner (a) argued in 1990 and won in 1995 the court order allowing shareholders derivative standing; (b) argued and won in 1997 Summary Judgment on liability; (c) handled the majority of the trial on damages in 1999 which resulted in a 2002 judgment in the amount of approximately $35 million; (d) filed the Motion for Reconsideration of the Claims Court judgment, did a portion of the briefing, and argued and won the portion of the motion which resulted in increasing the Claims Court judgment in 2006 to approximately $52 million.

4. Willner has been the sole attorney of record in the over 16 years of the Claims Court case.[1]

---

[1] As of the filing of the appeal to the Federal Circuit Thomas Buchanan became attorney of record for the appeal, and Willner became of counsel for the appeal.

5. Willner filed, in 2002, as sole attorney of record the breach of fiduciary duty lawsuit in the Oregon Federal District Court which resulted in a TRO and later an agreement by FDIC not to pay the tax without advance notice to Willner. This case was dismissed in 2006. (Ex. A)

6. Willner filed in 2002 as sole attorney of record the Motion to Intervene and transfer to the District of Oregon in the tax case of *United States v. FDIC*. This resulted in the agreement of the Department of Justice and FDIC to allow participation by Willner and other shareholder attorneys in the 3 ½ years of successful settlement discussions. (Ex. A)

7. Willner's knowledge of the earlier cases was helpful in his producing Benj. Franklin documents and information requested by the government and FDIC during the settlement discussions. (Willner is not seeking payment for his knowledge.) (Ex. A)

8. During the settlement discussions Willner as lead counsel chaired the shareholder sides and called on other shareholder attorneys to participate as needed, handled almost all of the correspondence between the shareholder team, Department of Justice, and FDIC, and handled almost all of the numerous telephone calls with the Department of Justice's lead attorney, communicated the shareholder position on settlement offers to the FDIC attorney, and had the major attorney role in explaining and defending the settlement at the Fairness Hearing before this Court. (Gill Deposition, Ex. N)

9. During the settlement discussions, FDIC took the position that it was a "third party neutral" and an "honest broker" between the Department of Justice and the Shareholders. (Ex. N)

10. During the settlement discussions FDIC failed to take the position that federal financial assistance should not be taxable. (Ex. A)

11. The settlement of the tax case was complex, related to a huge claimed tax ($1.2 billion), and involved an issue of first impression in the courts—whether federal financial assistance to a failed savings and loan receivership, could be taxable as income or free from tax as a loan.

12. In FDIC's Notice of Partial Allowance of fees it fixed a reasonable hourly rate for Willner of $250 per hour. The basis of this decision was:

> "We tried to canvas the material out there in the public domain, which was interesting but not particularly dispositive because the rates were all over the place, so we fell back on what we knew, which was what we paid our outside counsel [in the Pacific Northwest] (Ex. M – Notice of Partial Disallowance and Ex. N).

13. In evaluating the Winston & Strawn, LLP fee petition, FDIC approved hourly rates for Mitchell Moettel of five hundred twenty-five dollars ($525.00) per hour and for Thomas Buchanan of five hundred ten dollars ($510.00) per hour. (Ex. A, based upon information and belief).

14. As a result of a fee arbitration between Winston & Straw, LLP and FDIC, the arbitrator awarded and this Court approved a double multiplier for success. (Court Order dated November 28, 2007).

15. Blackwell Sanders Peper Martin and Ernest Fleischer, in material previously submitted to this Court, seek an hourly rate including multiplier for Fleischer of,

as far as we can tell, $4583.33 per hour.  (Court Decision of July 13, 2006 and earlier Fleischer Motion for Summary Judgment).

Case 1:06-cv-01120-EGS    Document 48-30    Filed 06/23/2008    Page 4 of 4