```
            UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLUMBIA

-------------------------------x
WINSTON & STRAWN, LLP, et al., :
                               :
          Plaintiffs,          :
                               :
          v.                   : No. 06-01120 (EGS)
                               :    06-01227 (EGS)
FEDERAL DEPOSIT INSURANCE      :    06-01273 (EGS)
CORPORATION,                   :
                               :
          Defendant.           :
-------------------------------x
```

                                    Washington, D.C.

                          Wednesday, January 17, 2007

Deposition of

                        RICHARD GILL

a witness, called for examination by counsel for

Plaintiffs, pursuant to notice and agreement of

counsel, beginning at approximately 2:30 p.m., at

the law offices of Winston & Strawn, 1700 K Street,

NW., Washington, D.C., before Mary Ann Payonk of

Beta Court Reporting, notary public in and for the

District of Columbia, when were present on behalf

of the respective parties:

36

```
 1   reason for the hesitation was I thought that
 2   you had -- were asking me about examining on
 3   the number of hours that --
 4        Q    Oh, no, no, no.
 5        A    Yes.
 6        Q    You've examined witnesses.  Have
 7   you ever broken down your time records by the
 8   area of questioning you were asking the
 9   witness?
10        A    No.
11        Q    You have made arguments to courts,
12   haven't you?
13        A    Yes.
14        Q    Have you ever broken down your time
15   records by the topic of specific portions of
16   the court argument?
17        A    No.
18        Q    You have prepared witnesses for
19   trial, haven't you?
20        A    Yes.
21        Q    Have you ever broken down the
22   specific topics, topic by topic, of your
```

37

1    preparing your witness for trial?
2         A    No.  The government doesn't require
3    us to do that.
4         Q    Have you read manuals or books on
5    how time records are kept in the private
6    practice of law?
7         A    No.
8         Q    In connection with my fee petition
9    and, I believe, other fee petitions in this
10   -- in the Benj.  Franklin matter, you
11   rejected time spent by the attorneys in
12   preparing the fee petition, is that correct?
13        A    Yes.
14        Q    Have you researched or reviewed any
15   law cases which tell you that the preparation
16   time of a fee petition should be excluded?
17        A    I looked at a couple of cases and I
18   found -- I found a couple of cases that if
19   something is statutorily provided for
20   allowing a fee petition, the cost of the fee
21   petition can be included, for example, the
22   recovery of attorney fees in a successful

41

```
 1      Q    You and I agree.  Have you ever had
 2   the responsibility for keeping thousands of
 3   shareholders informed about the progress of
 4   their case?
 5      A    No.
 6      Q    Do you believe that it's
 7   inappropriate for an attorney in private
 8   practice to charge for his time spent keeping
 9   thousands of shareholders informed about the
10   progress of their case?
11      A    In -- in this particular case I
12   made the distinction, which you can
13   respectfully disagree with, certainly with
14   writing letters in response to shareholders,
15   that was appropriate to be reimbursed, but
16   with respect to updating the web page and all
17   of that, I thought that was more of a
18   technical matter than a legal matter.  So
19   those expenses were disallowed relating to
20   the web page.
21      Q    Do you understand that in the
22   private sector, major complex litigation
```

42

1   requires funding?
2       A    Yes.
3       Q    Raising money.
4       A    Yes.  The heart follows the money.
5   I understand.
6       Q    Do you think keeping in touch with
7   the shareholders through a website made it
8   easier to raise money for this case?
9       A    I can't answer the question, but
10  the answer may be yes.
11      Q    Don't you think it probable that by
12  keeping the shareholders informed of what was
13  going on that it made it more likely they
14  would contribute to the case?
15      A    I think that that certainly would
16  be a factor.  There's no doubt about it.  But
17  I would imagine there were also some, you
18  know, written solicitations as well.  But --
19      Q    Don't you think that written
20  solicitations, website, responding to
21  shareholders' letters are all ways of keeping
22  the shareholders happy with the case and

43

1    contributing to its funding?

2       A   I honestly don't know the answer to
3    the case because I don't think that came up
4    specifically in our fee review except to the
5    extent that -- that we did disallow your fees
6    in operating the web page.

7       Q   And did you disallow some of my
8    fees in writing to clients?

9       A   I tried not to.  I mean, I -- I did
10   not disallow those.  I -- to the best of my
11   knowledge, I did not.  And most of the
12   letters I saw were major shareholders that I
13   think had specific questions about the way
14   the settlement progress was going, and so I
15   felt that was appropriate that you were
16   providing, you know, legal services there
17   that benefitted the settlement process.

18      Q   You didn't see the other letters I
19   wrote to hundreds of shareholders, often in
20   response to their questions, did you?

21      A   But those -- I do not believe I
22   disallowed fees for that.

44

1  Q  Okay.

2  A  I tried not to.

3  Q  During your work as an attorney for
4  the government have you ever had to travel to
5  locations away from your home office?

6  A  Yes.

7  Q  Does it require time and effort to
8  make the airline and hotel reservations for
9  the busy schedule?

10  A  Yes, but that -- the answer is it
11  certainly does, but our belief is that's not
12  an attorney's time to make those
13  reservations.  It's normally done by a
14  secretary.

15  Q  Oh.  At the FDIC, do you have staff
16  people with specialized knowledge in making
17  travel arrangements?

18  A  Well, we have secretaries that, if
19  you call them, they'll make the arrangements.
20  I mean, I don't think it's specialized
21  knowledge.  It's probably more knowledge than
22  I have but, you know, they call the travel --

45

1  we use Sato Travel, and they call to come
2  back with what hotels and what airlines are
3  available during the times you want to
4  travel.
5      Q   Do you have a specialized person in
6  FDIC that handles travel arrangements for all
7  the staff?
8      A   Not that I'm aware of.  I mean, I
9  could be proven wrong but normally I just
10 call one of the secretaries and --
11     Q   Uh-huh.
12     A   We do have a travel service that
13 the FDIC uses and on occasion, you know,
14 people will call them, I mean, or -- or the
15 secretaries will call them.
16     Q   As part of your responsibility as a
17 lawyer trying cases do you have the
18 responsibility of organizing a litigation
19 file?
20     A   Yes, I do, but in general, that's
21 being organized by a paralegal.  I mean,
22 that's something that -- you know, sometimes

46

1   in the government you have to do it because
2   you don't have the support staff every now
3   and then, but that's something that I
4   personally consider to be a paralegal or a
5   secretary's responsibility, depending on the
6   complexity.  I mean, obviously, preparing,
7   you know, trial exhibits and other things
8   would be something that I would say a
9   paralegal would do.
10       Q    In terms of organizing a case for
11  trial, you don't think it's important that
12  you as the lawyer have that file organized
13  the way you want it done?
14       A    Oh, sure.  I mean, at the end when
15  you're getting ready, the -- or what you do
16  is you basically say, "Here's the way I want
17  the file to be organized," to the paralegal.
18  But you only want the file to be properly
19  organized so that you can effectively present
20  your case, no question about it.
21       Q    And you've not done that yourself?
22       A    Oh, I have certainly done that, but

47

1    that's what we like to think in the

2    government as one of the disadvantages of the

3    government whereas in the private sector, you

4    have support staff to do that.  I can tell

5    you that in reviewing the fee bills of the

6    outside counsel, if they put in an expense

7    like that, I mean, billing a lawyer's time

8    for organizing those documents, I would

9    disallow it.

10       Q   Do you believe it appropriate for

11   an attorney in private practice to bill when

12   he calls a client or calls an attorney, is

13   unable to reach the client or opposing

14   attorney and leaves a detailed message on an

15   answering machine?

16       A   Yes.  But I don't think it's

17   appropriate when he just says "attempted to

18   reach Richard Gill" or "attempted to reach

19   Bruce Taylor" or Catherine Topping.  But in

20   general, if the attorney says left a message

21   for the person, I do believe that that's

22   appropriate to bill for.

...

48

1     Q    I see.  So if time records say
2  "called Richard Gill and left a message," you
3  would allow that?
4     A    Yes.
5     Q    If it just said "called Richard
6  Gill" and doesn't mention leaving a message,
7  you would not?
8     A    Well, that, I didn't have that
9  specific situation.  As I recall in your fee
10 bills, it would say "attempted to reach
11 Richard Gill," and that's -- that's what I
12 felt was not specific enough to bill for.
13          In general, those weren't big items
14 in the sense of time allotted.  It was
15 usually.1 hours.  But there was probably 40
16 to 50 of those.  And sometimes you said left
17 a message which, you know, indicated to me
18 that when you didn't leave a message and it
19 said "attempted to call," you just called
20 and, you know, called back later, in other
21 words, that the phone was busy or something,
22 so --