# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **WINSTON & STRAWN LLP,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DON S. WILLNER & ASSOCIATES, P.C.** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **BLACKWELL SANDERS PEPER MARTIN** | ) | |
| and | ) | Civil Case No. 06-01120 (EGS) |
| **ERNEST M. FLEISCHER** | ) | |
| | ) | [Consolidated with No. 06-01227 |
| Consolidated Plaintiffs, | ) | (EGS) and No. 06-01273 (EGS)] |
| | ) | |
| v. | ) | |
| | ) | |
| **FEDERAL DEPOSIT INSURANCE** | ) | |
| **CORPORATION, AS RECEIVER FOR** | ) | |
| **THE BENJ. FRANKLIN FS&LA,** | ) | |
| **PORTLAND, OREGON** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**FDIC'S OPPOSITION TO WILLNER'S [SUPPLEMENATAL] MOTION FOR
SUMMARY JUDGMENT AND BLACKWELL'S MOTION FOR CLARIFICATION,
INCLUDING MEMORANDUM OF POINTS AND AUTHORITIES AND STATEMENT
OF MATERIAL FACTS**

Bruce C. Taylor
Federal Deposit Insurance Corporation
550 17th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2436 (Telephone)
(703) 562-2478 (Facsimile)

Counsel for Federal Deposit Insurance Corporation,
as Receiver for The Benj. Franklin FS&LA

Date:   July 23, 2008

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

ISSUES PRESENTED.............................................................................................................. 1

    Issue 1: Willner is not entitled to a higher hourly rate or multiplier........................... 1

    Issue 2:  Fleischer is not entitled to a multiplier ........................................................ 1

STANDARD OF REVIEW ....................................................................................................... 1

THE COURT'S ORDER OF JULY 13, 2007, AND ITS IMPLICATIONS ................................. 3

ARGUMENT .......................................................................................................................... 5

1.   Willner is not entitled to more than $250 per hour, because as a sole practitioner in
    Portland, Oregon, and Trout Lake, Washington, $250 per hour is a high fee. ................. 5

    A.    The Oregon Bar Survey of 2002 – used by Willner's home jurisdiction – supports
        the FDIC's choice of $250 per hour. ....................................................................... 6

    B.    Willner is not entitled to a Washington, D.C., partner's rate of $525 per hour,
        because he provided routine services and did 96% of his work in Portland,
        Oregon, and Trout Lake, Washington.................................................................... 8

    C.    The declarations submitted by Willner fail to show that $250 is unreasonable,
        because the declarations are not based on personal knowledge of the routine
        nature of Willner's work in the Tax Case. ............................................................ 11

2.   The FDIC's disallowances to Willner's invoices were reasonable, because they are all
    recognized as disallowable under established billing standards. ..................................... 15

    A.    Willner's questioning of the qualifications of Richard Gill - the FDIC attorney
        responsible for reviewing Willner's invoices – is misguided, because Gill has
        practiced law for over three decades and worked alongside Willner in the Tax
        Case.................................................................................................................... 15

    B.    Willner's objections to the FDIC's disallowances are unjustified, because the
        disallowances are in line with the billing standards of Willner's home jurisdiction
        and this Circuit.................................................................................................... 16

    C.    The FDIC's disallowance of 189 hours of the 1,031 hours billed by Willner was
        reasonable, because the disallowed items failed to meet established billing
        standards. ........................................................................................................... 17

        *(1)*    *The disallowance of 40 hours for work in 1998 and 1998 was reasonable,*
                *because Willner estimated the time and reported it as block billing.* ....... 18

        *(2)*    *The disallowance of 76 hours for fee petition work was reasonable,*
                *because generally such time is not compensable.* ..................................... 19

        *(3)*    *The disallowance of 11.8 hours for organizing or searching for files was*
                *reasonable, because it is improper for an attorney to charge for such*
                *tasks.* ..................................................................................................... 20

        *(4)*    *The disallowance of 5.5 hours for making travel plans was reasonable,*
                *because it is improper for an attorney to charge for such tasks* ............... 20

        *(5)*    *The disallowance of 22.8 hours for working on a web site was reasonable,*
                *because it is improper for an attorney to charge for such tasks* ............... 20

        *(6)*    *The disallowance of 6.7 hours for work on the Goodwill Case was*
                *reasonable, because the FDIC didn't agree to pay fees for work on the*
                *Goodwill Case.* ...................................................................................... 21

*(7)*  *The disallowance of 1.5 hours for holding press conferences and speaking with reporters was reasonable, because it is improper for an attorney to charge for such tasks and the FDIC didn't agree to pay for such services.* .......................................................................................... 21

*(8)*  *The disallowance of 13.6 hours for attempting to reach someone was reasonable, because it is improper for an attorney to charge for such tasks.* ................................................................................ 21

*(9)*  *The disallowance of 10.7 hours for going to the post office, downloading, and excessive meeting time was reasonable, because it is improper for an attorney to charge for such tasks or they are otherwise unreasonable.* ... 21

3.  The FDIC could have disallowed up to 50% or more of Willner's hours......................... 22

    A.  The FDIC could have disallowed at least 50% or more of the 260 hours Willner billed for phone calls............................................................................................. 22

    B.  The FDIC could have disallowed a substantial portion of Willner's travel time, because he billed at a full rate when he didn't perform work and billed excessively at other times................................................................................................... 23

4.  Fleischer's hourly rate is not in dispute, because the FDIC paid him the rate he provided to the FDIC, going up to $390 per hour.............................................................. 23

5.  Willner and Fleischer are not entitled to a multiplier, because an upward adjustment is rare and the services they provided don't qualify. ............................................ 24

6.  Willner and Fleischer are not entitled to a multiplier, because there is substantial opposition to Willner's and Fleischer's fee requests. ....................................... 32

7.  If the court awards a multiplier, it should be limited, because Willner and Fleischer should not receive more than Winston & Strawn. ............................................ 33

8.  Any additional fees awarded by the Court should be reduced in proportion to the hours that the FDIC could have disallowed; otherwise Willner and Fleischer will receive a windfall. ...................................................................................... 35

CONCLUSION........................................................................................................ 35

STATEMENT OF GENUINE ISSUES............................................................................ 37

    A.  FDIC's response to Willner's Statement of Material Facts. ............................... 37

    B.  FDIC's Statement of Genuine Issues. ......................................................... 40

# TABLE OF AUTHORITIES

**Cases**

*Benj. Franklin Shareholders Litig. Fund v. FDIC*,
  501 F. Supp. 103 (D.D.C. 2007) ................................................................................... 35

*Board of Trustees of Hotel and Restaurant Employees Union 25 v. JPR, Inc.*,
  136 F.3d 794 (D.C.Cir. 1998) ........................................................................................ 3

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*,
  532 U.S. 598, 121 S.Ct. 1835 (2001) ...................................................................... 27, 37

*Consolidated Edison Co. of New York v. Bodman*,
  445 F.3d 438 (D.D.Cir. 2006) ........................................................................................ 3

*Davis County v. EPA*,
  169 F.3d 755 (D.C. Cir. 1999) ...................................................................... 9, 10, 11, 17

*Democratic Central Committee of D.C. v. Washington Metropolitan Area Transit Commission*,
  3 F.3d 1568 (D.C. Cir. 1993) ......................................................................................... 3

*Doe v. Rumsfeld*,
  501 F. Supp. 2d 186 (D.D.C. 2007) ............................................................................. 17

*Donnell v. United States*,
  682 F.2d 240 (D.D.Cir. 1982) ............................................................................... passim

*Goos v. National Ass'n of Realtors*,
  68 F.3d 1389 (D.C. Cir. 1995) ..................................................................................... 17

*In re Baan Co. Securities Litig.*,
  288 F. Supp. 2d 14 (D.D.C. 2003) ................................................................................ 4

*In re NBW Commercial Paper*,
  826 F. Supp. 1448 (D.D.C. 1992) ............................................................................ 2, 39

*Kalodner v. Bodman*,
  241 F.R.D. 6 (D.D.C 2006) .......................................................................................... 28

*Perles v. Kagy*,
  473 F.3d 1244 (D.C.Cir. 2007) ............................................................................... 30, 32

*Role Models America v. Brownlee*,
  353 F. 3d 962 (D.C. Cir. 2004) .................................................................................... 17

*Select Milk Producers, Inc. v. Veneman*,
  400 F.3d 939 (D.C. Cir. 2005) ................................................................................ 27, 37

*Suess v. FDIC*,
  No. 02-807 (D.Ore. July 26, 2002) (FDIC Ex. 2) ....................................................... 27

*Summers v. Howard University*,
  2006 WL 751316 (D.D.C. Mar. 20, 2006) .................................................................. 17

*United States v. Larchwood Gardens, Inc.*,
  420 F.2d 531 (3rd Cir. 1970) ....................................................................................... 20

*Winston & Strawn v. FDIC*,
  No. 06-1120 (EGS), slip op. (D.D.C. July 13, 2007) ............................................. 1, 3, 4

**Statutes**

12 U.S.C. § 1821(d)(5)(A)(iv) ........................................................................................... 2

IRC § 6103 ...................................................................................................................... 28

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................................. 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ISSUES PRESENTED**

**Issue 1: Willner is not entitled to a higher hourly rate or multiplier**

The FDIC paid $108,793.60 to Willner for 842.35 hours at $250 per hour.  Willner now seeks additional fees of $958,076.10.  Is it reasonable to award Willner a "D.C. partner's rate" of $525 per hour and a "multiplier" for phone calls, letters, and "chairing" meetings, when 96% of his work was performed in Portland, Oregon, or Trout Lake, Washington, and in the face of major shareholder opposition?

**Issue 2:  Fleischer is not entitled to a multiplier**

The FDIC paid $88,057.00 to Fleischer for 249.1 hours at various rates he provided for 2002 to 2005, at an average rate of $354 per hour.  Fleischer now seeks an additional $1.3 million.  Is it reasonable to award Fleischer a "contingent" fee when he served only as a consultant, when fellow participants believe Fleischer was counterproductive or is not entitled to additional fees, and in the face of major shareholder opposition?

**STANDARD OF REVIEW**

The Court discussed the standard of review for granting summary judgment in its Memorandum Opinion of July 13, 2007.[1]  Willner and the FDIC disagree on Willner's reasonable hourly rate.  The FDIC paid Willner $250 per hour, a rate it determined was reasonable for an attorney who provided mostly routine services and conducted most of his work in Portland, Oregon, and Trout Lake, Washington.  Willner claims that he is entitled to $525 per hour, a Washington, D.C., partner's rate.  Willner claims that the FDIC made numerous errors in

---

[1] *Winston & Strawn v. FDIC*, No. 06-1120 (EGS), slip op. at 7 (D.D.C. July 13, 2007) ("Slip Op.").

its disallowances.  The FDIC disallowed 188.75 of the 1,031.1 hours billed by Willner.  The FDIC believes that its disallowances were justified, because they are for items that don't meet standard billing practices for attorneys, such as faxing, making travel plans, working on a website, attempted phone calls, organizing or searching for files, and preparing his fee petition. And the FDIC could have disallowed even more hours.  Despite all this, the Court may be able to resolve the disputed issues of fact based on the materials presented by the parties.

Fleischer doesn't dispute the hourly rate used by the FDIC.  The FDIC paid Fleischer the rates that he provided to the FDIC, the highest being $390 per hour.  The FDIC disallowed only 4.5 hours of the 253.6 he billed.  Fleischer doesn't dispute the disallowances.  There are no disputed issues of fact regarding the hourly rate paid by the FDIC to Fleischer or the disallowances made by the FDIC to Fleischer's bills.  But as with Willner's bills, the FDIC could have disallowed substantially more hours, as excessive or redundant.

The FDIC disputes as a matter of law that Willner and Fleischer are entitled to additional fees of $958,076.10 and $1.3 million, respectively, regardless of what theory is advanced by either plaintiff.

Therefore, neither Willner nor Fleischer are entitled to a judgment for additional fees as a matter of law.  If the Court determines that the FDIC has already paid reasonable fees to Willner and Fleischer, however, there will be nothing further to decide, and the case may be dismissed.

The Court also noted in its July 13 Memorandum Opinion that it reviewed the FDIC's administrative claims decisions *de novo*.[2]  The FDIC's defenses are not limited by the language of the FDIC's disallowance letters, contrary to Willner's assertion.[3]  Nonetheless, the reasons

---

[2] Slip Op. at 7.

[3] *In re NBW Commercial Paper*, 826 F. Supp. 1448, 1473 (D.D.C. 1992) (12 U.S.C. § 1821(d)(5)(A)(iv) doesn't bar the FDIC from raising defenses other than those noted in letters of disallowance).

provided in the FDIC's disallowance letters are broad enough to encompass all the defenses raised by the FDIC.

Finally, quality adjustments are appropriate only in rare cases.[4]  Even if one attorney receives an upward adjustment, it does not mean that other attorneys are entitled to one.[5] Further, even when an award is based on a percentage-of-the-fund award, the fees must be reasonable in light of the particular facts of the case.[6]  Further, even in common fund cases, attorneys seeking a fee enhancement must show that they had a causal role in the result.[7]  And in circumstances where intervenors seek fees from a party on whose side they participated – which is the position Willner and Fleischer are in – they have to show that they made "some unique contribution . . . to the strength of that party's legal position."[8]

Willner and Fleischer can't satisfy these standards.

### THE COURT'S ORDER OF JULY 13, 2007, AND ITS IMPLICATIONS

On July 13, 2007, the Court issued an Order and Memorandum Opinion denying the parties' motions for summary judgment.

The Court rejected the plaintiffs' argument that they were entitled to a percentage-of-the-fund award under the common fund doctrine.[9]  Thus, neither Willner nor Fleischer is entitled to a percentage-of-the-fund award or a multiplier that is the functional equivalent of a percentage-of-the-fund award.

---

[4] *Board of Trustees of Hotel and Restaurant Employees Union 25 v. JPR, Inc*., 136 F.3d 794, 801 (D.C.Cir. 1998); *Donnell v. United States*, 682 F.2d 240, 254 (D.D.Cir. 1982).

[5] *Donnell v. United States*, 682 F.2d 240, 255 (D.D.Cir. 1982).

[6] *Democratic Central Committee of D.C. v. Washington Metropolitan Area Transit Commission*, 3 F.3d 1568, 1573 (D.C. Cir. 1993).

[7] *Consolidated Edison Co. of New York v. Bodman*, 445 F.3d 438, 452 (D.D.Cir. 2006).

[8] *Donnell v. United States*, 682 F.2d 240, 248 (D.D.C. 1982).

[9] Slip Op. at 1, 9-10.

The Court also noted that it was not acting to determine reasonable attorneys' fees for a prevailing party but "to review the FDIC's payment decisions" as "part of an overall agreement reached amongst the parties and the United States to settle the Tax Case."[10]

But the Court denied the FDIC's motion for summary judgment for two reasons. First, the Court stated that the record did not provide sufficient information for it to make a determination whether the hourly rates paid and the hours allowed by the FDIC were reasonable.[11] Second, the Court stated that "a multiplier *may be* appropriate to account for additional factors such as the contingent nature of the case."[12]

The Court noted that the " 'lodestar/multiplier ' approach . . . starts with the lodestar amount, and then adjusts the amount 'upward or downward, based on additional factors such as the contingent nature of the case and the quality of the attorneys' work.' "[13] The Court noted that a "multiplier of 2.0 or less 'falls within a range that is fair and reasonable.'"[14]

Thus, the Court's ruling suggests three possible outcomes: 1) a downward adjustment in the amount already paid; 2) no change, or 3) an upward adjustment of no more than twice what Willner and Fleischer have already been paid.

The FDIC will show that the hourly rates paid by the FDIC were reasonable and that neither Willner nor Fleischer is entitled to a multiplier.

---

[10] Slip Op. at 10.

[11] Slip Op. at 12.

[12] Slip Op. at 13. (Emphasis added).

[13] Slip Op. at 13.

[14] Slip Op. at 13, citing *In re Baan Co. Securities Litig.*, 288 F. Supp. 2d 14, 19-20 (D.D.C. 2003).

**ARGUMENT**

1.      **Willner is not entitled to more than $250 per hour, because as a sole practitioner in Portland, Oregon, and Trout Lake, Washington, $250 per hour is a high fee.**

      Willner refused to provide the FDIC with a customary hourly rate.[15]  While Willner may claim that he doesn't have a customary hourly rate, that claim is inconsistent with his course of dealings with the shareholders in the Goodwill Case (*Suess v. United States,* No. 90-981C (Fed. Cl.).[16]  But because Willner refused to provide a customary rate- and insisted on a Washington, D.C. partner's rate of $525 per hour – the FDIC imputed a rate of $250 per hour for Willner.  The FDIC arrived at the rate of $250 per hour based on the highest fees charged by its outside counsel in the Portland and Seattle areas.[17]  This gave Willner the benefit of law firm rates, rather than the lower rates available to sole practitioners, such as Willner.  The FDIC also checked the rate of $250 per hour against information contained in the National Law Journal.[18]

      Further, the record shows that in 1990, when Willner was hired to prosecute the Goodwill Case (*Suess v. United States*), he agreed to accept a discounted hourly rate of $62.50.[19]  He advised prospective shareholder plaintiffs that "a fair hourly rate would be more than double" the rate of "62.50 per hour for my time."[20]  Thus, although Willner claims that he didn't have a customary rate, he admits that in 1990 a fair hourly rate for his services was about $125 per hour.  Assuming a rate of $125 per hour for Willner in 1990 and factoring in a reasonable 5% increase

---

[15] Third Gill Dec. (7/23/2008) ¶ 10 (FDIC Ex. 66)..

[16] See Suess Dec. (6/19/2008) ¶ 11 (FDIC Ex. 59).

[17] Third Gill Dec. (7/23/2008) ¶ 10 (FDIC Ex. 66).

[18] Third Gill Dec. (7/23/2008) ¶ 10 (FDIC Ex. 66).

[19] 1990 engagement letter for *Goodwill Case* at 2 (FDIC Ex. 1).  *See also* Suess Dec. (6/19/2002) ¶ 8 (FDIC Ex. 59).

[20] 1990 engagement letter for *Goodwill Case* at 2 (FDIC Ex. 1).  *See also* Suess Dec. (6/19/2002) ¶ 8 (FDIC Ex. 59).

for each year through 2004, Willner's hourly rate in 2004 would have been $247.49, slightly less than the $250 per hour that the FDIC paid Willner for hours he billed before and during 2004.

**Table** 1

**Willner Projected Fees 1990-2006
at 5% Increase Per Year**

| Year | Rate | $ Increase | Next Yr. Rate |
|------|--------|-----------|--------------|
| 1990 | 125.00 | 6.25 | 131.25 |
| 1991 | 131.25 | 6.56 | 137.81 |
| 1992 | 137.81 | 6.89 | 144.70 |
| 1993 | 144.70 | 7.24 | 151.94 |
| 1994 | 151.94 | 7.60 | 159.54 |
| 1995 | 159.54 | 7.98 | 167.51 |
| 1996 | 167.51 | 8.38 | 175.89 |
| 1997 | 175.89 | 8.79 | 184.68 |
| 1998 | 184.68 | 9.23 | 193.92 |
| 2009 | 193.92 | 9.70 | 203.61 |
| 2000 | 203.61 | 10.18 | 213.79 |
| 2001 | 213.79 | 10.69 | 224.48 |
| 2002 | 224.48 | 11.22 | 235.71 |
| 2003 | 235.71 | 11.79 | 247.49 |
| 2004 | 247.49 | 12.37 | 259.87 |
| 2005 | 259.87 | 12.99 | 272.86 |
| 2006 | 272.86 | | |

Willner charged for services beginning in 1998-1999 through May 2006.  The FDIC paid Willner $250 per hour regardless of the year in which the services were provided.  This redounded to Willner's benefit, because his rate would have been lower than $250 for most of the period covered by his invoices.

**A.    The Oregon Bar Survey of 2002 – used by Willner's home jurisdiction – supports the FDIC's choice of $250 per hour.**

The United States District Court for the District of Oregon – Willner's home jurisdiction – has issued a message to attorneys addressing fee petitions, including hourly rates.  With respect to reasonable hourly rates, the message states that the District of Oregon "will use the Oregon

State Bar Economic Bar Survey as its initial benchmark."[21]  Although the message says that attorneys may argue for higher rates it requests attorneys to "address the Economic Bar Survey and provide justification for requested hourly rates higher than reported by the Bar Survey."[22]

The Bar Survey for 2002 shows the FDIC's decision to pay Willner $250 per hour was reasonable.  The following table shows pertinent billing rates from the 2002 Bar Survey.

**Table 2**
**Pertinent Billing Rates for Portland[23]**

| Item | Rate |
|------|------|
| Average billing rate | $197 |
| 95th percentile | $300 |
| Average – lawyers with over 30 years experience | $223 |
| 95th percentile – lawyers with over 30 years experience | $337 |

The FDIC paid Willner more than the overall average rate of $197 and more than the average rate of $223 for lawyers with more than 30 years experience.  Although the rates for the 95th percentile for all attorneys and attorneys with over 30 years experience are higher, Willner is a sole practitioner.  And as a sole practitioner, Willner's rate would not approach the 95th percentile for all attorneys.  The Bar Survey reported that the average compensation for sole practitioners in Portland as $98,853.[24]  The 95th percentile for *sole practitioners* in Portland was reported as $233,600.[25]  Further, Willner is over 60 years old.  The Bar Survey shows that the

---

[21] U.S. District Court for the District of Oregon, *Message From The Court Regarding Attorney Fee Petitions*, http://ord.uscourts.gov/.  (FDIC Ex. 54).
[22] U.S. District Court for the District of Oregon, *Message From The Court Regarding Attorney Fee Petitions*, http://ord.uscourts.gov/.  (FDIC Ex. 54).
[23] Oregon State Bar, *Economic Bar Survey* 29, 31(2002) (FDIC Ex.55).
[24] Bar Survey 25 (FDIC Ex. 55).
[25] Bar Survey 25 (FDIC Ex. 55).

*average compensation for lawyers over the age* of 60 was $121,074.[26]  Sole practitioners bill an

average of 123 hours per month,[27] or 1476 hours a year (*123 hrs. x 12 mos. = 1476*).

The following table shows the hourly breakdown of the compensation figures for sole
practitioners.

**Table 3**
**Rates for Sole Practitioners and Lawyers 60 or Older in Portland**

| Item | Calculation | Rate |
|------|-------------|------|
| Average compensation | *$98,853 / 1476 hrs =* | $66 |
| 95th percentile | *$233,600 / 1476 =* | $158 |
| Average over 60 years old | *$121,074 / 1476 =* | $82 |

This information suggests that the FDIC overpaid Willner at the rate of $250 per hour, even if

Willner was placed in the 95th percentile of sole practitioners.[28]

**B.      Willner is not entitled to a Washington, D.C., partner's rate of $525 per hour,
because he provided routine services and did 96% of his work in Portland, Oregon,
and Trout Lake, Washington.**

Willner's refusal to provide a standard hourly rate does not entitle him to claim a higher

hourly rate based on rates charged by partners in Washington D.C. law firms or a rate charged by

"top litigators in complex civil litigation" in Portland, Oregon, particularly when the services

rendered did not require exceptional skill or knowledge and the bulk of his services was

performed in Portland or at his home in Trout Lake, Washington.

Willner billed over 1000 hours but he spent a total of only about 41 hours in conferences

and meetings in Washington, D.C. – or about 4% of the total time billed (41 hours/1,031 hours =

.0396).

---

[26] Bar Survey 18 (FDIC Ex. 55).
[27] Bar Survey 29 (FDIC Ex. 55).
[28] *See also* Suess Dec. (6/19/2002) ¶ 9 (FDIC Ex.59).

8

**Table 4**
**Washington, D.C. Meeting and Court Time**

| Invoice Date | Entry Date | Entry | Hrs |
|---|---|---|---|
| 12/02/2002 | 11/19/2002 | Prepare for tax conference; travel to Adams Hotel for pre-conference meeting; conference with FDIC and DOJ [Note – A hearing in the Goodwill Case was held in the U.S. Court of Federal Claims on 11/21/2002] | 7.0 |
| 09/03/2004 | 05/18/2004 | Conference with Justice and FDIC | 6.5 |
| 09/03/2004 | 08/18/2004 | Meet with Justice and FDIC [block billing - includes preparation and phone conference – 4 hrs disallowed as excessive – meeting time estimated] | 6.0 |
| 09/03/2004 | 08/19/2004 | Preparation for FDIC meeting. To Stewart's office, tax group conference.  Working lunch with Ernie and Rosemary.  Attempts to reach Gary Hindes.  Conference with Rosemary. To airport, flight to Portland, working on case during trip [block billing – 4 hrs disallowed as excessive – meeting time estimated] | 6.5 |
| 01/05/2005 | 11/09/2004 | Conference regarding FDIC meeting, calls, *preparation of website, conference with Rosemary Stewart [block billing – meeting time estimated] | 4.3 |
| 06/30/2005 | 06/16/2005 | FDIC meeting in Washington | 4.0 |
| 06/30/2005 | 06/17/2005 | Conference with Rosemary Stewart then to FDIC for conference with Gill [block billing – meeting time estimated] | 3.3 |
| 05/10/2006 | 05/02/2006 | Courthouse for hearing | 3.3 |
| | | **Total** | 40.9 |

And some of Willner's time in Washington related to the Goodwill Case rather than the Tax Case.  At least one meeting in the Tax Case appears to have been arranged because Willner was scheduled to appear in the United States Court of Federal Claims in the Goodwill Case.[29] Yet he seeks an hourly rate on par with the rates charged by partners or tax specialists in high-profile Washington, D.C. firms.  This is unreasonable and inconsistent with *Donnell v. United States*, 682 F.2d 240 (D.C. Cir. 1982) and *Davis County Solid Waste Management and Energy Recovery Special Service District v. EPA*, 169 F.3d 755 (D.C. Cir. 1999).

---

[29] Goodwill docket entry for 11/21/2002 (FDIC Ex. 62) (Excerpt).

In *Donnell*, the court of appeals assumed that ordinarily an attorney's rate is based on the forum of litigation unless an out-of-town attorney is used because of special expertise or an unwillingness of local counsel to take the case, as long as competent local attorneys are available.[30]  Willner touts his knowledge of the Goodwill Case and related documents as an important factor in the Tax Case discussions but lamely attempts to avoid *Donnell*'s rule by claiming that he did not charge for it.[31]  Because Willner was an out-of-town attorney with specialized knowledge – and there can be no dispute that local attorneys were available – *Donnell* dictates that the rates in Willner's home market apply.

In any event, the *Davis County* exception applies even if the *Donnell* exception doesn't. In *Davis County*, the D.C. Circuit found that lower home market rates would apply when the bulk of the work was not performed in Washington and the difference in the rates between the home market and Washington was substantial.[32]  In *Davis County*, a Utah county waste management district and others challenged standards promulgated by the EPA under the Clean Air Act.  The county was represented by Utah attorneys and was successful.  The county petitioned for attorney fees as costs, as explicitly provided by the Clean Air Act.  In *Davis County* nearly all the work was performed in Utah, the less expensive market.  Similarly, Willner performed nearly all his work in the less expensive legal markets of Portland or Trout Lake. Trout Lake is a small community that in 2000 had a population of about 500 people.[33]  As the Court might imagine, Trout Lake is not a recognized legal market.  Willner is the only attorney shown in the business listings.[34]

---

[30] *Donnell v. United States*, 682 F.2d 240, 252 (D.C. Cir. 1982).

[31] Willner [Supp] Motion 19-20; Willner Statement of Facts ¶ 7; Willner Dec. ¶ 13 (Willner Ex. A).

[32] *Davis County v. EPA*, 169 F.3d 755, 759 (D.C. Cir. 1999).

[33] *See* http://www.city-data.com/sity/Trout Lake-Washington.html (FDIC Ex. 60) (Excerpt).

[34] *See* http://www.troutlake.org/main/custom.asp?recid=13 (FDIC Ex. 61) (Excerpt).

About 96% of the work performed by Willner was done in Portland and Trout Lake, where he works out of his home. The market rates between Portland and D.C. are substantial. Willner maintains that the Washington DC rate is $525. For Portland, the Oregon Bar Survey of 2002 shows an average rate of $197 per hour, an average rate for lawyers with over 30 years experience of $223 per hour, a 95th percentile rate for all lawyers of $300 per hour, a 95th percentile rate for lawyers with over 30 years experience of $337 per hour, a sole practitioner's rate of $66 per hour, a 60-year or older sole practitioner's rate of $82 per hour, and 60-year or older 95th percentile sole practitioner's rate of $158 per hour. They are all substantially lower than $525 per hour. Willner alleges that the rates in Portland and Washington D.C. are not significantly different. But if Willner believed that, he wouldn't be so insistent on a Washington, D.C. rate.

The court in *Davis County* noted that in a case where out-of-town lawyers must spend much more time in Washington – for instance, when a lengthy trial is held – an award of D.C. rates would be appropriate.[35] But there was no lengthy trial in the Tax Case. There was no trial at all. There were only a series of discussions – conducted mostly by phone – and an exchange of correspondence. Willner spent less than 43 hours in Washington out of a total of 1.031 billed. The *Davis County* exception applies to Willner. In addition, *Davis County* also supports the FDIC's disallowances, as discussed herein.

**C.     The declarations submitted by Willner fail to show that $250 is unreasonable, because the declarations are not based on personal knowledge of the routine nature of Willner's work in the Tax Case.**

Willner submits several declarations in support of his argument that he is entitled to a Washington DC partner rate of $525 per hour, or in the alternative, to a Portland rate of no less

---

[35] *Davis County v. EPA*, 169 F.3d 755, 760 (D.C. Cir. 1999).

than $400 per hour. As noted in earlier briefs,[36] these declarations – with one exception – are either 1) general statements regarding the rates of Washington, D.C. attorneys for complex litigation, 2) testimonials that extol the virtues of Willner's long legal career, or 3) form documents. And none of the declarations reflects the reality of the Tax Case and the nature of Willner's services. They are not entitled to any weight, particularly compared to the Bar Survey, an objective and comprehensive publication adopted by the U.S. District Court for the District of Oregon.

Willner has submitted an updated declaration from David Markowitz that states that Willner is entitled to $450 per hour if Portland rates are used. The updated Markowitz declaration is no less flawed than the earlier declaration claiming that Willner is entitled to $400 per hour. As with the earlier declaration, the updated Markowitz declaration relies on a private survey of rates charged by a handful of Portland attorneys. The updated Markowitz declaration concludes that top litigators engaged in complex civil litigation charge an average of $450 per hour.[37] But this is for 2006 and even if accepted as applying to Willner can't be applied to earlier years. And for reasons discussed herein, it can't be used to compensate Willner for delay in payment.[38]

Presumably, the Markowitz survey covered only top litigators at large law firms. There is nothing to show that sole practitioners were asked to participate, because it states that the survey was distributed to the firms that participated.[39] Further, the rate quoted is based on the average hourly rate of only 15 attorneys who charge "the highest rates for commercial

---

[36] *See* FDIC Opp. (2/22/2007) 12, 13.
[37] Markowitz Dec. (6/17/2008) at 2 (Willner Ex. No. S).
[38] *See* end of section 7 herein.
[39] Markowitz Dec. (6/17/2008) at 1 (Willner Ex. No. S).

litigators."[40]  By limiting the data to the attorneys who already charge the highest rates, the

survey is self-limiting and result-determinative, as is the declaration that relies on the private

survey.

The updated declaration carries forward the same serious problems inherent in the earlier

Markowitz declaration.  First, although the Tax Case may have involved complex issues, Willner

did not significantly contribute to the substantive issues.[41]  As noted, Willner's chief

contributions consisted of ministerial tasks.  The bulk of the substantive work was performed by

FDIC attorneys, attorneys at Winston & Strawn, Spriggs & Hollingsworth, and attorneys for the

IRS.[42]

Second, the updated Markowitz declaration is not based on personal knowledge of

Willner's actual role in the settlement discussions.  Instead, Markowitz says that he "referred the

class representatives in *this case*" to Willner and "assisted with discreet [read discrete?] matters

relating to *this case*."  But it is obvious that the "this case" referred to is the Goodwill Case

(*Suess v. United States*) filed in 1990 by the shareholders in the U.S. Court of Federal Claims,

not the Tax Case, filed in 2002 by the United States against the FDIC, which is the germane

action.

Third, the FDIC has information indicating that Markowitz may have a fee-sharing

arrangement with Willner, suggesting that Markowitz has more than a professional interest in

seeing that Willner receives higher fees.[43]  Willner states that Markowitz is not sharing Willner's

fees in the *tax matter*.[44]  This seems to confirm that Markowitz has a fee sharing arrangement

---

[40] Markowitz Dec. 2 (6/17/2008) (Willner Ex. S).

[41] Third Gill Dec. (7/23/2008) ¶ 8 (FDIC Ex. 66); Suess Dec. (6/19/2008) ¶¶ 10, 11 (FDIC Ex.59).

[42] *See* section 5 herein; Third Gill Dec. (7/23/2008) ¶ 8 (FDIC Ex. 66); Suess Dec. (6/19/2008) ¶¶ 10, 11 (FDIC Ex. 59).

[43] Supplemental Suess Dec. (7/19/2008) ¶ 8 (FDIC Ex. 63).

[44] Willner [Supp.] Motion 26 n.5

with Willner in the Goodwill Case.  Thus, if Willner can establish a high hourly rate for work on the Tax Case, he will have an easier time arguing for a higher hourly rate in the Goodwill Case if the lodestar method plays a role in fee determinations in the Goodwill Case.

Willner also added a declaration from Dean Heiling.[45]  As with the Markowitz declaration, the Heiling declaration is not based on personal knowledge of Willner's work in the Tax Case.  And as with both Markowitz declarations and several other declarations submitted by Willner, the Heiling declaration is more a testimonial of Willner's long legal career and reputation.  These would be beneficial if this case involved a lifetime achievement award, but they are immaterial to the determination of whether the FDIC paid reasonable fees for the work that Willner actually performed and the effect – which was slight – that work had on reducing the receivership's taxes.

One final point is warranted regarding the declarations.  Although Willner has not identified anyone as an expert witness, it appears that he is attempting to use one or more of the declarations as expert reports.  But none of the declarations satisfy the requirements for expert reports under the rules.  Rule 26 of the Rules of Federal Procedure requires that expert reports provide the following information:

> (i)     a complete statement of all opinions and the basis and reasons for them;
> (ii)    the data or other information considered by the witness in forming them;
> (iii)   any exhibits that will be used to summarize or support them;
> (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years
> (v)     a list of all other cases in which the witness testified as an expert at trial or deposition in the preceding four years; and

---

[45] Heiling Dec. (6/19/2008) (Willner Ex. T).

(vi)    a statement of the compensation to be paid for the
study and testimony in the case.[46]

If Willner intends to use one or more declarations as expert reports – or intends to call any of the

declarants to testify as experts at any hearing – Willner should be required to submit expert

reports that comply with Rule 26 and the FDIC should be allowed to depose the declarants.

**2.    The FDIC's disallowances to Willner's invoices were reasonable, because they are
all recognized as disallowable under established billing standards.**

**A.    Willner's questioning of the qualifications of Richard Gill - the FDIC attorney
responsible for reviewing Willner's invoices – is misguided, because Gill has
practiced law for over three decades and worked alongside Willner in the Tax Case.**

Willner argues that Richard Gill – the FDIC attorney who reviewed Willner's bills for

reasonable – was unqualified because Gill doesn't routinely review fee petitions "like" Willner's.

If Willner means that Gill rarely reviews invoices that –like Willner's – fall far short of

established billing standards, he's right.  But if Willner is impugning Gill's professional

qualifications to review Willner's invoices, he's way off the mark.  Gill received his law degree

and master's of business administration from the University of Virginia in 1973.[47]  He has

practiced law for 35 years.[48]  As part of his duties as an FDIC attorney, Gill has handled

numerous multi-million dollar professional liability cases.[49]  He had a major role in accountant

liability settlements that resulted in payments of about $1 billion to the FDIC.[50]  As a result, Gill

has reviewed numerous invoices prepared by outside counsel.[51]  Finally, Gill is intimately

familiar with the role Willner played in the discussions related to the Tax Case.[52]  Consequently,

---

[46] Fed. R. Civ. P. 26(a)(2)(B).

[47] Third Gill Dec. (7/23/2008) ¶ 2 (FDIC Ex. 66).

[48] Third Gill Dec. (7/23/2008)  ¶ 2 (FDIC Ex. 66).

[49] Third Gill Dec. (7/23/2008) ¶3 (FDIC Ex. 66).

[50] Third Gill Dec. (7/23/2008) ¶ 3 (FDIC Ex.66).

[51] Third Gill Dec. (7/23/2008) ¶ 4 (FDIC Ex. 66).

[52] Third Gill Dec. (7/23/2008) ¶ ¶ 7, 8 (FDIC Ex. 66).

Gill was in a unique position to assess the reasonableness of Willner's invoices – much more so than the people who signed the declarations submitted by Willner.

**B.    Willner's objections to the FDIC's disallowances are unjustified, because the disallowances are in line with the billing standards of Willner's home jurisdiction and this Circuit.**

Gill's disallowances were not only justified but generous under the billing standards expected of attorneys practicing in the United States District Court for the District of Oregon and the standards followed by this Court.

Willner has practiced law in Oregon for many years.  As noted above, the U.S. District Court for the District of Oregon has published a message to all attorneys practicing in the court addressing the billing standards for fee petitions in that court.  The message reads in part:

> Increasingly, the Court has reviewed fee petitions where all or a substantial part of an attorney's time for one day is billed as a "block" without segregating time for individual tasks.  This makes assessing the reasonableness of the time spent on a particular task extremely difficult.  The Court recommends that members of the bar record time spent on particular, individual tasks and support their fee petitions with a level of documentation that allows the Court, and opposing counsel, to adequately review the reasonableness of the time spent on a single task.
>
> Additionally, the Court frequently sees time billed for items such as "conference", "telephone call with . . . ", or "correspondence to. . ." with no description of the subject of the conference, the call, or the correspondence.  This too makes it nearly impossible to assess the reasonableness of the requested time.  Because the burden to document the reasonableness of the requested fees is on the attorney requesting the fees, fee petitions that fail to support the reasonableness of the request due to one of these problems may be denied, at least in part.[53]

Similarly, the court of appeals in *Davis County* found that many of the itemized descriptions used by plaintiff in *Davis County* – such as "telephone conference with Bill Evans"

---

[53] U.S. District Court for the District of Oregon, *Message From The Court Regarding Attorney Fee Petitions*, http://ord.uscourts.gov/.  (FDIC Ex. 54). (Highlighting added).

– were too vague to identify with any particular task.[54]  The court of appeals also said that

billable hours in fee applications are susceptible to reduction for failure to allocate tasks

efficiently to different attorneys based on experience.[55]  In addition, the court of appeals stated

that duplication of effort is another basis on which hours may deemed excessive and that hours

may be rejected when work descriptions are so general that a court cannot ascertain the

reasonableness of the time claimed.[56]

      Further, this Court has addressed a variety of items in attorney fee petitions that are either

not compensable or subject to a steep reduction.  Among the items are:  block billing; clerical

tasks; public relations work; non-technical services; excessive or redundant fees; lack of

reasonable description; travel time at full rate when no work is performed; and lack of billing

discretion.[57]

**C.**    **The FDIC's disallowance of 189 hours of the 1,031 hours billed by Willner was reasonable, because the disallowed items failed to meet established billing standards.**

      Willner's invoices are replete with the shortcomings identified by the U.S. District Court

for the District of Oregon, the D.C. Circuit, and this Court.

      Gill properly disallowed about 189 of the 1,031 hours billed by Willner.  Willner

identified most of the disallowed items in his Ex. CC.  Rather than supporting Willner's

argument, however, Ex. CC serves only to show that Gill was justified in disallowing each item.

---

[54] *Davis County v. EPA*, 169 F.3d 755, 761 (D.C. Cir. 1999).

[55] *Davis County v. EPA*, 169 F.3d 755, 761 (D.C. Cir. 1999).

[56] *Davis County v. EPA*, 169 F.3d 755, 761 (D.C. Cir. 1999).

[57] *See, e.g., Role Models America v. Brownlee*, 353 F. 3d 962 (D.C. Cir. 2004); *Goos v. National Ass'n of Realtors*, 68 F.3d 1389 (D.C. Cir. 1995); *Davis County v. EPA*, 169 F.3d 735 (D.C. Cir. 1999); *Donnell v. United States*, 682 F.2d 240 (D.C. Cir. 1982); *Doe v. Rumsfeld*, 501 F. Supp. 2d 186 (D.D.C. 2007); *Summers v. Howard University*, 2006 WL 751316 (D.D.C. Mar. 20, 2006).

Following is a table showing the FDIC's breakdown by category of the disallowed items.

**Table 5**
**Hours Disallowed by FDIC to Willner's Invoices**

| Category/Item | Hours |
|---|---|
| Block Billing (Estimated) | 40.0 |
| Fee Petition Related | 76.0 |
| Organize/Search for Files | 11.8 |
| Travel Plans/Packing | 5.5 |
| Web Page | 22.8 |
| Goodwill Case | 6.7 |
| Press Related | 1.5 |
| Attempt to Reach | 13.6 |
| Other: Excessive Hrs * Download * Post Office | 10.7 |
| **Total** | 188.6 |

FDIC Ex. 69 breaks out the disallowed entries on the 23 invoices Willner submitted with his original proof of claim. FDIC Exs. 70 through 76 break out the disallowed entries on the seven invoices Willner submitted as supplemental proofs of claim.

There is an immaterial difference of .15 hour between the 188.6 disallowed hours shown in Table 4 – which were tabulated from Willner's marked up invoices and the 188.75 hours the FDIC disallowed – as shown in its partial disallowance letter to Willner.[58] There is also a small difference of 4.35 hours between the FDIC's tabulation and Willner's total of 192.95 hours[59] – which in any event is greater than the 188.75 hours actually disallowed.

**(1)    *The disallowance of 40 hours for work in 1998 and 1998 was reasonable, because Willner estimated the time and reported it as block billing.***

---

[58] *See* Letter to Willner from Glinsmann (5/19/2006) (Willner Compl. Ex. 2).

[59] *See* Willner's chart of FDIC deletions at 11 (Willner Ex. CC).

The FDIC disallowed 40 hours in this category for estimated time spent on the Goodwill Case in 1998 or 1999.  Willner's proof of claim divides the estimated 40 hours into three categories: 1) attempt to present to the Claims Court the issue of taxability of the loan made to the Receivership from Federal Financial Assistance which was repaid with interest (15 hours); 2) attempt to include any tax paid to the IRS as restitution damages in the Claims Court case (20 hours); and 3) detailed Stipulated Order (5 hours).[60]  But he admits that Tom Buchanan performed most of the work on category one.[61]  He also admits that the Claims Court rejected the evidence related to category one.  Willner also admits that the Claims Court ignored the evidence related to category two.  Finally, Willner admits that many other attorneys worked on the stipulated order described in category three.[62]  And Willner now seems to argue that the entire 40 hours should be allowed because he couldn't separate expert witness preparation and examination related to tax issues from other issues.[63]  Thus, Willner admits that his estimates are unreliable.  Neither the FDIC nor the Court is in a position to determine whether the hours charged are reasonable or not.

**(2)     *The disallowance of 76 hours for fee petition work was reasonable, because generally such time is not compensable.***

The FDIC disallowed 76 hours for the time that Willner spent on his fee petition.  Willner complains that he should be allowed to charge for this time because the FDIC made him submit a proof of claim.  The proof of claim itself is a one-page form that the FDIC supplied.[64]  The bulk of Willner's proof of claim consists of invoices that he routinely prepared for submission to Bob

---

[60] Willner invoice (09/30/2001) at 2 (FDIC Ex. 22).

[61] Willner invoice (09/30/2001) at 2 (FDIC Ex. 22).

[62] Willner invoice (09/30/2001) at 2 (FDIC Ex. 22).

[63] Willner [Supp] Motion 23.

[64]  Willner Proof of Claim first page (FDIC Ex. 52).

Suess or other shareholders.  Willner's explanation for his proof of claim is in essence a legal

brief and something that he chose to include with his proof of claim.  Even if Willner had first

sought fees by filing an action against the FDIC, he wouldn't be entitled to fees for working on

his complaint or for preparing briefs in support of his fee complaint.  It is well-established that

"Generally, the law imposes on a party the duty to pay his own fees and expenses in vindicating

his personal interests."[65]  The FDIC didn't agree to pay Willner for the time spent on preparing

his invoices or his proof of claim and he is not entitled to recover for that time.

*(3)*    ***The disallowance of 11.8 hours for organizing or searching for files was reasonable,
         because it is improper for an attorney to charge for such tasks.***

The FDIC disallowed 11.8 hours in this category.  Organizing and searching for files are

clerical and non-technical tasks.  It is not proper for an attorney to charge for such services.

*(4)*    ***The disallowance of 5.5 hours for making travel plans was reasonable, because it is
         improper for an attorney to charge for such tasks.***

The FDIC disallowed 5.5 hours in this category.  Making travel arrangements is clerical

and non-technical.  It is not proper for an attorney to charge for such services.

*(5)*    ***The disallowance of 22.8 hours for working on a web site was reasonable, because it is
         improper for an attorney to charge for such tasks.***

The FDIC disallowed 22.8 hours in this category.  Working on a web site for purposed of

keeping clients informed is not compensable.  Even if a client was willing to pay an attorney for

such services, the FDIC didn't agree to pay Willner to prepare and update a website intended for

shareholders.  Further, it the purpose of the website was to keep a large number of shareholders

apprised of litigation events, it begs the question of why Willner continued to communicate with

individual shareholders time and time again – and continue to charge for such individual contact.

---

[65] *United States v. Larchwood Gardens, Inc*., 420 F.2d 531, 534 (3rd Cir. 1970).

***(6)    The disallowance of 6.7 hours for work on the Goodwill Case was reasonable, because the FDIC didn't agree to pay fees for work on the Goodwill Case.***

The FDIC disallowed 6.7 hours in this category.  The FDIC didn't agree to subsidize Willner's work in the Goodwill Case.  Willner admits that he made a mistake by charging 11.4 hours for work on the Goodwill Case – which he refers to as the Claims Court case.[66]  This is 4.7 hours more than the FDIC disallowed in this category.

***(7)    The disallowance of 1.5 hours for holding press conferences and speaking with reporters was reasonable, because it is improper for an attorney to charge for such tasks and the FDIC didn't agree to pay for such services.***

The FDIC disallowed 1.5 hours in this category.  Media related work is non-compensable.  The FDIC didn't agree to pay for such services.

***(8)    The disallowance of 13.6 hours for attempting to reach someone was reasonable, because it is improper for an attorney to charge for such tasks.***

The FDIC disallowed 13.6 hours in this category.  Willner complains that the disallowances are unfair because the FDIC made its decision based on the way Willner described the services.  But Willner's description is all the FDIC had to go on.  And Willner's statement that he only billed in increments of one-tenth (0.1) of an hour doesn't justify the payment of multiple time entries for nothing of substance.  At the least, Willner's inclusion of these charges shows a lack of billing discretion.

***(9)    The disallowance of 10.7 hours for going to the post office, downloading, and excessive meeting time was reasonable, because it is improper for an attorney to charge for such tasks or they are otherwise unreasonable.***

The FDIC disallowed 10.7 hours in this category.  The FDIC disallowed .2 hour for a trip to the post office on July 26, 2005.[67]  The FDIC disallowed .5 hour for an attempt to download

---

[66] Willner [Supp.] Motion 25.
[67] FDIC Ex. 70.

on April 21, 2003[68]. A trip to the post office and an attempt to download are clerical or non-technical services. It is improper for an attorney to charge for such services. Redundant and excessive fees are improper, as well. Willner billed a total of 12.5 hours on August 18, 2004, and a total of 13.5 hours on August 19, 2004. The FDIC disallowed 4 hours on each day as excessive.[69] The FDIC disallowed another 2 hours as excessive on May 1, 2006.[70]

Willner failed to comply with the billing standards established by his home jurisdiction and this Court. The FDIC's disallowances were reasonable.

**3.    The FDIC could have disallowed up to 50% or more of Willner's hours.**

Willner complains that the FDIC disallowed about 189 of the 1031 hours he billed. But the FDIC could have easily disallowed an additional 50% or more.

FDIC Ex. 78 shows a total of 94 items – excluding calls – that the FDIC could have disallowed but didn't. Many entries are described simply as "conference with . . .," letter to . . .," "reviewing letters . . .," and "reviewing e-mails."

**A.    The FDIC could have disallowed at least 50% or more of the 260 hours Willner billed for phone calls.**

FDIC Ex. 77 shows that Willner charged for an astounding 912 phone calls, totaling about 260 hours, most of which were described simply as "call with . . .", "call to . . .", or by some other minimal description that failed to meet established billing standards. There is no way to determine whether those calls had any bearing on the substantive tax issues. The FDIC allowed most of those charges, but should have disallowed at least 50% of them.[71]

---

[68] FDIC Ex. 69.

[69] FDIC Ex. 69.

[70] FDIC Ex. 76.

[71] Third Gill Dec. (7/23/2008) ¶ 12 (FDIC Ex. 66).

**B.    The FDIC could have disallowed a substantial portion of Willner's travel time, because he billed at a full rate when he didn't perform work and billed excessively at other times.**

FDIC Ex. 79 shows Willner's travel time.  Willner billed his travel time at a full rate, even when he did not conduct any work.  For instance, Willner reported the following for June 24, 2002:  Drive to Eugene airport for Stouck meeting – 3.5 hours.[72]  It is doubtful that Willner conducted any work while he was driving to the Eugene airport.  On more than one occasion, Willner billed over 8 hours of travel time at a full rate.  It's unrealistic to think that Willner spent every travel hour working on such days.  For instance on November 9, 2004, Willner billed the entire 8.5 hours for a return trip to Portland as work time.[73]  And on May 3, 2006, Willner billed the entire 10.5 hours for his flight to Portland as work time.[74]  This is incredible – plus Willner described the work on the flight as "preparation of documents for client conference."  The FDIC should not have paid for that work in any event.

There are other suspect travel entries, as well.  Willner should have exercised better billing discretion.  But the FDIC should have paid only a one-half rate for travel time when Willner conducted work during travel, and the FDIC should have disallowed all unrealistically high hours.[75]

**4.    Fleischer's hourly rate is not in dispute, because the FDIC paid him the rate he provided to the FDIC, going up to $390 per hour.**

Fleischer's original invoice – submitted with Willner's original proof of claim – stated an hourly rate of $390 per hour for an estimated 240 hours.[76]  At the FDIC's request, Fleischer submitted a more detailed invoice in March 2006 that broke out a total of 253.6 hours for the

---

[72] Willner invoice (7/16/2002) at 4 (FDIC Ex. 25).

[73] Willner invoice (1/5/2005) at 3 (FDIC Ex. 40).

[74] Willner invoice (5/10/2006) (FDIC Ex. 51).

[75] Third Gill Dec. (7/23/2008) (FDIC. 66).

[76] Fleischer invoice (undated but fax stamped 7/25/2005) at 1 (FDIC Ex. 57).

years 2002, 2003, 2004, and 2005.[77]  Fleischer provided various rates for each of the years he worked, and the FDIC paid Fleischer $88,057 for 249.1 hours or the 253.6 hours Fleischer reported, or an average rate of $353.50 per hour.

Fleischer does not dispute the hourly rate used by the FDIC because it is the rate he provided.  Nor does he dispute the minor disallowances.  Perhaps that is why Fleischer failed to comply with the Court's order to submit a brief addressing the lodestar/multiplier factors and instead submitted a brief that continues to argue that he is entitled to a percentage-of-the-fund. The Court has already rejected that argument and the facts reinforce the correctness of the Court's decision, for both Willner and Fleischer.

**5.      Willner and Fleischer are not entitled to a multiplier, because an upward adjustment is rare and the services they provided don't qualify.**

As noted in the section on Standard of Review, the lodestar is the usual method used to compensate attorneys and multipliers are the exception.  Adjustments for quality generally are inappropriate.  A multiplier – even in common fund cases – is inappropriate in cases where an attorney can't show that the services provided had a causal role in the result.  As discussed herein, neither Willner nor Fleisher can meet the burden for justifying a multiplier.[78]

For instance, Willner testified at his deposition that the IRS never accepted the plaintiffs' arguments.

> **Q** – Did anyone on behalf of the Department of Justice or the IRS ever indicate to you that they accepted that any of the theories or positions presented by the plaintiff attorneys and the FDIC would result in no taxes being due to the receivership?
>
> **A** – They *never* agreed with our arguments, no.[79]

---

[77] Fleischer invoice (3/3/2006) (FDIC Ex. 58).

[78] *See also* FDIC Opp 1-3; FDIC Reply 1-3.

[79]  Willner Dep. 19:17-22, 20:1-2 (Jan. 18, 2007) (FDIC Ex. 11).  (Emphasis added).

Likewise, Fleischer can't identify anything he did that resulted in a reduction of taxes.

> **Q** – And do you – do you know how any contributions you made to the settlement process may have actually resulted in a reduction of taxes in [any] amount?
>
> **A** – I do not.[80]

Willner and Fleischer also face other obstacles to a multiplier that they can't overcome.

Willner's work on the Tax Case does not warrant a multiplier. Tax issues dominated the discussions leading to the settlement of the Tax Case. By his own admission, Willner is not a tax expert. Willner mechanically recites that he acted as "lead" counsel, but his services consisted almost entirely of making phone calls, arranging meetings, and "chairing" the shareholder side of meetings.[81] And what Willner terms as "chairing" meetings, actually means that he introduced various shareholder representatives.[82] Willner cites a series of 43 letters as evidence of his right to a multiplier. But they only serve to contradict his claims. Of the 43 letters, 15 were not Willner's work product – they were letters prepared by the IRS or FDIC.[83] Of the remaining 28 letters, another 15 addressed nonsubstantive matters, such as requesting meetings, providing agenda items, requesting expedited calculations from the IRS, simply enclosing spreadsheets prepared by others, or asking for help.[84] After eliminating the 30 letters just mentioned, only 13 letters can be said to address substantive matters. But many – if not all of them – were prepared by other attorneys. For instance, a letter dated March 17, 2003, introduced a memorandum prepared by Winston & Strawn tax specialist Mitch Moetel regarding Federal Financial Assistance ("FFA").[85] A time record submitted by Winston & Strawn shows that Moetel

---

[80] Fleischer Dep. 13:14-18 (Jan. 18, 2007) (FDIC Ex. 12).
[81] Third Gill Dec. (7/23/2008) ¶ 8 (FDIC Ex. 66); Suess Dec. (6/19/2008) ¶ 10 (FDIC Ex. 59).
[82] Willner [Supp] Motion 19; Third Gill Dec. (7/23/2008) ¶ 8 (FDIC Ex. 66).
[83] *See* Willner Ex. L at ¶¶ 1, 2, 4, 5, 7, 9, 12, 13, 16, 18, 22, 29, ,30, 37, and 42.
[84] *See* Willner Ex. L at ¶¶ 11, 14, 17, 20, 21, 23, 24, 25, 26, 32, 33, 38, 39, 40, 43.
[85] *See* Willner Ex. L at ¶ 6. The letter is part of Willner Ex. K.

prepared the FFA memorandum and provided it to Willner.[86]  Willner's time records show that

Willner received a draft of the Moetel memorandum on March 10, 2003.  Another letter, dated

April 14, 2004, enclosed another memorandum prepared by Moetel addressing the issue of a

$258 million interest deduction.[87]  Winston & Strawn's time records show that Moetel drafted an

interest deduction letter on April 1, 2004, and worked on it over the next two weeks, culminating

with a call with Willner.[88]  Willner's time records leading up to April 14, 2004, contain entries

for "editing Darmstadter draft letter and cover letter," "review revisions, "edit letter," and

communications with Moetel.[89]

It's reasonable to assume that Willner – lacking in tax expertise – relied on others with

tax expertise to prepare work product addressing substantive tax issues.

Richard Gill – the FDIC's primary participant in the Tax Case discussions from April

2004 until the Court approved the settlement in May 2006 – thinks Willner's involvement was

ministerial and Fleischer's involvement was counterproductive.[90]  We expect that other

participants would testify to the same effect.

Henry Darmstadter – the principal IRS attorney involved in the discussions – if called to

testify at a hearing, also would testify that Fleischer's involvement was counterproductive.[91]

This is not the stuff of multipliers and success fees.

Willner also continues to make much of his involvement in *Suess v. FDIC*, No. 02-807

(D. Ore.), an action filed in June 2002 to prevent the FDIC from paying the surplus to the IRS.

But this action was solely against the FDIC.  Neither the IRS nor the United States was a party.

---

[86] Winston & Strawn invoice (04/23/2003), various entries from 03/03/2003 to 03/03/17/2003. (FDIC Ex. 67) (Excerpt).

[87] *See* Willner Ex. L at ¶19.  The letter is included in Willner Ex. K.

[88] Winston & Strawn invoice (05/17/2004), various entries from 04/01/2004 to 04/14/04.  (FDIC Ex. 68). (Excerpt).

[89] Willner invoice (09/03/2004), entries for (04/05/2004, 04/13/2004, and 04/14/2004.  (FDIC Ex. 37).

[90] Third Gill Dec. (7/23/2008) ¶ 8, 20 (FDIC Ex. 66).

[91] Third Gill Dec. (7/23/2008) ¶ 20 (FDIC Ex. 66).

The action could not –and did not – eliminate or reduce the $1.2 billion tax claim against the receivership. And in fact, the United States filed the Tax Case a month *after* Willner filed *Suess v. FDIC*. The net result of *Suess v. FDIC* was that the Oregon district court dissolved the TRO obtained by Willner *ex parte*.[92] It had no effect on the amount of tax claimed by the IRS. The FDIC agreed to pay reasonable fees to the private participants for their role in *reducing the taxes* against the receivership. The FDIC could have disallowed all of the hours Willner billed *for suing the FDIC* but didn't. Thus, it is laughable that Willner notes his "concern" that some FDIC officials might support unjustified disallowances to his invoices because he had sued the FDIC.[93]

Essentially, Willner claims that *Suess v. FDIC* – an action in which the IRS wasn't a party – was the catalyst for the IRS's agreement to reduce the taxes against the receivership. But the catalyst theory has been rejected by the Supreme Court.[94] The Supreme Court held that a voluntary change in a party's position is not enough to warrant an award of attorney's fees as "a prevailing party" under the Equal Access to Justice Act.[95] Rather, the Supreme Court held, a party must show a court-ordered change in the legal relationship of the parties.[96] "*Buckhannon decisively rejected* the 'catalyst theory.'"[97] And although a preliminary injunction may qualify as a court-ordered change in the legal relationship between parties, a temporary restraining order obtained *ex parte* and dissolved for lack of subject matter jurisdiction doesn't.[98] Any claim by

---

[92] *See* Order, *Suess v. FDIC*, No. 02-807 (D.Ore. July 26, 2002) (FDIC Ex. 2).

[93] *See* Willner [Supp] Motion 8 n.1.

[94] *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 605, 121 S.Ct. 1835, 1840 (2001).

[95] *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 605, 121 S.Ct. 1835, 1840 (2001).

[96] *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 605, 121 S.Ct. 1835, 1840 (2001).

[97] *Select Milk Producers, Inc. v. Veneman*, 400 F.3d 939, 945 (D.C. Cir. 2005). (Emphasis added).

[98] *Cf. Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 605, 121 S.Ct. 1835, 1840 (2001); *Select Milk Producers, Inc. v. Veneman*, 400 F.3d 939, 945 (D.C. Cir. 2005).

Willner that he is entitled to a multiplier because he filed *Suess v. FDIC* and then the IRS agreed to settle the Tax Case is fallacious.[99]

Willner also continues to cite the Interagency Agreement as a "secret" agreement that prevented the FDIC from challenging the amount of tax.  First, the Interagency Agreement was entered into at a time when hundreds of thrifts were failing.  The Resolution Trust Corporation – the FDIC's predecessor – and the IRS entered into the Interagency Agreement to handle certain tax issues related to the multitude of failed or failing institutions.  Whether one agrees or disagrees with the policy decisions reflected in the Interagency Agreement, two things are clear.  First, the agreement wasn't secret.  There is nothing in the record showing that the Interagency Agreement was secret.  Willner has known about the Interagency Agreement at least since 1998.  Yet, he continues to make unwarranted accusations that the agreement is secret, implying a nefarious purpose to it.  In support, Willner cites a provision of the Interagency Agreement that provides that certain agreements will not be made public, except as allowed by law.  Willner's conclusion is fundamentally flawed.  The provision he cites refers not to the Interagency Agreement but to agreements that might be made with individual receivership-taxpayers under the Interagency Agreement.  Any such individual agreement would be confidential, just as any agreement between an individual taxpayer and the IRS would be confidential.[100]  Second, the Interagency Agreement didn't prevent the FDIC from negotiating a reduction in taxes.  Otherwise, Willner wouldn't have agreed in 1999 to defer to the FDIC in discussions with the IRS.  Nor could the FDIC have argued for lower taxes in the discussions that ultimately resulted in a settlement of the Tax Case.  Willner also would not have relied on the FDIC to convince the

---

[99] *Cf. Kalodner v. Bodman*, 241 F.R.D. 6, 10 (D.D.C 2006) (argument by attorney that because a distribution occurred after he filed litigation and thus must have been caused by the litigation "essentially boils down to a *post hoc, ergo propter hoc* fallacy.").
[100] IRC § 6103.

IRS to settle the Tax Case. For instance, in a letter to FDIC attorney Robert Clark dated December 10, 2004, Willner said that "contact from you would be of far more value than a contact from me or even Richard Gill."[101] In a letter to Richard Gill dated July 22, 2005, Willner said, "I do not have any experience dealing with the [IRS] Tax Review Committee . . .I want DOJ to know that they are dealing with another agency, not just citizens."[102]

Neither Willner's nor Fleischer's involvement in the Tax Case was contingent on payment from the receivership surplus. Willner was *already representing* various shareholders *and being paid $125 per hour* for his services, with the prospect of recovering 30% or more of the $52 million award in the Goodwill Case (*Suess v. United States*).

The record doesn't support Fleischer's claim for a contingent fee from the receivership surplus. Willner hired Fleischer as a *consultant*. A letter from Willner to Fleischer indicates that Willner intended to pay Fleischer $125 per hour, the same arrangement that Willner had with attorney Jerry Stouck (of Spriggs & Hollingsworth) – and the same amount that Willner was being paid.[103] When Willner submitted his proof of claim to the FDIC on behalf of himself and the consultants he hired, it included a request from Fleischer for payment at $390 per hour for an estimated 240 hours.[104] Willner stated in his proof of claim explanation that "a reasonable fee for [Fleischer's] services would be $93,600."[105] Willner also said that he had "included no contingent multiplier relative to [my consultants'] fees and expenses."[106] Willner also told counsel for the FDIC that he was surprised that Fleischer was not satisfied with the $88,057 the

---

[101] This letter is part of Willner Ex. K.

[102] This letter is part of Willner Ex. K.

[103] Letter to Fleischer from Willner (08/12/2002) (FDIC Ex. 56).

[104] Fleischer invoice (undated but fax stamped 7/25/2005) (FDIC Ex. 57).

[105] Willner Proof of Claim Explanation 15 (FDIC Ex. 52).

[106] Willner Proof of Claim Explanation 16 (FDIC Ex. 52).

FDIC paid him.[107]  So, it appears that Willner didn't contemplate a contingency fee for Fleischer. These facts indicate that Willner and Fleischer didn't have an oral contract entitling Fleischer to a contingency fee.[108]

    More importantly, if Fleischer expected a contingent fee he should have had the shareholders and the FDIC approve it.  The FDIC was not privy to any arrangement between Willner and Fleischer and is not bound by any arrangement between them.  Nor did the shareholders or the Court approve a success fee of $1.3 million for Fleischer.

    Fleischer raised the issue of a contingency fee only *after* the FDIC requested more detailed information from Fleischer and then in vague and contradictory terms.  In March 2006 the FDIC requested a more detailed description of Fleischer's time.[109]  Fleischer included the following broad and vague statements regarding his arrangement with Willner:  1) "My arrangement with Don [Willner] was an oral agreement that he would use his best efforts to see that I would be compensated fairly should Benj prevail"; and 2) "a 'fair' contingent fee amount would be determined by a Federal judge."[110]  But Fleischer knew that Willner had already requested a "fair and reasonable" fee for Fleischer of $93,600, based on Fleischer's own invoices.

    As discussed in an earlier brief, at the beginning of the Tax Case discussions the private participants probably expected to seek payment as part of a fee award in the Goodwill Case – in which the United States was the defendant – not from the receivership surplus under the control of the FDIC as receiver.[111]  And, in fact, the circumstances suggest that Fleischer decided to seek

---

[107] Third Gill Dec. (7/23/2008) ¶ 24 (FDIC Ex. 66).

[108] *See Perles v. Kagy*, 473 F.3d 1244, 1250-51 (D.C.Cir. 2007) (parties' conduct and amount of money involved in case are two of three factors indicating no oral contract for contingency fee).

[109] Third Gill Dec. (7/23/2008) ¶ 22 (FDIC Ex. 66).

[110] Fleischer invoice (3/3/2006) (FDIC Ex. 58).

[111] FDIC Opp. (2/22/2007) 15-16.

a "contingency" fee only after it appeared that Winston & Strawn and Willner did not intend to abandon their request for fees in excess of standard hourly rates.[112]

Fleischer also claims that the fee estimate of $1 million to $2 million doesn't apply to him because he did not draft or see the Notice to Shareholders before it went out – which is an odd admission for someone who claims to have been so important to the settlement process.  And he argues that he never agreed to the fee estimate of $1 million to $2 million – which he labels as a unilateral act of the FDIC.  But Fleischer misses two fundamental points.  First, Willner – his principal – reviewed the Notice to Shareholders – and Fleischer should be estopped from claiming he wasn't aware of the terms.  Second, the estimate of $1 to $2 million is a term approved by the shareholders and this Court.  It is immaterial whether Fleischer agreed to it or any other term of the settlement.  Fleischer would have the Court ignore the estimate of $1 million to $2 million in favor of his absurd request for an additional $1.3 million because he *alone* thinks he is entitled to an additional $1.3 million.

The following table highlights the audacity of Fleischer's request for additional fees of $1.3 million.

**Table 6**
**Difference in Fleischer's Demand and**
**What Other Attorneys Were Paid or are Requesting**

| Attorney | Paid/Requested | Calculation | Difference |
|---|---|---|---|
| Winston & Strawn | 975,750 | *$1.3 MM − 975,750=* | $324,250 |
| Spriggs & Hollingsworth | 130,228 | *$1.3 MM − 130,228=* | $1,169,772 |
| Willner | 958,076 | *$1.3 MM − 958,076=* | $341,924 |

So, we have Fleischer – who acted only as a consultant – arguing that it's reasonable to award him $342,250 more that the firm of Winston & Strawn received –including that firm's multiplier of 2.0 – nearly $1.2 million more than the firm of Spriggs & Hollingsworth received – which

---

[112]   *See also* Third Gill Dec. (7/23/2008) ¶ 23 (FDIC Ex. 66).

firm didn't seek additional fees – and even $341,924 more than Willner is asking for in additional fees – and Willner *hired* Fleischer!

Fleischer should be estopped from claiming any additional fees. Fleischer essentially argues that he is entitled to a contingent fee based on equitable grounds. But in this district " an attorney seeking equitable compensation must present proof of the reasonable value of the services rendered."[113] This is generally done "by multiplying the total number of hours reasonably expended on the case by the attorney's reasonable hourly rate."[114] The FDIC paid Fleischer for all but 4.5 hours of the time he billed at the rates he provided. Fleischer is not entitled to anything more.

**6.    Willner and Fleischer are not entitled to a multiplier, because there is substantial opposition to Willner's and Fleischer's fee requests.**

The FDIC, as the custodian of the receivership surplus and the only party to the Tax Case other than the United States, opposes additional fees for Willner and Fleischer.

Other participants to the Tax Case discussions also think Willner's and Fleischer's claims are unwarranted or excessive.

Rosemary Stewart – one of the principal participants for Spriggs & Hollingsworth – testified at her deposition that she disagreed with Fleischer's claim for additional fees and stated that the FDIC had already provided reasonable compensation to Fleischer.[115]

Tom Buchanan – one of the principal participants on behalf of Winston & Strawn – believes at best that Willner may be entitled to double what he has already been paid, but that anything else would be excessive. He testified at his deposition that Fleischer's original claim

---

[113] *Perles v. Kagy*, 473 F.3d 1244, 1254 (D.C.Cir. 2007).

[114] *Perles v. Kagy*, 473 F.3d 1244, 1254 (D.C.Cir. 2007).

[115] Stewart Dep. 25:20-22, 26:1-12 (Jan. 18, 2007) (FDIC Ex. 13).

for $2 million for $89,000 worth of work was excessive and that he could support only a request by Fleischer for an additional $89,000, or twice what the FDIC paid Fleischer.[116]

Several major shareholders also oppose Fleischer's request for additional fees.

Bob Suess – owner of 400,000 shares and the lead plaintiff in the Goodwill Case and the injunction action against the FDIC – believes that the FDIC was generous with Willner and that Willner is not entitled to additional fees.[117]  He believes Fleischer's claim for additional fees is ludicrous.[118]

Abe Siemens – owner of 346,000 shares – opposes Willner's and Fleischer's claim for additional fees.[119]

Gary Hindes – who manages funds that comprise the largest ownership of shares – opposes Willner's and Fleischer's claim for additional fees.[120]

Suess, Siemens, and Hindes also say that they have spoken with numerous other shareholders, none of whom support Fleischer's claim for additional fees.[121]

Given the views of fellow participants and major shareholders, Willner's and Fleischer's claims for additional fees are unsupportable under any theory.

**7.    If the court awards a multiplier, it should be limited, because Willner and Fleischer should not receive more than Winston & Strawn.**

In no event should Willner or Fleischer receive a multiplier of more than two times the amount the FDIC has already paid them.  Of all the private participants, Winston & Strawn provided the most substantive value, and they ultimately received additional fees amounting to

---

[116]  Buchanan Dep. 42:16-21, 43:9-14 (Jan. 17, 2007) (FDIC Ex. 10).

[117]  Suess Dec. (6/19/2008) ¶ 9 (FDIC Ex. 59); letter to Gill from Suess (undated) (FDIC Ex. 8); letter to Gill from Suess (1/4/2007) (FDIC Ex. 9).

[118]  Suess Dec. (6/19/2008) ¶ 16 (FDIC Ex. 59).

[119]  Siemens Dec. (7/8/2008) (FDIC Ex. 64).

[120]  Hindes Dec. (7/21/08) (FDIC Ex. 65).

[121]  Suess Dec. (6/19/2009) ¶ 18 (FDIC Ex. 59); Siemens Dec. (7/8/2008) ¶ 6 (FDIC Ex. 64); Hindes Dec. (7/21/2008) ¶ 7 (FDIC Ex. 65).

about two times what the FDIC paid them at their standard hourly rates.  Willner is not entitled

to an increased hourly rate or a multiplier.  But assuming a multiplier is deemed appropriate, it

should be limited.  First, it should be applied only to the $108,793.60 the FDIC directly paid to

Willner.  In its July 13 opinion, the Court distinguishes between the payments made to the

Litigation Fund and the payments made directly to the plaintiffs.  And this comports with their

separate treatment under the Tax Case settlement.  In addition, any multiplier should be limited

to one-half of $108,793.60, because Willner was being paid $125 per hour in 2004, or one-half

of a reasonable hourly rate of $250 per hour.

Willner requested a "fair and reasonable" fee of $93,600 for Fleischer.  The FDIC paid

Fleischer $88,057.

The fact that Willner & Strawn received a multiplier does not support Willner's and

Fleischer's request for a multiplier.  First, as noted, the FDIC has acknowledged that Winston &

Strawn provided the most valuable services on behalf of the private participants.  Neither Willner

nor Fleischer provided comparable services.  All attorneys working on a case are not entitled to

an upward adjustment because one attorney has received one.[122]  In no event, however, are

Willner and Fleischer entitled to a multiplier greater than 2.0, which is the multiplier received by

Winston & Strawn.

Finally, Willner suggests that the Court should consider delay in payment in weighing

whether to award a multiplier.  Whatever authority exists for that argument, it doesn't apply to

this case.  As the Court noted in its July 13, 2007, opinion, the plaintiffs' right to payment rests

solely on the FDIC's agreement to pay reasonable fees under the terms of the Tax Case

settlement.  The FDIC paid Willner and Fleischer almost immediately after the Court approved

---

[122] *Donnell v. United States*, 682 f.2d 240, 255 n.49 (D.C. Cir. 1982).

the Tax Case settlement. Willner and Fleischer have not established a right to any additional

fees from the receivership[123]. Thus, a delay in payment has not occurred and enhancing any

multiplier to account for the time value of money is in appropriate.

**8.     Any additional fees awarded by the Court should be reduced in proportion to the hours that the FDIC could have disallowed; otherwise Willner and Fleischer will receive a windfall.**

The Court has the discretion to determine whether Willner's and Fleischer's fees are

reasonable. The FDIC paid Willner and Fleischer for many tasks that could have been

disallowed under established billing standards. Thus, Willner and Fleischer have already

received a windfall. If the Court awards them a multiplier, Willner and Fleischer will receive a

larger windfall still. Thus, to prevent a windfall, the Court should reduce any multiplier in

proportion to the hours that the FDIC could have disallowed under established billing standards.

Again, the FDIC suggests that an across-the-board reduction of 50% is appropriate.

<div align="center">

**CONCLUSION**

</div>

As previously suggested, the remaining surplus should be distributed to the shareholders

instead of being paid to Willner and Fleischer as *additional* fees.

The FDIC paid Willner $250 per hour. This is reasonable, particularly in light of the

routine nature of the services he provided in the Tax Case and the location where most of his

work was performed. In addition, Willner's participation in the Tax Case was an extension of his

longstanding representation of the shareholders in the Goodwill Case and was not truly

contingent in nature. The FDIC paid Willner for every hour he billed that marginally complied

with reasonable billing standards and could have disallowed as much as 50% more. Major

shareholders oppose Willner's claim for additional fees.

---

[123] *Benj. Franklin Shareholders Litig. Fund v. FDIC*, 501 F. Supp. 103, 108 (D.D.C. 2007).

The FDIC paid Fleischer an average rate of $354 per hour.  Willner hired Fleischer as a consultant.  Fleischer was one of many participants to the settlement discussions in the Tax Case. Other participants in the Tax Case discussions believe that he had a counterproductive impact on the settlement discussions or that he has already received reasonable compensation for his services.  Major shareholders oppose Fleischer's claim for additional fees.

The record doesn't support Willner's claim for additional fees of $958,076.10 or Fleischer's claim for additional fees of $1.3 million.  But if the Court decides to award additional fees they should be limited to a multiplier of 2.0 or less *and* offset by amounts the Court otherwise finds unreasonable.

<div style="margin-left: 40%;">Respectfully submitted,</div>

Date:  July 23, 2008

*/s/ Bruce C. Taylor*
Bruce C. Taylor
Federal Deposit Insurance Corporation
550 17th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2436 (Telephone)
(703) 562-2478 (Facsimile)

Counsel for Federal Deposit Insurance Corporation,
as Receiver for The Benj. Franklin FS&LA

## STATEMENT OF GENUINE ISSUES

**A.**    **FDIC's response to Willner's Statement of Material Facts.**

For the most part, Willner's Statement of the Facts are immaterial to the issues before the Court, consist of legal conclusions, or imply conclusions that aren't supported by the record.

1. The FDIC denies that Willner's Statement No. 1 is material to the issues.

2. The FDIC denies that Willner's Statement No. 2 is material to the issues.

3. The FDIC denies that Willner's Statement No. 3 is material to the issues.

4. The FDIC denies that Willner's Statement No. 4 is material to the issues.

5. The FDIC denies that Willner's Statement No. 5 is material to the issues.  Further, it is not totally accurate.  The U.S. District Court for the District of Oregon dissolved the TRO for lack of jurisdiction.  The Supreme Court has rejected the catalyst theory and the D.C. Circuit requires – at the least – a preliminary injunction to support an argument that an attorney's actions altered the legal relationship of the parties.  *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 605, 121 S.Ct. 1835, 1840 (2001); *Select Milk Producers, Inc. v. Veneman*, 400 F.3d 939, 945 (D.C. Cir. 2005).

6. The FDIC denies that Willner's Statement No. 6 is material to the issues.  Further, the conclusion that the motion to intervene resulted in the agreement of the Department of Justice and FDIC to allow Willner's and others participation in the settlement discussions is not supported by the record.  The Department of Justice opposed the participation of Willner and other shareholder representatives.  The Department of Justice/IRS allowed Willner and others to participate at the request

of the FDIC.  Second Gill Dec. (3/22/2007) ¶ 2 (FDIC Ex. 21); Letter to Willner

from IRS attorney Darmstadter ((11/01//2002) (part of Willner Ex. K).

7.  Willner's Statement No. 7 may be material in part.  Under *Donnell v. United
States*, 682 F.2d 240, 252 (D.C. Cir. 1982), any unique knowledge possessed by
Willner supports the FDIC's argument that Willner is entitled only to a market
rate established for Portland, Oregon, and Trout Lake, Washington.

8.  The FDIC denies the sweeping characterizations of Willner's Statement No. 8
related to Willner's role.  Willner's position as the "chair" at meetings was
ministerial and involved introducing various shareholder representatives.  Third
Gill Dec. (7/23/2008) ¶ 8 (FDIC Ex. 66).  Willner didn't handle almost all of the
correspondence between the FDIC and the Department of Justice.  Many of the
letters he cites as support for his argument that he had a leading role are *letters
sent to Willner* by the IRS and the FDIC, not letters he prepared.  *See* Willner Ex.
L.  Further, many of the letters that went out over Willner's signature were
prepared by other shareholder representatives.  *See* section 5 of FDIC's Opp.
(7/23/2008) and exhibits cited.  Willner describes his presentation at the Fairness
Hearing as the major attorney role in explaining and defending the settlement.  In
fact, a review of the transcript shows that FDIC attorney Richard Gill spent as
much or more time addressing the Court than Willner.  Willner presented the few
of some shareholders.  Tom Buchanan presented the view of others.  And IRS
attorney Henry Darmstadter spoke on behalf of the IRS.

9.  The FDIC denies the implications of Willner's Statement No. 9.  Further, the
statement is immaterial to the issues under review.

10. The FDIC denies Willner's Statement No. 10 that the FDIC failed to take the position that federal financial assistance should not be taxable.  In fact, the FDIC made that argument in earlier discussions with the IRS, and the IRS informed the FDIC that the IRS would not consider such a position as the basis for a settlement. Later, the FDIC argued for the lowest possible tax, given the reality that the IRS would not consider an argument that FFA was not taxable.  Second Gill Dec.(3/22/2007) ¶¶ 4, 5 (FDIC Ex. 21).  In any event, as Willner admits, the IRS never accepted the shareholders' argument that FFA should not be taxed.  Willner Dep. 19:17-22, 20:1-2 (Jan. 18, 2007) (FDIC Ex. 11).  Willner Statement No. 10 is immaterial to the issues under review.

11. The FDIC agrees that the issues in the Tax Case were complex but disagrees with the simplistic description of the issue provided by Willner's Statement No. 11. Further, it is immaterial to the issues under review.

12. The FDIC agrees with the statements in Willner's Statement No. 12.  But it denies any implication that the FDIC is limited in its defense to the basic reasons stated in its partial disallowance letter.  *See In re NBW Commercial Paper*, 826 F. Supp. 1448, 1473 (D.D.C. 1992).

13. The calculations set out in Willner's Statement No. 13 – whether mathematically correct or not – are immaterial.  Further, the FDIC denies any implication that Willner is entitled to the same hourly rate as Winston & Strawn attorneys Mitch Moetel and Tom Buchanan.

39

14. The FDIC agrees with Willner's Statement No. 14.  But the FDIC denies any implication that Willner is entitled to a multiplier of any kind based on what Winston & Strawn received.

15. The calculations set out in Willner's Statement No. 15 – whether mathematically correct or not – are immaterial.  Further, the FDIC denies that Blackwell Sanders and Fleischer are entitled to a multiplier of any kind and denies that Willner is entitled to a multiplier of any kind based on what Blackwell Sanders and Fleischer are requesting.

**B.     FDIC's Statement of Genuine Issues.**

The pleadings contain multiple statements, exhibits, and arguments – too numerous to cite here – showing that the following issues are disputed.

1. Whether the hourly rate of $250 per hour the FDIC used to pay Willner was reasonable.  The FDIC and others oppose any increase in the rate used by the FDIC.

2. Whether the disallowances made by the FDIC to Willner's invoices were reasonable.  The FDIC shows that they were.

3. Whether the FDIC could have disallowed 50% or more hours billed by Willner.

4. Whether Willner is entitled to a multiplier.  The FDIC and others oppose a multiplier of any kind for Willner.

5. Whether any lodestar multiplier awarded to Willner by the Court should be limited to 2.0 or less, meaning that an award should not exceed $108,793.60 – the amount FDIC has already paid directly to Willner.

6. Whether any multiplier awarded to Willner by the Court should be reduced by at least 50% to account for unreasonable fees that the FDIC paid but could have disallowed.

7. Whether Fleischer is entitled to a multiplier.  The FDIC and others oppose a multiplier of any kind for Willner.

8. Whether any lodestar multiplier awarded to Fleischer by the Court should be limited to 2.0 or less, meaning that an award should not exceed $88,057 – the amount FDIC has already paid directly to Fleischer.

9. Whether any multiplier awarded to Fleischer by the Court should be reduced by at least 50% to account for unreasonable fees that the FDIC paid but could have disallowed.