Federal Deposit Insurance Corporation as Receiver for:
Benj. Franklin Federal Savings & Loan Association
Portland, Oregon

## PROOF OF CLAIM EXPLANATION

I, Don S. Willner, declare under penalty of perjury under the laws of the United States and the State of Washington that the following is true and correct to the best of my knowledge and belief:

**A.   Identification of Applicant.**

I am an attorney at law licensed to practice in the states of Oregon and Washington and a member of the bars of the United States District Courts for the districts of Oregon, the District of Columbia and Eastern and Western Washington.

**B.   Reasons for Separate Fee Application of Don S. Willner & Associates, PC.**

1.  My Washington, D.C. colleagues believe that the correct way of determining a reasonable fee would be normal hourly billing rates which change year by year. Billing rates in the District of Columbia are typically higher than in most parts of the country.

2.  The result could be that as the attorney of record and lead counsel for the shareholders in the tax litigation, I could receive a smaller hourly rate than the Washington, D.C. attorneys, which I believe to be unfair.

3.  My specific contributions to this litigation include (1) obtaining the Temporary Restraining Order in the District of Oregon preventing the FDIC from paying the tax, which would have made this tax litigation moot, (2) preparing and filing the Motion to Intervene and Transfer to the District of Oregon, which made shareholder participation possible in the settlement discussions, (3) being attorney of record, lead counsel and principal spokesperson for

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 1 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

the shareholders during all three years of the oral and written settlement discussions, (4) being sole trustee of the Benj. Franklin Shareholders Litigation Fund, maintaining contact with most of the 6,500 shareholders, managing the complex litigation, and helping my shareholder clients raise the money to make our participation in the tax litigation possible.

4.      This separate fee application is based upon these legal points:

(a) Different attorneys may appropriately seek different measure of reasonable compensation in the same case. <u>Czarniewy v. District of Columbia</u>, No. Civ. A. 02 1496 (HHA), 2005 WL 692081 (D.D.C. March 25, 2005).

(b) Although normal hourly rates are one measure of a reasonable fee, where an attorney does not have normal hourly rates, the fair market value for complex Federal litigation is the appropriate measure.

(c) The appropriate community for evaluating fair market value is complex Federal litigation in the District of Columbia. The basic litigation is in the District of Columbia, and this applicant has been a member of the bar of the Federal Court for the District of Columbia since 1951 with extensive practice in the District of Columbia. <u>Donnell v. United States</u> 682 F.2d 240, 251-52 (D.C. Cir 1982); <u>Davis County Solid Waste Management et al. v. U.S. Environmental Protection Agency</u> 169 F.3d 755, 759-760 (D.C. Cir, 1999).

(d) Current fair market value is appropriate compensation for professional services because of a delay of eight years in receiving payment. <u>Missouri v. Jenkins</u>, 491 U.S. 274 (1989).

(e) The lodestar analysis for the specific legal work of this applicant justifies favorable treatment for this applicant. <u>Johnson v. Georgia Highway Express, Inc.</u> 488 F.2d 714, 717-719 (5th Cir. 1974); see <u>Swedish Hospital Corp. v. Shalala</u> 1 F.3d 1261 (D.C. Cir, 1998).

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 2 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

C. **Summary of Facts**.

1.  Benj. Franklin Federal Savings and Loan Association ("Benj. Franklin") was founded in Portland, Oregon in 1925 and was seized by the government on February 21, 1990. After 12 years of litigation, in 2002, the United States Court of Federal Claims ("Claims Court") entered an approximately $35 million Judgment in favor of shareholders for the breach of contract by the government. This judgment has been stayed by that Court, pending resolution of the tax claim in this Court. This suit involves IRS claims for taxes, interest, and penalties which it alleges are owed by the Federal Deposit Insurance Company ("FDIC") as Receiver of Benj. Franklin for events which occurred after the seizure. There is now approximately $92 million in the Receivership with all bills paid except the tax claim. The IRS sued for $1.2 billion, and the proposed tax settlement is for $50 million, plus a favorable allocation between tax and interest, which can reduce future taxes owed by at least $12 million.

2.  I am the attorney of record for the Benj. Franklin shareholders who are proposed intervenors in this case; the attorney of record for the Plaintiffs in the companion shareholders derivative suit of <u>Suess et al. v. United States</u> in the Claims Court which has now continued for 15 years; and the attorney of record in the pending companion case of <u>Suess et al. v. FDIC</u> in the United States District Court for the District of Oregon, which is a breach of fiduciary duty suit.

3.  During this 15 year period of time I have had the primary responsibility for this three court litigation on behalf of the 6,500 shareholders of Benj. Franklin to obtain fair compensation for the seizure of this institution, including over 8000 hours of my own work.

4.  I seek the sum of $525 per hour or $418,583 for my work, less $99,662 paid by the shareholders, plus a substantial contingent fee, plus expenses in the amount of $8,305.26 plus the work of my consultants and assistants of $135,983.93, reserving the right to amend this

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 3 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

application for continuing work done after July 31, 2005, which will include among other matters, preparation for and participation in two hearings before this Court.[FN1]

**D.    Lodestar Factors.**

I now turn to the specific Lodestar factors which have been used by this Court and other Courts throughout the nation in evaluating attorney fee applications for particular cases. [FN1]

1.    The Time and Labor Involved.

As of July 31, 2005, I have devoted 797.30 hours to the representations of the shareholder Plaintiffs in this tax controversy. This includes related tax issues in the two companion cases. This work is continuing. The result of my efforts and the efforts of my skilled colleagues, attorneys, consultants and paralegals has been a major factor in the reduction of the original tax claim from $1.2 billion to $50 million, plus a favorable allocation of tax and interest.

2.    The Novelty and Difficulty of the Legal and Factual Questions.

In the companion Claims Court case, the novel issues were resolved by my establishing shareholder derivative standing, and later proving an implied contract between Benj. Franklin and the government. I obtained summary judgment for liability on behalf of the shareholders in that litigation so that the issue tried in the Claims Court was that of damages. No fees are sought in this Court for this Claims Court work, although the knowledge gained in this companion case through thousands of hours of my work, was invaluable in representing my clients in this tax case.

---

[FN1] Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir., 1974); see Swedish Hosptial Corp. v. Shalala, 1 F.3d 1261 (D.C. Cir; 1998).

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 4 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

reserving the right to amend this application for continuing work done after July 31, 2005, which will include among other matters, preparation for and participation in two hearings before this Court.[FN1]

**D.     Lodestar Factors.**

I now turn to the specific Lodestar factors which have been used by this Court and other Courts throughout the nation in evaluating attorney fee applications for particular cases. [FN1]

1.     The Time and Labor Involved.

As of July 31, 2005, I have devoted 797.30 hours to the representations of the shareholder Plaintiffs in this tax controversy. This includes related tax issues in the two companion cases. This work is continuing. The result of my efforts and the efforts of my skilled colleagues, attorneys, consultants and paralegals has been a major factor in the reduction of the original tax claim from $1.2 billion to $50 million, plus a favorable allocation of tax and interest.

2.     The Novelty and Difficulty of the Legal and Factual Questions.

In the companion Claims Court case, the novel issues were resolved by my establishing shareholder derivative standing, and later proving an implied contract between Benj. Franklin and the government. I obtained summary judgment for liability on behalf of the shareholders in that litigation so that the issue tried in the Claims Court was that of damages. No fees are sought in this Court for this Claims Court work, although the knowledge gained in this companion case through thousands of hours of my work, was invaluable in representing my clients in this tax case.

---

[FN1] Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir., 1974); see Swedish Hosptial Corp. v. Shalala, 1 F.3d 1261 (D.C. Cir; 1998).

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 4 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

In the companion case in the District of Oregon my representation resulted in a Temporary Restraining Order preventing the FDIC from carrying out its plan to pay the tax claim voluntarily and a later agreement with the FDIC that the tax claim would not be paid without advance warning to the shareholders. If any of the tax claim had been paid by FDIC the defense of this law suit would be moot because the derivative plaintiffs could not have paid $1.2 billion before seeking a refund, which would have been their only available remedy at that point. (Flora v. United States, 362 U.S. 145, 168-175 (1960). Payment is sought in this Court for these professional services which made this tax settlement possible.

In this Court the novel issue concerned intervenor status for the Benj. Franklin shareholders. The issue was never litigated. After my preparing and filing the shareholders motion to intervene and transfer the litigation to the District of Oregon, the government agreed to enter extensive discussions with the defendant FDIC, along with the participation of the shareholder attorneys at the request of the FDIC. Because the FDIC was earlier willing to pay a portion of the tax, the motion to intervene was necessary to protect the shareholders. This application includes the work done in this case.

3.  The Skill Required to Perform the Legal Services Properly.

This applicant brought to this case the skill of an experienced senior trial attorney with unique knowledge of Benj. Franklin's assets, liabilities, accounting and history gained from the companion cases over a 15 year period. During the settlement discussions with the government in this case many factual issues arose for which I provided needed information  Examples include providing information and documentation about the 1982 merger of Benj. Franklin and Equitable Savings and Loan; the treatment of the supervisory goodwill acquired in that transaction; financial and asset situation of Benj. Franklin before the seizure; the substantial

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 5 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

Federal Home Loan Bank of Seattle advances to Benj. Franklin; and the acquisition of assets and liabilities of Benj. Franklin by Bank of America, which was an issue in the Claims Court damages trial. Many other examples could be provided. In addition, during the tax settlement discussions, I have often requested and obtained information or voluntary research from former employees of Benj. Franklin with whom I have developed a close working relationship during the past 15 years. This reservoir of knowledge and assistance would have been difficult if not impossible to replicate by an attorney new to the case.

This application includes work as attorney of record for the proposed intervenors; coordinating the work of the team of skilled attorneys, tax consultant, and CPA in this case, continuing management of the litigation trust fund, to which 4,200 shareholders contributed, maintaining contact with shareholders (both the derivative Plaintiffs in the Claims Court and Portland cases and all other shareholders), and assisting the derivative shareholders in raising funds for the expenses of this case. In connection with this lodestar factor my work was unique.

4.   <u>The Preclusion of Other Work by the Attorney</u>.

The 15 years I spent on this Benj. Franklin litigation was clearly detrimental to my other law practice. There has, however, been less preclusion of other work during the eight-year span (1998 to 2005) during which I have worked on the tax matter.

5.   <u>The Customary Fee</u>.

Most of my legal work is contingent. I have no customary fee for litigation of this duration, responsibility, complexity, and magnitude; nor do almost all attorneys in the United States. A significant portion of my 54 years of law practice has involved "causes" where I have donated my time or chose to work below market rates. In contrast, the other attorneys in the plaintiffs' group customarily bill for their work at hourly rates. The proper measure, however, is

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 6 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel:  (509) 395-2000 / Fax:  (509) 395-2939

FDIC Ex. 52

not solely normal hourly rates, but fair market value. <u>Missouri v. Jenkins</u>, 491 U.S. 274 (1989). The Supreme Court has held that compensation for public interest attorneys who often work for low salaries or low hourly rates does not control, and they are entitled to the fair market value of their complex Federal court litigation work. <u>Blum v. Stenson</u> 465 U.S. 886 (1984). <u>Covington v. District of Columbia</u> 57 F.3d 110 (D.C. Cir., 1995). I enclose Declarations from leading Washington, D.C. attorneys justifying a reasonable fee for my professional legal services of $525 per hour, which equals the highest amount sought by any of the other attorneys working on this case, but no more. See the accompanying Declarations of Garbow, Millian, and Cooper.

The other attorneys who are seeking fees in this case rely upon normal billing rates in the District of Columbia with information provided year by year. Because I have no normal billing rates, but rely upon fair market value for complex Federal litigation, I have no such year by year data. An attorney may use a different reasonable rate than co-counsel. <u>Czarniewy v. District of Columbia</u>, No. Civ.A. 02-1496 (HHK), 2005 WL 692081, D.D.C., March 25, 2005.

In <u>Donnell v. United States</u>, 682 F.2d 240, 251-52 (D.C. Cir. 1982) the Court held that the proper rule is that the relevant community for determining legal fees is the one in which the district court sits. Then <u>Davis County Solid Waste Management et al. v. U.S. Environmental Protection Agency</u>, 169 F.3d 755, 759-760 (D.C. Cir. 1999) created a "limited" exception:

> "We think the neutrality rationale in <u>Donnell</u> is still sufficient to justify forum rates in all but the extreme situation we face here. We will presume that Washington rates will apply so long as the judicial forum is here, unless the work done here is minimal <u>and</u> the difference in rates substantial. Like basing awards on the situs of the work performed, the use of Washington rates is neutral in that it does not afford an automatic advantage to either prevailing or losing parties." (emphasis added)

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 7 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

The "limited" exception does not apply here because the work done in the District of Columbia is not "minimal". All of the multiple, lengthy discussions over a three year period with the plaintiff IRS through the Department of Justice and the defendant, the Federal Deposit Insurance Corporation as Receiver of Benj. Franklin, took place in person within the District of Columbia with this applicant as lead spokesperson. These meetings were the crucial work, although there were a vast number of telephone calls and correspondence to and from the District of Columbia by this applicant on behalf of the shareholders.

In contrast, in the Davis case, the only time spent in Washington, D.C. by the out-of-state attorney "was for the purpose of examining the administrative docket and participating in a short oral argument." In Salazar v. District of Columbia 123 F.Supp. 2d 8 (D.C. Cir., 2000) the Court quoted with approval from an expert affidavit that "the market for legal services in complex Federal litigation in Washington, D.C. is not a local market".

The fair market value of legal work in Oregon is not "very significantly different" from legal work done in the District of Columbia so there is no "windfall" involved (The quote is from the Davis case). (See Markowitz Declaration.) But since the work done in the District of Columbia was not "minimal" the District of Columbia rate applies even if the D.C. rate is significantly higher because the Davis case requires both factors for the exception, not just one. It must also be remembered that this is not a case which seeks to shift a fee to the defendant, usually government. Here, the issue is rather the proper distribution of funds within the control of FDIC Receiver, and normal matrix tables are not applicable.[FN2]

I have been a member of the bar of the United States District Court for the District of Columbia for 54 years, including practice in the District of Columbia. This case is in the District of Columbia; the companion Claims Court case is in a District of Columbia Court; the United

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 8 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

States Supreme Court case, which I won years ago, was, of course, in the District of Columbia. There is no reasonable difference in the market value of my work if I take a plane to get to tax negotiations rather than a taxi. Although now living in Trout Lake, Washington, I have had the ultimate responsibility for the Benj. Franklin tax litigation, including the proposed intervention and negotiation in this case. All of the attorneys should be fairly paid, but my status as attorney of record and lead counsel role is a unique lodestar factor and should be reflected in the fair market value of my work.[FN3]

6.  **Any Prearranged Fee.**

After the United States Supreme Court decision in United States v. Winstar Corp. 518 U.S. 839 (1996), the minimal fees charged to the shareholder clients in the Claims Court litigation were increased to $125 per hour for me and partners, $100 per hour for associates, and $60 per hour for paralegals. It was always clearly understood by my shareholder clients that these token fees were necessary to allow me to keep the door of my small law office open. The agreement with my clients has always been that we would seek a contingent recovery from any

---

[FN2] The explanatory note to the "Laffey Matrix" used in the District of Columbia says, "The matrix is intended to be used in cases in which a fee-shifting statue permits the prevailing party to recover 'reasonable' attorneys fees." Laffey v. Northwest Airlines, Inc. 572 F.Supp. 354 (D.C. 1983)

[FN3] In the only other case in which I have worked for many years during the time of the Benj. Franklin litigation (November, 1997 until November 2003), I devoted 1493 contingent hours to complex litigation, including reversing a Trial Judge in the Court of Appeals and Supreme Court of Washington, and was paid $780,000 or an hourly fee of $523 per hour. My co-counsel who brought me into the case, also received a fee. The case settled for just under $5 million. My fee is low considering the real possibility after the trial court decision that the fee might have been zero.

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 9 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

common fund we might create through our successful legal work. The other attorneys involved in these tax settlement discussions are partners in large law firms and not under the same economic pressure. Here too, the lodestar factor for me is unique.

7. <u>Time Limitations Imposed by the Client or the Circumstances</u>.

There were no time limitations imposed other than the normal court deadlines. The circumstances were and are that I have devoted much of my working life for 15 years to the cause of the Benj. Franklin shareholders. This lodestar factor is also unique to me.

8. <u>The Amount Involved and the Results Obtained</u>.

This suit by the IRS sought a judgment for $1.2 billion. The proposed settlement fixes tax and interest at $50 million, plus a favorable allocation of taxes and interest. The result is that the shareholders will receive $42 million from the Receivership minus expenses and fees, plus a probable saving of at least an additional $12 million in future taxes imposed after 2002, especially upon any money received by the Receiver from the Claims Court Judgment. If the IRS had won the lawsuit, this would also have taken away the Claims Court Judgment. This is an excellent result. The tax negotiation was the work of our tax group which I coordinated. As in other complex Federal litigation in which I have been involved, we relied upon specialists for many technical matters. In this litigation, tax attorneys Mitchell Moettel and Ernest Fleischer and CPA Randi Cohn, played key roles. In addition, I personally obtained the Temporary Restraining Order in the Federal Court in Oregon which protected this lawsuit from being moot, and I personally prepared and filed the motion to intervene which made our participation in the tax negotiation possible. During these past 7 years, I have had the sole responsibility as trustee of the Benj. Franklin Shareholders Litigation Fund and sole responsibility for many other matters previously discussed in connection with the management of the litigation, which made

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 10 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

shareholder participation possible, thereby contributing to the final successful result in this tax negotiation.

    9.    <u>The Experience, Reputation, and Ability of the Attorney</u>.

Because most of my law practice for the past 53 years has been in the Pacific Northwest and I am not known to the judges of this District Court or to most of the professional staff of FDIC, I attach as exhibits to this fee application true copies of the affidavits of a former Chief Judge of the United States District Court for the District of Oregon and a former Chief Justice of the Supreme Court of Oregon. These affidavits were obtained to support a fee petition in the as yet uncompleted Claims Court case but are equally appropriate to be submitted to this Court in this related case.

Here is a summary of my working life as an attorney. I graduated from Harvard College in 1948 magna cum laude, phi beta kappa, with an interruption for Army service in World War II. I then graduated from Harvard Law School in 1951. Much of my first year out of school was spent as an associate attorney in a well respected District of Columbia law firm, before returning to Oregon where I was admitted to practice in 1952, and in 1996 was also admitted to practice in the State of Washington. My 54 years of continuing practice have emphasized trials and appeals. I have won arguments in the United States Supreme Court, the Ninth Circuit, Tenth Circuit, and the Supreme Courts of Oregon and Washington. For twelve years I was an adjunct professor of law at Lewis and Clark Law School in Portland, Oregon; have served as President of the United States District Court of Oregon Historical Society; and as a Circuit Court Judge pro tem in five Oregon counties (principal trial court) by appointment of the Chief Justice of the Oregon Supreme Court.

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 11 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

My complex litigation experience includes class actions such as representing 2000 faculty women of the State of Oregon seeking equal pay, promotion, and tenure for women (that case continued for five years); a 5000 member class of travelers to Europe who were stranded when a non-scheduled airline failed, and representing a class of impoverished tenants of public housing in Portland, Oregon.

I have represented the Oregon State Grange for decades, and have represented a Portland, Oregon daily newspaper with many employees, two colleges, plaintiffs in complex personal injury cases, Hickle v. Whitney Farms, et al., 148 Wn.2d 911, 64 P.3d 1244 (2003), and labor unions. My civil rights experience includes major test cases for the NAACP, the Japanese-American Citizens League and Spanish speaking migrant farm workers.

My legal work in the Benj. Franklin litigation, as well as in many other complex matters, has been well recognized in the Pacific Northwest.

10. <u>The Undesirability of the Case</u>.

The Benj. Franklin Claims Court litigation started as a "long shot" case involving difficult United States Supreme Court precedents. At the time I took the original case 15 years ago, there was no assurance how long the litigation would take or even whether the clients could raise the necessary funds to keep the litigation going. I have had personal responsibility for the fees of experts and other expenses of litigation. My compensation has depended upon raising money for the Benj. Franklin shareholders litigation fund of which I am sole trustee. For much of the past year there has been no compensation available for any work, including the tax litigation. In connection with this lodestar factor my situation has been unique.

11. <u>The Nature and Length of the Professional Relationship with the Clients</u>.

My professional relationship with the clients has continued for 15 years.

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 12 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

12. <u>The Fairness of Seeking Contemporary Hourly Rates</u>.

In <u>Missouri v. Jenkins,</u> 491 U.S. 274 (1989), the Supreme Court determined that the reasonable hourly rate for a fee to be awarded under 42 U.S.C. 1988 must account for the delay in payment and inflation. The court in <u>Missouri</u> explained that "our cases have repeatedly stressed that attorney's fees awarded under this statute are to be based on market rates for the services rendered . . . Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Id.* at 284. The Supreme Court therefore held that an adjustment in the reasonable rate for the delay in payment, "whether by the application of the current rather than historic hourly rates or otherwise," was within contemplation of the statute. *Id.* This is precedent for the use of current fair market rates. The delay must be significant, however, such as the 15 years that I have been working on the entire Benj. Franklin litigation or the 8-year span over which I have worked on the tax matter. During much of the past year, I, and my co-counsel Spriggs & Hollingsworth, have not even always received the token fee payments previously discussed. This is an additional delay in payment.

Here, the attorney fee award significantly is not under the United States Civil Rights Act to be paid by the opposing party (the Government) but rather out of the common fund (the balance in the Receivership) which was preserved by attorney effort.

13. <u>The Contingent Nature of this Work</u>.

As discussed above, my best evidence of a reasonable rate is $525 per hour. The $125 per hour already received or promised (some has not yet been received) should be deducted to

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 13 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

the extent received, netting approximately $400 per hour as a reasonable net base rate for this case for my work.

Neither I, nor any other experienced, skillful attorney, can accept contingent cases if the best compensation that can be received is the rate that would have been received if the case was not contingent. Courts have traditionally allowed a multiplier for successful, complex contingent cases, understanding that often a contingent attorney fee is the only way that justice can be achieved. This is a case in which a substantial additional contingent fee is justified. I should receive no less than the same contingent fee percentage awarded to the other attorneys. Payment for the contingent risk is totally different from payment for delay in receiving payment and inflation discussed in the previous section.

E.   **Summary of Fees and Expenses**.

The total of the fees and expenses sought by all of the attorneys in this case, are only a tiny fraction of an alternative straight contingent fee percentage of the at least $42 million saved for the shareholders, plus an as yet undetermined amount of future tax savings because of the favorable allocation of most of the payment to interest. The alternative contingent fee percentage method is discussed and approved by the District of Columbia Circuit Court of Appeals in Swedish Hospital Corp., supra where 20 percent of the gain was upheld as reasonable. I seek only a tiny fraction of that amount. The Declarations of my clients supporting my petition are attached as exhibits.

Attached to this Declaration are copies of my actual billing statements to my clients, plus a summary of work done on tax matters in 1998 and 1999. I have carefully reviewed these billing statements and excluded work on the Claims Court case not related to tax matters.

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 14 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

The expense statements have been prepared by my bookkeeper/paralegal and carefully reviewed by me. I have always tried to be prudent with the funds entrusted to me. My billings are by one tenth of an hour, which fairly represents the proper fee for short telephone calls. On my frequent trips to and from Washington, D.C., working on this tax litigation, I always travel economy class, seek inexpensive flights, and stay at economical hotels. If I can schedule work for other clients on these trips, the expenses are divided among my various clients.

I retained two consultants in connection with this case. Ernest M. Fleischer, Esq., is a prominent tax attorney in the Kansas City, Missouri law firm Blackwell, Sanders, Pepper, Martin LLP and is listed in "The Best Lawyers in America." He participated in the conferences with the Department of Justice and FDIC and helped make policy judgments. He also prepared legal memoranda in this case. Mr. Fleischer has devoted an estimated 240 hours to this case and a reasonable rate for his services would be $93,600, plus $2,200 in expenses, for a total of $95,800.

I also retained William H. Schieffer and Randi Cohn of the Wilmington, Delaware CPA firm of the Siegfried Group, LLP, who prepared accounting analyses. Ms. Cohn participated in most of the Department of Justice-FDIC discussions. They devoted 113.80 hours to this case and reasonable rates would be $275 per hour and $200 per hour, for a total of $21,803.93.

Sarah Drescher, Esq., a former law clerk for judges in Portland, Oregon did 10 hours of legal research at a reasonable rate of $150 per hour, for a total of $1,500.

Jerry Young, CPA, has spent 7.4 hours to date on the application of the Benj. Franklin Shareholders Litigation Fund for reimbursements to the Fund from the balance in the Receivership after payment of taxes, and more hours are anticipated. A reasonable rate for his time is $130 per hour, plus $193 for the time of his accounting assistants, for a total of $15,680.

DECLARATION OF DON S. WILLNER IN
SUPPORT OF ATTORNEY FEE PETITION
Page 15 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52

The statements of Mr. Fleischer, Ms. Cohn and Mr. Young are attached and I have included no contingent multiplier relative to their fees and expenses.

Kathleen Kelley, paralegal and contract bookkeeper for my law firm worked 16 hours on the preparation of the attachment to my application. Clerical work is excluded. A reasonable rate for her time would be $75 per hour, for a total of $1,200.

The total to date of the work of Ernest M. Fleischer, William H. Schieffer, Randi Cohn, Sarah Drescher, Jerry Young, and Kathleen Kelley is $135,983.93. The work of my skilled co-counsel, Rosemary Stewart and Jerry Stouck of the firm of Spriggs and Hollingsworth and their staff, is submitted separately.

DATED this 31st day of August, 2005.

DON S. WILLNER & ASSOCIATES, PC

*[signature]*
Don S. Willner, OSB# 52114, WSBA# 25652
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000
Fax: (509) 395-2939
Email: donswillner@aol.com

DECLARATION OF DON S. WILLNER IN SUPPORT OF ATTORNEY FEE PETITION
Page 16 of 16

DON S. WILLNER & ASSOCIATES, PC
630 Sunnyside Road
Trout Lake, WA 98650
Tel: (509) 395-2000 / Fax: (509) 395-2939

FDIC Ex. 52