# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WINSTON & STRAWN LLP,<br><br>and<br><br>DON S. WILLNER & ASSOCIATES, P.C.<br><br>and<br><br>BLACKWELL SANDERS PEPER MARTIN<br>and<br>ERNEST M. FLEISCHER<br><br>          Consolidated Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, AS RECEIVER FOR<br>THE BENJ. FRANKLIN FS&LA,<br>PORTLAND, OREGON<br><br>          Defendant. | Civil Case No. 06-01120 (EGS)<br><br>[Consolidated with No. 06-01227<br>(EGS) and No. 06-01273 (EGS)] |

## DECLARATION OF C. ROBERT SUESS

I, C. Robert Suess, being over the age of 21 and competent to testify in this case, hereby declare:

1. I own 400,000 shares of the former Benj. Franklin FS&LA, which is about 5.2% of $7,705,000 shares issued by the institution.

2. In 1990 I took the lead in finding and retaining attorneys to file a lawsuit against the United States in the U.S. Court of Federal Claims for damages for breach of contract as a result of the passage of a law by Congress that effectively eliminated the use of supervisory goodwill in Benj. Franklin's calculation of capital which, in turn, lead to the

1

seizure of the institution. That case is *Suess v. United States*, Case No. 90-981C ("Goodwill Case"). Plaintiffs Don S. Willner and Winston & Strawn have worked on that case in various capacities since its inception.

3. I also was the lead plaintiff on the Motion to Intervene in *United States v. FDIC*, Case No. 1:02CV01427 ("Tax Case"), the case in which the shareholders of Benj. Franklin and the Court approved a settlement in which, among other things, the FDIC as receiver agreed to pay reasonable fees and expenses to the representatives of the shareholders who participated in the settlement discussions in the case.

4. In the Tax Case, I specifically hired Winston & Strawn to handle the tax analysis and settlement negotiations on the federal tax claim against the Benj. Franklin receivership. Winston & Strawn had expertise in tax matters, whereas Mr. Willner, by his own admission, had none.

5. Because of my role as a major shareholder and lead shareholder in the lawsuits, I am familiar with the work performed by Winston & Strawn, Don S. Willner, Ernest M. Fleischer, Rosemary Stewart of the firm of Spriggs & Hollingsworth, and others in the lawsuits. And I have reviewed the fee petitions submitted by Winston & Strawn, Don S. Willner & Associates, and Ernest M. Fleischer underlying their lawsuits against the FDIC in this case.

6. In this case I supported Winston & Strawn's request for an additional $574,938 on top of the $400,813 the FDIC paid directly to the firm. I supported the firm's request for two main reasons. First, the additional fees represented about twice what the firm was paid at its normal rate (including $189,457 the FDIC paid to the Benj. Franklin Shareholders Litigation Fund as reimbursement for earlier work), which is what I agreed to pay the

FDIC Ex. 59

firm if an acceptable settlement was reached in the Tax Case, which occurred. Second, Winston & Strawn provided almost all of the substantive analysis and work product on behalf of the shareholders in the settlement discussions in that case.

7. On the other hand, I cannot support the request by Willner & Associates that Don Willner's time be paid at $525 per hour or an additional $782,110 on top of the $108,793 the FDIC paid directly to him and the $101,793 the FDIC paid to the Litigation Fund as reimbursement for earlier work. Nor can I support the request by Ernest M. Fleischer and his firm for an additional $1.3 million on top of the $88,057 the FDIC paid directly to him.

8. In 1990 when I retained Mr. Willner in the Goodwill Case, Mr. Willner agreed to work for $62.50 per hour against a possible contingent fee in that case. Mr. Willner said at that time that $62.50 per hour was less than half of his hourly rate at the time. Later, I agreed to pay Mr. Willner $125 per hour. My understanding was that $125.00 was his standard hourly rate at that time.

9. The FDIC paid Mr. Willner $250 per hour, which is more than fair and reasonable, particularly given the legal services Mr. Willner provided in the Tax Case. It is also comparable or higher than the rate I have paid to other Portland attorneys during the same period for similar legal work.

10. A careful review of Mr. Willner's work, which I have done, reveals that the bulk of his time was spent making phone calls, arranging conference calls, preparing routine correspondence, traveling, and preparing his fee petition. Those services do not justify Mr. Willner's request for an hourly rate of $525 per hour or total additional fees of $782,110. Don Willner has admitted that he is not a tax attorney and that he is a sole

FDIC Ex. 59

practitioner. During the period covered by Mr. Willner's bills, he either shared office space and office support staff in Portland, Oregon, or worked out of his house in Trout Lake, Washington. Mr. Willner's overhead costs pale in comparison to the overhead costs of a large law firm, which means that his normal or customary fees should be lower than a partner's rate at a large firm.

11. In addition, unlike the bills of Winston & Strawn, Mr. Willner's bills do not reflect, for any of the years in question, what his hourly rate was. In fact, Mr. Willner has stated that he has never had a standard hourly rate. This is inconsistent with what Mr. Willner told me when I initially hired him in 1990. In addition, it is impossible to believe that a lawyer with Mr. Willner's experience never charged a client an hourly rate. It is my opinion that Mr. Willner did have a standard hourly rate, but is withholding that rate from the court in order to prevent the court from assessing the risk that Mr. Willner took in working on the Tax Case. In other words, Mr. Willner was paid $125.00 an hour for his work on the Tax Case from the Litigation Fund. If, in fact, his rate at the time was $125.00 an hour, then he does not deserve a contingency fee, because he did not take any risk, unlike Winston & Strawn. In addition, Mr. Willner is claiming a single rate of $525.00 an hour for the entire period, not to mention the additional fee of $782,110, which he does not in any way justify or quantify. Mr. Willner obtained the $525.00 an hour fee, according to his own affidavit, by taking the rate of a senior partner of a Washington, DC law firm for work on a complex civil litigation matter in federal court. Mr. Willner did not work for a large law firm, much less one in Washington, D.C.; rather he was a solo practitioner working out of his house most of the time. Further, this was not a complex civil litigation matter, but a tax settlement matter, and all of the substantive

FDIC Ex. 59

legal analysis was done by the firm of Winston & Strawn. As Mr. Willner's bills indicate, he did nothing more than make a lot of phone calls to the Department of Justice and other lawyers in the case and set up meetings and attend those meetings. He had a very small talking role at the meetings, and never spoke on the substantive tax matters which, he has admitted, he had no experience with or knowledge of.

12. I also believe that the time disallowed by the FDIC was appropriate, as it related to time spent by Mr. Willner for such things as preparing his fee petition, planning or arranging trips, attempted phone calls, and preparing or updating a web site.

13. In addition, I believe the FDIC could have disallowed substantially more hours in Mr. Willner's bills. For instance, Mr. Willner billed for an excessive number of phone calls with persons who didn't have any involvement in the settlement discussions in the Tax Case, such as shareholders. More often than not, he also failed to provide sufficient information to determine whether a particular phone call was necessary and properly payable by failing to include any information regarding the nature of the call.

14. Over the past several years, I have expressed my opposition to additional fees in various letters. Attached to this declaration are several of those letters:

    A.    Letter to Benj. Franklin Shareholders (12/14/2005)

    B.    Letter to U.S. District Court for the District of Columbia (4/20/2006)

    C.    Letter to Winston & Strawn (1/8/2007)

    D.    Letter to Richard Gill (3/15/2007)

15. I would not have paid Mr. Willner as much as the FDIC paid him. Without question, I would not pay Mr. Willner the additional fees he is requesting.

FDIC Ex. 59

16. I also oppose Mr. Fleischer's request for additional fees of $1.3 million. I consider his request unjustifiable. It is ludicrous to think that Mr. Fleischer, who was hired as a consultant by Mr. Willner, should receive an additional $1.3 million. The FDIC paid Mr. Fleischer $88,057 for 240 hours, or $390 per hour. He originally sued for about $2 million and is now asking for $1.3. This means he is asking for the equivalent of $5,700 per hour and nearly $324,000 more than the firm of Winston & Strawn received for providing the most valuable services on behalf of the shareholders during the settlement discussions in the Tax Case.

17. Mr. Fleischer's claim is particularly objectionable because Mr. Willner – who hired Mr. Fleischer as a consultant – in his original proof of claim stated that $93,600 was "a reasonable rate for [Mr. Fleischer's] services."

18. I have spoken with the vast majority of shareholders, and every one of them opposes the request for additional fees filed by Mr. Willner and Mr. Fleischer.

19. Finally, in the notice to shareholders regarding the settlement terms of the Tax Case, the FDIC estimated that it would pay between $1 million and $2 million as reasonable fees to the shareholders' representatives. The additional fees sought by Mr. Willner and Mr. Fleischer alone total over $2.1 million. The shareholders did not approve such an additional expenditure.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 19, 2008.

C. Robert Suess

DC:560056.1

6

FDIC Ex. 59

**C. Robert Suess** [redacted]

260 East 38th Street
Eugene, Oregon 97405

Phone: (541) 342-3060
Fax: (541) 683-1164

*Our Records*

December 14, 2005
*Suess Vs USA*

Benj. Franklin Shareholders:

Yes. I believe settlement with FDIC and IRS will result in a <u>now undetermined amount per share being distributed in the coming year.</u> *1st Funding*

Oregonian article quoting Don Willner for $5.20 per share in January is not possible. FDIC/IRS have agreed on our settlement offer of $50 Million. Leaving approximately $42 Million <u>less substantial deductions</u> for the following:

1. Taxes for years 2003 - 2004 - 2005, unknown amount.

2. Return of all prior funds contributed to Litigation Fund by majority of shareholders. <u>Estimate 3½ Million</u>.
   a. We have asked for an interest factor previously agreed to by Mr. Willner on contributions. <u>Estimate unknown</u>.

3. <u>Full pay plus a bonus for attorneys work on Tax Issue only</u>.
   a. Washington D.C. firms were largely responsible for resolving, to date have been paid less than 1/3 of their normal rate. We estimate <u>1½ to 2 Million, including Willner</u>.
   b. Don Willner has received well over ½ of the rates I now pay highly qualified Eugene and Portland firms. His recent fee petition seeks <u>$525. per hour</u>, plus a multiplier. Much higher than our D.C. firms.

4. We also have requested <u>2 to 3 Million</u> to be set aside to insure funding for *Refused* Appeal Court Specialists. We will seek a substantial increase in the 35 Million damage award by Judge Smith. <u>We hope the appeal funding will be approved</u>.

5. Costs to contact shareholders, prove ownership and distribute net balance, when known. <u>Estimate $400,000 using our updated list</u>. *FDIC Wants up to 1 Million*

There are 7,705,000 shares issued. I believe 2 Million will not be found. Who will receive those funds?

*From 6 To 12 Million off the top depending on what is approved   30 To 36 Million To Shareholders*

*Tax Issue Only*

<u>Continued On Reverse Side</u>

Other questions that have been asked:

1. Certificates
   a. Presently cannot be sold since there is no transfer agent.
   b. Positive proof of ownership when you are contacted by distributing agent. Make a copy to keep with original, surrender copy only with preliminary request this settlement. Surrender original only when our entire case on damages is funded, in later years. 2nd Funding, After Appeal

2. Lost Certificates
   We have original list of 1990 transfer agents records in my safe in Portland. For a small fee our accountants will research and provide you with Certificate Account Numbers. You may then file our Affidavit of Lost Certificate with distributing agent for number of shares per records.

3. Heirs to Original Owners
   Probably Death Certificate and proof of inheritance. Provide original Benj. Certificate or proceed per #2 above.

4. If owned in street name through a brokerage firm you will need updated records of ownership.

5. If you have relocated send confirmation of new address, phone number and number of shares for our records.

Further questions:  Bob Suess Sr.       (541) 342-3060
                    P.O. Box 456
                    Springfield, OR 97477

It is truly sad that Mr. Willner seeks $525.00 per hour plus a court determined multiplier. Sadder yet that secondary plaintiffs and some former officers of Benj support his obscene fee.

In my view this is a shameful representation of all Benj. Shareholders.

Evidently they place a higher value on money than Integrity.

Sincerely,

[signature]   Do NOT send any more funds for any reason to Willner or Me

C. Robert Suess Sr.

Look for Book Early 2006
Remember The Benj

# C. Robert Suess

Oregon Office
260 East 38th Street
Eugene, Oregon 97405
♦
Phone: (541) 342-3060
Fax: (541) 683-1164

April 20, 2006

Attn: Clerk of Court
U.S. district Court for the
District of Columbia
United States Courthouse
333 Constitution Avenue, NW
Washington DC 20001

RE:   United States vs. FDIC
      Civil Action No. 02-1427 (EGS)

I, C. Robert Suess, Lead Plaintiff in Suess vs. U.S.G. and Suess vs. FDIC. The only shareholder of the Benj. Franklin who extensively participated and funded the critical Winston and Strawn research, presentation and final negotiations. Said legal work led to acceptance of the settlement proposal now before the court.

Today I am the only plaintiff that has continually reviewed all proceedings and personally reported to well over 4,000 Benj. shareholders. I remain the largest contributor of time and funds covering fees and costs. My personal contacts with said shareholders created a strong bond as to their reasons to <u>now accept this settlement</u>. We have reluctantly waited 16 years for partial justice. We strongly desire to move on to the next stated. CFC

Comments on Exhibit A enclosed for review.

Sincerely,

*[signature]*

C. Robert Suess

Cc:   Robert Gill

Exhibit A Comments:

Other proposed distribution from the Receivership

1. $1 Million Reserve for Administration and Legal Expense
    a. Have taxes for years 2003 - 2004 - 2005 been paid or is Tax a Legal Contingency?
    b. Will distribution costs be paid from reserve?

2. Distribution of approximately $3 Million to Benj. Franklin Litigation Trust Fund. (See Note #1)
    a. Refund Contributions
        (1) Agreed rate established by Mr. Willner would readily double the contribution amount in 16 years. To compute now would be costly and time consuming. To expedite a fair return would be one and one half of the contribution amount.

3. Attorney Fees
   Washington DC firms have submitted in our view reasonable fee petitions for their expertise. They have participated in our case at less than 1/3 of their normal rate. Without them we would not have this settlement.

   Mr. Willner filed the suit. His limited tax expertise provided little, other than his attendance. He has been paid continually fees very close to comparably other Portland and especially Trout Lake vicinity fees.

Note #1  Shareholder Pro-Rata Distribution by FDIC
   We are pleased to know they are now working with Cede, the holding company of Federal Depository Trust. The clearing entity of all brokerage house trades. Every available means to accurately locate shareholders now missing or no longer on our database are assured. Cede's expertise must be used to properly refund shareholders contributions. Thereby avoiding duplication of distribution, our database in many ways is not as accurate as their methods. Mr. Willner and Jerry Young, his accountant, have no established experience in distribution of this nature.

# C. Robert Suess

260 East 38th Street<br>
Eugene, Oregon 97405<br>
◆<br>
Phone: (541) 342-3060<br>
Fax: (541) 683-1164

January 8, 2007

Winston & Strawn
1700 K Street, NW
Washington D.C. 20006-3817

RE:   Willner

Dear Tom:

Don's Dec. 19, 2006 regarding appeal, he recalls some points of the trial that have possibilities. Remand however, may be the only way to validate.

Just reviewed his billing for June through November. I hope you kept copies. Very little, if any, are beneficial to our major Claims Court Case.

It appears as though most time and expense was opposing Substitution. Work relating to his suit against FDIC for obscene fees are disguised as legitimate consulting with Rosemary. Website and extensive phone calls to his plaintiffs and shareholders fill the balance.

The May 19, 2006 FDIC letter denied paying for Website as well as other items, are openly back. The 188.75 hours denied $250.00 per hour did not instruct him to put back the $125.00 per hour he previously received.

In all the fore going if challenged, he would owe the Litigation Fund well over $150,000 for unreasonable fees and expenses. In addition the $10,000 plus of my checks that went into his general account.

Keep this in your file we will discuss when we meet in Washington D.C.

Yours truly,

*[signature]*

C. Robert Suess

FDIC Ex. 59

# C. Robert Suess

260 East 38th Street<br>
Eugene, Oregon 97405<br>
◆<br>
Phone: (541) 342-3060<br>
Fax: (541) 683-1164

March 15, 2007

Richard Gill, Esq.
Federal Deposit Insurance Corporation
550 17th Street, NW
Washington D.C. 20429-0002

RE:   Willner vs. FDIC

Dear Mr. Gill:

Enclose additional evidence that may assist in the event Don Willner and Ernie Fliescher pursue trial to prevail on excessive legal fees.

I believe FDIC is knowledgeable of the strength Winston and Strawn contributed to resolve the Tax Issue. Their claim is credible in my view and should be granted or at the least negotiated in good faith.

In 2001 Mr. Willner advised all Plaintiffs to seek independent legal advise on Legal Fees. The Martin Bisehoff firms' letter is the result of my following Mr. Willner's request. Jonathan Hoffman did an extensive research on fees and my contract with Mr. Willner.

Mr. Richard Gill, Esq.
March 15, 2007
Page 2


Mr. Willner's August 21, 2002 addressed to FDIC counsel carries an admission of limited Tax Issue expertise. Mr. Hoffman's research and conclusion of proper fees for an <u>experienced civil litigator</u> would be most generous for an attorney who openly admits that he is not a Tax Expert. Under those circumstances all shareholder who I correspond with feel FDIC was most generous with $250 per hour. We further believe FDIC's generosity should extend to paying the interest claim on contributions.

Last but not least, it has been 9 months since contributors received their refunds. Why am I being denied the same courtesy on the documentation submitted by Winston and Strawn?

Sincerely,

*[signature]* "Bob"

C. Robert Suess