UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WINSTON & STRAWN LLP, <br><br>and<br><br>DON S. WILLNER & ASSOCIATES, P.C.<br><br>and<br><br>BLACKWELL SANDERS PEPER MARTIN<br>and<br>ERNEST M. FLEISCHER<br><br>　　　　Consolidated Plaintiffs,<br><br>　　v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, AS RECEIVER FOR<br>THE BENJ. FRANKLIN FS&LA,<br>PORTLAND, OREGON<br><br>　　　　Defendant. | Civil Case No. 06-01120 (EGS)<br><br>[Consolidated with No. 06-01227 (EGS) and No. 06-01273 (EGS)] |

**THIRD DECLARATION OF RICHARD S. GILL**

I, Richard S. Gill, being over the age of 21 and competent to testify in this case, hereby make the following declaration to supplement my earlier declarations and in support of the FDIC's opposition to the motions filed June 23, 2008, by plaintiffs Willner and Fleischer.

1. I am an attorney employed by the Federal Deposit Insurance Corporation. My current title is Counsel.

2. I received my law degree and a master's in business administration from the University of Virginia in 1973. I have practiced law for 35 years.

**FDIC Ex. 66**

3. I have worked at the FDIC for 19 years. I have worked on a number of complex cases involving negligence and malfeasance by directors and officers, attorneys, and accountants of failed federally-insured financial institutions. Most of those matters have involved multi-million dollar claims. I had major responsibility for four accountant malpractice settlements that resulted in an aggregate payment of about $1 billion to the FDIC and the Resolution Trust Corporation.

4. As part of my work on professional liability matters, I have reviewed numerous invoices submitted by FDIC outside counsel in various jurisdictions.

5. As part of my duties, I reviewed Willner's and Fleischer's invoices for reasonableness.

6. Entries considered for disallowance were highlighted in yellow or pink. If an entry described one task and was disallowed in full, the FDIC deducted the amount of time reported by an attorney for that entry. If an entry was part of a block description that didn't specify how much time was spent on each task, the FDIC estimated the amount of time to be deducted and made a handwritten notation of that portion to be disallowed. If an entry originally marked for possible disallowance was later determined to be suitable for payment, the FDIC made a handwritten notation beside the entry of "OK."

7. Based on my knowledge and participation in the discussions in the Tax Case, I disagree with Willner's contention that he played an instrumental or critical role in the settlement of the Tax Case.

8. From my observations and interactions with the private participants, Willner's role consisted primarily of making telephone calls, arranging conference calls, and introducing private participants at a few meetings. He didn't manage or supervise me, attorneys for Winston & Strawn, or attorneys for the Department of Justice or the IRS. In

**FDIC Ex. 66**

addition, he didn't make a substantial contribution to the substantive tax issues in the case.

9. The FDIC agreed to pay reasonable fees to all participants to "compensate them for [their] time, expense, and expertise." I could have made draconian cuts to the invoices that Willner and Fleischer submitted, but I decided to recommend paying them for all the hours they billed that appeared even marginally justified.

10. For Willner I had to impute an hourly rate, because he refused to provide one – he insisted on being paid a Washington, D.C. partner's rate of $525 per hour. I imputed an hourly rate of $250 for Willner, based on the highest rates the FDIC was paying to outside counsel in Portland, Oregon, and Seattle, Washington, which I also cross-referenced to a survey in the National Law Journal. Willner performed almost all of his work in Portland or out of his home in Trout Lake, Washington. Therefore, I considered $250 per hour as more than reasonable for Willner, particularly given that he is a sole practitioner.

11. Willner submitted 30 invoices to the FDIC for payment. He submitted 23 invoices with his original proof of claim and seven more with his supplemental proofs of claim. He billed about 1,031 hours. The FDIC has broken out certain items from Willner's invoices in various Tables and Exhibits submitted with its opposition to the motions Willner and Fleischer filed on June 23, 2008. The Tables and Exhibits are incorporated herein by reference.

12. Willner's invoices show that he spent an inordinate amount of time – about 263 hours – making phone calls, most of which are described so poorly that it is practically impossible to tell if they were necessary or had any material relationship to the tax issues.

**FDIC Ex. 66**

I allowed such charges originally, but on further review I now would recommend disallowing at least 50% of the phone charges.

13. Willner's invoices show that he billed for such tasks as faxing, attempting to locate files, organizing files, planning trips, working on a website, and similar tasks that attorneys ordinarily don't bill for and courts ordinarily don't allow. I recommended disallowing those charges and stand by that recommendation.

14. Willner's invoices show that he spent 76 hours on his fee petition. The FDIC didn't agree to pay for that time. I recommended disallowing those charges and stand by that recommendation.

15. Willner's invoices show that he billed about 100 hours for travel-related time. Except for time spent on making travel plans and packing, I recommended allowing most travel-related time. I recommended paying Willner at a full rate, even when Willner failed to show that he had worked while traveling and even when viewed realistically he couldn't have worked the entire time reported as travel time. In retrospect, I realize that Willner should have billed at a half rate for any time he didn't work while traveling. Willner also should have billed at a half rate for only the time he spent working while traveling, rather than billing at a full rate for all travel time, which is not realistic for time blocks of six hours or more. Failing that, I should have recommended appropriate disallowances.

16. Willner spent only about 43 hours in Washington, D.C. Part of the time he spent in D.C. was for work on the Goodwill Case, rather than work on the Tax Case. I should have disallowed those hours.

**FDIC Ex. 66**

17. In his complaint, Willner asks for additional fees of $782,110.24. In his supplemental brief, Willner is now asking for additional fees of $958,076.10. Willner doesn't explain the discrepancy, but the FDIC opposes both requests.

18. In his complaint, Willner asks for additional expenses of $1,204.14 to cover the cost of bringing two shareholders to the fairness hearing on May 2, 2006. The FDIC disallowed $1,204.14 for those expenses. In his supplemental brief, Willner is now asking for additional expenses of $1,408.34. But $1,408.34 is the amount of expenses that the FDIC allowed for Fleischer. It appears that Willner has confused the two amounts. In any event, the FDIC disallowed the expenses of two shareholders at the fairness hearing, because 1) they could have participated from Portland via video hook up with other shareholders, and 2) their presence at the hearing in Washington wasn't reasonably necessary. In comparison, Robert Suess – the lead shareholder in the Goodwill Case and the case against the FDIC in Oregon – attended the fairness hearing with attorneys from Winston & Strawn, but Winston & Strawn didn't bill for Mr. Suess's expenses.

19. Based on my knowledge and participation in the discussions in the Tax Case, I disagree with Fleischer's contention that he is entitled to additional fees in any amount. His claim for $1.3 million is quite extraordinary. I could have disallowed a substantial portion of the time charged by Fleischer, but I decided to recommend paying him for nearly all the hours he billed, because Willner hired Fleischer as a consultant and I didn't want to seem unfair to Fleischer by comparison.

20. From my observations and interactions with the private participants and attorneys for the IRS, Fleischer's involvement was counterproductive because he focused on unimportant issues and issues that the IRS indicated it would not consider. I believe that Hank

**FDIC Ex. 66**

Darmstadter – the lead IRS attorney in the discussions – would corroborate this if called to testify at a hearing.

21. When Willner submitted his original proof of claim, he included an invoice from Fleischer. The Fleischer invoice requested an hourly rate of $390 for 240 hours. It didn't include a request for a contingency fee or an additional fee of any kind. In fact, Willner requested a fee of $93,600 for Fleischer, which he called "a reasonable rate for his services." In addition, with respect to Fleischer and other consultants, Willner stated "I have included no contingent multiplier relative to their fees and expenses."

22. In March, 2006 Fleischer provided a more detailed description of the hours he was claiming. It included two statements regarding compensation: 1) "My arrangement with Don [Willner] was an oral agreement that he would use his best efforts to see that I would be compensated fairly should Benj prevail"; and 2) "a 'fair' contingent fee amount would be determined by a Federal judge." At my request, on May 18, 2006, Fleischer submitted his detailed information again.

23. Based on my dealings with Fleischer and discussions with other participants, I believe that Fleischer decided to seek additional fees only because it appeared that other attorneys intended to do so.

24. During one or more telephone conversations with Willner, he told me that he was surprised that Fleischer wasn't satisfied with the amount paid to him by the FDIC.

25. In its pleadings, the FDIC stated that the firm of Winston & Strawn made the most substantial contributions on behalf of the private participants. I reaffirmed this during my deposition on January 17, 2007. Over the objection of the FDIC, Winston & Strawn ultimately received about twice the amount that the FDIC paid the firm under the terms

**FDIC Ex. 66**

of the settlement in the Tax Case. Willner and Fleischer don't deserve a multiplier. But if the Court determines to award them a multiplier, it should be limited to no more than the amount the FDIC has already paid directly to them under the terms of the settlement in the Tax Case: $108,793.60 for Willner and $88,057 for Fleischer.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 23, 2008.

*Richard S. Gill*
Richard S. Gill
Counsel
3501 Fairfax Drive, Room VS-E7028
Arlington, VA 22226
703-562-2425 (office)

**FDIC Ex. 66**