**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WINSTON & STRAWN LLP,** ) <br> ) <br> and ) <br> ) <br> **DON S WILLNER & ASSOCIATES, P.C.** ) <br> ) <br> and ) <br> ) <br> **BLACKWELL SANDERS PEPER MARTIN** ) <br> and ) <br> **ERNEST M. FLEISCHER** ) <br> ) <br>                 Consolidated Plaintiffs, ) <br> ) <br>         v. ) <br> ) <br> **FEDERAL DEPOSIT INSURANCE** ) <br> **CORPORATION, AS RECEIVER FOR** ) <br> **THE BENJ. FRANKLIN FS&LA,** ) <br> **PORTLAND, OREGON** ) <br> ) <br>                 Defendant. ) <br> ) | Civil Case No. 06-01120 (EGS) <br><br> [Consolidated with No. 06-01227 (EGS) and No. 06-01273 (EGS)] |

**REPLY BRIEF IN SUPPORT OF THE
BLACKWELL PLAINTIFFS' MOTION FOR AN ORDER CLARIFYING
WHAT EVIDENCE MAY BE PRESENTED AT TRIAL**

The FDIC does not dispute that the Court was incorrect when it assumed that there was an agreement or understanding that the attorney fees would be between $1 and $2 million. Nor does the FDIC contest that, under prevailing law, the denial of summary judgment does not preclude a party from raising at trial the issues considered in the summary judgment proceedings. The Blackwell Plaintiffs' motion is therefore well-taken, and the Court should issue an order clarifying that the parties are free to argue at trial that the usual percentage-of-the-fund method applies to this case and to present evidence in support of that argument.

In ruling on this motion, it is important to understand the current posture of the case. The Court previously denied summary judgment motions filed by all the parties. Willner has filed a second motion for summary judgment on his claim. The Blackwell Plaintiffs do not seek summary judgment on their claim, but simply seek clarification as to what arguments may be presented at trial. The FDIC has also chosen not to file a second motion for summary judgment. Thus, summary judgment is at issue for Willner's claim, while the only issue for the Blackwell Plaintiffs is their motion for an order clarifying what arguments may be presented at trial.

The FDIC's brief, however, confuses things because it responds to two very different motions in a single brief. The FDIC for the most part addresses Willner's summary judgment motion, devoting little more than a paragraph that is relevant to the Motion to Clarify. That paragraph is easily refuted and will be addressed below. In addition, the FDIC summarizes its version of the facts which, it claims, would support a finding that the Blackwell Plaintiffs have already been paid a reasonable fee. As this Court well knows, that is a hotly contested issue. The Blackwell Plaintiffs have contrary evidence regarding the nature and value of their services and the results obtained which support a much different conclusion. Ultimately, the Court will resolve those disputed issues of fact at trial. But they have no place here, where no summary judgment motion is pending as to the Blackwell Plaintiffs. Accordingly, while it is tempting to respond in detail to all the factual assertions and accusations made by the FDIC and to lay out all the evidence we intend to introduce at trial, it is not relevant to the pending motion. We will therefore only touch on these extraneous issues at the end of this brief.

**1.     The Denial of Summary Judgment Does Not Prevent the Blackwell Plaintiffs From Arguing at Trial That the Percentage-of-the-Fund Method Applies.**

As pointed out in the motion papers, the denial of summary judgment ordinarily does not preclude a party from raising at trial the issues considered in the summary judgment proceedings.

It does not settle or even tentatively decide anything about the merits of the claim and thus does not foreclose trial on the issues on which summary judgment was sought. *See, e.g., Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed. Cir. 1986). That rule carries even more force here, where the Court's denial of summary judgment was based solely on an argument that the FDIC did not make, and that none of the parties addressed in their briefs.

The FDIC presents no contrary authority or argument. The motion should therefore be granted. This Court should have the benefit of all the evidence and arguments of the parties – including the intent and effect of the FDIC's $1 to $2 million estimate – before deciding whether the usual percentage-of-the-fund method applies to the facts of this case. Indeed, fundamental fairness dictates that, under the circumstances present here, the Blackwell Plaintiffs should not be barred at trial from advocating that the percentage-of-the-fund method applies.

    **2.    The Court Erroneously Believed That the Claimants Had Agreed to the FDIC's $1 to 2 Million Estimate.**

In denying summary judgment, the Court concluded that the "reasonable fees" that the FDIC must pay were not intended to be determined by the usual percentage-of-the-fund method because the Court thought (mistakenly) the parties had agreed that total fees would be between $1 and $2 million. As stated by the Court, "if the parties expected the fees to be in that range, they clearly did not contemplate that fees would be calculated with the standard percentage-of-the-fund method." Memorandum Opinion at p. 11. That would be a reasonable conclusion if, in fact, the parties had reached such an agreement. But there was no such agreement.

The FDIC's brief offers no argument to the contrary. The actual agreement between the parties is the November 2004 letter agreement between Willner and the FDIC's attorney, Robert Clark. *See* Ex's C and D (attached to the motion to clarify). As to the FDIC's agreement to pay attorney fees, the letter agreement states that the FDIC will pay from the receivership:

3

> A distribution of the reasonable fees and expenses of shareholders' counsel and consultants as approved by the Court and as determined through the receivership process in connection with such persons' work to reduce the $1.2 billion tax liability alleged by the IRS against the Benj. Franklin receivership.

Ex. C.  This provision was agreed to by the FDIC in its acceptance letter.  *See* Ex. D.[1]

The agreement, therefore, was for the FDIC to pay "the reasonable fees and expenses." The agreement contained no cap, limitation, or estimate of fees whatsoever.  It most certainly did not indicate that the fees would likely be between $1 and $2 million.  Accordingly, there is no dispute that the actual agreement between the parties contained absolutely no restriction on the fees to be awarded other than they must be "reasonable" fees.

For that reason, the FDIC cannot (and does not) dispute that the agreement between the parties was that the FDIC will pay a "reasonable" fee without any limit on the amount that can be awarded.  Nor does the FDIC dispute that it came up with the $1 to $2 million estimate on its own, over a year <u>after</u> the agreement was made, without consulting any of the other parties to the agreement.  Nor does the FDIC present any evidence that any other party agreed to FDIC's $1 to $2 million estimate.  Indeed, the FDIC knew when it made the estimate that the claimants were seeking an award in excess of what the FDIC wanted to approve.  *See* FDIC SOF ¶ 4; FDIC Exhibit 4.[2]  The FDIC's unilateral actions over a year after the written agreement was made do not alter the terms of the agreement.  The FDIC agreed to pay reasonable fees, whatever the amount might be, with no limitations or restrictions.

---

[1] The FDIC admits that Ex. C is the agreement between the parties, and does not deny that there was no agreement or understanding that fees would be limited to $1 to $2 million.  *See* FDIC Br. at 34; Deposition of FDIC attorney Richard Gill, at 11-12 (attached as Ex. E).

[2] These references are to the FDIC's Motion for Summary Judgment filed February 2, 2007.

Nevertheless, the FDIC claims that its own after-the-fact, unilateral $1 to $2 million estimate is binding on the Blackwell Plaintiffs based on two equally unavailing arguments:

*First*, the FDIC argues that the estimate is binding because Fleischer did not object to it or have Willner object to it. Even assuming that the FDIC sent a copy of the Notice to Fleischer (it did not), the argument is without merit because it completely ignores the actual language of the Notice. The FDIC acts as though the Notice says that the fees will be between $1 to $2 million, or the parties jointly estimate that the fees will be in that range. The Notice does no such thing. To the contrary, it states that the FDIC is contractually obligated to pay "reasonable" fees, that the FDIC "presently estimates" that the fees it will approve "will likely be between $1 and $2 million", and that *the claimants may appeal that determination if they are not satisfied with the amount*. Ex. A at pp. 7-8 and footnote 6. The Notice therefore does not purport to limit the amount of fees the claimants will receive, other than they must be reasonable. It says that if a claimant disagrees with the FDIC's fee award, it may seek any higher amount it wants on appeal, which includes amounts in excess of $1 to $2 million. Accordingly, there was nothing objectionable about the Notice. It defies logic to suggest that the Blackwell Plaintiffs were required to object to language that does not purport to limit the amount of their fee.

*Second*, the FDIC argues that the $1 to $2 million estimate is binding because it was approved by the Court. Again, the FDIC ignores the actual language of the Notice. The Notice does not state that total fees will be between $1 to $2 million, only that the FDIC is obligated to pay a reasonable fee, the FDIC currently expects to approve between $1 to $2 million, and the claimants can appeal the decision if they are not satisfied with the amount. Thus, the Notice clearly indicates that the claimants are not bound by the FDIC's $1 to $2 million estimate. The argument that the Court approved the language of the Notice therefore changes nothing.

5

### 3. The Remainder of the FDIC's Factual Arguments are Irrelevant and Disputed.

All parties agree that the Court must review the FDIC's decision *de novo*. *Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995). The FDIC's decision is thus given no deference, rather the Court must determine what is a reasonable fee. This will involve the analysis of such disputed factual issues as the nature and importance of the services performed by Fleischer, the skill and efficiency with which he performed them, and the extent to which they resulted in the successful preservation of the $44 million in assets for the shareholders of The Benj. Franklin Savings and Loan Association. That is an extremely fact intensive inquiry which cannot be resolved by summary judgment. For that reason, the FDIC concedes in its brief that there are disputed issues of fact as to the fees to which Fleischer is entitled (FDIC Br., p. 41, ¶¶ 7-9), and neither the Blackwell Plaintiffs nor the FDIC filed a second summary judgment motion.[3]

Nevertheless, the FDIC spends a few pages arguing that the Blackwell Plaintiffs are entitled to no more than their standard hourly rate under the disputed facts of this case despite the fact that no summary judgment motion is pending. With facts in dispute, the Court must weigh the evidence and make credibility determinations, which can only be done at trial. Moreover, while the arguments made by the FDIC are demonstrably wrong, they are also immaterial to the motion to clarify. Nonetheless, we feel that they need to be briefly addressed lest Court think that they are correct, or that there are no contrary arguments or evidence.

---

[3] The FDIC claims – incorrectly – that the Blackwell Plaintiffs "failed to comply with the Court's order to submit a brief addressing the lodestar/multiplier factors." FDIC Br. at 24. The Court's order merely set deadlines in the event the parties wish to file summary judgment motions. *See* Docket Sheet Entry dated 5/22/08. It did not, as the FDIC states, direct the parties to file briefs addressing the lodestar/multiplier factors. Because there are disputed issues of fact which preclude summary judgment, neither the Blackwell Plaintiffs nor the FDIC have filed such a motion.

The FDIC's overarching argument once again is that the Blackwell Plaintiffs are entitled to no more than their standard hourly rate and are being greedy for seeking more than that. The FDIC even argues that some of the participants and shareholders think Fleischer should be satisfied with receipt of just his hourly rate, as though it should be put to a vote. This argument is directly contrary to established law. In *Swedish Hospital*, the D.C. Circuit rejected the position advanced by the FDIC here and held that the fees in a common fund case should not be limited to the hours spent multiplied by the standard hourly rate. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265-71 (D.C. Cir. 1993). Indeed, no attorneys would take on the risk of a contingent fee case if a favorable resolution would result in receiving only the same hourly rate they would have received if the case was not contingent. Whether under a common fund or lodestar theory, prevailing law is that the Blackwell Plaintiffs are entitled to a fee beyond their standard hourly rates to compensate them for, among other things, the risk that they would receive nothing. *See, e.g.*, *id.* at 1266; *In re Baan Co. Sec. Litig.*, 288 F. Supp.2d 14, 17 (D.D.C. 2003).

The FDIC also argues that Fleischer served only as a "consultant." This is a complete red-herring. Fleischer is an attorney, was hired to perform legal work, and the services he provided were indisputably legal services. *See* Fleischer Decl., ¶¶ 1, 8-14.[4] Whether he is labeled as a consulting attorney, trial attorney, attorney of record, of counsel, member of the legal team, or some other type of attorney is a distinction that does not matter.

The FDIC chastises the Blackwell Plaintiffs for seeking a fee that would be a higher multiple of their hourly rates than do Willner and Winston and Strawn. But only the Blackwell Plaintiffs took the case on a pure contingent fee basis. They are the only ones who bore the risk

---

[4]Attached as Exhibit 1 to the Blackwell Plaintiffs' Motion for Partial Summary Judgment filed February 2, 2007.

that they would receive nothing. The shareholders paid Willner at a rate of up to $125 per hour for his work, for a total of $101,794.[5] Winston and Strawn was paid at a rate of $125 per hour, for a total of $189,457.[6] The Blackwell Plaintiffs were paid nothing and would have received no fee whatsoever had the Tax Case been lost. The Blackwell Plaintiffs took on substantially more risk than did Willner or Winston and Strawn and must be compensated accordingly.

The FDIC can hardly claim that the amounts are too high. As this has Court noted, "reasonable" fees under the percentage-of-the-fund method are generally between twenty and thirty percent of the fund. *See* Memorandum Opinion, at p. 11 (citing *Swedish Hospital*, 1 F.3d at 1272). Here, the total fees sought by all the attorneys amount to less than 8%. This Court has approved far greater percentages in matters requiring much less expertise, much less risk, and much less effort on the part of counsel. *See e.g., In re First Databank*, 209 F. Supp.2d at 100-101 (where Court awarded counsel 30% of an $8 million dollar settlement even though the case "did not require the same heavy lifting demanded" of counsel in other cases). None of the attorneys that the FDIC agreed to fairly compensate – including Fleischer – would be overcompensated in the event this Court awards them the full amount of fees they seek.

The FDIC claims that Fleischer will be unable to show that his services played a causal role in the result. The FDIC even attaches a self-serving declaration ***from one of its own lawyers*** stating that Fleischer's involvement was counterproductive. This is obviously a disputed issue of fact. The evidence will be that Fleischer contributed substantially in achieving the favorable result. We have previously briefed Fleischer's contributions, including the key role he played in

---

[5] *See* Willner's Motion for Summary Judgment filed February 2, 2007, at p. 8.

[6] *See* Winston and Strawn's Motion for Summary Judgment filed February 2, 2007, at p. 4; Winston and Strawn's Complaint, at p. 13.

identifying issues, deciding on strategy, developing legal positions, and negotiating the 96% reduction in the IRS claim.[7]  Suffice it to say that the parties disagree on this issue.

The FDIC suggests that Willner and Fleischer did not really have an agreement that Fleischer would be paid on a contingent fee basis.  That is just plain wrong.  *See* Fleischer Decl., ¶ 18[8]; Willner Dep., p. 22[9]; FDIC's Exhibit 58.  It is astonishing that the FDIC makes this suggestion when it knows full well that Fleischer has been paid no fees other than what the FDIC has paid on the instant fee claim.  The FDIC claims that a letter (FDIC Exhibit 56) indicates that Willner intended to pay Fleischer $125 per hour, but the letter refers to what <u>Willner</u> was being paid, not what Fleischer would be paid.  The FDIC suggests that it is suspicious that it first learned the specifics of the fee arrangement when Fleischer sought to get his fees paid.  Surely the FDIC does not contend that it should have been provided with the details of the fee arrangement before the fee claims process even began.  There is nothing nefarious about the timeline.

Finally, the FDIC argues that it is not bound by any contingent fee arrangement.  That argument misses the mark.  The FDIC agreed by contract to pay Fleischer a "reasonable" fee.  As this Court noted, that provision must be interpreted by reference to the prevailing law concerning "reasonable" fee awards.  Memorandum Opinion, at p. 10.  Under *Swedish Hospital*,

---

[7]*See* Blackwell Plaintiffs' Motion for Partial Summary Judgment filed February 2, 2007, and exhibits in support; Blackwell Plaintiffs' Memorandum in Opposition to the FDIC's Motion for Summary Judgment filed March 15, 2007 and exhibits in support; Blackwell Plaintiffs' Reply In Support of Their Motion for Partial Summary Judgment filed March 15, 2007.

[8]Attached as Exhibit 1 to the Blackwell Plaintiffs' Motion for Partial Summary Judgment filed February 2, 2007.

[9]Attached as Exhibit 2 to the Blackwell Plaintiffs' Motion for Partial Summary Judgment filed February 2, 2007.

the proper measure of "reasonable" fees in actions that result in the creation or preservation of a common fund is the percentage-of-the-fund method, with a typical award of between twenty and thirty percent of the fund.  The FDIC, like every other litigant, is bound by that governing law.

Dated August 22, 2008                Respectfully submitted,

    /s/ William F. Demarest
William F. Demarest, Jr. (D.C. Bar No. 266312)
Husch Blackwell Sanders LLP
750 17th Street NW, Suite 1000
Washington, D.C. 20006-3901
(202) 378-2300

and

James Borthwick     MO #19722
Michael C. Phillips     MO #40581
Husch Blackwell Sanders LLP
4801 Main Street, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080 (Facsimile)

*Attorneys for the Blackwell Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of August, 2008, I electronically filed the above and foregoing document with the clerk of the court, by using the CM/ECF system which will send a notice of electronic filing to all parties.

    /s/ William F. Demarest