UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------x
WINSTON & STRAWN, LLP, et al., :
                               :
        Plaintiffs,            :
                               :
    v.                         : No. 06-01120 (EGS)
                               :    06-01227 (EGS)
FEDERAL DEPOSIT INSURANCE      :    06-01273 (EGS)
CORPORATION,                   :
                               :
        Defendant.             :
------------------------------x

                                    Washington, D.C.

                                    Wednesday, January 17, 2007

Deposition of

                    RICHARD GILL

a witness, called for examination by counsel for

Plaintiffs, pursuant to notice and agreement of

counsel, beginning at approximately 2:30 p.m., at

the law offices of Winston & Strawn, 1700 K Street,

NW., Washington, D.C., before Mary Ann Payonk of

Beta Court Reporting, notary public in and for the

District of Columbia, when were present on behalf

of the respective parties:

**EXHIBIT E**

Page 10

1    MR. TAYLOR: Let me stop the
2  witness here for a second.
3    MR. WILLNER: Sure.
4    MR. TAYLOR: I'm going to object
5  initially insofar as it calls for information
6  that's protected by the work product
7  privilege and instruct the witness not to
8  answer if it does. Otherwise, if your
9  question calls for whether he was provided
10 with the standards of review, that's fine.
11   BY MR. WILLNER:
12 Q  Were you provided standards of
13 review by any superior in connection with my
14 fee petition?
15 A  No.
16 Q  All right. Do not answer this
17 question, to give your attorney a chance to
18 object. Were you provided any guidance in
19 writing or orally by any of your superiors in
20 dealing with my fee petition?
21   MR. TAYLOR: Again, to the extent
22 it calls for information that's protected by

Page 11

1  the work product provision I object and I
2  instruct the witness not to answer. If it's
3  just talking about policies, procedures,
4  specific instructions about how to go about
5  it, that's fine.
6    MR. WILLNER: I think you're
7  premature. I just asked him if he provided
8  any.
9  A  The answer is yes, but it's in
10 response to your November 2004 letter
11 agreement that you had with the FDIC.
12   BY MR. WILLNER:
13 Q  All right. Well, what
14 instructions, guidelines, were you given in
15 connection with the letter agreement between
16 Bob Clark and myself?
17 A  The November agreement, the letter
18 agreement which Bob Clark memorialized with I
19 believe a one-sentence concurrence, says that
20 the FDIC will support reasonable attorneys'
21 fees and that the -- and that the fees, you
22 know, will be run through the receivership

Page 12

1  claims process. At the time, we all believed
2  that those fees were going to go through the
3  court process and then, after the Court
4  approved them, they would be run for payment
5  through the receivership claims process.
6    Subsequently, after Mr. Clark left
7  the FDIC, in discussions with Rick Aboussie,
8  it was determined that it might jeopardize
9  the underlying settlement by allowing both
10 the attorneys' fees and blessing the
11 settlement amount to be run through the
12 fairness hearing. So I believe it was
13 mutually agreed to that the attorneys' fees
14 would be run up through the receivership
15 claims process.
16   And at all times, both, you know,
17 on the reasonable attorneys' fees, it was the
18 FDIC's assumption that what we were to pay
19 was your reasonable hourly rates.
20   So to the extent that I was
21 provided guidance, it was to try to determine
22 what was fair as far as the reasonable -- the

Page 13

1  hourly rates of the law firms. And I was
2  given instructions I think both by Bob Clark,
3  who -- and Richard Aboussie on the -- that --
4  that's what, you know, the basic parameters
5  were as far as looking at these attorney's
6  fee petitions.
7  Q  Isn't it fair to say that Mr.
8  Aboussie was taking a position inconsistent
9  with the agreement that Bob Clark and I
10 reached?
11 A  It was different than the
12 agreement. I mean, it was -- in the sense
13 that Mr. Aboussie felt that the Court -- that
14 the Court may have a problem approving
15 attorneys' fees and so his position was that
16 they should come through the -- the
17 receivership claims process.
18 Q  Was the document of two pages
19 prepared by me and concurred in by Bob Clark
20 a binding agreement on the FDIC?
21 A  I think what it was was it was a
22 general outline of what the -- the broad