UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WINSTON& STRAWN LLP,** | |
| and | |
| **DON S. WILLNER & ASSOCIATES, P.C.** | |
| and | Civil Case No. 06-01120(EGS) |
| **BLACKWELL SANDERS PEPER MARTIN** and **ERNEST M. FLEISHER** | [Consolidated with No. 06-01227 (EGS) and No. 06-01273(EGS)] |
| Consolidated Plaintiffs | |
| v. | |
| **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR THE BENJ. FRANKLIN FEDERAL SAVINGS AND LOAN ASSOCIATION PROTLAND, OREGON** | |
| Defendant. | |

**DECLARATION OF RICHARD A. GREEN**

I, Richard A. Green, being over the age of 21, a resident of the State of Virginia, a citizen of the United States, and competent to testify in this case, hereby declare:

1. I am a shareholder of the former Benj. Franklin Federal Saving and Loan Association (Benj.), a thrift that was seized by the Resolution Trust Corporation following Congressional passage of the FIRREA, and currently held in receivership by the FDIC.

2. I am a named plaintiff in the lawsuit "C. Robert Suess, et. al., Plaintiffs v. United States of America, Defendant" before the U.S. Court of Federal Claims and now on appeal to the Federal Circuit.

3. In 1990, I had numerous discussions with C. Robert Suess regarding remedies for the seizure of Benj. After consultation with attorneys in Northern Virginia and Washington, D.C., I

successfully persuaded Mr. Suess that the proper venue for seeking any relief was in the U.S. Court of Federal Claims in Washington, D.C., and NOT in the US District Court in Oregon.

4. Accordingly, I joined with C. Robert Suess and other plaintiffs in hiring Don S. Willner (an attorney in Portland who was well known, and who had had extensive experience in Washington, D.C. prior to his practice in Oregon). Mr. Willner, on our behalf, filed suit in the U.S. Court of Federal Claims, in Washington, D.C.

5. Although individual shareholders were denied standing to sue for damages in the Claims Court, Mr. Willner was successful in gaining standing for the plaintiffs to file a derivative suit on behalf of the Corporation. If it had not been for Mr. Willner's expertise with the U.S. Court of Federal Claims, this suit would have otherwise been doomed to failure (as, in fact, were so many other similar suits filed around the country). Instead, it became one of the complicated Winstar cases with national significance, setting new procedural standards throughout its long history.

6. In 2002, after years of litigation with Don S. Willner our lead attorney of record, Chief Judge Loren Smith of the U.S. Court of Federal Claims ruled for the plaintiffs and awarded $35 million in damages, an amount that was considerably less than expected.

7. Following this award, the plaintiffs met in California to discuss further strategy. Mr. Suess favored moving directly to appeal; the other plaintiffs favored a Motion for Reconsideration. Mr. Willner presented some history and options, and then left the room. Mr. Suess, who was chairing the meeting, rambled on at some length, and to my disappointment was unable to collaborate constructively on any coherent direction.

8. During this meeting, it was disclosed that <u>Mr. Suess, unilaterally and without consultation with the other plaintiffs, had taken intemperate action critical of and directed toward Judge Smith and the Court.</u> I was shocked and appalled, as were the other plaintiffs. As a result, I and the other <u>plaintiffs stripped Mr. Suess of his role as "lead" plaintiff and "manager" of the Benj. Litigation,</u> and further directed Mr. Willner to take action to reverse Mr. Suess' action (to which Mr. Suess acquiesced) which was done. Mr. Willner was also directed to file a Motion for Reconsideration (again, Mr. Suess acquiesced) which was also done. I might add that a further Motion for Reconsideration was successful in raising the damages award from $35 million to $52 million!!

9. Plaintiffs continued to jointly manage the litigation by consensus and majority vote in meetings and conference calls as needed. <u>Mr. Suess was invited to participate as an equal plaintiff, but after two such conference calls refused further participation. Instead, he began threatening the other plaintiffs, filed several Bar complaints against Mr. Willner that were dismissed, and withdrew financial support, as well as urging other shareholders to also withdraw their financial support.</u>

10. In 2006, Mr. Suess filed a motion to substitute Mr. Buchanan as lead counsel and represented to the court that he would pay for the appeal. Plaintiffs and Mr. Suess negotiated a compromise in which Mr. Suess explicitly waived his right to manage the litigation in

exchange for naming Mr. Buchanan as lead counsel for the appeal and remand. Rosemary Stewart of Spriggs and Hollinsworth (who negotiated the agreement on our behalf), Don S. Willner of Willner & Associates, and Eric W. Bloom and Charles B Klein of Winston and Strawn LLP were named Of Counsel to work collaboratively. This negotiated compromise was formalized in an order by Judge Smith on December 12, 2006.

11. Since then, Mr. Suess has effectively repudiated this agreement, filed a motion before the Claims Court against the other plaintiffs (which was dismissed for lack of jurisdiction), continued to misrepresent himself as "lead" plaintiff and "manager" of the litigation, and refused to pay Mr. Willner's bills for time and effort on the appeal (time spent at Mr. Buchanan's request).

12. Of immediate relevance, shortly following the damages award in 2002, the IRS filed suit in U.S. District Court demanding that the FDIC turn over whatever funds remained in the Benj. Receivership account to satisfy a $1.2 Billion tax claim. As the Attorney of Record for the plaintiffs, and at the direction of the plaintiffs (Suess again acquiescing), Don Willner immediately filed suit to intervene, so that the interests of the shareholders would be preserved.

13. As a direct result of Don Willner's leadership, and his role as lead counsel and Attorney of Record, negotiations between the plaintiffs, the FDIC, the IRS, and the DOJ were undertaken in Washington, D.C. to resolve the tax issues. Other shareholders also participated as interested parties in these discussions through representation by their personal attorneys, even though they were denied individual shareholder standing in the Claims Court – for example, Mr. Suess, in addition to being represented as a plaintiff by Don Willner, was also represented as an individual shareholder by Mr. Buchanan, and indeed Mr. Buchanan and his firm made significant contributions to the negotiations. Mr. Willner, as lead counsel and Attorney of Record also hired consultants, experts, and other counsel in Washington to assist him. His role was absolutely crucial to these negotiations. In fact, without Mr. Willner's leadership and efforts there would have been no negotiations at all.

14. Ultimately, the negotiations were successful, and the government and plaintiffs reached a settlement reducing the tax bill from $1.2 Billion to only $50 million. This case and these negotiations were held in Washington, D.C. Had Mr. Willner not intervened as the Attorney of Record and lead counsel, there would have been no negotiations, and all of the relief that the plaintiffs had won in the Claims Court would have been lost. Instead, over $35 million was distributed to the shareholders!

15. Don S. Willner advised all of the plaintiffs to seek outside counsel with regard to his fee petition. We have all done so. As a plaintiff and with full cognizance of our fiduciary duties to the shareholders, I state firmly that I fully support Don Willner's fee petition and urge the Court to recognize his preeminent role in achieving this outcome for the shareholders. Without his actions, the shareholders would have had nothing!

I certify under penalty of perjury that the foregoing is true and correct.

Executed on August 20, 2008

*Richard A. Green* (signature)

_____
Richard A. Green