UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WINSTON & STRAWN LLP, et al.,**

      **Plaintiffs,**

    v.                       Civil Case No. 06-1120 (EGS/JMF)

**FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR THE BEN FRANKLIN FS&LA,
PORTLAND, OREGON,**

      **Defendant.**

**MEMORANDUM ORDER**

This matter has been referred to me by Judge Sullivan for a Report and Recommendation on the issue of attorney's fees.

I.    <u>The Fee is Generated</u>

Don S. Willner ("Willner") is a lawyer in Trout Lake, Washington. He represented shareholders in an action against the United States in the Court of Claims and succeeded in securing for them a substantial judgment. That success, however, was jeopardized by the Internal Revenue Service's ("IRS") filing with the Federal Deposit Insurance Company ("FDIC") a $1.2 billion claim that would have in effect taken the judgment from the shareholders and put it in the United States Treasury.

On April 22, 2002, the IRS filed its proof of claim with the FDIC. On June 17, 2002, Willner secured a order from the United States District Court for the District of Oregon that prohibited the FDIC from paying the IRS claim. Judge Haggerty of that

court then dissolved the temporary restraining order and denied the preliminary injunction. On July 17, 2002, the IRS brought a tax collection suit before this Court. United States v. FDIC, Civil Action No. 02-1427. When the government lawyers told Willner that they would resist intervention by the shareholders he represented, Willner moved to intervene and to transfer the case to Oregon.

Willner insists that this motion engendered settlement discussions among his clients, the FDIC, and the IRS, represented by the Department of Justice. Willner states that he was lead counsel for the shareholders in those contentious discussion that began on November 1, 2002 and ended on January 30, 2006. Motion for Summary Judgment of Don S. Willner and Associates, P.C., Including a Memorandum of Points and Authorities and Request for Oral Argument ("Plains. MSJ") [#48] at 9. These discussions culminated in a settlement in which the IRS settled its claim for $50 million dollars. FDIC's Opposition and Cross Motion to Plaintiffs' Motions for Summary Judgment, Including Memorandum of Points and Authorities and Statement of Material Facts ("FDIC's Opp.") [#16], Attachment 1 at 20-29 (FDIC Exhibit 5: Notice to All Current Shareholders of Benj. Franklin Federal Savings & Loan Association Notice of Proposed Settlement and Fairness Hearing). The FDIC agreed to pay from the settlement "an amount representing the reasonable fees and expenses of the shareholders' attorneys." Id. at 26. Willner submitted his request for his fee with accompanying invoices to the FDIC and Ronald Gill reviewed it.

II.     Review of the Fee Claim by the FDIC

Gill, an attorney with FDIC who has 35 years of experience as a lawyer, was intimately involved in the settlement discussions. FDIC's Opp., Attachment 3 at 16

(FDIC Exhibit 14: Declaration of Richard S. Gill) and FDIC's Reply to Plaintiffs' Oppositions to FDIC's Cross Motion for Summary Judgment, Including Memorandum of Points and Authorities and Corrected and Supplemental Statement of Material Facts, Attachment 1 at 15- 24 (FDIC Exhibit 21: Second Declaration of Richard S. Gill).  He differs sharply with Willner as to the significance of Willner's role in achieving the settlement.[1]  FDIC's Opposition to Willner's [Supplemenatal] [sic] Motion for Summary Judgment and Blackwell's Motion for Clarification, Including Memorandum of Points and Authorities and Statement of Material Facts ("FDIC's Second Opp.") [#51], Attachment 47 at ¶¶ 7-8 (FDIC Exhibit 66: Third Declaration of Richard S. Gill).  Gill was assigned to review the invoices Willner submitted pursuant to the provision of the settlement agreement under which FDIC agreed to pay a reasonable fee to the attorneys for the shareholders.

Gill found that Willner's submissions were often inadequate and that he "could have made draconian cuts to the invoices that Willner . . . submitted, but [ ] decided to recommend paying them for all the hours . . . billed that appeared even marginally justified." Id. at ¶ 9.  Gill had to impute an hourly rate because Willner "insisted on being paid a Washington D.C. partner's rate of $525 per hour." Id. at ¶ 10.  Gill imputed "an hourly rate of $250 for Willner, based on the highest rates the FDIC was paying to outside counsel in Portland, Oregon, and Seattle, Washington, which [he] [ ] also cross-referenced to a survey in the National Law Journal." Id.

Gill disallowed approximately 189 of the 1,031 hours that Willner submitted.  FDIC's Second Opp. at 17.  See also Errata Sheet for Motion for Summary Judgment of

---

[1] "Victory has many fathers; defeat is an orphan." Winston Churchill.

<u>Don S. Willner & Associates, P.C., Including a Memorandum of Points and Authorities and Request for Oral Argument</u>, Attachment 15 (Willner Exhibit CC: <u>FDIC Deletions from Time Records</u>).

For his part, Willner insists that he is entitled to the $525 Washington rate he deduces from the affidavits of two lawyers who claim that $525 is the going rate for litigating partners in District of Columbia firms. Plains. MSJ at 13. He also seeks a multiplier of twice that and disagrees with all the disallowances Gill made. <u>Id.</u> at 14.

III.   <u>Issues Presented</u>

Obviously, the parties differ as to (a) the hourly rate Willner should be permitted to charge; (b) whether he is entitled to a multiplier; and (c) whether Gill's disallowances are legitimate.

    A.   <u>The Rate Problem</u>

The parties differ wildly as to the proper hourly rate. As indicated above, Gill imputed a rate of $250, based on what the FDIC pays other lawyers in the Northwest. In this Court, the FDIC defends the rate Gill used on the basis of an Oregon Bar Survey of fees charged that is used as an initial benchmark by the United States District Court of Oregon. FDIC's Second Opp. at 5-7. The FDIC insists that Willner spent only 4% of the 1,031 hours he billed in Washington, D.C. <u>Id.</u> at 8. All the rest of work for which he billed was done either in Portland or Trout Lake, Washington, where Willner works out of his home. <u>Id.</u> at 11. The FDIC insists that Willner is not entitled to a multiplier because they are rare and because Willner cannot even show that his work caused the IRS and its lawyer, the Department of Justice, to accept any of the arguments he made on behalf of the shareholders. <u>Id.</u> at 24.

Case 1:06-cv-01120-EGS -JMF   Document 75   Filed 02/16/10   Page 5 of 8

Willner for his part insists that he did the work in Washington and is entitled to be paid what a D.C. partner would be paid. Plains. MSJ at 20-21. As a fall-back position, he produces declarations from lawyers in the Pacific Northwest who assert that Willner's work was worth at least $450 an hour if one used accurate rates from the Pacific Northwest. Plains. MSJ at 26.

It particularly sticks in Willner's craw that his co-counsel, Winston & Strawn, took their fee claims to arbitration and won a double success multiplier so that two Winston and Strawn partners were compensated at rates of over $1,000 per hour. Id. at 20-21. He insists that he should be paid at least what they received. Id.

While Willner moves for summary judgment and expresses his belief "that there are no material issues of fact in dispute and "very much hoped that this case can be resolved on summary judgment in order to avoid a lengthy and expensive trial,"[2] I am afraid that the dispute between the parties raises at least all of the following issues of fact:

1. What is the reasonable rate to be applied to Willner's work if D.C. rates are used?
2. Is Willner's comparison of himself to partners in D.C. factually correct?
3. If, on the other hand, Willner is to be compensated at rates from the Pacific Northwest, what are those rates? Should the court use the District Court survey or some other rate? If some other rate, what is it?

It must also be recalled that Gill deprecates Willner's contribution and some of the shareholders believe that he is not entitled to any additional compensation. FDIC's

---

[2] Reply of Don S. Willner and Associates, P.C. Including Memorandum of Points and Authorities at 2.

5

Second Opp., Attachment 44 (FDIC Exhibit 64: <u>Declaration of Abe Siemens</u>) and Attachment 45 (FDIC Exhibit 65: <u>Declaration of Gary E. Hinds</u>). It will certainly be necessary to hear from them and other participants in the settlement discussions to assess Willner's demand for a mutiplier because of the excellence of his work and its most significant role in bringing about the settlement.

      B.     <u>The Appropriateness of a Multiplier</u>

There is another complication. As I pointed out in my most recent order, the Supreme Court has now heard argument in a case raising the precise question of whether the federal courts should grant multipliers of the ordinary hourly rate with the Solicitor General insisting that the reasonable hourly rate actually charged by the lawyer suffices as reasonable compensation since it already takes into account the factors that are claimed to justify a multiplier. <u>See</u> Brief for the United States as Amicus Curiae Supporting Petitioners, <u>Perdue v. Kenny A</u>., Docket No. 08-970 (U.S. filed June 29, 2009). While Willner attempts to distinguish this case, my review of the briefs submitted convinces me that it certainly more likely than not that the Supreme Court will speak to the validity of a multiplier in all cases where lawyers seek it.

      C.     <u>The Use of Laffey[3] Rates</u>

At the recent status hearing, I proposed to counsel that I would use the <u>Laffey</u> rates that have been universally used by lawyers in this jurisdiction. While they may have their critics, the <u>Laffey</u> rates have the extraordinary advantage of being uniform and eliminating controversies and hearings over what is a reasonable rate. While the FDIC

---

[3] <u>See</u> <u>Laffey v. Northwest Airlines, Inc.</u>, 572 F. Supp. 354 (D.D.C. 1983), <u>aff'd in part, rev'd in part</u>, 746 F.2d 4 (D.C. Cir. 1984). <u>Cf.</u> <u>Save Our Cumberland Mountains v. Hodel</u>, 857 F.2d 1516 (D.C. Cir. 1988).

may think that they will overcompensate Willner and Willner thinks they will cheat him, I can only hope that like any good settlement the use of the <u>Laffey</u> rates will displease them equally. I must point out to both of them who may not practice frequently in this Court that I have presided over what now must be hundreds of settlement conferences where attorney's fees were at issue and I have yet to hear a lawyer object to the use of the <u>Laffey</u> rates.

   I therefore propose to counsel that we proceed as follows. If they agree to the <u>Laffey</u> rates, I will use them to calculate a reasonable rate for Willner's services. I will resolve Willner's objections to the charges Gill disallowed and provide Judge Sullivan with my recommendation of a total amount that Willner should be paid. I will also recommend that Judge Sullivan not enter a final judgment until the Supreme Court rules in the <u>Perdue</u> case. Unlike Willner, I believe that we should have the Supreme Court's decision soon since the case was argued in October. Once we have it, I will supplement my recommendation as necessary, holding, if I must, an evidentiary hearing on Willner's demand for a multiplier.

   I appreciate that I "sprung" my proposal to use the <u>Laffey</u> rates on counsel at the status hearing without any warning. Accordingly, I will give them 10 days within which to consider my proposal. I expect them to advise me by joint stipulation of their acceptance of my use of the <u>Laffey</u> rates. If they cannot agree, then they shall discuss with each other and my chambers dates for a four day evidentiary hearing. I hasten to add that I will decide whether or not to use the <u>Laffey</u> rates even if they do not agree to their use.

   **SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE