UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WINSTON & STRAWN LLP, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, AS RECEIVER FOR<br>THE BENJ. FRANKLIN FS&LA,<br>PORTLAND, OREGON,<br><br>Defendant. | Civil No. 06-1120 (RCL/JMF)<br><br>**FILED**<br>JAN 2 7 2012<br>Clerk, U.S. District & Bankruptcy<br>Courts for the District of Columbia |

## MEMORANDUM AND ORDER

Before the Court is plaintiff Don S. Willner & Associates, P.C.'s Motion to Expedite Consideration [104] of its claim for attorney's fees in connection with its role in obtaining a settlement of a tax claim lodged by the Internal Revenue Service against the Federal Deposit Insurance Corporation ("FDIC"), as receiver for the Benj. Franklin Federal and Loan Association of Portland, Oregon ("Benj. Franklin"). On December 3, 2010, Magistrate Judge John Facciola issued a Report and Recommendation [85] in which he recommended an award of $416,999.96. Magistrate Judge Facciola then vacated that initial Report and Recommendation and issued a Revised Report and Recommendation [96] in which he recommended an award of $166,175.39. Both parties filed objections to the initial report [86], [87], responses to those objections [88] [89], and objections to the revised report [97], [98]; the defendant further filed a response [100] to the plaintiff's objection to the revised report. Upon consideration of the motion, the reports, the objections and responses thereto, the applicable law, and the entire record herein, the Court

will award the plaintiff attorney's fees in the amount of $150,062.25. Because the Court will award judgment in this case, it will deny the motion to expedite consideration as moot.

I. **BACKGROUND**

In the midst of the savings and loans crisis of the 1980s and 1990s, Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. The Act in part prevented federal regulators from in most cases counting supervisory goodwill toward capitalization requirements. This change rendered Benj. Franklin unable to satisfy minimum regulatory capitalization requirements, and federal regulators seized Benj. Franklin in February, 1990. The law firm Winston & Strawn, working with the plaintiff, filed a derivative and class action law suit in the United States Court of Federal Claims as a result. That Court granted Benj. Franklin's motion for summary judgment on December 22, 1997, and ordered a trial on damages. On or about the same time, the Internal Revenue Service ("IRS") asserted a claim against the defendant in its capacity as the Benj. Franklin receiver for $1.2 billion in alleged taxes and penalties accrued during the failed thrift's receivership. On June 6, 2002, the Court of Federal Claims entered judgment in favor of the Benj. Franklin receivership of $34,672,500, which following a motion for reconsideration the Court increased to about $52 million. Shortly after the Court entered judgment in that case, the plaintiff filed a separate case in the United States District Court for the District of Oregon, obtaining a temporary restraining order prohibiting the defendant from satisfying the IRS's claim against the defendant as receiver. The IRS then sued the defendant in this district court to recover the taxes and penalties allegedly owed by Benj. Franklin in *United States of America v. Federal Deposit Insurance Corporation*, Civil No. 02-1427. The defendant, the Department of Justice on behalf of the IRS, and the shareholder-plaintiffs in the derivative action reached a settlement of the IRS's suit, negotiated in

part by the plaintiff, that reduced the IRS's claim to $50 million. Judge Emmet Sullivan issued an order in that case [33] approving the settlement, in which the defendant also agreed to pay counsel reasonable attorney's fees.[1]

The plaintiff recouped $101,739.90 in attorney's fees from the Benj. Franklin shareholders and submitted a fee petition with invoices to the FDIC for additional attorney's fees. The plaintiff requested a base amount of $541,327.50, times a multiplier for performance, minus the amount paid by the shareholders. The plaintiff also requested payment for other expenses. The FDIC approved the request in part and denied it in part on May 19, 2006. The FDIC calculated a reasonable fee based on 842.35 hours of work, billed at $250 per hour, for a total of $210,587.50, minus the amount paid by the shareholders. It issued a check to the defendant for $122,731.44, inclusive of that fee and approved costs. The plaintiff on July 7, 2006 filed a complaint in *Don S. Willner & Associates, P.C. v. Federal Deposit Insurance Corporation*, Civil No. 06-1227, seeking a total judgment of $782,110.24 based on a calculation of 2 percent of the receivership surplus of $44 million, minus the amount paid by the shareholders. The plaintiff's case was later consolidated with the instant case, which Winston & Strawn initiated as lead plaintiff on October 3, 2006.

The plaintiffs in the consolidated case all moved for summary judgment, as did the defendant. Judge Sullivan issued a separate memorandum [31] and order [30] on July 13, 2007 denying each motion. As to the plaintiffs' motions, Judge Sullivan determined that reasonable attorney's fees should not be calculated based on a percentage of the remaining receivership

---

[1] The letter memorializing the settlement, attached to Judge Sullivan's order approving that settlement, does not make explicit reference to attorney's fees. However, the notice sent to shareholders, of which a proposed version appears as Exhibit 1 to the FDIC's motion for a fairness hearing in that case [30], stipulates that the "FDIC also has agreed to distribute an amount representing the reasonable fees and expenses of the shareholders' attorneys and consultants in connection with such persons' work to reduce the $1.2 billion tax liability alleged by the IRS down to the $50 million settlement amount." The defendant does not contest that it owes reasonable attorney's fees.

surplus. Following those motions, Judge Sullivan first referred the dispute to mediation by order [36] on August 15, 2007. Following unsuccessful mediation, the plaintiff filed a motion for summary judgment [48] on June 23, 2008. The parties at this stage in the litigation argued principally over the appropriate hourly rate for work done by Mr. Willner personally, whether to apply a multiplier for success, and whether the FDIC properly reduced 186.35 hours from Willner's billed hours. Judge Sullivan denied the plaintiff's motion without prejudice by separate order [54] and memorandum [55] on March 31, 2009 and referred the matter to Magistrate Judge Facciola by order [56] on April 2, 2009 for a Report and Recommendation. Magistrate Judge Facciola entered an order [63] on July 30, 2009, in part requiring the parties to provide supplemental briefing as to why the reasonable rate for Don S. Willner (the namesake of the plaintiff firm) should not be calculated on the basis of the *Laffey* Matrix, *see Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *as modified by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524-25 (D.C. Cir. 1988); *Laffey* Matrix – 2003-2012, *available at* http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf. The parties provided a joint stipulation [76] agreeing to the use of *Laffey* rates to calculate the reasonable fee for Mr. Willner.

Magistrate Judge Facciola issued his first Report and Recommendation on December 3, 2010, recommending a total award to the plaintiff of $416,999.96. Magistrate Judge Facciola then issued an order [95] on March 11, 2011 discussing his recommendation in the wake of the objections raised by the parties. He noted the FDIC's argument that the plaintiff must have been reimbursed already for some of the costs sought based on accounting irregularities in those claims. Magistrate Judge Facciola therefore ordered clarification from the plaintiff. The docket

does not reflect a responsive submission from the plaintiff. Magistrate Judge Facciola vacated his prior recommendation and on April 12, 2011 issued his Revised Report and Recommendation. The revised recommendation differs from the initial recommendation in three respects. First, Magistrate Judge Facciola adjusted his recommendation for reimbursement of services provided by bookkeeper Katherine Kelley upward from $700 to $1,200, based on what Magistrate Judge Facciola believed to be a typographical error in the plaintiff's submissions. Second, Magistrate Judge Facciola adjusted his recommendation for reimbursement of costs downward from $41,941.21 to $15,141.98, based on the inconsistencies noted in his March 11, 2011 order and the plaintiff's failure to respond to that order. Finally, and most significantly, Magistrate Judge Facciola reduced his recommendation by $224,525.34 to reflect reimbursement already received by the plaintiff. This figure reflects the shareholders' payment to the plaintiff of $101,793.90; the FDIC's payment to the plaintiff of the $108,793.60 in attorney's fees to which the FDIC admits the plaintiff is entitled; and an additional $13,937.84 paid by the FDIC to the plaintiff for costs to which the FDIC admits the plaintiff is entitled.

The parties filed their objections to the Revised Report and recommendation on April 26, 2011. The case was reassigned to this Court on October 11, 2011. The plaintiff filed his instant motion to expedite consideration on October 27, 2011.

## II. DISCUSSION

### A. *Magistrate Judge's Jurisdiction to Issue Revised Report and Recommendation*

The plaintiff first argues that once a magistrate judge has issued a Report and Recommendation, and the parties have lodged their objections to the recommendation, the matter is essentially on appeal to the district court and the magistrate judge loses jurisdiction over the case. Thus, the plaintiff argues, Magistrate Judge Facciola lacked authority to vacate his initial

recommendation and issue a revised version, and this Court should disregard the latter report. The plaintiff cites no authority to support this contention, instead quoting a Ninth Circuit decision for the proposition that a magistrate judge's recommendation is simply a recommendation and has no binding effect. Of course. *See* Fed R. Civ. P. 72(b)(3). The Court must conduct *de novo* review of objections to a magistrate judge's Report and Recommendation through independent reference to the record and the applicable law, and is free to conduct *de novo* review of the entire Report and Recommendation. To the extent that the legal effect of the revised recommendation is in question, the Court will out of an abundance of caution conduct *de novo* review of all issues with respect to which the revised recommendation differs. The Court would further conduct *de novo* review of objections lodged to both versions, but finds that the objections lodged to the revised version encompass all the objections lodged to the initial version, except insofar as the revised version resolves objections lodged by the defendant to the initial version.

The Court notes however that ample authority supports the practice of magistrate judges revising their recommendations when mistakes become apparent. *See Tucker v. United States*, 249 Fed. Appx. 763, 765 n.2 (11th Cir. 2007) (unpublished opinion); *cf., e.g., Shumpert v. Mancor Carolina, Inc.*, 142 Fed. Appx. 786 (4th Cir. 2005) (unpublished opinion) (reviewing district court order based on revised report and recommendation); *In re R.H. Transport Inc.*, 80 Fed. Appx. 955 (5th Cir. 2003) (unpublished opinion) (same); *Business Guides v. Chromatic Communications Enters.*, 892 F.3d 802 (9th Cir. 1989) (same); *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638 (7th Cir. 1981) (same). And any potential infirmity in the practice could be cured by the Court's return of the matter back to Magistrate Judge Facciola for resubmission of the Revised Report and Recommendation pursuant to Fed. R. Civ. P. 72(b)(3) as an initial Report

and Recommendation issued upon that re-referral—an exercise of form over substance that would be both unnecessary and contrary to the plaintiff's request for expedited disposition. The Court will proceed without requiring such a redundant step.

### B. *Willner's Objections on the Merits*

#### 1. *Payments already made to the plaintiff*

The plaintiff objects to Magistrate Judge Facciola's recommendation that he not be compensated for $101,793.90 in attorney's fees already paid by the Benj. Franklin shareholders, and $108,793.60 in attorney's fees and $13,937.84 in costs already paid by the defendant. As to the former payment, the plaintiff makes no actual argument, merely lodging an objection without relevant analysis. The Court finds no reason why the plaintiff should receive a double recovery for this amount, and agrees with Magistrate Judge Facciola's deduction of $101,793.90 from his revised recommendation. As to the latter payment, the plaintiff asserts that while the FDIC provided a $3.2 million payment to Mr. Willner as trustee for the Benj. Franklin shareholders' litigation fund, he did not accept any portion of that payment as personal attorney's fees. This assertion is proven irrelevant by the record, in particular Exhibit 3 to the defendant's response [94] to Judge Facciola's order [92], which includes a notice of the FDIC's partial allowance of the plaintiff's attorney's fees claim and a copy of a check issued to the plaintiff for $122,731.44—the $108,793.60 at issue, plus costs of $13,937.84. The plaintiff does not appear to dispute the receipt of that check. Accordingly, the Court further agrees with Magistrate Judge Facciola's deduction of $108,739.60 and $13,937.84 in his revised recommendation.

#### 2. *Multiplier for success*

The plaintiff argues that the calculated *Laffey* rates applicable to Mr. Willner's work should be enhanced by a multiplier of up to double. He argues that Judge Sullivan found a

double multiplier appropriate in a memorandum [31] disposing of motions for summary judgment, and that this Court is thus bound by that determination. However, that memorandum only indicates that "a multiplier *may be* appropriate," and that "at this juncture . . . the Court cannot reject this possibility." Judge Sullivan did not conclusively determine that a multiplier need apply. And at *this* juncture, it appears a multiplier would be inappropriate. Without meaning to disparage the plaintiff's success in aiding the defendant's settlement with the IRS, the Court sees no reason in this case for an upward departure from the generally applicable *Laffey* rates. *Cf. Rooths v. District of Columbia*, Civil No. 09-492, 2011 U.S. Dist. LEXIS 87659, *12 (D.D.C. Aug. 9, 2011) (noting in context of statutory attorney's fees that "the rates contained in the Laffey matrix are typically treated as the highest rates that will be presumed to be reasonable . . . ."); *cf. also Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672-73 (2010) (also discussing statutory fees). The Court will thus adopt Magistrate Judge Facciola's calculation of the reasonable rates owed for Mr. Willner's personal legal services as part of the plaintiff law firm.

### 3. Fees on fees

The plaintiff seeks compensation for attorney's fees for time spent preparing the fee petition, which Magistrate Judge Facciola recommended, and for prosecution of the instant law suit, which Magistrate Judge Facciola did not. As to the fee petition, Magistrate Judge Facciola in both reports and recommendations calculated an award for the plaintiff that covered this work, but with a reduction of $7,474.00 corresponding to 20.2 hours at $370 per hour by Mr. Willner for which Judge Facciola felt the plaintiff should not be compensated. In justifying this portion of the recommendation, Judge Facciola cited to *Sierra Club v. EPA*, 769 F.2d 796, 811 (D.C. Cir. 1985); *Laffey*, 746 F.2d at 29; and *Environmental Defense Fund v. EPA*, 672 F.2d 42, 62 (D.C.

Cir. 1982). The defendant argues that these cases, which involved statutory claims to attorney's fees, are inapposite here, where a settlement agreement governs the provision of attorney's fees. The defendant interprets that agreement as not permitting recovery for attorney's fees spent either preparing the fee petition, or prosecuting a lawsuit to recover attorney's fees on the original suit. But the defendant does not point to an express disclaimer of such liability, and in interpreting the agreement's reference to "reasonable" fees the Court is guided by the statutory meaning of reasonable attorney's fees as discussed in the relevant case law.

The Court agrees that it is appropriate to reimburse the plaintiff for fees incurred in preparing the petition. However, the Court notes that Magistrate Judge Facciola recommended capping the plaintiff's recovery in this regard to reflect 40 hours of work, but then calculated a reduction that reflects an allowance of 44 hours of work. The Court will accordingly adjust the reduction downward to reflect those 4 hours. Further, the defendant argues that the reduction should be calculated based on hourly rates greater than $370, a rate that prevailed when Mr. Willner began working on the fee petition but that increased throughout the process. But the decision to cap the plaintiff's recovery for fees on fees at 40 hours reflects uncertainty about the extent to which the hours claimed reflect actual substantive legal work. To further reduce the plaintiff's award by speculating as to when exactly over the course of the fee petition process the non-reimbursable work occurred seems unnecessary. Accordingly, the Court will follow Magistrate Judge Facciola's use of the $370 per hour rate. Adjusting for the extra four hours, instead of reducing the plaintiff's award by $7,474, the Court will instead reduce the award by $8,954, corresponding to a total reduction in the recommended award of $1,480.

As to further attorney's fees for prosecution of the instant litigation following resolution of the fee petition, the Court determines that the plaintiff is not entitled to such an award. In

particular, the plaintiff did not make a claim to such fees prior to the issuance of the initial Report and Recommendation. Further, the defendant avers that the plaintiff failed to respond to earlier opportunities in mediation in 2007 and before Magistrate Judge Facciola in 2011 to resolve the case without further litigation. Most significantly, however, the Court sees no reason to compensate the plaintiff for work spent on various pleadings requesting a vastly inflated attorney's fees award, including a request for $1,059,870.00 less the $101,793.60 paid by the Benj. Franklin shareholders in his supplemental motion for summary judgment [32] and his more recent, inexplicable position, as embodied in his objections to the Revised Report and Recommendation, that the Court should not reduce his award to reflect attorney's fees and costs payments of $101,793.90, $108,793.60 and $13,937.84 that he has already received. Given the circumstances, the Court determines that rewarding the plaintiff for his prosecution of this litigation would be unreasonable, and will not increase the award to reflect those fees.

### C. *FDIC's Objections*

#### 1. *Reimbursement for Other Professionals*

The defendant objects to Magistrate Judge Facciola's recommendation that the plaintiff be reimbursed for payments made to other professionals for legal research. The defendant first objects to a payment of $3,442.50 to Sarah Drescher—based on 22.95 hours of work and a rate of $150 per hour, below the applicable *Laffey* rate—on the grounds that the plaintiff should not be awarded attorney's fees for time spent working on the fee petition. Because the Court has already concluded that such costs should be awarded, the Court will not sustain this objection. For the same reason, the Court will not sustain the defendant's objection to the recommendation that the plaintiff be reimbursed for $1,200 spent paying Katherine Kelley (16 hours of work at

$75 per hour) for services related to the fee petition, and agrees with Magistrate Judge Facciola's *sua sponte* increase of that award from $700 to reflect the actual amount paid to her.

The defendant next objects to the recommendation that the plaintiff be reimbursed for $2,205 spent paying Constance Wold for legal research, for 7 hours at the *Laffey* rate of $315 per hour. The defendant argues that the charges were incurred on April 24 and 25, 2002, nearly three months before the IRS filed its complaint against the FDIC in the case for which the plaintiff seeks recovery, and that these charges are irrelevant to that case. The description of those charges describes that research as regarding "conflicts of interest rules and opinions" with respect to "expert witness M. Duhl." Mr. Willner also conducted work related to Mr. Duhl in anticipation of the tax litigation, for which the defendant concedes reimbursement is proper. The defendant further argues that the payments made to the plaintiff by the shareholders and the FDIC encompass these charges. However, the plaintiff's award is already being offset by those payments. The job of the Court is to assess the total amount of attorney's fees and costs to which the plaintiff is entitled, and then to offset that amount by payments already received by the plaintiff. Because the Court determines that the plaintiff is entitled to recover on the payments made to Ms. Wold, the Court will include those charges in the total award, again to be offset by the gross amount already received by the plaintiff. Finally, the defendant objects to the use of *Laffey* rates for reimbursement of Ms. Wold, arguing that the stipulation to use *Laffey* rates only applies to work conducted by Mr. Willner personally. The Court agrees that a reasonable fee for Ms. Wold's work is the amount actually charged to the plaintiff for that work. It appearing to the Court that the plaintiff was only billed $700 for 7 hours work, the Court will only reimburse the plaintiff for that $700, rather than the recommended $2,205. Accordingly, the Court will decrease the recommended award by $1,505.

Finally, the defendant objects to reimbursement of Lori DeDobelare at *Laffey* rates. However, it appears to the Court that the recommended reimbursement for this work, $130, reflects the amount actually paid for this work. The Court approves reimbursement of that amount.

### 2. *Other Expenses*

The defendant argues that the plaintiff should not be awarded $1,874 for clerical tasks performed by Mr. Willner. Magistrate Judge Facciola recommended the award because Mr. Willner is a solo practitioner, *see Thomas v. D.C.*, Civil No. 03-1791, 2007 WL 891367, at *11-13 (D.D.C. Mar. 22, 2007), but compensated the plaintiff at *Laffey* rates for paralegals and law clerks. The defendant argues that the record demonstrates Mr. Willner's use of clerical staff at times, and that in the modern era the ease of delegation makes reimbursement at even paralegal rates inappropriate. The Court agrees, finding no reason to distinguish law firms, which ordinarily cannot recoup expenses for clerical work, and solo practitioners. The Court will thus decrease the recommended award by $1,874.

The defendant next objects to compensation for 22.8 hours spent by Mr. Willner managing a Web site used to communicate with shareholders. The defendant argues that the maintenance of a Web site was unnecessary to the settlement negotiations. But the Court agrees with Magistrate Judge Facciola that efforts to communicate with shareholders directly affected by the terms of the settlement agreement fall within the scope of the settlement negotiations, especially since Judge Sullivan in approving the settlement stressed the importance of widespread shareholder approval of that settlement. The Court will allow the plaintiff to recover fees for time spent on the Web site.

The defendant further contests the propriety of reimbursing the plaintiff for 30 out of 40 block-billed hours. Magistrate Judge Facciola found that the plaintiff's invoice with respect to these 40 hours lacked sufficient detail for a court to assess the reasonableness of reimbursing the plaintiff for those hours, but then recommended that the award for these hours be reduced by a mere 25 percent. The Court agrees with the defendant that the plaintiff has failed to meet his burden of establishing with sufficient detail that these hours relate to the matter for which the defendant agreed to provide attorney's fees, *see Watkins v. Vance*, 328 F. Supp. 2d 23, 26 (D.D.C. 2004), in particular because the charges accrued in 1998 and 1999, well before the government filed the tax claim against the defendant. The Court will therefore reduce the recommended award by those 30 hours, which, at a *Laffey* rate of $335 per hour, corresponds to $10,050.

Finally, the defendant objects to reimbursement of travel expenses incurred by Dale H. McIntyre and G. Dale Weight on May 1, 2006 to attend the May 2006 fairness hearing, totaling $1,204.14. The defendant argues that these shareholders could have viewed the proceedings remotely and did not need to attend the hearing in person. The Court is unaware of any explanation by the plaintiff as to the necessity of these individuals' in-person appearance. The Court will thus disallow reimbursement for the $1,204.14.

### D. *Differences Between the Initial and Revised Reports and Recommendations*

As discussed, the Court will out of abundance of caution review *de novo* any differences between the initial and the revised reports and recommendations. As to the first difference, Magistrate Judge Facciola's reduction of costs to reflect accounting irregularities, the Court determines that the reduction is proper. As to the second difference, the Court has already discussed the appropriate compensation for work performed by Katherine Kelley. And as to the

final difference, it is self-evident that the defendant is entitled to a reduction in the award to reflect payments already made by the defendant and by the Benj. Franklin shareholders.

### III. <u>CONCLUSION</u>

Insofar as neither party objects to the revised Report and Recommendation, and insofar as that Report and Recommendation is consistent with the initial Report and Recommendation, the Court adopts the revised Report and Recommendation. The Court has conducted *de novo* review of the inconsistent or objected-to portions of the revised Report and Recommendation and concludes that entry of summary judgment for the plaintiff, *sua sponte*,[2] as to the following is appropriate for the reasons set forth herein.[3] The Court determines that the recommended award should be reduced by a further $1,480 with respect to work by Mr. Willner on the fee petition; $1,505 for the payment of Ms. Wold; $1,874 for billed clerical work; $10,050 for insufficiently detailed block billing; and $1,204.14 for travel expenses. The Court will thus reduce the recommended award by a total of $16,113.14. Starting with Magistrate Judge Facciola's recommendation of an award of $166,175.39, the Court will award instead a total of $150,062.25. An appropriate Order accompanies this Memorandum Opinion.

1/27/12
Date

ROYCE C. LAMBERTH
Chief Judge
United States District Court

---

[2] "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotrex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Here, both parties were on notice of the significance of lodging objections to the magistrate judge's reports and recommendations, and both did so for both reports.

[3] As noted *supra*, Judge Sullivan referred this case to Magistrate Judge Facciola following denial of summary judgment for the plaintiff without prejudice. There is accordingly no outstanding motion for summary judgment that the Court could grant; the only live motion pending before the Court is the motion for expedited consideration.